**LUJAN AGUIGUI & PEREZ LLP**
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiffs*

FILED
DISTRICT COURT OF GUAM
JAN - 4 2007
MARY L.M. MORAN
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br>-vs-<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br>**OPPOSITION TO VERIZON DEFENDANTS' 12(b)(6) MOTION TO DISMISS** |

COME NOW Plaintiffs Henry G. Van Meter, Jerry Apodaca, Jr., Joseph J. Hernandez, Joseph T. Mendiola, Larry L. Charfauros, Anthony C. Arriola, Robert B. Cruz, Roland F. Mendiola, James S. Yee, Teddy B. Cruz, Jesse B. Cruz, John L.G. Nauta, and John P. Babauta (collectively "Plaintiffs"), respectfully submitting their opposition to Verizon Defendants' 12(b)(6) Motion to Dismiss, filed herein November 21, 2006.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs.' 12(b)(6) Mot. Dismiss

1

Case 1:05-cv-00037    Document 106    Filed 01/04/2007    Page 1 of 13

# I. INTRODUCTION

Plaintiffs instituted this Title VII action on December 12, 2005, alleging that they were subjected to employment discrimination by defendants Calpac, Dynamic Technical Services ("DTS"), MCI, John Healy ("Healy"), Dennis Clark ("Clark"), William Ward, Jai James, and Does 1 through 10 (collectively "Defendants"). The First Amended Complaint ("the complaint") was filed February 24, 2006.

On April 21, 2006, DTS filed herein a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the claims against it for failure to state a claim since, it argued, it was not a Title VII employer of Plaintiffs. Plaintiffs filed an opposition to DTS' motion on May 26, 2006, to which DTS filed a reply on June 8, 2006. This Court denied DTS' motion on June 16, 2006, finding that "[t]he plaintiffs have alleged enough in their complaint to suggest there may have been an indirect employment relationship between the defendant [DTS] and the plaintiffs." (Order Re: Motion to Dismiss at 4.)

On November 1, 2006, Plaintiffs DTS and Verizon Business Purchasing LLC and Verizon Business Network Services, Inc. ("Verizon Defendants") jointly moved this Court to substitute MCI as a defendant and substitute in its stead as defendants the two aforestated Verizon entities. The Court granted the motion on November 13, 2006, thereby making the Verizon entities defendants in this Title VII action.

In response to Plaintiffs' complaint, Verizon Defendants filed, on November 21, 2006, a motion to dismiss the claims against them for failure to state a claim. On December 18, 2006, DTS joined in the motion to dismiss Verizon Defendants.

# II. ARGUMENT

Verizon Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) motions to dismiss for failure to state a claim are viewed
Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp. to Verizon Defs 12(b)(6) Motion

2

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 2 of 13

with disfavor and rarely granted. Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F. 2d 208, 213 (9th Cir. 1957). In determining a 12(b)(6) motion, a court must take as true all allegations of material fact and construe them in the light most favorable to the non-movant. McNamara-Blad v. Ass'n of Prof'l Flight Attendants, 275 F. 3d 1165, 1169 (9th Cir. 2002). The court must "draw all reasonable inferences in favor of the non-moving party." Salim v. Lee, 202 F. Supp. 2d 1122, 1125 (C.D. Cal. 2002). Additionally, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." Peloza v. Capistrano Unified Sch. Dist., 37 F. 3d 517, 521 (9th Cir. 1994). Dismissal of the complaint must not be granted unless it appears beyond doubt that the non-movant can prove no facts in support of its claims. Nat'l Audobon Soc'y, Inc. v. Davis, 307 F. 3d 835, 855 (9th Cir. 2002). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." McKeever v. Block, 932 F. 2d 795, 798 (9th Cir. 1991). On a 12(b)(6) motion, even if the face of the pleading suggests that the chance of recovery is remote, the district court must allow the plaintiff to develop his case at this stage of proceedings. United States v. City of Redwood City, 640 F. 2d 963, 966 (9th Cir. 1981).

Federal Rule of Civil Procedure 8(a)(2) sets forth the procedural requirements for pleading a claim in federal court. Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "mean[s] what is sa[ys]." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." Gilligan v. Jamco Dev. Corp., 108 F. 3d 246, 249 (9th Cir. 1997). A plaintiff is not required to "set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Instead, the complaint must only provide the defendant "fair notice of what the plaintiff's

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs.' 12(b)(6) Mot. Dismiss

3

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 3 of 13

claim is and the grounds upon which it rests." Id. Thus, in evaluating the sufficiency of a complaint, the court's role "is necessarily a limited one," confined to evaluating "not whether a plaintiff will ultimately prevail," but "whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Although "it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] … that is not the test." Id.

"A plaintiff need not make a prima facie case showing to survive a motion to dismiss provided he otherwise sets forth a short and plain statement of his claim showing that he is entitled to relief." Ortez v. Wash. County, 88 F. 3d 804, 807 (9th Cir. 1996). For example, in Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), the Supreme Court held that a complaint need not contain specific facts establishing a prima facie case of discrimination, but instead must comport with the "short and plain statement of the claim" requirement of Rule 8. The Court stated: "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 511-14. "Thus, complaints … must satisfy only the simple requirements of Rule 8(a)." Id. at 513.

Here, Verizon Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Title VII claims against them. Verizon Defendants contend that the complaint fails to state a claim against them since, they argue, they are not Title VII "employers" of Plaintiffs.

Federal statutes remedial in nature, such as Title VII, should be liberally construed and given a broad meaning. NLRB v. Hearst Publ'ns, 322 U.S. 111, 124, 64 S. Ct. 851, 88 L. Ed. 1170 (1944); United States ex rel. Kent v. Aiello, 836 F. Supp. 720, 725 (E.D. Cal. 1993). "In keeping with the remedial goals of the statute [Title VII], [the Ninth Circuit has] repeatedly held

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp. to Verizon Defs.' 12(b)(6) Mot. Dismiss

4

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 4 of 13

that the statute itself, the procedural framework, and the pleadings must be liberally construed in favor of those who are alleged victims of discrimination." Ramirez v. Nat'l Distillers & Chem. Corp., 586 F. 2d 1315, 1321 (9th Cir. 1978).

The term "employer" has been given an expansive definition when used in federal statutes. Goldberg v. Whitaker House Coop. Inc., 366 U.S. 28, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961); Aiello, 836 F. Supp. at 725 (E.D. Cal. 1993). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...." 42 U.S.C. § 2000e(b).

Whether an employment relationship exists depends upon the economic realities of the situation. Lutcher v. Musicians Union Local 47, 633 F. 2d 880, 883 (9th Cir. 1980); Loomis Cabinet Co. v. OSHRC, 20 F. 3d 938, 941 (9th Cir. 1944). The central inquiry in determining whether an employment relationship exists is who controls the work environment. Loomis, 20 F. 3d at 942. In analyzing the relationship between the alleged employer and the hired party, the economic realities test emphasizes substance over form. Id.

A Title VII plaintiff may have more than one more employer for purposes of Title VII liability. King v. Dalton, 895 F. Supp. 831, 837 (E.D. Va. 1995); see also Armarnare v. Merrill Lynch, Pierce, Fenner & Smith, 611 F. Supp. 344, 347-49 (S.D.N.Y. 1984) (temporary employee was employee of both temporary agency and brokerage firm to which she was temporarily assigned). Two or more employers may be considered "joint employers" under Title VII if both employers control the terms and conditions of employment of the employee. EEOC v. Pac. Mar. Ass'n, 351 F. 3d 1270, 1275 (9th Cir. 2003). The Ninth Circuit has applied an "economic reality" test to determine whether a joint employment relationship exists. Id.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs. 12(b)(6) Mot. Dismiss

5

Case 1:05-cv-00037    Document 106    Filed 01/04/2007    Page 5 of 13

In Matthews v. Am. Psychological Soc'y, No. Civ.A.04-261(CKK), 2005 WL 555413, (D.D.C. Mar. 7, 2005), the defendant moved under Rule 12(b)(6) to dismiss the Title VII claims against it, arguing that the complaint failed to state a claim in that it did not contain anything beyond bald assertions that the defendant was a Title VII employer. The complaint alleged that the defendant "is an employer as defined by Title VII …." The complaint also stated that the defendant was "covered by and subject to the provisions of Title VII …." The complaint further alleged that the defendant "is an employer within the meaning of Title VII." Although the court found the complaint to make only very bald assertions of Title VII's coverage, the district court found the plaintiff's pleading adequate to state a claim and survive the defendant's 12(b)(6) motion to dismiss. Id. at *5.

In this case, Verizon Defendants argue that dismissal of the claims against them is appropriate since they are not Title VII employers of Plaintiffs. However, the complaint clearly refers to Title VII's coverage to all claims therein, as the complaint is entitled "First Amended Complaint Under 42 U.S.C. § 2000E, et seq. [Title VII of Civil Rights Act of 1964, as amended] and Demand for Jury Trial." Furthermore, in the Preliminary Statement/Jurisdiction, the complaint states that "[t]his is a suit in equity pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.c. § 2000e, et seq., as amended." (F. Am. Compl. ¶ 1.) Paragraphs 2 and 3 of the complaint also make clear that this complaint is made under Title VII. In fact, the only claims alleged in the complaint are Title VII claims.

Verizon Defendants' relationship to Plaintiffs is laid out in the complaint in those portions which refer to "MCI," as Verizon Defendants, as stated in the joint motion for substitution, identified themselves as the parties against whom Plaintiffs appear to have intended to assert allegations in the First Amended Complaint and agree that, for purposes of this lawsuit, they shall be deemed to stand in the shoes of their predecessors in interest. (Joint Motion to Substitute ¶¶ 4,

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs.' 12(b)(6) Mot. Dismiss

6

Case 1:05-cv-00037    Document 106    Filed 01/04/2007    Page 6 of 13

7.) The complaint states that "Defendant MCI, upon information and belief, hired Defendant Calpac to perform the installation of underground cables in Guam[.]" (F. Am. Compl. ¶ 25.) The complaint further states that "Defendant MCI, upon information and belief, hired DTS to supervise or oversee the installation of underground cables in Guam performed by Defendant Calpac[.]" (Id. ¶ 26.) Plaintiffs are alleged in the complaint to have been hired by Calpac. (Id. ¶¶ 36, 48, 60, 72, 84, 96, 108, 120, 132, 152, 172, 193, 213.) The complaint also provides that, during the course of their employment, Plaintiffs came under the supervision of Defendants Clark (a DTS employee) and Healy (a Calpac employee). (Id. ¶ 28.)

Several paragraphs in the complaint allege conduct by Verizon Defendants which would subject them to Title VII liability. Paragraph 29 discusses how, during the course of Defendants Clark's and Healy's supervision over Plaintiffs, Defendants, including MCI (now Verizon Defendants) "disparately treated Plaintiffs and subjected them to differential terms and conditions of employment because of their Pacific Islander/Chamorro race, Pacific Islander or Guamanian national origin, and dark or brown skin color[.]" Paragraph 30 states: "The differential terms and conditions of employment by Defendants … MCI … included harassment and disparate treatment not experienced by non-Pacific Islanders, non-Chamorros, non-Guamanians, or individuals without dark or brown skin color[.]" Paragraph 32 provides: "Defendants each subjected Plaintiffs to discrimination in the terms of their employment, and retaliation for their complaints regarding such discrimination[.]" Paragraph 33 alleges: "Defendants each condoned, accepted, or otherwise authorized … the actions of race, national origin, and color discrimination, disparate treatment, and other unlawful employment practices to which Plaintiffs were subjected in their employment[.]" Paragraph 34 states: "The actions of each Defendant affected the rights of Plaintiffs by depriving Plaintiffs of equal employment opportunities because of discrimination based on race, national origin, color, and retaliation[.]" The complaint also provides that

Henry G. Van Meter, et al., v. Calpac, et al.  
Civil Case No. 05-00037  
Opp. to Verizon Defs.' 12(b)(6) Mot. Dismiss

7

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 7 of 13

Defendant MCI approved, condoned, or authorized the actions of Defendants Clark, Healy, Calpac, James, and Ward. (See F. Am. Compl. ¶¶ 40, 41, 52, 53, 64, 65, 76, 77, 88, 89, 100, 101, 112, 113, 124, 125, 142-145, 164, 165, 185, 186, 205, 206, 224, 225.) The complaint further provides that the Defendants, by their harassment and discriminatory actions, created a hostile work environment for Plaintiffs. (See id. ¶¶ 44, 56, 68, 80, 92, 104, 116, 128, 148, 168, 189, 209, 228.)

Taking as true the allegations in the above paragraphs of the First Amended Complaint and construing these allegations in a light most favorable to Plaintiffs, it can be reasonably inferred that a Title VII employment relationship existed between Verizon Defendants and Plaintiffs, which subjects Verizon Defendants to Title VII liability. As seen above, numerous paragraphs in the complaint allege that Verizon Defendants exercised control over the terms and conditions of Plaintiffs' employment. Under Loomis and Pac. Mar. Ass'n, such control over the terms and conditions of Plaintiffs' employment may lead to the consideration of Verizon Defendants as an employer of Plaintiffs. Therefore, the allegations in the complaint show that a direct employment relationship existed between Verizon Defendants and Plaintiffs and, thus, Verizon Defendants' 12(b)(6) motion must be denied.

Even if it cannot be reasonably inferred from the First Amended Complaint that Verizon Defendants were direct employers of Plaintiffs, the Ninth Circuit has recognized that a defendant need not be the plaintiff's direct employer and that indirect employment may be a basis for liability under Title VII. Velez v. Roche, 335 F. Supp. 2d 1022, 1027 (N. D. Cal. 2004) (citing Gomez v. Alexian Bros. Hosp. of San Jose, 698 F. 2d 1019, 1021 (9th Cir. 1983) (stating that Title VII covers those situations in which a defendant subject to the statute "interferes with an individual's employment opportunities with another employer"); Lutcher, 633 F. 2d at 883

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs.' 12(b)(6) Mot. Dismiss

8

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 8 of 13

(stating "there must be some connection with an employment relationship for Title VII protections to apply. The connection with employment need not necessarily be direct.").

The Ninth Circuit has also recognized that a Title VII plaintiff could assert a claim for hostile work environment against an indirect employer when the indirect employer did cause the hostile work environment or when it had the power to stop the hostile work environment so that its failure to do so constituted interference with the terms, conditions, or privileges of the plaintiff's direct employment. Velez, 335 F. Supp. 2d at 1028 (citing Anderson v. Pac. Mar. Ass'n, 336 F. 3d 924, 932 (9th Cir. 2003)). In Lutcher, the Ninth Circuit stated that an indirect employer may be liable under Title VII, for example, where a defendant subject to Title VII interferes with an individual's employment opportunities with another employer. 633 F. 2d at 883 n.3.

Several other courts have also found Title VII liability in an indirect employer. For example, in Garrett v. Info. Sys. & Networks Corp., No. 5:97-CV-436-BRI, 1997 U.S. Dist. LEXIS 20845 (E.D.N.C. Nov. 21, 1997), the plaintiff, who worked for a company called I-Net, alleged that she was sexually harassed by an employee of a company called ISN while she was a contract worker with the U.S. Postal Service. The plaintiff claimed that I-Net was liable as her employer, that the USPS was liable because she worked on its premises and it directed her duties, and that ISN was liable because it knew that one of its employees was harassing her. In response to ISN's argument that it could not be held liable, the court stated that it could be: "To allow a defendant to evade liability for allegedly allowing an employee to create a hostile working environment simply because the victim of the alleged harassment was not its employee would undercut the remedial purpose of Title VII." Id. at *6.

In King v. Chrysler Corp., 812 F. Supp. 151 (E.D. Mo. 1993), the plaintiff worked for a company called Canteen, which operated a cafeteria for the employees of Chrysler on Chrysler's

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs.' 12(b)(6) Mot. Dismiss

9

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 9 of 13

premises. The plaintiff claimed that she was sexually harassed by a Chrysler's employee. Chrysler contended that it was not liable since it lacked an employment relationship with the plaintiff. The court ruled against Chrysler, stating that, if it "were to accept Chrysler's position that it is not a proper defendant, Chrysler could allow a hostile work environment to exist because of the peculiar circumstances of its relationship with Canteen, although it could not do so if [the plaintiff] were in its own service." Id. at 153. The court added that this was a case in which a Chrysler employee actually participated in creating the hostile work environment. Id.

In EEOC v. Foster Wheeler Constructors, Inc., No. 98 C 1601, 1999 WL 515524, (N.D. Ill. July 14, 1999), the plaintiffs were the employees of subcontractors who were allegedly subject to a hostile environment at a construction site run by defendant. The court found that the subcontractors' employees who were employed by Title VII employers may sue the defendant [a Title VII employer) for interfering with the conditions of their employment. Id. at *10.

In Duncan v. Junior Coll. Dist. of St. Louis, No. 4:98CV01220 (CEJ), 1999 U.S. Dist. LEXIS 22451 (E.D. Mo. Nov. 15, 1999), the plaintiff was employed by a college but was assigned to perform her job duties at a General Motors facility, where she claimed she was subject to a hostile work environment. The court found that, although General Motors did not pay her salary or give her any other benefits, it could be held liable: "Plaintiff, performed her job only at the GMC plant, GMC employees gave her work instructions, and a GMC employee with apparent, if not actual, authority over plaintiff was responsible for the allegedly hostile work environment. That hostile environment caused plaintiff to terminate her employment with the College." Id. at *9.

In Diana v. Schlosser, the plaintiff worked for a company that was in the business of providing on-air traffic reports for radio stations, one of which was the defendant. The plaintiff, who was assigned to do a report for the defendant, claimed that she was subjected to a hostile

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Def.s' 12(b)(6) Mot. to Dismiss

10

Case 1:05-cv-00037    Document 106    Filed 01/04/2007    Page 10 of 13

environment by one of the defendant's employees. Although the court found that the defendant was not the plaintiff's employer, the court found that the plaintiff could pursue Title VII relief against the defendant since the defendant had significant control over the plaintiff's ability to maintain substantial employment opportunity. The court stated:

> This type of arrangement is not atypical of the present-day workplace where employees of different employers often work side-by-side and where employment opportunities are controlled by those other than the direct employer. It would undermine the protections of Title VII if an employer could permit discrimination, and not be exposed to Title VII liability from certain employees whose employment opportunities it controlled, simply because those employees were not its own.

Id. at 352.

In this case, this has just recently reviewed a similar motion to dismiss brought by DTS. In that motion, DTS argued that it was not a Title VII employer. In analyzing the matter, this Court looked to the work arrangement alleged in the complaint and found that the complaint alleged enough to suggest there may have been an indirect employment relationship between DTS and Plaintiffs. Importantly, this Court found to be alleged in the complaint that "Defendants exercised control over the terms and conditions of Plaintiffs' employment." (Order Re: Motion to Dismiss at 3.) This Court further noted paragraph 29 of the complaint, which stated in part that "Defendants disparately treated Plaintiffs and subjected them to differential terms and conditions of employment because of their Pacific Islander/Chamorro race, Pacific Islander or Guamanian national origin, and dark or brown skin color." DTS' motion was then denied.

Regarding Verizon Defendants, referred to in the complaint as MCI, the complaint alleges, among other things, that: Plaintiffs worked for Calpac, which was hired by MCI to install underground cables; MCI hired DTS to supervise Calpac's work; Clark, an employee of DTS, and Healy, an employee of Calpac, supervised Plaintiffs during the course of their employment; during the course of Clark's and Healy's supervision over Plaintiffs, Defendants, including MCI,

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opposition Verizon-DTS 12(b)(6) Motion Dismiss

11

Case 1:05-cv-00037    Document 106    Filed 01/04/2007    Page 11 of 13

disparately treated Plaintiffs and subjected them to differential terms and conditions of employment because of their race, national origin, and color; Defendants, including MCI, condoned, accepted, or authorized the actions of race, national origin, and color discrimination, disparate treatment, and other unlawful employment practices to which Plaintiffs were subjected in their employment; Defendants, including MCI, by their harassment and discriminatory actions, created a hostile work environment for Plaintiffs; and Defendants exercised control over the terms and conditions of Plaintiffs' employment. This work arrangement wherein MCI had control over the terms and conditions of Plaintiffs' employment, as alleged in the complaint, is similar to those in <u>Garrett</u>, <u>King</u>, <u>Foster</u>, <u>Duncan</u>, and <u>Diana</u>, so that, at the very least, an indirect Title VII employment relationship between Verizon Defendants and Plaintiffs can be reasonably inferred from the First Amended Complaint. Therefore, the strongly disfavored and rarely granted 12(b)(6) relief sought by Verizon Defendants must be denied and Plaintiffs should be entitled to a determination of their claims on the merits.[1]

Interestingly, DTS joined in Verizon Defendants' motion to dismiss. However, this Court has already found that the complaint alleges enough to infer the existence of an employment relationship between DTS and Plaintiffs. In joining in Verizon Defendants' motion, DTS assert no new arguments or authority for this Court to essentially reconsider its decision denying DTS' motion to dismiss. Therefore, DTS' mere joinder is an insufficient request to dismiss the claims against it.

---

[1] Denial of Verizon Defendants' 12(b)(6) motion is also appropriate since this case is at a very early stage and no discovery has been made between Plaintiffs and Verizon Defendants. In <u>Fitzgibbons v. Putnam Dental Assocs., P.C.</u>, 368 F. Supp. 2d 339 (S.D.N.Y. 2005), the defendant raised a 12(b)(6) motion to dismiss on several grounds, one of which was that the defendant employed less than 15 employees during the period relevant to the action, and therefore was not covered by Title VII. However, the court declined to consider the defendant's 12(b)(6) motion on the basis that the defendant was not a covered employer subject to Title VII and, instead, converted the

(Footnote continues on following page.)

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp. to Verizon Defs. 12(b)(6) Motion to Dismiss

12

Case 1:05-cv-00037   Document 106   Filed 01/04/2007   Page 12 of 13

## III. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Verizon Defendants' 12(b)(6) Motion to Dismiss. However, in the event that this Honorable Court grants Verizon Defendants' 12(b)(6) motion, Plaintiffs respectfully request leave to amend the complaint.

**RESPECTFULLY SUBMITTED** this 4th day of January, 2007, in Hagåtña, Guam.

**LUJAN AGUIGUI & PEREZ** LLP

By: _____
**DELIA LUJAN**
*Attorneys for Plaintiffs*

---

(Footnote continued from previous page)

motion to dismiss into a motion for summary judgment to be resolved by the court after the parties had been given the opportunity to submit additional evidence and supplemental briefs. Id. at 340.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Opp'n to Verizon Defs. 12(b)(6) Mot. Dismiss

13

Case 1:05-cv-00037  Document 106  Filed 01/04/2007  Page 13 of 13