ORIGINAL

**LUJAN AGUIGUI & PEREZ LLP**
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiffs*

**FILED**
DISTRICT COURT OF GUAM
APR 20 2007 *nba*
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>-vs-<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br><br>**PLAINTIFFS' SUPPLEMENTAL REPLY TO DEFENDANTS' SUPPLEMENTAL OPPOSITIONS TO MOTION FOR LEAVE TO AMEND FIRST AMENDED COMPLAINT** |

Before this Honorable Court come Plaintiffs Henry G. Van Meter, Jerry Apodaca, Jr., Joseph J. Hernandez, Joseph T. Mendiola, Larry L. Charfauros, Anthony C. Arriola, Robert B. Cruz, Roland F. Mendiola, James S. Yee, Teddy B. Cruz, Jesse B. Cruz, John L.G. Nauta, and John P. Babauta, respectfully submitting their supplemental reply to defendants Verizon's and Calpac's supplemental oppositions to Plaintiffs' motion for leave to amend the First Amended Complaint ("FAC").

Federal Rule of Civil Procedure 15(a) provides in relevant part that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-00037
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

Case 1:05-cv-00037    Document 235    Filed 04/20/2007    Page 1 of 13

1

shall be freely given when justice so requires." Rule 15's policy of favoring amendments to pleadings, including complaints, should be applied with "extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F. 2d 183, 186 (9th Cir. 1987). The liberality of granting leave to amend is subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility. Id. "[A]mendments should be granted with extreme liberality in order to facilitate decision on the merits, rather than on the pleadings or technicalities. Accordingly, the burden of persuading the court that leave should not be granted rests with the nonmoving party." Nissan Motor Co. v. Nissan Computer Corp., 204 F.R.D. 460, 463 (C.D. Cal. 2001) (inner quotations & citations omitted).

## REPLY TO VERIZON'S SUPPLEMENTAL OPPOSITION

Verizon opposes leave to amend the complaint for three reasons: (1) the proposed Second Amended Complaint ("SAC") alleges facts inconsistent with "the dismissed FAC"; (2) the SAC does not allege facts sufficient to extend Title VII liability to Verizon and so amendment is futile; and (3) Verizon is substantially prejudiced by a late amendment. As discussed below, all of Verizon's contentions lack merit.

### A. Plaintiffs' proposed SAC raises allegations consistent with those asserted in the FAC.

Verizon argues that leave to amend should not be granted because the proposed SAC alleges facts that are "diametrically opposed" to the facts asserted in the FAC. (Verizon's Supp. Opp'n at 4.) " 'Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleadings.' " Bradley v. Chiron Corp., No. C 94-04342 CW, 1996 WL 441022, at *3 (N.D. Cal. July 15, 1996) (quoting Reddy v. Litton Indus., Inc., 912 F. 2d 291, 296-97 (9th Cir. 1990), cert. denied, 502 U.S. 921 (1991)). Courts are not limited to the face of the pleadings before it in determining whether those pleadings are a

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                    2
Civil Case No. 05-cv-00037
Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 2 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

sham. Id. Also, if it is possible that an amendment would merely remove an apparent contradiction that exists in the current complaint, leave should be given to amend to set out clearly the facts. New v. Armour Pharmaceutical Co., 67 F. 3d 716, 722 (9th Cir. 1995).

In its supplemental opposition, Verizon claims that the allegations in the SAC regarding the hiring and supervision of Plaintiffs are inconsistent with allegations contained in the FAC and SAC. Verizon specifically takes issue with paragraphs 29 and 30 of the SAC, which allege that Verizon "hired and employed" Calpac and Calpac's employees, including Plaintiffs, and DTS and DTS' employees, including Defendant Clark, respectively. According to Verizon, these allegations contradict the allegations in the FAC and SAC that each Plaintiff was "hired by Calpac" and that Clark was "a manager or supervisor employed by DTS." (Verizon Supp. Opp'n at 4-5.)

However, stating that Verizon hired and employed Plaintiffs and Clark does not contradict assertions that Plaintiffs were hired or employed by Calpac or that Clark was employed by DTS. A Title VII plaintiff may have more than one more employer for purposes of Title VII liability. King v. Dalton, 895 F. Supp. 831, 837 (E.D. Va. 1995); see also Armarnare v. Merrill Lynch, Pierce, Fenner & Smith, 611 F. Supp. 344, 347-49 (S.D.N.Y. 1984) (temporary employee was employee of both temporary agency and brokerage firm to which she was temporarily assigned). Two or more employers may be considered "joint employers" under Title VII if both employers control the terms and conditions of employment of the employee. EEOC v. Pac. Mar. Ass'n, 351 F. 3d 1270, 1275 (9th Cir. 2003). The Ninth Circuit has applied an "economic reality" test to determine whether a joint employment relationship exists. Id. In analyzing the relationship between the alleged employer and the hired party, the economic realities test emphasizes substance over form. Loomis Cabinet Co. v. OSHRC, 20 F. 3d 938, 942 (9th Cir. 1944).

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-cv-00037
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

Case 1:05-cv-00037 Document 235 Filed 04/20/2007 Page 3 of 13

Moreover, the Ninth Circuit has recognized that a defendant need not be the plaintiff's direct employer and that indirect employment may be a basis for liability under Title VII. Velez v. Roche, 335 F. Supp. 2d 1022, 1027 (N. D. Cal. 2004) (citing Gomez v. Alexian Bros. Hosp. of San Jose, 698 F. 2d 1019, 1021 (9th Cir. 1983) (stating that Title VII covers those situations in which a defendant subject to the statute "interferes with an individual's employment opportunities with another employer"); Lutcher, 633 F. 2d at 883 (stating "there must be some connection with an employment relationship for Title VII protections to apply. The connection with employment need not necessarily be direct.").

Therefore, allegations that Verizon hired and employed Plaintiffs and Clark are not inconsistent with allegations that Plaintiffs were hired by Calpac or that Clark was employed by DTS.

Verizon also argues that the allegations contained in paragraph 42 of the SAC, that "each Defendant" supervised Plaintiffs, contradicts the allegations in the FAC that Clark supervised Plaintiffs. However, just as Verizon has failed to produce any authority for its proposition that an individual can only have one employer, Verizon has failed to explain how an individual can have more than one supervisor. Thus, there is no inconsistency here.

**B. The proposed SAC alleges facts sufficient to extend Title VII liability to Verizon, and therefore amendment of the complaint is not futile.**

Verizon argues that the allegations in the SAC do not support the existence of an employment relationship between Verizon and Plaintiffs. Whether an employment relationship exists depends upon the economic realities of the situation. Lutcher v. Musicians Union Local 47, 633 F. 2d 880, 883 (9th Cir. 1980); Loomis, 20 F. 3d at 941. The central inquiry in determining whether an employment relationship exists is who controls the work environment. Loomis, 20 F. 3d at 942. In analyzing the relationship between the alleged employer and the hired party, the economic realities test emphasizes substance over form. Id.

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                          4
Civil Case No. 05-00037
Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 4 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

The Ninth Circuit has recognized that a defendant need not be the plaintiff's direct employer and that indirect employment may be a basis for liability under Title VII. Velez v. Roche, 335 F. Supp. 2d 1022, 1027 (N. D. Cal. 2004) (citing Gomez v. Alexian Bros. Hosp. of San Jose, 698 F. 2d 1019, 1021 (9th Cir. 1983) (stating that Title VII covers those situations in which a defendant subject to the statute "interferes with an individual's employment opportunities with another employer"); Lutcher, 633 F. 2d at 883 (stating "there must be some connection with an employment relationship for Title VII protections to apply. The connection with employment need not necessarily be direct.").

The Ninth Circuit has also recognized that a Title VII plaintiff could assert a claim for hostile work environment against an indirect employer when the indirect employer did cause the hostile work environment or when it had the power to stop the hostile work environment so that its failure to do so constituted interference with the terms, conditions, or privileges of the plaintiff's direct employment. Velez, 335 F. Supp. 2d at 1028 (citing Anderson v. Pac. Mar. Ass'n, 336 F. 3d 924, 932 (9th Cir. 2003)). In Lutcher, the Ninth Circuit stated that an indirect employer may be liable under Title VII, for example, where a defendant subject to Title VII interferes with an individual's employment opportunities with another employer. 633 F. 2d at 883 n.3.

Several other courts have also found Title VII liability in an indirect employer. For example, in Garrett v. Info. Sys. & Networks Corp., No. 5:97-CV-436-BRI, 1997 U.S. Dist. LEXIS 20845 (E.D.N.C. Nov. 21, 1997), the plaintiff, who worked for a company called I-Net, alleged that she was sexually harassed by an employee of a company called ISN while she was a contract worker with the U.S. Postal Service. The plaintiff claimed that I-Net was liable as her employer, that the USPS was liable because she worked on its premises and it directed her duties, and that ISN was liable because it knew that one of its employees was harassing her. In response

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                                5

Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 5 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

to ISN's argument that it could not be held liable, the court stated that it could be: "To allow a defendant to evade liability for allegedly allowing an employee to create a hostile working environment simply because the victim of the alleged harassment was not its employee would undercut the remedial purpose of Title VII." Id. at *6.

In King v. Chrysler Corp., 812 F. Supp. 151 (E.D. Mo. 1993), the plaintiff worked for a company called Canteen, which operated a cafeteria for the employees of Chrysler on Chrysler's premises. The plaintiff claimed that she was sexually harassed by a Chrysler's employee. Chrysler contended that it was not liable since it lacked an employment relationship with the plaintiff. The court ruled against Chrysler, stating that, if it "were to accept Chrysler's position that it is not a proper defendant, Chrysler could allow a hostile work environment to exist because of the peculiar circumstances of its relationship with Canteen, although it could not do so if [the plaintiff] were in its own service." Id. at 153. The court added that this was a case in which a Chrysler employee actually participated in creating the hostile work environment. Id.

In EEOC v. Foster Wheeler Constructors, Inc., No. 98 C 1601, 1999 WL 515524, (N.D. Ill. July 14, 1999), the plaintiffs were the employees of subcontractors who were allegedly subject to a hostile environment at a construction site run by defendant. The court found that the subcontractors' employees who were employed by Title VII employers may sue the defendant [a Title VII employer) for interfering with the conditions of their employment. Id. at *10.

In Duncan v. Junior Coll. Dist. of St. Louis, No. 4:98CV01220 (CEJ), 1999 U.S. Dist. LEXIS 22451 (E.D. Mo. Nov. 15, 1999), the plaintiff was employed by a college but was assigned to perform her job duties at a General Motors facility, where she claimed she was subject to a hostile work environment. The court found that, although General Motors did not pay her salary or give her any other benefits, it could be held liable: "Plaintiff, performed her job only at the GMC plant, GMC employees gave her work instructions, and a GMC employee with

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-00037
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

6

Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 6 of 13

apparent, if not actual, authority over plaintiff was responsible for the allegedly hostile work environment. That hostile environment caused plaintiff to terminate her employment with the College." Id. at *9.

In Diana v. Schlosser, 20 F. Supp. 2d 348 (D. Conn. 1998), the plaintiff worked for a company that was in the business of providing on-air traffic reports for radio stations, one of which was the defendant. The plaintiff, who was assigned to do a report for the defendant, claimed that she was subjected to a hostile environment by one of the defendant's employees. Although the court found that the defendant was not the plaintiff's employer, the court found that the plaintiff could pursue Title VII relief against the defendant since the defendant had significant control over the plaintiff's ability to maintain substantial employment opportunity. The court stated:

> This type of arrangement is not atypical of the present-day workplace where employees of different employers often work side-by-side and where employment opportunities are controlled by those other than the direct employer. It would undermine the protections of Title VII if an employer could permit discrimination, and not be exposed to Title VII liability from certain employees whose employment opportunities it controlled, simply because those employees were not its own.

Id. at 352.

Here, the SAC provides numerous factual allegations which demonstrate the considerable control Verizon had over Plaintiffs and the work environment. Paragraph 31 alleges that, "[a]t all times relevant, each Defendant had control over the terms and conditions of Plaintiffs' employment." Paragraph 32 alleges that, "[a]t all times relevant, Verizon Defendants had the power to, and did, evaluate Defendant Calpac's superintendents and employees, including Plaintiffs, and had the further power to object to the use of such superintendents and employees on the job to install underground cables if and when Verizon Defendants were dissatisfied with such superintendents and employees." Paragraph 33 alleges that, "[a]t all times relevant, Verizon

Henry G. Van Meter, et al., v. CAL PAC, et al.
Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 7 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

Defendants had the power to have removed from the work sites any employee, agent, servant, or subcontractor of Calpac or DTS who Verizon Defendants believed were not disciplined and orderly, were not skilled in the work assigned to them, or whose conduct endangered goodwill toward Verizon Defendants of property owners and residents of communities near the work sites. Paragraph 34 alleges that, "[a]t all times relevant, Verizon Defendants had the power to, and did, thoroughly inspect the work progress of Defendant DTS and its employees, Defendant Calpac and its employees, and Plaintiffs." Paragraph 35 alleges that, "[a]t all ltimes relevant, Verizon Defendants had the power to require that Defendant Calpac increase its labor force, the number of shifts, and/or overtime operations of its employees, including Plaintiffs." Paragraph 36 alleges that, "[a]t all times relevant, Plaintiffs worked at sites as designated and directed by Verizon Defendants." Paragraph 37 alleges that "Verizon Defendants furnished many of the materials, including the fiber optic cable, used by Plaintiffs to complete the installation of underground cables." Paragraph 38 alleges that, "[a]t all times relevant, Verizon Defendants had the power to unilaterally add units to and/or make changes or modify the work performed by Defendant Calpac and its employees, including Plaintiffs." Paragraph 39 alleges that, "[a]t all times relevant, Verizon Defendants had the power to request Defendant Calpac to make material changes to the work performed by Calpac and its employees, including Plaintiffs, pursuant to written Change Orders executed by the Company Representative of Verizon Defendants, and payment for such authorized Change Orders may have been determined and agreed upon in part by Defendant Calpac and Verizon Defendants by the charges for actual direct labor hours worked by Defendant Calpac and its employees, including Plaintiffs, based on prices set forth in the Labor Rate Schedule in the Statement of Work agreed by Verizon Defendants and Defendant Calpac." Paragraph 49 alleges that, "[a]t all times relevant, Verizon Defendants were, or should have been aware, of the discriminatory actions, hostile work environment, retaliation, and other unlawful

employment practices to which Plaintiffs were subjected in their employment, as Verizon Defendants thoroughly inspected the work progress of Defendant DTS & its employees, including Defendant Clark, and the work progress of Defendant Calpac and its employees, including Defendants Healy, Ward, James, and Plaintiffs, and Verizon Defendants evaluated whether Defendant DTS and its employees and Defendant Calpac and its employees were strictly disciplined, orderly, skilled in the work assigned to them, and behaved in a way that endangered goodwill toward Verizon Defendants and residents of communities near the work sites." Paragraph 50 alleges that, "[a]t all times relevant, Verizon Defendants had the power to stop and prevent the discriminatory actions, hostile work environment, retaliation, and other unlawful employment practices to which Plaintiffs were subjected in their employment by Defendants, such as by removing from the work sites Defendants Clark, Healy, Ward, and James and other agents, representatives, or employees of Verizon Defendants, but Verizon Defendants did not stop and prevent such discriminatory actions, hostile work environment, retaliation, and other unlawful employment practices, and therefore allowed said discriminatory actions, hostile work environment, retaliation, and other unlawful practices to continue by Defendants against Plaintiffs."

Clearly, from the control Verizon had over Plaintiffs and the work environment, it can be reasonably inferred from the factual allegations contained in the SAC that there was a Title VII employment relationship between Plaintiffs and Verizon. As the test for whether an employment relationship exists emphasizes substance over form, Verizon's bald argument that the control it exercised over Plaintiffs and the work environment does not create an employment relationship is a failed one. In its Supplemental Reply, Verizon does not argue that the above-cited factual allegations contained in the SAC are incorrect. Verizon does not disown the control over Plaintiffs and the work environment alleged in the SAC. Therefore, taking the factual allegations

Henry G. Van Meter, et al., v. CAL PAC, et al.
Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 9 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

as true, there is enough alleged in the SAC from which it can be reasonably inferred that Verizon was a Title VII employer of Plaintiffs.

Furthermore, Verizon contends that it is not subject to Title VII liability since it did not perform any discriminatory act against Plaintiffs. However, as stated earlier, the Ninth Circuit has recognized that a Title VII plaintiff could assert a claim for hostile work environment against an indirect employer when the indirect employer did cause the hostile work environment or when it had the power to stop the hostile work environment so that its failure to do so constituted interference with the terms, conditions, or privileges of the plaintiff's direct employment. Velez, 335 F. Supp. 2d at 1028 (citing Anderson v. Pac. Mar. Ass'n, 336 F. 3d 924, 932 (9th Cir. 2003)). In Lutcher, the Ninth Circuit stated that an indirect employer may be liable under Title VII, for example, where a defendant subject to Title VII interferes with an individual's employment opportunities with another employer. 633 F. 2d at 883 n.3.

In Foster Wheeler, 1999 WL 515524, the plaintiffs were the employees of subcontractors who were allegedly subject to a hostile environment at a construction site run by defendant. The court found that the subcontractors' employees who were employed by Title VII employers may sue the defendant [a Title VII employer) for interfering with the conditions of their employment. Id. at *10.

A similar situation exists here. The SAC alleges, among other things, that Verizon Defendants had the power to have removed from the work sites any employee, agent, servant, or subcontractor of Calpac or DTS who Verizon believed were not disciplined and orderly, were not skilled in the work, or whose conduct endangered goodwill toward Verizon of property owners and residents of communities near the work sites. (SAC ¶ 33.) Verizon had the power to, and did evaluate Defendant Calpac's superintendents and employees, including Plaintiffs, and had the further power to object to the use of such superintendents and employees on the job to install

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                     10
Case 4:05-cv-00037   Document 235   Filed 04/20/2007   Page 10 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

underground cables if and when Verizon was dissatisfied with such superintendents and employees. (Id. ¶ 32.) From these factual allegations in the SAC, which must be taken as true, and which are not disputed by Verizon, it can be reasonably inferred that Verizon had the power to stop the discriminatory treatment and hostile work environment suffered by Plaintiffs. In failing to stop the discriminatory treatment and hostile work environment, Verizon maintained a hostile work environment for Plaintiffs and must be held to account.

**C. Granting leave to amend the FAC will not substantially prejudice Verizon.**

Lastly, Verizon argues that it will be prejudiced if Plaintiffs are granted leave to amend the FAC.[1] Verizon specifically complains that it is substantially prejudiced by the fact that it is not able to participate in past and continuing discovery and that Verizon will be at a significant disadvantage given the proximity of the discovery cutoff, dispositive motion deadline, and trial setting. This same issue was decided in one of the cases cited by Verizon.

In Dooley v. United Technologies Corp., 152 F.R.D. 419, 425 (D.D.C. 1993), a defendant, who was previously dismissed as a party, opposed the plaintiff's Rule 15 motion to amend the complaint on the basis that the plaintiff's delay in requesting the amendment caused it undue prejudice. The court found that, "although [the defendant] has not kept pace with the progress of discovery, this is not without remedy." The plaintiff therein had represented that, if the defendant asks, it can get a set of the plaintiff's recent productions. The court also permitted the defendant, to the extent reasonably necessary and upon request to the court, to depose any of the witnesses whose depositions had taken place since the order dismissing the defendant from the action. Additionally, the court found that there was enough time between the court's issuance of the

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-00037
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

11

Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 11 of 13

present order on May 11, 1993, and the scheduled trial date in late October 1993, for the defendant to prepare for trial. Id. at 426.

Like the defendant in Dooley, Verizon will not be substantially prejudiced by allowance of the amendment. Since the discovery cutoff is May 24, 2007, more than one month from now, Verizon will have the opportunity to conduct depositions within the discovery period. As to depositions and other discovery that has occurred, this Court has the power to enlarge the time for Verizon to depose those witnesses who have already been deposed and conduct other discovery. Also, Plaintiffs are offering to provide Verizon with all discovery materials they have produced to other opposing counsel. Additionally, similar to the defendant in Dooley, who was brought back into the case through amendment approximately 5 months prior to trial, Verizon will have enough time to prepare for trial, as trial is over 6 months away, on October 29, 2007. Therefore, any delay has not substantially prejudiced Verizon.

## REPLY TO CALPAC'S SUPPLEMENTAL OPPOSITION

Calpac opposes Plaintiffs' motion for leave to amend for the reason that Plaintiff Larry Charfauros' claim of assault does not form a part of the Title VII claim since the assault took place more than one year and a half after the Title VII claims arose. Plaintiff Charfauros' claims clearly are a part of the same case or controversy as his Title VII action, as he claims he was assaulted by Mr. Healy because he had instituted the present Title VII suit. That the assault occurred some time after the Title VII claims arose does not erase the fact that Plaintiff Charfauros was again retaliated against for complaining about the discrimination he experienced.

_____

(Footnote continued from previous page)

[1] In support of this argument, Verizon cites to Kowalow v. Correctional Servs. Corp., No. 01-35285, 2002 WL 530542, (9th Cir. Apr. 8, 2002), which is an unpublished opinion. However, Ninth Circuit Court Rule 36-3

(Footnote continues on following page.)

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                          12
Case 1:05-cv-00037   Document 235   Filed 04/20/2007   Page 12 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.

1    Calpac also argues that the Court should decline to exercise supplemental jurisdiction

2    since the Court has dismissed all claims over which it has original jurisdiction. However, this is

3    not the case, as the Court still has original jurisdiction over Plaintiffs' claims against at least

4    Calpac and DTS.

5        Based on the foregoing, Plaintiffs request leave of Court to amend the First Amended

6    Complaint in the form of the proposed Second Amended Complaint.

7

8        **RESPECTFULLY SUBMITTED** this 20th day of April, 2007.

9                              **LUJAN AGUIGUI & PEREZ LLP**

10

11                      By:    _____

12                              **DELIA LUJAN**
                              *Attorneys for Plaintiffs*

13

---

25    _____

26    (Footnote continued from previous page)

27    prohibits citation of this unpublished disposition except under limited circumstances which do not apply here.

28

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                    13
Case 1:05-cv-00037    Document 235    Filed 04/20/2007    Page 13 of 13
Pls.' Supp. Reply to Defs.' Supp. Opp'ns to Mot. Leave Amend First Amended Compl.