LUJAN AGUIGUI & PEREZ LLP
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiffs*

FILED
DISTRICT COURT OF GUAM

AUG - 6 2007

JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT OF GUAM
## FOR THE TERRITORY OF GUAM

HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,

Plaintiffs,

-vs-

CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,

Defendants.

CIVIL CASE NO. 05-00037

**PLAINTIFF ANTHONY C. ARRIOLA'S OPPOSITION TO DEFENDANT CALPAC'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Henry Van Meter ("Plaintiff"), respectfully submitting his opposition to Defendant Calpac's Motion for Summary Judgment, filed herein July 23, 2007.

## I. INTRODUCTION

Plaintiffs instituted this Title VII action on December 12, 2005, alleging that they were subjected to employment discrimination by defendants Calpac, Dynamic Technical Services

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

1

Case 1:05-cv-00037   Document 361   Filed 08/06/2007   Page 1 of 17

("DTS"), MCI, John Healy ("Healy"), Dennis Clark ("Clark"), William Ward ("Ward"), Jai James, and Does 1 through 10 (collectively "Defendants"). The First Amended Complaint ("the complaint") was filed February 24, 2006.

Prior to the filing of this action, Plaintiff filed charges with the Equal Employment Opportunity Commission against Calpac, DTS, and MCI. (Ex. 1.) These charges were pending with the EEOC until approximately September 2005, when the EEOC issued right-to-sue letters.

On July 23, 2007, Calpac filed herein the instant motion for summary judgment.

## II. ARGUMENT

Calpac moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that (1) Calpac should not be subject to Title VII liability for the actions of third party Dennis P. Clark, (2) a prima facie case of hostile environment has not been established, and (3) Calpac did not retaliate against Plaintiff.

Summary judgment is appropriate if the evidence, construed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tzung v. State Farm Fire & Cas. Co., 873 F. 2d 1338, 1339-40 (9th Cir. 1989). The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the moving party believes indicates the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); Rasmusson v. Copeland Lumber Yards, Inc., 988 F. Supp. 1294, 1296 (D. Nev. 1997). If the moving party has met its initial responsibility, the burden then shifts to the opposing party to demonstrate that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

2

Case 1:05-cv-00037   Document 361   Filed 08/06/2007   Page 2 of 17

L. Ed. 2d 538 (1986). To establish the existence of a factual dispute, the nonmoving party need not establish a material issue conclusively; only that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F. 2d 626, 630 (9th Cir. 1987).

Calpac should be denied summary judgment for the following reasons:

### A. Calpac is liable for the harassment of Plaintiff by Dennis P. Clark.

"[E]mployers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.'" Little v. Windermere Relocation, Inc., 301 F. 3d 958, 968 (9th Cir. 2002) (quoting Folkerson v. Circus Circus Enters., Inc., 107 F. 3d 754, 756 (9th Cir. 1997)). Whether or not an employer's remedy is reasonable depends on its ability to stop harassment by the person who engaged in harassment. Id. (citing Ellison v. Brady, 942 F. 2d 872, 882 (9th Cir. 1991)). In determining the remedy's adequacy, courts may take into consideration the remedy's ability to persuade potential harassers to refrain from unlawful conduct. Id. If the employer undertakes no remedy or the remedy attempted is ineffectual, liability will attach. Id.

Calpac argues that it should not be liable for the actions of Clark since it took action through Harper. According to Calpac, Harper testified that he confronted Clark about the statements and that after the third complaint to Harper he threatened Clark and kicked Clark off the job site. (Mot. Summ. J. at 7-8.) Calpac does not argue that the action it took constituted an adequate remedy, as it merely states that "although Healy and Ward may have not known of the actions by Harper, action was taken nonetheless." (Id. at 8.) However, Harper testified in his deposition that he never went through with the verbal threat of throwing Clark off the jobsite and, instead, it was Clark who would just leave. Harper testified that he confronted Clark and that

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

3

Clark told him that he should worry more about the workers working than about their complaints. (Id. Ex. 1 at 80-87, 89-94, 179.) Harper also testified that after each incident regarding Clark's "island monkey" or "monkey" statements was reported to him, he in turn reported the incidents to Healy and informed him of what employees were making the complaints. (Id. Ex. 1 at 27, 75-76, 88, 106-107.) As Healy claims that he knew nothing of the plaintiffs' complaints regarding discrimination until December 20, 2004, when former Calpac workers, including several Plaintiffs here, were protesting the racism suffered while working for Calpac, Healy obviously took no action to correct or remedy the discrimination by Clark and abusive working environment. In fact, Harper testified that the workers who complained about Clark felt that Harper let them down in failing to correct the situation with Clark. (Id. Ex. 1 at 185-86.) Harper further testified that he himself felt that he had let the workers down and that Calpac was not taking adequate steps to correct the situation with Clark. (Id.) According to Harper, Clark had to be pleased and satisfied. (Id. Ex. 1 at 183.) In fact, Harper testified that he himself was removed by Calpac from the MCI project at the request of Clark due to confrontations he had with him. (Id. Ex. 1 at 30, 170.) Also, in Calpac's position statement to the EEOC, Calpac stated that Harper was removed from the MCI project on Clark's orders. (Id. Ex. 2b at 28, 52-53.) Moreover, John Cruikshank testified that Healy indicated to him in October 2004, after learning of Clark's discriminatory comments, that Healy was going to fire Harper. (Id. Ex. 3 at 64.) Additionally, Harper testified that Healy informed him that he had paid for a Palau vacation for Clark and his wife around October 2004. (Id. Ex. 1 at 102.) Harper testified that he resigned after the reassignment because he did not feel that Healy supported him or that any steps were being taken to correct or improve the working conditions with Clark. (Id. Ex. 1 at 170, 174.) Harper further testified that everything got harder after the workers made the first complaint to him regarding Clark's comments and that the working environment deteriorated. (Id. Ex. 1 at

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

4

Case 1:05-cv-00037   Document 361   Filed 08/06/2007   Page 4 of 17

174-75, 185-86, 188.) Harper testified that Clark's working relationship with the crew needed to be fixed. (Id. Ex. 182.) While Harper was removed from the MCI project, Clark continued to work on the MCI project until its completion in mid-2005. As a matter of fact, after the "island monkey" statements were made, Plaintiff and co-Plaintiffs would still see Clark around the MCI project and never witnessed or heard of him getting thrown off a worksite or disciplined in any way for his comments. Clark's continued presence further disturbed Plaintiff and the other co-plaintiffs and kept the working environment highly tense. (Arriola Decl.)

Furthermore, the hostile work environment for Plaintiff continued up to the day of his termination in December 2004. Shortly after Plaintiff made his complaints regarding Clark's discriminatory comments, Calpac instituted a new policy regarding timecards, which further aggravated employment conditions as Plaintiff worried each morning thereafter whether he still had a job. (Arriola Decl.)

Therefore, any action taken by Calpac, even through Harper, did not sufficiently correct the hostile work environment and did not act as a sufficient deterrent of other discriminatory acts. Accordingly, genuine issues of material fact exist as to whether Calpac took any corrective action and whether its alleged action adequately remedied the hostile work environment and deterred any further harassment.

**B. Genuine issues of material fact preclude summary judgment on Plaintiff's hostile work environment claim.**

To establish a hostile work environment under Title VII, an employee must show that (1) he was subjected to verbal or physical conduct based on his race or national origin, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. Galdamez v. Potter, 415 F. 3d 1015, 1023 (9th Cir. 2005).

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

5

Case 1:05-cv-00037    Document 361    Filed 08/06/2007    Page 5 of 17

As to the first element, the Ninth Circuit has stated that "there are no 'talismanic expressions' of racial animus necessary to sustain a harassment claim, and recognized that racially charged 'code words' may provide evidence of discriminatory intent by 'sending a clear message and carrying the distinct tone of racial motivations and implications.' " Galdamez, 415 F. 3d at 1024 n.6 (quoting McGinest v. GTE Serv. Corp., 360 F. 3d 1103, 1113 (9th Cir. 2004)). For example, the word "redneck" can suggest racial hostility. Id. In this case, Plaintiff was subjected to verbal abuse when Clark, his supervisor, called him and/or his fellow co-workers "island monkeys" or "monkeys" on three separate occasions. (Arriola Decl.) As Plaintiff is a Chamorro/Pacific Islander and Guamanian, Clark's conduct toward Plaintiff clearly was based on Plaintiff's race and national origin, especially since Clark did not use any similar terms to refer to non-Pacific Islanders or non-Chamorros. (Id.) In fact, Calpac in its motion does not argue that the alleged verbal conduct by Clark was based on something other than Plaintiff's race or national origin.

As to the second element, Clark's comments were clearly unwelcome by Plaintiff, as he complained to his supervisors after at the incidents of being called an "island monkey" or "monkey" by Clark. Calpac does not argue in its motion that Clark's comments were welcome.

The third element of the test is satisfied by showing that the work environment was both subjectively and objectively hostile. Id. Whether an environment is objectively "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). However, no single factor is required. Id. The required severity of the conduct varies inversely with its pervasiveness or frequency. Brooks v. City of San Mateo, 229

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

6

Case 1:05-cv-00037    Document 361    Filed 08/06/2007    Page 6 of 17

F. 3d 917, 926 (9th Cir. 2000). Finally, the objective hostility inquiry must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff. Galdamez, 415 F. 3d at 1023.

A single incident of harassment may be enough to constitute a hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis. Little, 301 F. 3d at 967; see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 121 S. Ct. 1508, 1510, 149 L. Ed. 2d 509 (2001) (stating that an isolated incident can amount to a "discriminatory change[] in the 'terms and conditions of employment' when the incident is extremely serious").

As to racial epithets, the Fourth Circuit in Spriggs v. Diamond Auto Glass, stated that usage of the word "nigger" was far more than a "mere offensive utterance." 242 F. 3d 179, 185 (4th Cir. 2001). " 'Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates.' " Id. (quoting Rodgers v. Western-Southern Life Ins. Co., 12 F. 3d 668, 675 (7th Cir. 1993)). The Fourth Circuit further stated that the use of the word "**monkey**" to describe African Americans was similarly odious. Id. (emphasis added). "To suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." Id. (citing Walker v. Thompson, 214 F. 3d 615, 626 (5th Cir. 2000) (triable issue raised with regard to hostile work environment where, inter alia, supervisors verbally assailed African American employees with physically humiliating comparisons to "monkeys" and "slaves")).

Additionally, "in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment. To avoid liability under Title VII for failing to remedy a hostile environment, employers may even have to

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

7

Case 1:05-cv-00037     Document 361     Filed 08/06/2007     Page 7 of 17

remove employees from the workplace if their mere presence would render the working environment hostile." Ellison, 942 F. 2d at 883 (citations omitted).

Conduct targeted at persons other than the plaintiff can be considered in determining a hostile work environment. Spriggs, 242 F. 3d at 184. As Title VII is concerned with the "environment" of workplace hostility, the contours of one's environment surely may exceed the individual dynamic between the complainant and his supervisor. Id. "[O]ne of the critical inquires in a hostile environment claim must be the *environment*. Evidence of general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." Hicks v. Gates Rubber Co., 833 F. 2d 1406, 1415-16 (10th Cir. 1987); see also Walker v. Ford Motor Co., 684 F. 2d 1355, 1359 n.2 (11th Cir. 1982) ("The fact that many of the epithets were not directed at [the plaintiff] is not determinative."). Indeed, "[s]uch evidence could be critical to a plaintiff's case, for a claim of harassment cannot be established without a showing of more than isolated indicia of a discriminatory environment." Vinson v. Taylor, 753 F. 2d 141 (D.C. Cir. 1985), aff'd in part and rev'd in part, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

Calpac argues that it is entitled to summary judgment on Plaintiff's hostile work environment claim for failure "to establish the frequency required to establish a claim under Title VII especially in light of the allegation that the remarks were not made by CalPac employees." (Mot. Summ. J. at 10.) As discussed earlier, Calpac may be liable for Clark's actions even if he is not an employee of Calpac. Plaintiff himself was called an "island monkey" on approximately two different occasions. Besides being subjected to this direct abuse, Plaintiff heard from other co-workers, such as the co-plaintiffs here, that they had been called "island monkey" by Clark on other occasions when Plaintiff was not present. After he and/or other co-workers were called "island monkeys" or "monkeys," the workers were close to revolt. (Arriola Decl.) In fact,

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

8

Case 1:05-cv-00037   Document 361   Filed 08/06/2007   Page 8 of 17

Harper testified that he feared the workers would harm Clark after Clark made his discriminatory statements. (Lujan Decl. Ex. 1 at 96-97, 151.) Being referred to as an "island monkey" or "monkey" by Clark, the highest-ranking supervisor on the field, greatly affected Plaintiff. Plaintiff was humiliated and his self-esteem dropped, making it difficult for him to work at Calpac. As Plaintiff saw that essentially nothing was being done by Calpac to remedy the situation by removing Clark from the MCI project or disciplining him in any way, and that Calpac had instead reassigned off the project one of the supervisors (i.e., Harper) who received the workers' complaints, Plaintiff understood that his employer agreed and accepted Clark's discriminatory conduct.

Additionally, Harper testified that everything, the working conditions, got harder after the workers made the first complaint to him regarding Clark's comments. (Lujan Decl. Ex. 1 at 174-75.) Harper also testified about the harder conditions the employees faced, working out in the sun eight or ten hours a day with a pick and shovel, and being unhappy with the situation involving Clark. (Id. Ex. 1 at 185-86.) Harper testified that the working environment deteriorated. (Id. Ex. 1 at 188.)

Furthermore, shortly after the "island monkey" incidents and Plaintiff's complaints, Calpac instituted a new policy involving time cards, where an employee would know if he still had a job if he saw his timecard in the morning upon checking in each day. If the timecard was not there, then the employee would know he was fired. The timecard policy further aggravated employment conditions as every morning after that Plaintiff would worry if he had a job at Calpac. (Arriola Dec.)

Thus, Plaintiff worked in a racially charged and abusive environment.

**C. Calpac is not entitled to summary judgment on Plaintiff's retaliation claim.**

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

9

Pursuant to Title VII, employers are prohibited from discriminating against any employee who "has opposed any practice made an unlawful employment practice ... or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). To set out a prima facie case of retaliation, the plaintiff employee must demonstrate (1) protected activity, (2) adverse employment action, and (3) a causal link between the activity and the action. Cornwell v. Electra Cent. Credit Union, 439 F. 3d 1018, 1034-35 (9th Cir. 2006). After a prima facie case has been shown, the burden shifts to the defendant employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." Stegall v. Citadel Broad. Co., 350 F. 3d 1061, 1066 (9th Cir. 2004). If the employer articulates such a reason, the burden shifts back to the plaintiff to "demonstrat[e] that the reason was merely a pretext for a discriminatory motive." Id.

Protected activities include the filing of a complaint with the EEOC, participating in an EEO proceeding, and making an informal complaint to a supervisor. Ray v. Henderson, 217 F. 3d 1234, 12340 n.3 (9th Cir. 2000); Manatt v. Bank of America, NA, 339 F. 3d 792, 800 n.8 (9th Cir. 2003); Miller v. Fairchild Indus., 885 F. 2d 498, 505 (9th Cir. 1989). In this case, Plaintiff engaged in protected activity when he complained to supervisors of Clark's "island monkey" comments. Plaintiff also engaged in protected activity when he filed his EEOC charge against Calpac, DTS, and MCI, prior to his discharge. Calpac does not contest this in its motion.

Regarding the second prong in the retaliation test, the United States Supreme Court in Burlington N. & Santa Fe Ry. Co., --- U.S. ---, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006), clarified the law on which challenged action would sustain a claim for retaliation. The Court stated that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Id. (quoting Rochon v.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

10

Case 1:05-cv-00037    Document 361    Filed 08/06/2007    Page 10 of 17

Gonzalez, 438 F. 3d 1211, 1219 (D.C. Cir. 2006) (internal quotations omitted)). Whether a particular challenged action is materially adverse "will often depend upon the particular circumstances." Id.

Adverse employment actions include: transfers of job duties and undeserved performance ratings; dissemination of a negative job reference; exclusion from meetings, seminars, and positions to qualify for salary increases; a more burdensome work schedule; elimination of a flexible start-time policy, institution of "lockdown" procedures that made employees' work more cumbersome, and a disproportionate reduction in the plaintiff's workload and salary. Ray v. Henderson, 217 F. 3d 1234, 1241-44 (9th Cir. 2000). Reassignment of job duties where the new duties are more arduous and dirtier or less desirable or prestigious constitutes a materially adverse employment action. Burlington, 126 S. Ct. at 2416-17.

Here, shortly after Plaintiff lodged his informal complaints with Calpac supervisors, Calpac instituted the new timecard policy which placed Plaintiff on edge as he had to worry every morning if he had a job at Calpac. Also, Plaintiff was terminated from his employment less than two months after his last complaint regarding Clark's comments. Furthermore, Harper testified that everything got harder after the workers made the first complaint to him regarding Clark's comments and that the working environment deteriorated. Calpac does not address or dispute these allegations in its motion, with the exception of Plaintiff's termination. In fact, Calpac does not dispute that Plaintiff's termination is an adverse employment action.

As to the third factor, the Ninth Circuit has held that a plaintiff can establish causation with "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F. 2d 1371, 1376 (9th Cir. 1987). Mere temporal proximity alone may be sufficient evidence of causality to establish a prima facie

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

11

Case 1:05-cv-00037    Document 361    Filed 08/06/2007    Page 11 of 17

case of retaliation, but the temporal proximity must be very close. Breeden, 532 U.S. at 273. To show a causal link exclusively on the basis of temporal proximity, he plaintiff must demonstrate that the challenged action took place "close on the heels" of the protected activity. Ray, 217 F. 3d at 1244. A court will find temporal proximity more readily if EEOC investigations are pending when the challenged action takes place. Yartzoff, 809 F. 2d at 1376.

In this case, Clark made his discriminatory remarks during the period around September through late October 2004. Shortly after these incidents, Plaintiff reported Clark's "island monkey" or "monkey" comments to his supervisors. In fact, Harper acknowledges that workers complained to him about Clark's statements and that each time he reported the complaints to Healy and also told Healy who was complaining. Thus, Calpac clearly knew about Plaintiff's complaints. Furthermore, shortly after the first of the complaints, Calpac retaliated by instituting the timecard policy. Then less than two months after Plaintiff's last complaint, he was terminated. Calpac's retaliatory motives are also evident in the fact that Healy, an owner and the highest-ranking employee of Calpac, presented John Cruikshank of Marianas Cablevision with a list of Calpac workers, including Plaintiffs, and asked him to investigate them for illegal activities, such as stealing cable. (Lujan Decl. Ex. 3 at 32-33, 65.) Therefore, the causation element has been established, or at least genuine issues of material fact exist to preclude summary judgment. Calpac does not challenge causation in its motion.

As stated earlier, once a prima facie case has been shown, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Stegall, 350 F. 3d at 1066. Here, Calpac stated that Plaintiff was terminated because he failed to show up to work

However, Plaintiff submits that Calpac's stated reason is a pretext. Plaintiff had informed Calpac that he was out due to his father's sickness. Also, around the same time as Plaintiff's

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

12

Case 1:05-cv-00037   Document 361   Filed 08/06/2007   Page 12 of 17

termination, other co-workers who complained also were terminated for the false reason that the MCI project was nearly completed. (See oppositions of co-Plaintiffs.)

Therefore, genuine issues of material fact exist and so Calpac is not entitled to summary judgment on Plaintiff's retaliation claim.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant Calpac's Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED** this 6th day of August, 2007, in Hagåtña, Guam.

LUJAN AGUIGUI & PEREZ LLP

By: _____
**DELIA LUJAN**
*Attorneys for Plaintiffs*

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pl. Arriola's Opp'n to Def. Calpac's Mot. Summ. J.

13

Case 1:05-cv-00037   Document 361   Filed 08/06/2007   Page 13 of 17

# EXHIBIT 1

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 378-2005-00205 |

_____ and EEOC
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Mr. Anthony Arriola | (671) 632-4470 | 06-02-1964 |

Street Address: F-171a Aasta Drive Dededo, GU 96929

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MCI | 500 or More | |

Street Address: 2400 Glenville Dr., Richardson, TX 75082

DISCRIMINATION BASED ON:
☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 09-25-2004   Latest: 11-24-2004
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Cal Pac to work on an installation project of underground cable in Guam for MCI.

On or about September 25, 2004, and, on or about October 22, 2004, I was harassed by Dennis Clark, a representative of MCI and employee of Dynamic Technical Services. Dennis Clark made racially derogatory comments to me and fellow co-workers by referring to us as "monkeys."

On or about November 24, 2004, I was discharged from the project, which I feel is due to my complaints to my supervisors about Dennis Clark's racially derogatory comments.

I believe I have been discriminated and retaliated against due to my racial background, Pacific Islander, and my national origin, Saipanese-Chamorro. I further believe non-Caucasian employees as a class have been subjected to discrimination and retaliation.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2 3 5 _____ [signature] Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

RECEIVED
FEB 2 3 2005
EEOC HLO

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 378-2005-00194 |

and EEOC
_____
State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Anthony Arriola | (671) 632-4470 | 06-02-1964 |

Street Address: F-171a Aasta Drive Dededo, GU 96929
City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CAL PAC | 15 - 100 | (671) 646-3646 |

Street Address: P.O. Box 8950, Tamuning, GU 96931
City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 09-25-2004   Latest: 11-24-2004
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Cal Pac to work on an installation project of underground cable in Guam for MCI.

On or about September 25, 2004, and, on or about October 22, 2004, I was harassed by Dennis Clark, a representative of MCI and employee of Dynamic Technical Services. Dennis Clark made racially derogatory comments to me and fellow co-workers by referring to us as "monkeys."

On or about November 24, 2004, I was discharged from the project, which I feel is due to my complaints to my supervisors about Dennis Clark's racially derogatory comments.

I believe I have been discriminated and retaliated against due to my racial background, Pacific Islander, and my national origin, Saipanese-Chamorro. I further believe non-Caucasian employees as a class have been subjected to discrimination and retaliation.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

2/25  [signature]
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

RECEIVED
FEB 15 2005
EEOC HLO

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA ☒ EEOC | 378-2005-00276 |

and EEOC

| | State or local Agency, if any | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|---|
| | | (571) 632-4470 | 06-02-1964 |

Name (Indicate Mr., Ms., Mrs.): **Mr. Anthony Arriola**

Street Address: **F-171a Aasta Drive Dededo, GU 96929**

City, State and ZIP Code:

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| DYNAMIC TECHNICAL SERVICES | Unknown | (469) 635-1300 |

Street Address: **1125 East Hwy 121, Lewisville, TX 75057**

City, State and ZIP Code:

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code:

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **09-25-2004**    Latest: **11-24-2004**

DISCRIMINATION BASED ON (Check appropriate box(es).)
☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Cal Pac to work on an installation project of underground cable in Guam for MCI.

On or about September 25, 2004, and, on or about October 22, 2004, I was harassed by Dennis Clark, a representative of MCI and employee of Dynamic Technical Services. Dennis Clark made racially derogatory comments to me and fellow co-workers by referring to us as "monkeys."

On or about November 24, 2004, I was discharged from the project, which I feel is due my complaints to my supervisors about Dennis Clark's racially derogatory comments.

I believe I have been discriminated and retaliated against due to my racial background Pacific Islander, and my national origin, Saipanese-Chamorro. I further believe non-Caucasian employees as a class have been subjected to discrimination and retaliation

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

225 [signature]
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

RECEIVED FEB 15 2005 EEOC HLO