LUJAN AGUIGUI & PEREZ LLP
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiffs*

FILED
DISTRICT COURT OF GUAM
AUG - 6 2007
JEANNE G. QUINATA
Clerk of Court

IN THE UNITED STATES DISTRICT COURT OF GUAM

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br>-vs-<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br>DECLARATION OF JAMES S. YEE IN SUPPORT OF OPPOSITION TO DEFENDANT CALPAC'S MOTION FOR SUMMARY JUDGMENT |

I, JAMES S. YEE, hereby declare and state as follows:

1. I am a plaintiff in this matter.

2. I am Chamorro/Pacific Islander and I am from Guam.

3. I worked at Calpac from approximately August 2004 until on or around late March 2005, when I was terminated.

4. During the period I worked at Calpac, I worked on an MCI project where Dennis Clark ("Clark") acted as a supervisor, superior to myself.

5. Clark supervised the work of myself, my co-workers, my immediate supervisors, and even Don Harper, the Calpac superintendent.

6. While I worked on the MCI project, on or around August or September to October 2004, Clark on at least two occasions called me and/or some co-workers, who were also Chamorro/Pacific Islanders, "island monkeys" or "monkeys," which I found to be extremely offensive and uncalled for.

7. On at least one occasion, Clark called me and other Chamorro/Pacific Islander co-workers "island monkeys" or "monkeys" while we were laboring under harsh conditions, working hours under the hot sun.

8. On at least one other occasion, Clark called me and other Chamorro/Pacific Islander co-workers "island monkeys" or "monkeys" while screaming furiously about the work being performed on the project.

9. Each time after Clark called me and other co-workers "island monkeys" or "monkeys," I and my co-workers who were present were extremely upset, demoralized, and humiliated, especially to be insulted and degraded by a person who was considered by the workers to be the highest-ranked supervisor on the field. In fact, everyone, including myself, was so outraged by Clark that we were close to revolt.

10. My co-workers and I were so upset and disgusted that, soon after the incidents I witnessed, we complained to Calpac supervisors about the maltreatment by Clark.

11. Besides being directly called an "island monkey" or "monkey" by Clark on about two separate occasions, I heard from other co-workers, who were Chamorro/Pacific Islanders, while working on the MCI project, that they also were referred to as "island monkeys" or "monkeys" on other occasions.

12. Since being called an "island monkey" or "monkey" by one of my superiors on at least two separate occasions and hearing that other co-workers were also being referred to as "island monkeys" or "monkeys," it was very difficult for me to continue to go to work, especially since I would become very upset and disturbed whenever I would see Clark on the jobsite and it appeared that nothing was being done by my superiors to discipline Clark or otherwise remedy and prevent the discrimination I suffered.

13. I have never witnessed or heard of Clark being scolded or disciplined in any way or thrown off a job site due to his "island monkey" or "monkey" comments.

14. Shortly after the "island monkey"/"monkey" incidents and my informal and EEOC complaints, Calpac treated me and other workers who were discriminated against and complained differently.

15. After the "island monkey" incidents and my informal complaints, Calpac instituted a new policy involving time cards, where an employee would know if he still had a job if he saw his timecard in the morning upon checking in each day. If the timecard was not there, then the employee would know he was fired.

16. The timecard policy further aggravated employment conditions as every morning after that I would worry if I had a job at Calpac.

17. After filing the EEOC charges, I was excluded from meetings between supervisors and the workers, when in the past I had been included in such discussions. Also, I was frequently ignored by William Ward, the general manager. I would greet him and he would obviously ignore me.

18. Also, shortly after filing the charges, I had an incident with a supervisor known as Jai James. He instructed me to operate equipment in a way I believed would damage the

machine. When I told him this, he threatened to fire me and physically harm me if I did not do as he was instructing.

19. I feel that the employees who complained and filed EEOC charges were singled out for retaliation.

20. I do not recall Clark referring to non-Chamorros or non-Pacific Islanders as "monkeys" or "island monkeys."

21. As a result of Clark's comments and Calpac's failure to appropriately address the situation, my self-esteem dropped low and I felt that Calpac agreed with Clark's comments.

22. As a result of the discrimination I suffered, I filed charges with the Equal Employment Opportunity Commission against Calpac, Dynamic Technical Services, and MCI.

23. I was fired by Calpac while my EEOC charges were pending.

/ / /

/ / /

/ / /

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of August, 2007, in Hagåtña, Guam.

_____
JAMES S. YEE