**LUJAN AGUIGUI & PEREZ** LLP
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiffs*

**FILED**
DISTRICT COURT OF GUAM

AUG 10 2007

**JEANNE G. QUINATA**
**Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA, <br><br> Plaintiffs, <br><br> -vs- <br><br> CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10, <br><br> Defendants. | CIVIL CASE NO. 05-00037 <br><br> **PLAINTIFFS JOHN L.G. NAUTA'S, JOHN P. BABAUTA'S AND JAMES S. YEE'S AMENDED JOINDER IN CO-PLAINTIFFS' OPPOSITION TO DEFENDANT CALPAC'S MOTION FOR SUMMARY JUDGMENT** |

COME NOW Plaintiffs John L.G. Nauta, John P. Babauta, and James S. Yee ("Plaintiffs"), respectfully submitting this amended joinder in the oppositions of the co-Plaintiffs to Defendant Calpac's Motions for Summary Judgment, filed herein July 23, 2007. Plaintiffs additionally rely on their declarations, their EEOC charges, (Exs. 1-3), and the declaration of Delia Lujan, in opposing Calpac's summary judgment motion.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

ORIGINAL

1

Case 1:05-cv-00037    Document 386    Filed 08/10/2007    Page 1 of 23

In addition to the arguments raised in co-Plaintiffs' oppositions to Calpac's motions for summary judgment, Plaintiffs submit that summary judgment in favor of Calpac is unwarranted for the following reasons:

# I. INTRODUCTION

This Title VII action commenced on December 12, 2005, with the plaintiffs alleging that they were subjected to employment discrimination by defendants Calpac, Dynamic Technical Services ("DTS"), MCI, John Healy ("Healy"), Dennis Clark ("Clark"), William Ward ("Ward"), Jai James, and Does 1 through 10 (collectively "Defendants"). The First Amended Complaint was filed February 24, 2006.

Prior to the filing of this action, Plaintiffs John L.G. Nauta ("Nauta"), John P. Babauta ("Babauta"), and James S. Yee ("Yee") (collectively "Plaintiffs") filed charges with the Equal Employment Opportunity Commission against Calpac, DTS, and MCI.[1] These charges were pending with the EEOC until approximately September 2005, when the EEOC issued right-to-sue letters.

On July 23, 2007, Calpac filed herein the instant motion for summary judgment.

# II. ARGUMENT

## A. Calpac is liable for the actions of Dennis P. Clark.

"[E]mployers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.' " Little v. Windermere Relocation, Inc., 301 F. 3d 958, 968 (9th Cir. 2002) (quoting Folkerson v. Circus Circus Enters., Inc., 107 F. 3d 754,

---

[1] Nauta's EEOC charges are attached hereto as Exhibit 1. Babauta's EEOC charges are attached hereto as Exhibit 2. Yee's EEOC charges are attached hereto as Exhibit 3.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

2

Case 1:05-cv-00037   Document 386   Filed 08/10/2007   Page 2 of 23

756 (9th Cir. 1997)). Whether or not an employer's remedy is reasonable depends on its ability to stop harassment by the person who engaged in harassment. Id. (citing Ellison v. Brady, 942 F. 2d 872, 882 (9th Cir. 1991)). In determining the remedy's adequacy, courts may take into consideration the remedy's ability to persuade potential harassers to refrain from unlawful conduct. Id. If the employer undertakes no remedy or the remedy attempted is ineffectual, liability will attach. Id.

Calpac argues that it should not be liable for the actions of Clark since it took action through Harper. According to Calpac, Harper testified that he confronted Clark about the statements and that after the third complaint to Harper he threatened Clark and kicked Clark off the job site. Calpac does not argue that the action it took constituted an adequate remedy, as it merely states in its motion that "although Healy and Ward may have not known of the actions by Harper, action was taken nonetheless." However, Harper testified in his deposition that he never went through with the verbal threat of throwing Clark off the jobsite and, instead, it was Clark who would just leave. (Lujan Decl. Ex. 1.)

Harper testified that he confronted Clark and that Clark told him that he should worry more about the workers working than about their complaints. (Id. Ex. 1 at 80-87, 89-94, 179.) Harper also testified that after each incident regarding Clark's "island monkey" or "monkey" statements was reported to him, he in turn reported the incidents to Healy and informed him of what employees were making the complaints. (Id. Ex. 1 at 27, 75-76, 88, 106-107.) As Healy claims that he knew nothing of the plaintiffs' complaints regarding discrimination until December 20, 2004, when former Calpac workers, including several Plaintiffs here, were protesting the racism suffered while working for Calpac, Healy obviously took no action to correct or remedy the discrimination by Clark and abusive working environment. In fact, Harper testified that the workers who complained about Clark felt that Harper let them down in failing to correct the

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

3

Case 1:05-cv-00037   Document 386   Filed 08/10/2007   Page 3 of 23

situation with Clark. (Id. Ex. 1 at 185-86.) Harper further testified that he himself felt that he had let the workers down and that Calpac was not taking adequate steps to correct the situation with Clark. (Id.) According to Harper, Clark had to be pleased and satisfied. (Id. Ex. 1 at 183.) In fact, Harper testified that he himself was removed by Calpac from the MCI project at the request of Clark due to confrontations he had with him. (Id. Ex. 1 at 30, 170.) Also, in Calpac's position statement to the EEOC, Calpac stated that Harper was removed from the MCI project on Clark's orders. (Id. Ex. 2b at 28, 52-53.) Moreover, John Cruikshank testified that Healy indicated to him in October 2004, after learning of Clark's discriminatory comments, that Healy was going to fire Harper. (Id. Ex. 3 at 64.) Additionally, Harper testified that Healy informed him that he had paid for a Palau vacation for Clark and his wife around October 2004. (Id. Ex. 1 at 102.) Harper testified that he resigned after the reassignment because he did not feel that Healy supported him or that any steps were being taken to correct or improve the working conditions with Clark. (Id. Ex. 1 at 170, 174.) Harper further testified that everything got harder after the workers made the first complaint to him regarding Clark's comments and that the working environment deteriorated. (Id. Ex. 1 at 174-75, 185-86, 188.) Harper testified that Clark's working relationship with the crew needed to be fixed. (Id. Ex. 182.) While Harper was removed from the MCI project, Clark continued to work on the MCI project until its completion in mid-2005. As a matter of fact, after the "island monkey" statements were made, Plaintiff and co-Plaintiffs would still see Clark around the MCI project and never witnessed or heard of him getting thrown off a worksite or disciplined in any way for his comments. Clark's continued presence further disturbed Plaintiffs and the other co-plaintiffs and kept the working environment highly tense. (Nauta Decl. ¶¶ 9-13; Babauta Decl. ¶ 8-12; Yee Decl. ¶¶ 9-13.)

Furthermore, the hostile work environment for Plaintiffs continued up to the day of their respective terminations. (Nauta Decl. ¶¶ 12-21; Babauta Decl. ¶¶ 10-20; Yee Decl. ¶¶ 12-21.)

Henry G. Van Meter, et al., v. Calpac, et al.                                                    4
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

Case 1:05-cv-00037     Document 386     Filed 08/10/2007     Page 4 of 23

Shortly after Plaintiffs made their complaints regarding Clark's discriminatory comments, Calpac instituted a new policy regarding timecards, which further aggravated employment conditions as workers worried each morning thereafter whether they still had a job. (See, e.g., Yee Decl. ¶¶15-16.) Also, after filing EEOC charges, Plaintiffs experienced changes in their employment. Nauta worked as a dump truck driver, but, after filing the EEOC charges, was stripped of his driving duties and made to work as a laborer, which was more physically demanding, more difficult, and dirtier than his driving duties. (Nauta Decl. ¶¶ 15-16.) Nauta also was stripped of his base privileges, which he had before, and which other workers who did not complain still had. (Id. ¶ 17.) After Babauta made his complaints and charges, he was assigned to perform undesirable jobs such as cleaning up after other workers, which was physically demanding, more difficult, and dirtier than his earlier duties. (Babauta Decl. ¶¶ 14-15.) Babauta was made to perform these dirtier tasks with another employee who had also filed charges. (Id. ¶ 15.) Yee was ignored by at least one superior and excluded from meetings between supervisors and other workers, meetings which he had usually been included in before. (Yee Decl. ¶ 17.) Yee also was ordered by a superior to perform an act which he felt would harm a machine, and then was threatened with termination and physical violence if he did not do as he was instructed. (Id. ¶ 18.)

Healy himself testified that Clark was the customer, the boss, and that the boss has the power to get rid of people. (Second Lujan Decl. Ex. 1b at 178-180.) Healy stated that Clark had the ability to influence Calpac's fate with MCI. (Id. Ex. 1b at 180.) Healy testified that Clark told him to "take care of the Don Harper problem," which Healy understood to mean that Clark was fed up with Harper's actions or inactions and wanted Healy to replace Harper and get him off the project. (Id. Ex. 1a at 117-18, Ex. 1b at 178.) Healy stated that he took care of the Harper problem by taking him off the MCI project and putting him on the Tyco project. (Id. Ex. 1a at 119.) Also, according to Healy, after he learned of the former Calpac workers' protests regarding

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

5

Case 1:05-cv-00037     Document 386     Filed 08/10/2007     Page 5 of 23

racism and Clark and that Harper was speaking on the radio regarding it, he did not ask Clark what was going on as he did not want to know. (Id. Ex. 1a at 143, 145-46, 151.) Instead, on December 20, 2004, a day of a protest, he allowed Clark to address the workers at a meeting. (Id. Ex. 1a at 141-42, 144.) Healy testified that Harper is a "liar." (Id. Ex. 1c at 49.)

Therefore, any action taken by Calpac, even through Harper, did not sufficiently correct the hostile work environment and did not act as a sufficient deterrent of other discriminatory acts, especially since Healy took Harper off the MCI project at Clark's instruction. Accordingly, genuine issues of material fact exist as to whether Calpac took any corrective action and whether its alleged action adequately remedied the hostile work environment and deterred any further harassment.

## B. Genuine issues of material fact preclude summary judgment on Plaintiffs' hostile work environment claim.

To establish a hostile work environment under Title VII, an employee must show that (1) he was subjected to verbal or physical conduct based on his race or national origin, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. Galdamez v. Potter, 415 F. 3d 1015, 1023 (9th Cir. 2005).

As to the first element, the Ninth Circuit has stated that "there are no 'talismanic expressions' of racial animus necessary to sustain a harassment claim, and recognized that racially charged 'code words' may provide evidence of discriminatory intent by 'sending a clear message and carrying the distinct tone of racial motivations and implications.' " Galdamez, 415 F. 3d at 1024 n.6 (quoting McGinest v. GTE Serv. Corp., 360 F. 3d 1103, 1113 (9th Cir. 2004)). For example, the word "redneck" can suggest racial hostility. Id. In this case, Plaintiffs were subjected to verbal abuse when Clark, their supervisor, called each of them and/or their fellow co-workers "island monkeys" or "monkeys" on at least two occasions for Nauta, (Nauta Decl. ¶ 6),

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

6

Case 1:05-cv-00037    Document 386    Filed 08/10/2007    Page 6 of 23

at least one occasion for Babauta, (Babauta Decl. ¶ 6), and at least two occasions for Yee, (Yee Decl. ¶ 6). As Plaintiffs are Chamorro/Pacific Islander and Guamanian, Clark's conduct toward Plaintiffs clearly was based on their race and national origin, especially since Clark did not use any similar terms to refer to non-Pacific Islanders or non-Chamorros. (Nauta Decl. ¶¶ 2, 18; Babauta Decl. ¶ 2; Yee Decl. ¶¶ 2, 20.) In fact, Calpac in its motion does not argue that the alleged verbal conduct by Clark was based on something other than Plaintiff's race or national origin.

As to the second element, Clark's comments were clearly unwelcome by Plaintiffs, as they complained to their supervisors after the incidents of being called an "island monkey" or "monkey" by Clark. (Nauta Decl. ¶ 10; Babauta Decl. ¶ 9; Yee Decl. ¶ 10.) Calpac does not argue in its motion that Clark's comments were welcome.

The third element of the test is satisfied by showing that the work environment was both subjectively and objectively hostile. Id. Whether an environment is objectively "hostile" or "abusive" can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). However, no single factor is required. Id. The required severity of the conduct varies inversely with its pervasiveness or frequency. Brooks v. City of San Mateo, 229 F. 3d 917, 926 (9th Cir. 2000). Finally, the objective hostility inquiry must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff. Galdamez, 415 F. 3d at 1023.

A single incident of harassment may be enough to constitute a hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis. Little, 301

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

7

Case 1:05-cv-00037    Document 386    Filed 08/10/2007    Page 7 of 23

F. 3d at 967; see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 121 S. Ct. 1508, 1510, 149 L. Ed. 2d 509 (2001) (stating that an isolated incident can amount to a "discriminatory change[] in the 'terms and conditions of employment' when the incident is extremely serious").

As to racial epithets, the Fourth Circuit in Spriggs v. Diamond Auto Glass, stated that usage of the word "nigger" was far more than a "mere offensive utterance." 242 F. 3d 179, 185 (4th Cir. 2001). " 'Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates.' " Id. (quoting Rodgers v. Western-Southern Life Ins. Co., 12 F. 3d 668, 675 (7th Cir. 1993)). The Fourth Circuit further stated that the use of the word "**monkey**" to describe African Americans was similarly odious. Id. (emphasis added). "To suggest that a human being's physical appearance is essentially a caricature of a jungle . beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." Id. (citing Walker v. Thompson, 214 F. 3d 615, 626 (5th Cir. 2000) (triable issue raised with regard to hostile work environment where, inter alia, supervisors verbally assailed African American employees with physically humiliating comparisons to "monkeys" and "slaves")).

Additionally, "in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment. To avoid liability under Title VII for failing to remedy a hostile environment, employers may even have to remove employees from the workplace if their mere presence would render the working environment hostile." Ellison, 942 F. 2d at 883 (citations omitted).

Conduct targeted at persons other than the plaintiff can be considered in determining a hostile work environment. Spriggs, 242 F. 3d at 184. As Title VII is concerned with the "environment" of workplace hostility, the contours of one's environment surely may exceed the

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

8

Case 1:05-cv-00037    Document 386    Filed 08/10/2007    Page 8 of 23

individual dynamic between the complainant and his supervisor. Id. "[O]ne of the critical inquires in a hostile environment claim must be the *environment*. Evidence of general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." Hicks v. Gates Rubber Co., 833 F. 2d 1406, 1415-16 (10th Cir. 1987); see also Walker v. Ford Motor Co., 684 F. 2d 1355, 1359 n.2 (11th Cir. 1982) ("The fact that many of the epithets were not directed at [the plaintiff] is not determinative."). Indeed, "[s]uch evidence could be critical to a plaintiff's case, for a claim of harassment cannot be established without a showing of more than isolated indicia of a discriminatory environment." Vinson v. Taylor, 753 F. 2d 141 (D.C. Cir. 1985), aff'd in part and rev'd in part, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

Calpac argues that it is entitled to summary judgment on Plaintiff's hostile work environment claim for failure "to establish the frequency required to establish a claim under Title VII especially in light of the allegation that the remarks were not made by CalPac employees." As discussed earlier, Calpac may be liable for Clark's actions even if he is not an employee of Calpac. Plaintiffs themselves were called "island monkey" or "monkey". Besides being subjected to this direct abuse, Plaintiffs heard from other co-workers, such as the co-plaintiffs here, that they had been called "island monkey" by Clark on other occasions when Plaintiffs individually were not present. (Nauta Decl. ¶ 11; Babauta Decl. ¶ 10; Yee Decl. ¶ 11.) After Plaintiffs and/or other co-workers were called "island monkeys" or "monkeys," the workers were close to revolt. (Nauta Decl. ¶ 9; Babauta Decl. ¶ 8; Yee Decl. ¶ 9.) In fact, Harper testified that he feared the workers would harm Clark after Clark made his discriminatory statements. (Lujan Decl. Ex. 1 at 96-97, 151.) Being referred to as an "island monkey" or "monkey" by Clark, the highest-ranking supervisor on the field, greatly affected Plaintiffs. Plaintiffs were humiliated and their self-esteem dropped, making it difficult for them to work at Calpac. As Plaintiffs saw that

Henry G. Van Meter, et al., v. Calpac, et al.                                                    9
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

Case 1:05-cv-00037   Document 386   Filed 08/10/2007   Page 9 of 23

essentially nothing was being done by Calpac to remedy the situation by removing Clark from the MCI project or disciplining him in any way, and that Calpac had instead reassigned off the project one of the supervisors (i.e., Harper) who received the workers' complaints, Plaintiffs understood that their employer agreed and accepted Clark's discriminatory conduct. (Nauta Decl. ¶¶ 9, 12-13, 19; Babauta Decl. ¶¶ 8, 11-12, 20; Yee Decl. ¶¶ 9, 12-13, 21.)

Additionally, Harper testified that everything, the working conditions, got harder after the workers made the first complaint to him regarding Clark's comments. (Lujan Decl. Ex. 1 at 174-75.) Harper also testified about the harder conditions the employees faced, working out in the sun eight or ten hours a day with a pick and shovel, and being unhappy with the situation involving Clark. (Id. Ex. 1 at 185-86.) Harper testified that the working environment deteriorated. (Id. Ex. 1 at 188.)

Furthermore, shortly after the "island monkey" incidents and Plaintiffs' complaints, Calpac instituted a new policy involving time cards, where an employee would know if he still had a job if he saw his timecard in the morning upon checking in each day. If the timecard was not there, then the employee would know he was fired. The timecard policy further aggravated employment conditions as every morning after that Plaintiffs would worry if they had a job at Calpac.

Also, on or around December 20, 2004, Calpac held a company-wide meeting on the day when recently-terminated Calpac employees were protesting the discrimination suffered while working for Calpac. At the meeting, Healy informed the workers that they would be terminated if they associated with the protesters. Clark also spoke at the meeting and denied that he had made the discriminatory comments. Clearly, Calpac was discouraging workers from coming forward and taking any action regarding Clark's comments, and Calpac was supporting Clark.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

10

Case 1:05-cv-00037   Document 386   Filed 08/10/2007   Page 10 of 23

1    Additionally, the changes in Plaintiffs' employment after the filing of the EEOC charges

2    kept hostile the working environment, especially since Clark was still on the project.

3         Thus, Plaintiffs worked in a racially charged and abusive environment.

4         **C. Calpac is not entitled to summary judgment on Plaintiffs' retaliation claims.**

5         Pursuant to Title VII, employers are prohibited from discriminating against any employee

6

7    who "has opposed any practice made an unlawful employment practice … or … has made a

8    charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

9    hearing[.]"  42 U.S.C. § 2000e-3(a).  To set out a prima facie case of retaliation, the plaintiff

10   employee must demonstrate (1) protected activity, (2) adverse employment action, and (3) a

11   causal link between the activity and the action.  Cornwell v. Electra Cent. Credit Union, 439 F. 3d

12   1018, 1034-35 (9th Cir. 2006).  After a prima facie case has been shown, the burden shifts to the

13

14   defendant employer "to articulate a legitimate, non-discriminatory reason for the adverse

15   employment action."  Stegall v. Citadel Broad. Co., 350 F. 3d 1061, 1066 (9th Cir. 2004).  If the

16   employer articulates such a reason, the burden shifts back to the plaintiff to "demonstrat[e] that

17   the reason was merely a pretext for a discriminatory motive."  Id.

18        Protected activities include the filing of a complaint with the EEOC, participating in an

19   EEO proceeding, and making an informal complaint to a supervisor.  Ray v. Henderson, 217 F.

20
     3d 1234, 12340 n.3 (9th Cir. 2000); Manatt v. Bank of America, NA, 339 F. 3d 792, 800 n.8 (9th
21

22   Cir. 2003); Miller v. Fairchild Indus., 885 F. 2d 498, 505 (9th Cir. 1989).  In this case, Plaintiffs

23   engaged in protected activity when they complained to supervisors of Clark's "island monkey"

24   comments.  Plaintiff also engaged in protected activity when they filed his EEOC charge against

25   Calpac, DTS, and MCI, prior to their discharge.  Calpac does not contest this in its motions.

26        Regarding the second prong in the retaliation test, the United States Supreme Court in

27   Burlington N. & Santa Fe Ry. Co., --- U.S. ---, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006),

28

Henry G. Van Meter, et al., v. Calpac, et al.                                                    11
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.
Case 1:05-cv-00037    Document 386    Filed 08/10/2007    Page 11 of 23

clarified the law on which challenged action would sustain a claim for retaliation. The Court stated that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Id. (quoting Rochon v. Gonzalez, 438 F. 3d 1211, 1219 (D.C. Cir. 2006) (internal quotations omitted)). Whether a particular challenged action is materially adverse "will often depend upon the particular circumstances." Id.

Adverse employment actions include: transfers of job duties and undeserved performance ratings; dissemination of a negative job reference; exclusion from meetings, seminars, and positions to qualify for salary increases; a more burdensome work schedule; elimination of a flexible start-time policy, institution of "lockdown" procedures that made employees' work more cumbersome, and a disproportionate reduction in the plaintiff's workload and salary. Ray v. Henderson, 217 F. 3d 1234, 1241-44 (9th Cir. 2000). Reassignment of job duties where the new duties are more arduous and dirtier or less desirable or prestigious constitutes a materially adverse employment action. Burlington, 126 S. Ct. at 2416-17.

Here, shortly after Plaintiffs lodged their informal complaints with Calpac supervisors, Calpac instituted the new timecard policy which placed Plaintiffs on edge as he had to worry every morning if they had a job at Calpac. Also, Plaintiffs were terminated from their employment within a few months after filing their EEOC charges, and while their charges were still pending against Calpac, DTS, and MCI. Furthermore, Harper testified that everything got harder after the workers made the first complaint to him regarding Clark's comments and that the working environment deteriorated. After Plaintiff filed EEOC charges, they experienced changes in their employment, such as the reassignment of duties for Nauta and Babauta, loss of Nauta's base privileges, and Yee's instruction to operate a machine in an improper way or else face

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

12

Case 1:05-cv-00037    Document 386    Filed 08/10/2007    Page 12 of 23

termination and physical harm. Calpac does not address or dispute these allegations in its motion, with the exception of Plaintiffs' terminations. In fact, Calpac does not dispute that Plaintiffs' terminations are adverse employment actions. Yee also was given a written citation from Calpac for improper driving, when he had never been so cited before and Calpac had no prior rule prohibiting the manner of his alleged improper driving. (Second Lujan Decl. Ex. 3 at 87-90.) Furthermore, Yee claims that he was not driving in any improper manner and that Calpac simply asked him to sign the memo regarding the violation and never asked him whether he committed the violation. (Id.)

As to the third factor, the Ninth Circuit has held that a plaintiff can establish causation with "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F. 2d 1371, 1376 (9th Cir. 1987). Mere temporal proximity alone may be sufficient evidence of causality to establish a prima facie case of retaliation, but the temporal proximity must be very close. Breeden, 532 U.S. at 273. To show a causal link exclusively on the basis of temporal proximity, he plaintiff must demonstrate that the challenged action took place "close on the heels" of the protected activity. Ray, 217 F. 3d at 1244. A court will find temporal proximity more readily if EEOC investigations are pending when the challenged action takes place. Yartzoff, 809 F. 2d at 1376.

In this case, Clark made his discriminatory remarks during the period around September through late October 2004. Shortly after these incidents, Plaintiffs reported Clark's "island monkey" or "monkey" comments to supervisors. In fact, Harper acknowledges that workers complained to him about Clark's statements and that each time he reported the complaints to Healy and also told Healy who was complaining. Thus, Calpac clearly knew about Plaintiffs' complaints. Furthermore, shortly after the first of the complaints, Calpac retaliated by instituting

Henry G. Van Meter, et al., v. Calpac, et al.                                                    13
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

Case 1:05-cv-00037   Document 386   Filed 08/10/2007   Page 13 of 23

the timecard policy. Then, shortly after filing EEOC charges, Plaintiffs experienced changes in their employment, Nauta lost his base pass, and Yee was cited for the first time for an act which was not previously prohibited and threatened with termination and physical violence if he did not perform what he considered to be an improper act. Plaintiffs were then fired within a few months of the filing of their EEOC charges. Calpac's retaliatory motives are also evident in the fact that Healy, an owner and the highest-ranking employee of Calpac, presented John Cruikshank of Marianas Cablevision with a list of Calpac workers, including Plaintiffs, and asked him to investigate them for illegal activities, such as stealing cable. (Lujan Decl. Ex. 3 at 32-33, 65.) Therefore, the causation element has been established, or at least genuine issues of material fact exist to preclude summary judgment. Calpac does not challenge causation in its motion.

As stated earlier, once a prima facie case has been shown, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Stegall, 350 F. 3d at 1066. Here, Calpac stated that Plaintiffs Babauta and Nauta were terminated because the MCI project was near completion, and that Yee was fired for not showing up to work.

However, Plaintiffs submits that Calpac's stated reasons are pretext. Around the same time as Plaintiffs' terminations, other co-workers who complained and filed EEOC also were terminated, while other workers who did not file EEOC charges kept their jobs. (See co-Plaintiffs' oppositions to Calpac motion for summary judgment and supporting declarations.) Furthermore, Calpac was awarded the MCI maintenance following the completion of the project and therefore had additional work for employees. (Second Lujan Decl. Ex. 1d at 67, 68, 71-73.) Also, Calpac workers would be seen working on the side of the road following their terminations.

Therefore, genuine issues of material fact exist and so Calpac is not entitled to summary judgment on Plaintiffs' retaliation claim.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

14

Case 1:05-cv-00037   Document 386   Filed 08/10/2007   Page 14 of 23

## III. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendant Calpac's Motions for Summary Judgment.

**RESPECTFULLY SUBMITTED** this 10th day of August, 2007, in Hagåtña, Guam.

**LUJAN AGUIGUI & PEREZ** LLP

By: _____
**DELIA LUJAN**
*Attorneys for Plaintiffs*

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls. Am. Opp'n to Def. Calpac's Mot. Summ. J.

15

Case 1:05-cv-00037     Document 386     Filed 08/10/2007     Page 15 of 23

# EXHIBIT 1

C Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **AMENDED** |
| ☒ EEOC | 378-2005-00195 |

and EEOC

State or local Agency, if any

| | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Name (Indicate Mr., Ms., Mrs.) | (671) 637-3150 | 06-23-1960 |

Mr. John Nauta                           City, State and ZIP Code

Street Address

92 Chalan Apacha Sagan Linanyan Dededo, GU 96929

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | 15 - 100 | (671) 646-3646 |

CAL PAC                           City, State and ZIP Code

Street Address

P.O. Box 8950, Tamuning, GU 96931

| | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Name | | |

Street Address                    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 09-25-2004 | 12-20-2004 |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

## AMENDED

I was hired by Cal Pac on February 4, 2004, to work on an installation project of underground cable in Guam for MCI

On September 25, 2004, I was harassed by Dennis Clark, representative of MCI and employee of Dynamic Technical Services. Dennis Clark made racially derogatory comments to me and a group of fellow co-workers by referring to us as a "bunch of monkeys."

On December 20, 2004, John Healy, Owner of Cal Pac, held a meeting in which he announced that workers would be immediately fired for notifying any authorities or agencies concerning their complaints of discrimination.

I believe that I have been discriminated against due to my racial background, Pacific Islander, and national origin, Chamorro. I further believe that non-Caucasian employees as a class have been subjected to discrimination and retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 2/7/05 _____ _[signature]_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date            Charging Party Signature | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 378-2005-00195 |
| | | and EEOC |

| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Mr. John Nauta | (671) 637-3150 | 06-23-1960 |

| Street Address | City, State and ZIP Code |
|---|---|
| 192 Chalan Apacha Sagan Linanyan Dededo, GU 96929 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CAL PAC | 15 - 100 | (671) 646-3646 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 8950, Tamuning, GU 96931 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [X] RACE  [X] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN<br>[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.) | Earliest: **09-25-2004**   Latest: **12-20-2004**<br>[X] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on February 4, 2004, to work on an installation project of underground cable in Guam for MCI.

On September 25, 2004, I was harassed by Dennis Clark, Superintendent of MCI. He made racially derogatory comments to me and a group of fellow co-workers by referring to us as a "bunch of monkeys."

On December 20, 2004, John Healy, Owner of Cal Pac, held a meeting in which he announced that workers would be immediately fired for notifying any authorities or agencies concerning their complaints of discrimination.

I believe that I have been discriminated against due to my racial background and national origin. I further believe that Non-Caucasian employees as a class have been subjected to discrimination and retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *12/23/04*     *John T. B. Nauta*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

**LUJAN, UNPINGCO, AGUIGUI & PEREZ LLP**
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for John L.G. Nauta*

| | |
|---|---|
| JOHN L.G. NAUTA,<br><br>                    Claimant,<br><br>                  vs.<br><br>CALPAC,<br><br>                    Respondent. | EEOC Charge No. _____<br><br><br>**EEOC DECLARATION OF<br>JOHN L.G. NAUTA** |

I, JOHN L.G. NAUTA, hereby declare and state as follows:

1.  My personal information is as follows:

    a.  Address:  192 Chalan Apacha Sagan Linanyan, Dededo, GU 96929;

    b.  Telephone #:  (671) 637-3150 or 868-2879 (cell);

    c.  Date of Birth:  June 23, 1960;

    d.  SS#:  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.

2.  I am represented by the law firm of Lujan, Unpingco, Aguigui & Perez LLP, which includes Attorney Delia S. Lujan and which has the following contact information:

    a.  Address:  Pacific News Building, Suite 300, 238 Archbishop Flores Street, Hagåtña, Guam 96910;

    b.  Telephone #:  (671) 477-8064/5;

    c.  Fax #:  (671) 477-5297.

3.  The Respondent is CALPAC, which has the following contact information:

    a.  Address:  P.O. Box 8950, Tamuning, GU 96931;

b. Telephone #: (671) 646-3645/6;

c. Fax #: (671) 646-3643.

4. The CALPAC contact person is owner John Healy, who may be contacted at:

a. Address: P.O. Box 8950, Tamuning, GU 96931;

b. Telephone #: (671) 646-3645/6.

5. The approximate number of employees working at CALPAC ranges from 15 to 100.

6. The Earliest Date of Violation is December 2004.

7. The Latest Date of Violation is approximately May 2005.

8. The following is my statement:

Beginning some time after the filing of my EEOC charges of discrimination against CALPAC, MCI, and Dynamic Technical Services, I was forced to endure a hostile work environment and retaliated against for filing the charges. For example, before the filing of the charges, I got along well with CALPAC upper management and supervisors. However, after the charges were filed, when I would greet the upper management or supervisors, I was blatantly ignored. Also, upper management and supervisors would exclude me from conversations, while they talked to everyone else. Likewise, while working on the MCI project, Dennis Clark, from Dynamic Technical Services, would also blatantly ignore me and exclude me from conversations, while he talked with everyone else except those who filed the charges. Also, I and the other employees who filed charges were not given military IDs or other authorization to enter the base, but all the other CALPAC employees got such authorization.

Furthermore, some time after filing my charges of discrimination with the EEOC against CALPAC, MCI, and Dynamic Technical Services, CALPAC held a meeting with employees, including myself, where the employees were told not to communicate with former CALPAC employees who were picketing against CALPAC in protest of their termination of employment.

At the meeting, the employees were told that they would be terminated if they communicated with the protesters.

During the period from about April 11 to May 5, 2005, I was told by CALPAC operations manager Russell Hatfield to be calling the CALPAC office everyday after 4:00 P.M. to check if I am scheduled to report to work the next day.

On or around May 5, 2005, I was told by Mr. Hatfield to contact Mr. William Ward, the general manager of CALPAC. I contacted Mr. Ward and he told me to come into the CALPAC office and pick up my paycheck. When I came into the office I was handed my paycheck and a letter of termination from the company. Mr. Ward told me that I was no longer an employee of CALPAC. Before this time, I did not receive any notice or indication that I would be terminated. Also, CALPAC never explained to me the reason for my termination.

During the period of about 3 ½ weeks before my termination, my hours were greatly reduced as I worked only a total of about 14.5 hours. During this same time, other employees were working 40 hours a week. Also, I was a laborer and truck driver, but CALPAC was making heavy equipment mechanics do the duties of a laborer and truck driver, while I was not given work hours.

It is my opinion and belief that the reduction of my work hours, other adverse treatment I experienced, and my ultimate termination are a result of the charges of discrimination I previously filed with the EEOC against CALPAC, MCI, and Dynamic Technical Services.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

8/30/05
Date

JOHN L.G. NAUTA

3

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 378-2005-00213 |

and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone No. (incl Area Code) | Date of Birth |
|---|---|---|
| Mr. John Nauta | (671) 637-3150 | 06-23-1960 |

Street Address                    City, State and ZIP Code

192 Chalan Apacha Sagan Linanyan Dededo, GU 96929

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MCI | 500 or More | |

Street Address                    City, State and ZIP Code

2400 Glenville Dr., Richardson, TX 75082

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 09-25-2004 | 12-20-2004 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Cal Pac on February 4, 2004, to work on an installation project of underground cable in Guam for Respondent, MCI.

On September 25, 2004, I was harassed by Dennis Clark, Superintendent of MCI. He made racially derogatory comments to me and a group of fellow co-workers by referring to us as a "bunch of monkeys."

On December 20, 2004, John Healy, Owner of Cal Pac, held a meeting in which he announced that workers would be immediately fired for notifying any authorities or agencies concerning their complaints of discrimination.

I believe that I have been discriminated against due to my racial background and national origin. I further believe that Non-Caucasian employees as a class have been subjected to discrimination and retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 12/27/04              Date              Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | **AMENDED** |
| ☒ EEOC | **378-2005-00213** |
| | and EEOC |

| State or local Agency, if any | | |
|---|---|---|

| | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Name (Indicate Mr., Ms., Mrs.)<br>**Mr. John Nauta** | **(671) 637-3150** | **06-23-1960** |

Street Address
**192 Chalan Apacha Sagan Linanyan Dededo, GU 96929**    City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**MCI** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code) |
|---|---|---|

Street Address
**2400 Glenville Dr., Richardson, TX 75082**    City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address    City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **09-25-2004** | **12-20-2004** |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

## AMENDED

I was hired by Cal Pac on February 4, 2004, to work on an installation project of underground cable in Guam for MCI.

On September 25, 2004, I was harassed by Dennis Clark, representative of MCI and employee of Dynamic Technical Services. Dennis Clark made racially derogatory comments to me and a group of fellow co-workers by referring to us as a "bunch of monkeys."

On December 20, 2004, John Healy, Owner of Cal Pac, held a meeting in which he announced that workers would be immediately fired for notifying any authorities or agencies concerning their complaints of discrimination.

I believe that I have been discriminated against due to my racial background, Pacific Islander, and national origin, Chamorro. I further believe that non-Caucasian employees as a class have been subjected to discrimination and retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/7/05<br>Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |