VINCENT LEON GUERRERO
BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

*Attorneys for Defendants California Pacific Technical Services LLC*

FILED
DISTRICT COURT OF GUAM
AUG 13 2007
JEANNE G. QUINATA
Clerk of Court

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA, <br><br> Plaintiffs, <br><br> vs. <br><br> CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10, <br><br> Defendants. | CIVIL CASE NO. CIV05-00037 <br><br> **REPLY TO JOSEPH J. HERNANDEZ'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiff **JOSEPH J. HERNANDEZ** ("Plaintiff"), attempts to create genuine issues of material fact to overcome Defendant **CALIFORNIA PACIFIC TECHNICAL SERVICES'** ("CalPac") motion for summary judgment. For reasons hereinafter discussed, Plaintiff has failed to raise either genuine issues or issues of material fact, and CalPac is, therefore, entitled to summary judgment as a matter of law.

As a precursor, Plaintiff's attempt to defeat summary judgment by introducing facts in his newly produced declaration is not permissible. The Ninth Circuit Court of Appeals has held that a party is not permitted to create issues of fact by an affidavit contradicting his prior deposition testimony. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

## UNDISPUTED FACTS[1]

Through his deposition, Plaintiff testified that he heard only four remarks made by Dennis Clark ("Clark"). It is not disputed that Clark was not an employee of CalPac. Plaintiff does not dispute that the purported **"remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark**. Only in his new declaration does Plaintiff assert contrary facts, which the *Radobenko* case does not permit.

Plaintiff does not dispute that he is still listed on CalPac's books as an employee. **Plaintiff testified that an allegation which is contained in his Amended Complaint (and his Complaint) is wrong**. He now concedes that he was never terminated and indeed just decided not to return to work. He does not dispute he went on disability leave and never returned to CalPac to seek reactivation.

---

[1] Unless otherwise noted, all facts relied upon are those cited and support in CalPac's motion for summary judgment and supporting memorandum of points and authorities and declarations.

It is further undisputed that at least one employee, Norman Santos, filed a complaint with the EEOC for the exact same reasons complained by Plaintiff. Plaintiff does not dispute, nor can he, that Mr. Santos was not discharged, laid off, fired or otherwise retaliated against for making complaints, including his formal complaint to the EEOC, about Clark.

### A. CALPAC DID NOT DISCRIMINATE AGAINST PLAINTIFF

In order to state a claim for hostile environment, Plaintiff must show that: (1) he was subject to verbal or physical conduct based on race or national origin; (2) that the conduct was unwelcomed; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, (4th Cir. 2001), is a case involving a plaintiff resigned after he was referred to as a monkey. The district court granted summary judgment in favor of the employer which was later reversed. The Fourth Circuit noted that "Stickell **habitually** called Spriggs a 'monkey,' 'dumb monkey,' and '**nigger**.'" *Spriggs* at 182. In *Spriggs*, the daily use of the terms "monkey" "dumb monkey" and "nigger" led the Fourth Circuit to believe there was a question of fact. Unlike *Spriggs*, where there were daily and habitual racial comments by Spriggs' supervisor, Plaintiff heard three

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 969 G-5205
TELEPHONE (671) 477-7857

- 3 -

remarks by a non-employee of CalPac.

In case decided last year involving the use of the term "monkey," the Fourth Circuit affirmed the grant of defendants' 12(b)(6) motion in favor of the employers. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006) *cert. denied* 127 S.Ct. 2036 (2007), involved an employee hired by Alternative Resources Corporation and detailed to IBM Corp. Plaintiff, while in the network room of IBM, heard his co-worker exclaim "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes f-k them." *Jordan* at 336. Plaintiff also alleged that two co-workers heard the co-worker make similar offensive comments many times before. *Jordan* at 337. The Fourth Circuit agreed with the plaintiff that "the remark reflected unacceptable racism and should not have been made", but held that "the complaint did not describe a work place **permeated by racism**, by threats of violence, by improper interference with work or by conduct resulting in psychological harm." (Emphasis added.) *Jordan* at 340.

Plaintiff claims he heard Clark, who was not employed by CalPac, utter the word "monkey" or the phrase "island monkey" no more than four times. The purported remarks were no longer made after the superintendent of CalPac intervened. Co-plaintiff Van Meter, the recipient of most of the complaints, recalls the statement being made only twice. Although concededly rude, if

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE: (671) 477-7857

- 4 -

made, the remarks were not severe or pervasive. As such, Plaintiff's claim for hostile environment must fail.[2]

### B. CALPAC DID NOT AUTHORIZE OR CONDONE THE ACTIONS OF CLARK

Assuming harassment above, liability for third party harassment requires a showing that CalPac authorized or condoned the action. *Little v. Windermere, Inc.*, 301 F.3d 958 (9th Cir. 2002). John Healy, vice-president, whose duties included field operations, was unaware of the purported comments until December, 2004.[3] William Ward, general manager of CalPac, was unaware of the purported comments until the December meeting. The only manager aware of the purported comments was Harper. It is undisputed, however, that Harper intervened and the comments would later cease. Clearly, CalPac did not condone nor authorize the statements purportedly made.

### C. RETALIATION CLAIM

In order to prevail in a Title VII case, a plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such

---

[2] Plaintiff's statements which contradict Plaintiff's prior testimony (to include the insinuation that there were more than four incidents recalled and that reports were made after each incident) should be disregarded. See, Radebenko, supra.

[3] In Plaintiff's opposition. Plaintiff made references to exhibits attached to Ms. Lujan's declaration. The references, however, are not material to the instant motion. For example, references to vacations in Palau (disputed by Healy) are not material to whether the purported remarks stopped after Harper's intervention. Cruikshank testified that he was not sure of the dates and stated "I can't recall, as of today, I can't recall whether it was at that meeting or a subsequent meeting." (*See* Cruikshank deposition at p. 64. attached to Declaration of Delia Lujan in Support of Plaintiffs' Opposition to Defendant Calpac's Motion for Summary Judgment.)

a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000). In order to show a pretext, a plaintiff must show that the discrimination more than likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence. *Vasquez v. County of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2004).

As noted above, Plaintiff does not dispute that at least one worker, who filed a complaint concerning Clark's statements (i.e. similarly situated), was not terminated or punished. Clearly, CalPac was not motivated to retaliate against employees that made or filed complaints.

Recognizing his retaliation claim for unlawful termination is no longer viable, Plaintiff now complains that CalPac was working him (and his co-workers who complained) harder. Co-plaintiff Jerry Apodaca testified everyone was treated the same. Don Harper testified that the duties assigned to Plaintiff were not out of the ordinary for Plaintiff's position. Plaintiff himself testified that the duties of a laborer included "pulling fiber, pulled cables, trench twenty-nine inches down...mix cement, cut grass. That's what they had me do there: lift cement bags, sand bags, take out the machine from the truck..." *See* Hernandez depo. at pp. 53-54 attached hereto as Exhibit "A."

CalPac's action of assigning Plaintiff was legitimate and nondiscriminatory. Clearly, Plaintiff failed to show that that CalPac's action was a pretext.

## CONCLUSION

Plaintiff's claim that he was subjected to numerous "offensive" statements is contradicted by his deposition testimony, wherein he stated he heard four statements. Co-plaintiff, Robert Cruz, thought the environment at CalPac was "pretty good". Co-Plaintiff Yee thought CalPac treated him with respect.

Plaintiff's conjecture and embellishment of facts fail to create any genuine issues of material fact. Since CalPac has filed a properly supported motion for summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 252 (1986). CalPac respectfully submits that Plaintiff failed to do so.

//

//

//

Consequently, there exist no genuine issues of material facts in dispute, and that CalPac is entitled to summary judgment as a matter of law.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2007.

BLAIR STERLING JOHNSON
 MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION

BY: *Vincent Leon Guerrero* (signature)
**VINCENT LEON GUERRERO**
*Attorneys for Defendant California Pacific Technical Services LLC*

**EXHIBIT "A"**

V63:49\08130-03
G:\WORDDOC\PLD\VLG\210J-REPLY TO OPPO TO MSJ (J. HERNANDEZ)
RE VAN METER V. CALPAC.DOC

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

- 8 -

# EXHIBIT "A"

HENRY G. VAN METER, JERRY APODACA, ) Civil Case No. CIV05-00037
JR., JOSEPH J. HERNANDEZ, JOSEPH )
T. MENDIOLA, LARRY L. CHARFAUROS, )
ANTHONY C. ARRIOLA, ROBERT B. )
CRUZ, ROLAND F. MENDIOLA, JAMES S. )
YEE, TEDDY B. CRUZ, JESSE B. CRUZ, )
JOHN L.G. NAUTA, and JOHN P. )
BABAUTA, )
           Plaintiffs, )
                    )
      vs. )
                    )
CALPAC, DYNAMIC TECHNICAL )
SERVICES, MCI, JOHN HEALY, DENNIS )
CLARK, WILLIAM WARD, JAI JAMES and )
DOES 1 through 10, )
           Defendants. )



## DEPOSITION OF JOSEPH HERNANDEZ

Taken on Behalf of the Defendants

      BE IT REMEMBERED That, pursuant to the Guam Rules of Civil Procedure, the deposition of JOSEPH HERNANDEZ was taken before Veronica F. Reilly, Certified Shorthand Reporter, on Thursday, the 8th day of February 2007, at 10:00 a.m. in the Law Offices of Blair Sterling Johnson Martinez & Leon Guerrero, Suite 1008, Pacific News Building, 238 Archbishop Flores Street, Hagatna, Guam.

Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter
Tel: 671-734-1041 * Fax: 671-734-1045
E-mail: veronica.reilly@hotmail.com

Case 1:05-cv-00037   Document 393   Filed 08/13/2007   Page 10 of 13

1  hurt pretty bad, man, there, so I couldn't really walk.
2  BY MR. LEON GUERRERO: (CONTINUING)
3      Q.   Did you ever protest, to your recollection, DTS?
4      A.   I only protest a few times because of my injury,
5  that I recall. I stopped by and gave the guys drink and that
6  was it. I went home because of my injury. I never stayed
7  there no longer because of the pain *nai*. I had bad pain. It
8  was sharp pain in my lower back.
9             **MR. LEON GUERRERO:** I don't think I have any
10 questions.
11            **MS. McDONALD:** Can we take a quick break?
12            (Off the record.)
13            (Back on the record.)
14            CROSS-EXAMINATION
15 BY MS. McDONALD:
16     Q.   Mr. Hernandez, you stated you were a laborer at
17 CalPac; is that correct?
18     A.   Yes.
19     Q.   Could you describe what you did as a laborer?
20     A.   Pulled fiber, pulled cables, trench twenty-nine
21 inches down.
22     Q.   What does that involve?
23     A.   Fiberoptic cables.
24     Q.   What do you mean by trench though?
25     A.   You take -- you get the shovel and you --

1   Q.   Okay.  Anything else?
2   A.   Mix cement, cut grass.  That's what they had me do
3  there:  Lift cement bags, sand bags, take out the machine
4  from the truck and that's the one to pull the cable through
5  the pipes.  That's it.
6   Q.   Okay.  And those are all the activities that you did
7  before you started to complain about Dennis Clark's
8  statements?
9   A.   Yes.
10  Q.   Okay.  How many other laborers would be on a site
11 with you doing the same things that you are doing?
12  A.   Be like six of us.  Sometimes four, sometimes three.
13  Q.   And how many of the other laborers would be
14 Chamorro?
15  A.   Four, five.  Most of us will be like Chamorro on the
16 field.
17  Q.   Okay.  Were there any non-Chamorro laborers?
18  A.   Yeah, they'll be by the machine.  They'll be
19 controlling the machine.
20  Q.   Who would those people be?
21  A.   I really don't know their names, but they're the
22 ones that just press the buttons and, you know, watch.  The
23 easy work.
24  Q.   Do you know what their race or nationality would be?
25  A.   White.

# REPORTER'S CERTIFICATE

DISTRICT COURT OF GUAM   )

     I, Veronica F. Reilly, Certified Shorthand Reporter, hereby certify that Joseph Hernandez personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 151, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

     Witness my hand at Barrigada, Guam, this 9th day of March 2007.

_____
Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter