VINCENT LEON GUERRERO
BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE: (671) 477-7857

*Attorneys for Defendants California Pacific Technical Services LLC*

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. CIV05-00037<br><br>**REPLY TO JOSEPH T. MENDIOLA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff **JOSEPH T. MENDIOLA** ("Plaintiff"), attempts to create genuine issues of material fact to overcome Defendant **CALIFORNIA PACIFIC TECHNICAL SERVICES'** ("CalPac") motion for summary judgment. For reasons hereinafter discussed, Plaintiff has failed to raise either genuine issues or issues of material fact, and CalPac is, therefore, entitled to summary judgment as a matter of law.

As a precursor, Plaintiff's attempt to defeat summary judgment by introducing facts in his newly produced declaration is not permissible. The Ninth Circuit Court of Appeals has held that a party is not permitted to create issues of fact by an affidavit contradicting his prior deposition testimony. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

## UNDISPUTED FACTS[1]

Through his deposition, Plaintiff testified that he heard only three remarks made by Dennis Clark ("Clark"). It is not disputed that Clark was not an employee of CalPac. Plaintiff does not dispute that the purported **"remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark**. Only in his new declaration does Plaintiff assert contrary facts, which the *Radobenko* case does not permit.

It is further undisputed that at least one employee, Norman Santos, filed a complaint with the EEOC for the exact same reasons complained by Plaintiff. Plaintiff does not dispute, nor can he, that Mr. Santos was not discharged, laid off, fired or otherwise retaliated against for making complaints, including his formal complaint to the EEOC, about Clark.

---

[1] Unless otherwise noted, all facts relied upon are those cited and support in CalPac's motion for summary judgment and supporting memorandum of points and authorities and declarations.

- 2 -

### A. CALPAC DID NOT DISCRIMINATE AGAINST PLAINTIFF

In order to state a claim for hostile environment, Plaintiff must show that: (1) he was subject to verbal or physical conduct based on race or national origin; (2) that the conduct was unwelcomed; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, (4th Cir. 2001), is a case involving a plaintiff resigned after he was referred to as a monkey. The district court granted summary judgment in favor of the employer which was later reversed. The Fourth Circuit noted that "Stickell **habitually** called Spriggs a 'monkey,' 'dumb monkey,' and **'nigger.'**" *Spriggs* at 182. In *Spriggs*, the daily use of the terms "monkey" "dumb monkey" and "nigger" led the Fourth Circuit to believe there was a question of fact. Unlike *Spriggs,* where there were daily and habitual racial comments by Spriggs' supervisor, Plaintiff heard three remarks by a non-employee of CalPac.

In case decided last year involving the use of the term "monkey," the Fourth Circuit affirmed the grant of defendants' 12(b)(6) motion in favor of the employers. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006) *cert. denied* 127 S.Ct. 2036 (2007), involved an employee hired by Alternative

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 969 10-5205
TELEPHONE (671) 477-7857

Resources Corporation and detailed to IBM Corp. Plaintiff, while in the network room of IBM, heard his co-worker exclaim "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes f-k them." *Jordan* at 336. Plaintiff also alleged that two co-workers heard the co-worker make similar offensive comments many times before. *Jordan* at 337. The Fourth Circuit agreed with the plaintiff that "the remark reflected unacceptable racism and should not have been made", but held that "the complaint did not describe a work place **permeated by racism**, by threats of violence, by improper interference with work or by conduct resulting in psychological harm." (Emphasis added.) *Jordan* at 340.

Plaintiff claims he heard Clark, who was not employed by CalPac, utter the word "monkey" or the phrase "island monkey" no more than three times. The purported remarks were no longer made after the superintendent of CalPac intervened. Co-plaintiff Van Meter, the recipient of most of the complaints, recalls the statement being made only twice. Although concededly rude, if made, the remarks were not severe or pervasive. As such, Plaintiff's claim for hostile environment must fail.[2]

**B.    CALPAC DID NOT AUTHORIZE OR CONDONE THE ACTIONS OF CLARK**

Assuming harassment above, liability for third party harassment requires a showing that CalPac authorized or condoned

---

[2] Plaintiff's statements which contradict Plaintiff's prior testimony (to include the insinuation that there were more than three incidents recalled and that reports were made after each incident) should be disregarded. *See, Radebenko, supra*.

- 4 -

the action. *Little v. Windermere, Inc.*, 301 F.3d 958 (9th Cir. 2002). John Healy, vice-president, whose duties included field operations, was unaware of the purported comments until December, 2004.[3] William Ward, general manager of CalPac, was unaware of the purported comments until the December meeting. The only manager aware of the purported comments was Harper. It is undisputed, however, that Harper intervened and the comments would later cease. Clearly, CalPac did not condone nor authorize the statements purportedly made.

### C. RETALIATION CLAIM

In order to prevail in a Title VII case, a plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). In order to show a pretext, a plaintiff must show that the discrimination more than likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence.

---

[3] In Plaintiff's opposition, Plaintiff made references to exhibits attached to Ms. Lujan's declaration. The references, however, are not material to the instant motion. For example, references to vacations in Palau (disputed by Healy) are not material to whether the purported remarks stopped after Harper's intervention. Cruikshank testified that he was not sure of the dates and stated "I can't recall, as of today, I can't recall whether it was at that meeting or a subsequent meeting." (Cruikshank deposition at 64.)

- 5 -

*Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004).

As noted above, Plaintiff does not dispute that at least one worker, who filed a complaint concerning Clark's statements (i.e. similarly situated), was not terminated or punished. Clearly, CalPac was not motivated to retaliate against employees that made or filed complaints.

In addition, although Plaintiff has his opinion[4] as to why he was laid-off, there is no showing that Plaintiff's action was for any reason other than a legitimate, non-discriminatory reason. Plaintiff did not dispute that the MCI contract was CalPac's only major project at the time of his termination. Although Plaintiff may have believed that the MCI contract was not near completion, elicited testimony explained that the project was being downsized and that employees were retained based on their skill level. (See Hatfield Depo. at p. 75, attached to the Memorandum of Points and Authorities in Support of Motion for Summary Judgment Re Henry Van Meter.)

Further, although Plaintiff "believes" he was terminated because of the complaints,[5] Co-plaintiff Van Meter testified in response to a query about whether there were other employees who did not complain and that were laid off:

---

[4] Claims of time clock abuse etc. are not material or relevant since the time clock rules applied to all employees. Plaintiff's beliefs simply are not facts.
[5] See Plaintiff's Declaration at ¶ 17. But see Mendiola depo. at 46 attached as Exhibit "A" (had no idea whether employees who did <u>not</u> complain were fired).

- 6 -

> **I don't know** because there's a lot of people that got terminated because they didn't do a good job. There's a lot of people there that came in late and they lost – you know, **there's so many** things that – **reasons why they got laid off.    I don't know.**

(Emphasis added.)(Van Meter Depo. at p. 63).

Clearly, Plaintiff failed to show that that his discharge was a pretext.

## CONCLUSION

Plaintiff's claim that he was subjected to numerous "offensive" statements is contradicted by his deposition testimony, wherein he stated he heard three statements. Co-plaintiff, Robert Cruz, thought the environment at CalPac was "pretty good". Co-Plaintiff Yee thought CalPac treated him with respect.

Plaintiff's conjecture and embellishment of facts fail to create any genuine issues of material fact. Since CalPac has filed a properly supported motion for summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 252 (1986). CalPac respectfully submits that Plaintiff failed to do

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

so. Consequently, there exist no genuine issues of material facts in dispute, and that CalPac is entitled to summary judgment as a matter of law.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2007.

                      **BLAIR STERLING JOHNSON**
                      **MARTINEZ & LEON GUERRERO**
                      A PROFESSIONAL CORPORATION

                      BY *Vincent Leon Guerrero* (signature)
                      **VINCENT LEON GUERRERO**
                      *Attorneys for Defendant California Pacific Technical Services LLC*

**EXHIBIT "A"**

V03:49\08130-03
G:\WORDDOC\PLD\VLG\210T-REPLY TO OPPO TO MSJ (J. MENDIOLA) RE
VAN METER V. CALPAC.DOC

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

# EXHIBIT "A"

```
         IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY         ) CASE NO. CIV05-00037
APODACA, JR., JOSEPH J.           )
HERNANDEZ, JOSEPH T. MENDIOLA,    )
LARRY L. CHARFAUROS, ANTHONY      )
C. ARRIOLA, ROBERT B. CRUZ,       )   DEPOSITION OF
ROLAND F. MENDIOLA, JAMES S.      )  JOSEPH T. MENDIOLA
YEE, TEDDY B. CRUZ, JESSE B.      )     MAY 8, 2007
CRUZ, JOHN L.G. NAUTA, and        )
JOHN P. BABAUTA,                  )
                                  )
        Plaintiffs,               )
                                  )
   vs.                            )
                                  )
CALPAC, DYNAMIC TECHNICAL         )
SERVICES, MCI, JOHN HEALY,        )
DENNIS CLARK, WILLIAM WARD,       )
JAI JAMES and DOES 1 through      )
10,                               )
                                  )
        Defendants.               )
```

    The deposition of Joseph T. Mendiola, called by Defendants CalPac, John Healy and William Ward, pursuant to Notice and pursuant to the Federal Rules of Civil Procedure, taken at the law offices of Blair Sterling Johnson Martinez & Leon Guerrero, P.C., Suite 1008, Pacific News Building, 238 Archbishop Flores Street, Hagatna, Guam 96910, on Tuesday, the 8th day of May, 2007, at the hour of 9:10 o'clock a.m.

    That at said time and place, there transpired the following:

                        Cecilia F. Flores
                    Freelance Stenotype Reporter
                Tel: (671) 632-0727 • Fax: (671) 632-5353

---

A P P E A R A N C E S:

For the Plaintiffs          Delia B. Lujan, Esq.
                            LUJAN AGUIGUI & PEREZ
                            Suite 300, Pacific News Bldg.
                            238 Archbishop Flores Street
                            Hagatna, Guam 96910

For Defendant CalPac,       Vincent Leon Guerrero, Esq.
John Healy and William      BLAIR STERLING JOHNSON
Ward                        MARTINEZ & LEON GUERRERO
                            Suite 1008 Pacific News Building
                            238 Archbishop F.C. Flores Street
                            Hagatna, Guam 96910

For Defendant Dynamic       Arthur K. Smith, Esq.
Technical Services and      507 Prestige Circle
Dennis Clark                Allen, Texas 75002-3538

JOSEPH T. MENDIOLA: MAY 8, 2007

---

                    I N D E X

                  E X A M I N A T I O N

                    Direct   Cross   Redirect   Recross
By Mr. Leon Guerrero   4                111
By Mr. Smith                    71
By Ms. Lujan                           108

                    E X H I B I T S

                                              Page
Defendants':      Description:               Marked:
Exhibit A -   Termination Letter from CalPac    25
Exhibit B -   Charge of Discrimination filed    36
              with EEOC
Exhibit C -   EEOC Questionnaire                64

                    [COPY]

JOSEPH T. MENDIOLA: MAY 8, 2007

---

        HAGÅTÑA, GUAM: MAY 8, 2007; 9:10 o'clock A.M.

                    JOSEPH T. MENDIOLA
called by Defendant California Pacific Technical Services LLC to give his deposition at this time, being first duly sworn, was examined and testified on his oath, as follows:
                    DIRECT EXAMINATION
BY MR. LEON GUERRERO:
    Q. Okay, Mr. Mendiola, can you just state your full name for the record and spell your last name?
    A. Joseph Tenorio Mendiola; M-E-N-D-I-O-L-A.
    Q. Okay. This is the deposition of Joseph Mendiola in the District Court of Guam, Case Number 05-00037, Van Meter, et al. v. CalPac, et al. Present in our conference room is Mr. Mendiola along with his counsel, Delia Leon Guerrero.
    MS. LUJAN: Lujan.
    Q. (By Mr. Leon Guerrero) I'm sorry, Delia Lujan. And I'm Vince Leon Guerrero representing CalPac. Also present is Art Smith via telephone representing Dynamic Technical Services. I guess we'll just start with a little of your background. Mr. Mendiola, can you just start off with your education, how far did you go and that sort of stuff?
    A. I received my, uh, GED in 1980 -- 1993.
    Q. GED?

correct?

A.   I believe they did because it happened on three different occasions.

Q.   That was your opinion; correct?

A.   That is my belief.

Q.   I'm going to move down to paragraph 79. Can you read that please?

A.   The action by Defendants against Plaintiff J. Mendiola were retaliatory in nature and discriminatory as they were not applied to non-Pacific Islanders, non-Chamorros, non-Guamanians, individuals not of dark or brown color and individuals who did not complain about the discrimina -- discriminatory actions.

Q.   Mr. Mendiola, I'm looking at this and it seems to say that people were being treated differently if they were non-Pacific Islanders, so on and so forth; is that what you're trying to say?

A.   I would believe so because if they were, like I said, African-Americans and they heard or even Caucasians, and have heard the racial remarks they didn't make no complaints about it.

Q.   Okay, I'm a little confused. We're just going to go and break this down a little bit more, okay? You're saying that it was retaliatory in nature because they were not applied to non-Pacific Islanders; correct?

A.   Correct.

Q.   Now, what you're referring to as retaliation was the failure to do anything the three times.

A.   Um-hmm.

Q.   And your discharge; correct?

A.   Yes.

Q.   Okay. And you're saying that it would not apply to non-Pacific Islanders?

A.   Yes.

Q.   Let me ask you this; we'll start off with the discharge. Did you believe or do you know if people were discharged and they didn't make a complaint?

A.   No.

Q.   So you have no idea?

A.   No idea.

Q.   And so other people that were discharged prior to you being discharged on the 7th of December could have been discharged for -- and not have made any complaints; correct?

A.   I don't know.

Q.   But they could have been; you don't know?

A.   I don't know.

Q.   Back around June or July of 2004, how many laborers were employed by CalPac?

A.   I don't recall.

Q.   I want you to give me your best guess, best

estimate.

A.   If I was to - my best estimate would probably be between forty-five and sixty.

Q.   Laborers?

A.   Laborers themselves? You have to remember that CalPac had different departments, so I wouldn't know in which department if it was aerial if they would be considered laborers or would they be considered technicians, you know, but as far as like the underground part -

Q.   Okay, let's do the underground part.

A.   The underground, which would be laborers, I would believe there would be between twenty-five and thirty.

Q.   Okay. That was around June or July of 2004; right?

A.   I would believe so, yes.

Q.   And then around November people were being discharged? I mean one of the times they were being discharged; correct?

A.   I would believe so.

Q.   And I believe there was also a protest that took place -- actually that was in December; right?

A.   That would be in December.

Q.   Okay. Some people were discharged in November 2004; right?

A.   I would believe so.

Q.   Were people being discharged around October of

2004?

A.   I don't know.

Q.   Okay; going back to paragraph 79. So you don't know whether one of the bases that you were being retaliated against was because of complaints that were being made; correct? To the other people? I believe you were making a comparison in paragraph 79 between you and other people who didn't make complaints or you and non-Pacific Islanders. You see what I'm saying? Paragraph 79 says they were not applied to non-Pacific Islanders; correct?

A.   Right.

Q.   They were not applied to non-Chamorros; correct?

A.   Yes.

Q.   Not applied to non-Guamanians; correct?

A.   Yes.

Q.   Okay. They were not applied to individuals not of dark or brown color; correct?

A.   Um, with the exception of brown color, because I believe I'm brown skinned.

Q.   I'm trying to see what you're saying here. You're saying that it was not applied to individuals not of dark or brown color.

A.   I would say not of dark ... I'm not quite -- because, like I said, I consider myself brown skinned.

Q.   Okay.

A. You mean like filing it with EEOC?
Q. Well, do you know if he retracted his complaint?
A. Yes.
Q. He did retract his complaint?
A. I've heard he had done that, yes.
Q. Did you talk to him about that?
A. No.
Q. Okay. And then you were saying, to your knowledge, the people, I'm not sure if I got this right and you might have to correct me, people that complained were non-Chamorros or were Chamorros?
A. Were Chamorros.
Q. And the people that were not Chamorros had no problem working in CalPac; is that what you're saying?
A. Had no problem working at CalPac, I don't know.
Q. If they were non-Chamorro they would have no problems working at CalPac?
A. I don't know if they would have no problems.
    MR. LEON GUERRERO: Okay. I don't have any other questions. Thank you. Mr. Smith?
    MR. SMITH: Nothing else from me.
    MR. LEON GUERRERO: All right. Thank you very much. I think that's it.
    (Whereupon, at 11:55 o'clock a.m., the deposition was concluded.)

JOSEPH T. MENDIOLA: MAY 8, 2007

---

CERTIFICATE OF WITNESS

I, Joseph T. Mendiola, the deponent herein, do hereby certify that I have read, or had read to me, the foregoing typewritten pages 1 through 113 inclusive. My changes thereof, if any, have been noted on a separate sheet of paper, which I have signed, and which I understand will be appended to and made a part of this deposition. I certify that the same is now a true and correct transcript of my testimony.

_____
Joseph T. Mendiola
(Dated)_____

JOSEPH T. MENDIOLA: MAY 8, 2007

---

REPORTER'S CERTIFICATE

I, Cecilia F. Flores, Stenotype Reporter, do hereby certify the foregoing 113 pages to be a true and correct transcript of the stenographic shorthand notes and audio recording taken by me in the within-entitled and numbered case at the time and place as set forth herein.

Dated at Hagåtña, Guam, this 25th day of May, 2007.

_____
Cecilia F. Flores

JOSEPH T. MENDIOLA: MAY 8, 2007

---

CLERK'S CERTIFICATE

SUPERIOR COURT OF GUAM ) ss

I, Cecilia F. Flores, Special Deputy Clerk, Superior Court of Guam, do hereby certify that on the 8th day of May, 2007, at the hour of 9:10 o'clock a.m. there appeared before me Joseph T. Mendiola at the offices of Blair Sterling Johnson Martinez & Leon Guerrero, the witness herein, produced to give his deposition in the within-entitled and numbered Case No. CIV05-00037, in the District Court of Guam; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and a certified copy of the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review, corrections, if any, and execution.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand and seal of Court this 25th day of May, 2007.

_____
SPECIAL DEPUTY CLERK, SUPERIOR COURT OF GUAM

JOSEPH T. MENDIOLA: MAY 8, 2007