VINCENT LEON GUERRERO
BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE. (671) 477-7857

*Attorneys for Defendants California Pacific Technical Services LLC*



FILED
DISTRICT COURT OF GUAM
AUG 13 2007
JEANNE G. QUINATA
Clerk of Court

# IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,

Plaintiffs,

vs.

CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,

Defendants.

CIVIL CASE NO. CIV05-00037

**REPLY TO JESSE CRUZ' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff **JESSE B. CRUZ** ("Plaintiff"), attempts to create genuine issues of material fact to overcome Defendant **CALIFORNIA PACIFIC TECHNICAL SERVICES'** ("CalPac") motion for summary judgment. For reasons hereinafter discussed, Plaintiff has failed to raise either genuine issues or issues of material fact, and CalPac is, therefore, entitled to summary judgment as a matter of law.

ORIGINAL

As a precursor, Plaintiff's attempt to defeat summary judgment by introducing facts in his newly produced declaration is not permissible. The Ninth Circuit Court of Appeals has held that a party is not permitted to create issues of fact by an affidavit contradicting his prior deposition testimony. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

### UNDISPUTED FACTS[1]

Through his deposition, Plaintiff testified that he heard only **one** remark made by Dennis Clark ("Clark"). It is not disputed that Clark was not an employee of CalPac. Plaintiff does not dispute that the purported **"remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark.** Only in his new declaration does Plaintiff assert contrary facts, which the *Radobenko* case does not permit.

Plaintiff's "Amended Charge of Discrimination" avers that on October 22, 2004 (no other date was mentioned), Clark referred to him and his co-workers as a "island monkeys." Yet, Plaintiff's "EEOC Declaration" dated October 19, 2005 states that the earliest date of violation is December, 2004 or earlier.

The EEOC Declaration was prepared under penalty of perjury. Yet, the EEOC Declaration states that after he filed his Charge

---

[1] Unless otherwise noted, all facts relied upon are those cited and support in CalPac's motion for summary judgment and supporting memorandum of points and authorities and declarations.

- 2 -

of Discrimination (dated December 22, 2004) CalPac had their December 20, 2004 meeting. See Plaintiff's Exhibit "1" attached to Plaintiff's opposition. Plaintiff could not, therefore, be seeking relief for the Clark statements which purportedly occurred in September or October 2004.

Assuming he is now alleging discrimination based on Clark's remarks, Plaintiff does not dispute that the purported **"remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark.**

It is further undisputed that at least one employee, Norman Santos, filed a complaint with the EEOC for the exact same reasons complained by Plaintiff. Plaintiff does not dispute, nor can he, that Mr. Santos was not discharged, laid off, fired or otherwise retaliated against for making complaints, including his formal complaint to the EEOC, about Clark.

### A. CALPAC DID NOT DISCRIMINATE AGAINST PLAINTIFF

In order to state a claim for hostile environment, Plaintiff must show that: (1) he was subject to verbal or physical conduct based on race or national origin; (2) that the conduct was unwelcomed; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

- 3 -

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, (4th Cir. 2001), is a case involving a plaintiff resigned after he was referred to as a monkey. The district court granted summary judgment in favor of the employer which was later reversed. The Fourth Circuit noted that "Stickell **habitually** called Spriggs a 'monkey,' 'dumb monkey,' and **'nigger.'**" *Spriggs* at 182. In *Spriggs*, the daily use of the terms "monkey" "dumb monkey" and "nigger" led the Fourth Circuit to believe there was a question of fact. Unlike *Spriggs,* where there were daily and habitual racial comments by Spriggs' supervisor, Plaintiff heard three remarks by a non-employee of CalPac.

In case decided last year involving the use of the term "monkey," the Fourth Circuit affirmed the grant of defendants' 12(b)(6) motion in favor of the employers. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006) *cert. denied* 127 S.Ct. 2036 (2007), involved an employee hired by Alternative Resources Corporation and detailed to IBM Corp. Plaintiff, while in the network room of IBM, heard his co-worker exclaim "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes f-k them." *Jordan* at 336. Plaintiff also alleged that two co-workers heard the co-worker make similar offensive comments many times before. *Jordan* at 337. The Fourth Circuit agreed with the plaintiff that "the remark reflected unacceptable racism and should not have been made", but held that

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

- 4 -

"the complaint did not describe a work place **permeated by racism,** by threats of violence, by improper interference with work or by conduct resulting in psychological harm." (Emphasis added.) *Jordan* at 340.

Plaintiff claims he heard Clark, who was not employed by CalPac, utter the phrase "island monkey" no more than one time. The purported remark were no longer made after the superintendent of CalPac intervened. Co-plaintiff Van Meter, the recipient of most of the complaints, recalls the statement being made only twice.

It appears that Plaintiff's complaint was that he was treated differently and was told not to communicate with the protestors. Plaintiff, however, testified that the communication ban referred only to the time while the picketing took place. See Jesse Cruz depo. at 69 attached hereto as Exhibit "A."

Although concededly rude, if made, the remark was not severe or pervasive. As such, Plaintiff's claim for hostile environment must fail.[2]

B. **CALPAC DID NOT AUTHORIZE OR CONDONE THE ACTIONS OF CLARK**

Assuming harassment above, liability for third party harassment requires a showing that CalPac authorized or condoned the action. *Little v. Windermere, Inc.*, 301 F.3d 958 (9th Cir.

---

[2] Plaintiff's statements which contradict Plaintiff's prior testimony (to include the insinuation that there were more than one incident recalled and that reports were made after each incident) should be disregarded. *See, Radebenko, supra.* Through his declaration, Plaintiff once again claims that association with the people who protested would result in termination. *See, Radebenko, supra.*

- 5 -

Case 1:05-cv-00037   Document 395   Filed 08/13/2007   Page 5 of 19

2002). John Healy, vice-president, whose duties included field operations, was unaware of the purported comments until December, 2004.[3] William Ward, general manager of CalPac, was unaware of the purported comments until the December meeting. The only manager aware of the purported comments was Harper. It is undisputed, however, that Harper intervened and the comments would later cease. Clearly, CalPac did not condone nor authorize the statements purportedly made.

### C. RETALIATION CLAIM

In order to prevail in a Title VII case, a plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). In order to show a pretext, a plaintiff must show that the discrimination more than likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004).

---

[3] In Plaintiff's opposition, Plaintiff made references to exhibits attached to Ms. Lujan's declaration. The references, however, are not material to the instant motion. For example, references to vacations in Palau (disputed by Healy) are not material to whether the purported remarks stopped after Harper's intervention. Cruikshank testified that he was not sure of the dates and stated "I can't recall, as of today. I can't recall whether it was at that meeting or a subsequent meeting." (Cruikshank deposition at 64.)

- 6 -

As noted above, Plaintiff does not dispute that at least one worker, who filed a complaint concerning Clark's statements (i.e. similarly situated), was not terminated or punished. Clearly, CalPac was not motivated to retaliate against employees that made or filed complaints.

In addition, although Plaintiff has his opinion[4] as to why he was laid-off, there is no showing that Plaintiff's action was for any reason other than a legitimate, non-discriminatory reason. Plaintiff did not dispute that the MCI contract was CalPac's only major project at the time of his termination. Although Plaintiff may have believed that the MCI contract was not near completion, elicited testimony explained that the project was being downsized and that employees were retained based on their skill level. (See Hatfield Depo. at p. 75, attached to the Memorandum of Points and Authorities in Support of Motion for Summary Judgment Re Henry Van Meter.)

Plaintiff testified that when the MCI project was almost over, most, if not all laborers had reduced hours. J. Cruz depo. at 74-76 attached hereto as Exhibit "B." Also see *Radebenko, supra*. Plaintiff further claims he was stripped of his base privileges. In actuality, his "pass" expired resulting in him and others being "sponsored" into base.

---

[4] Claims of time clock abuse etc. are not material or relevant since the time clock rules applied to all employees. Plaintiff's beliefs simply are not facts.

- 7 -

Co-plaintiff Van Meter testified in response to a query about whether there were other employees who did not complain and that were laid off:

> **I don't know** because there's a lot of people that got terminated because they didn't do a good job. There's a lot of people there that came in late and they lost – you know, **there's so many** things that – **reasons why they got laid off. I don't know.** (Emphasis added.)(Van Meter Depo. at p. 63).

Clearly, Plaintiff failed to show that that his discharge and the actions of CalPac were pretexts.

## CONCLUSION

Plaintiff's claim that he was subjected to numerous "offensive" statements is contradicted by his deposition testimony, wherein he stated he heard one statement. Co-plaintiff, Robert Cruz, thought the environment at CalPac was "pretty good". Co-Plaintiff Yee thought CalPac treated them with respect.

Plaintiff's conjecture and embellishment of facts fail to create any genuine issues of material fact. Since CalPac has filed a properly supported motion for summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 252 (1986). CalPac respectfully submits that Plaintiff failed to do so. Consequently, there exist no genuine issues of material facts in dispute, and that CalPac is entitled to summary judgment as a matter of law.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2007.

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION

BY *(signature)*
**VINCENT LEON GUERRERO**
*Attorneys for Defendant California Pacific Technical Services LLC*

**EXHIBITS "A" and "B"**

V03:49:68\09130-03
G:\WORDDOC\PLD\VLG\210H-REPLY TO OPPO TO MSJ RE CRUZ, RE VAN METER V. CALPAC.DOC

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

- 9 -

# EXHIBIT "A"

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>        Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES and DOES 1 through 10,<br><br>        Defendants. | CIVIL CASE NO. CIV05-00037<br><br>COPY |

## DEPOSITION OF JESSE B. CRUZ

*Taken on Behalf of Defendant CalPac*

BE IT REMEMBERED That, pursuant to the Guam Rules of Civil Procedure, the deposition of JESSE B. CRUZ was taken before Cecille A. Flores, a Certified Shorthand Reporter, on the 20th day of April 2007, at 9:00 a.m. in the offices of Blair Sterling & Johnson.

Flores Court Reporting
Suite 2E, Jugo Building
618 Route 8
Barrigada, Guam 96913
Tel: (671) 734-1041 * Fax: (671) 734-1045

Case 1:05-cv-00037   Document 395   Filed 08/13/2007   Page 11 of 19

1  employment is concerned if you were to say hello to your
2  brothers?
3      A    Okay.
4      Q    Do you think you would get in trouble?
5      A    I believe so, while they were picketing.
6      Q    No, I'm talking about --
7      A    Generally?
8      Q    Just generally.  If you were to say hello to your
9  brother when you go to a family gathering, do you think you
10 would get in trouble?
11     A    (No response.)
12     Q    So you see what I'm saying?
13     A    Yes, I believe so.
14     Q    You believe you understand what I'm saying?
15     A    I understand what you're saying.
16     Q    So it would be okay for you to show up at a family
17 gathering, correct?
18     A    Right.
19     Q    He was just referring to taking sides as far as the
20 protest was concerned, correct?
21     A    Correct.
22     Q    Look at Paragraph 177.  Can you read that for the
23 record, please?
24     A    Me?
25     Q    Yes.

REPORTER'S CERTIFICATE

       I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that **JESSE B. CRUZ** personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 120, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

       Witness my hand at Barrigada, Guam this 23rd day of July 2007.

_____
Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

# EXHIBIT "B"

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. CIV05-00037<br><br>COPY |

### DEPOSITION OF JESSE B. CRUZ

*Taken on Behalf of Defendant CalPac*

BE IT REMEMBERED That, pursuant to the Guam Rules of Civil Procedure, the deposition of JESSE B. CRUZ was taken before Cecille A. Flores, a Certified Shorthand Reporter, on the 20th day of April 2007, at 9:00 a.m. in the offices of Blair Sterling & Johnson.

Flores Court Reporting
Suite 2E, Jugo Building
618 Route 8
Barrigada, Guam 96913
Tel: (671) 734-1041 * Fax: (671) 734-1045

Case 1:05-cv-00037    Document 395    Filed 08/13/2007    Page 15 of 19

```
 1      A    Get in?
 2      Q    A pass, yes.
 3      A    Henry will come back and pick me up.
 4      Q    Okay.  And then he said you were okay to go into the
 5   base?
 6      A    He just pick me up and he said we're going in.
 7      Q    It says CalPac did not provide authorization for you
 8   to enter the military base.  Is that what it says?  Am I
 9   reading it wrong?
10      A    180?
11      Q    I'm referring specifically to Line 11 and 12.  It
12   says Plaintiff J. Cruz, by failing to provide J. Cruz a
13   military identification or other authorization to enter the
14   military base."  Do you see that?
15      A    Yes.
16      Q    So they did in fact get you authorization to enter
17   the military base, correct?
18      A    I'm not too sure.
19      Q    But did you go into the military base then?
20      A    By Henry coming back out to pick me up to go in.
21      Q    The next paragraph refers to a reduction in hours,
22   correct?
23      A    Correct.
24      Q    When did this reduction in hours take place?
25      A    When the project -- when the project's almost over.
```

```
1     Q    This is around May 2005, correct?
2     A    April, May.
3     Q    So you're saying you were down to 10 hours per week,
4   correct?
5     A    Yes.
6     Q    It says other CalPac employees who did not file EEOC
7   charges were working 40 hours per week, correct?
8     A    Correct.
9     Q    Do you know if these people ever filed anything with
10  the EEOC?
11    A    I do not know.
12    Q    These people that you're referring to, they were or
13  they are Laborers also, correct?
14    A    Yes, I believe so.
15    Q    And about this time, most of the Laborers, if not
16  all, were of Chamorro descent, correct?
17    A    I don't know.
18    Q    Do you know who these people were?
19    A    I don't recall.
20    Q    What do you know about these people that were
21  working for 40 hours per week?
22    A    These are the people that's in the shop.  The shop
23  boys.
24    Q    So these aren't the Laborers then?
25    A    No.
```

1     Q     That's not the Laborers, correct?

2     A     Excuse me?

3     Q     They weren't the Laborers, correct?

4     A     Some -- no, they still some Laborer.

5     Q     And most, if not all of the Laborers, had reduced
6 hours, correct?

7     A     Correct.

8     Q     The next paragraph refers to undesirable tasks. Do
9 you see that?

10     A     Yes.

11     Q     What tasks are you referring to?

12     A     Well, when they're assigned, they go out and when
13 they do their task they will leave their mess. Everytime you
14 do your task, you're supposed to clean as you go.

15     Q     When you say "they," who are you referring to?
16 They.

17     A     They as the -- whoever was assigned to do that task.

18     Q     Okay. So are you saying the trenchers? Are you
19 using trenching as an example? Or the Laborers? Who are you
20 referring to as "they"?

21     A     The people that -- well, I will put the Laborer and
22 the Foreman that was performing that task.

23     Q     Can you give me an example of who these people are?
24 Just name them.

25     A     Just their name?

REPORTER'S CERTIFICATE

I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that **JESSE B. CRUZ** personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 120, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam this 23rd day of July 2007.

_____
Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA