VINCENT LEON GUERRERO
BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

*Attorneys for Defendants California Pacific Technical Services LLC*

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. CIV05-00037<br><br>**REPLY TO JOHN P. BABAUTA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff **JOHN P. BABAUTA** ("Plaintiff"), attempts to assert genuine issues of material fact to overcome Defendant **CALIFORNIA PACIFIC TECHNICAL SERVICES'** ("CalPac") motion for summary judgment. For reasons hereinafter discussed, Plaintiff has failed to raise either genuine issues or issues of material fact, and CalPac is, therefore, entitled to summary judgment as a matter of law.

As a precursor, CalPac is unaware of any new declarations filed by Plaintiff in support of his opposition. In the event Plaintiff does attempt to defeat summary judgment by introducing facts in a newly produced declaration, such would not be permissible. The Ninth Circuit Court of Appeals has held that a party is not permitted to create issues of fact by an affidavit contradicting his prior deposition testimony. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

## UNDISPUTED FACTS[1]

Through his deposition, Plaintiff testified that he heard only one remark made by Dennis Clark ("Clark"). It is not disputed that Clark was not an employee of CalPac. Plaintiff does not dispute that the purported "remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark.

Plaintiff's "Charge of Discrimination" avers that on October 25, 2004 (no other date was mentioned), Clark referred to him and his co-workers as "island monkeys." Yet, Plaintiff's "EEOC Declaration" dated October 21, 2005 states that the earliest date of violation is December, 2004. **Notably, (in response to Exhibit "1" attached to Plaintiff's joinder), Plaintiff testified that he attended the December 20, 2004 meeting and Healy did <u>not</u> say**

---

[1] Unless otherwise noted, all facts relied upon are those cited and support in CalPac's motion for summary judgment and supporting memorandum of points and authorities and declarations.

- 2 -

**employees would be punished if complaint were made.** See John Babauta depo. at 31 attached hereto as Exhibit "A."

The EEOC Declaration was prepared under penalty of perjury. Yet, the EEOC Declaration states that after he filed his Charge of Discrimination (dated April 05, 2005), CalPac had their December 20, 2004 meeting. See Plaintiff's Exhibit "1" attached to Plaintiff's joinder of opposition. Plaintiff could not, therefore, be seeking relief for the Clark statements which purportedly occurred in October, 2004.

Assuming he is now alleging discrimination based on Clark's remarks, Plaintiff does not dispute that the purported **"remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark.**

It is further undisputed that at least one employee, Norman Santos, filed a complaint with the EEOC for the exact same reasons complained by Plaintiff. Plaintiff does not dispute, nor can he, that Mr. Santos was not discharged, laid off, fired or otherwise retaliated against for making complaints, including his formal complaint to the EEOC, about Clark.

### A. CALPAC DID NOT DISCRIMINATE AGAINST PLAINTIFF

In order to state a claim for hostile environment, Plaintiff must show that: (1) he was subject to verbal or physical conduct based on race or national origin; (2) that the conduct was unwelcomed; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an

- 3 -

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 969I0-5205
TELEPHONE (671) 477-7857

abusive environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, (4th Cir. 2001), is a case involving a plaintiff resigned after he was referred to as a monkey. The district court granted summary judgment in favor of the employer which was later reversed. The Fourth Circuit noted that "Stickell **habitually** called Spriggs a 'monkey,' 'dumb monkey,' and **'nigger.'**" *Spriggs* at 182. In *Spriggs*, the daily use of the terms "monkey" "dumb monkey" and "nigger" led the Fourth Circuit to believe there was a question of fact. Unlike *Spriggs,* where there were daily and habitual racial comments by Spriggs' supervisor, Plaintiff heard three remarks by a non-employee of CalPac.

In case decided last year involving the use of the term "monkey," the Fourth Circuit affirmed the grant of defendants' 12(b)(6) motion in favor of the employers. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006) *cert. denied* 127 S.Ct. 2036 (2007), involved an employee hired by Alternative Resources Corporation and detailed to IBM Corp. Plaintiff, while in the network room of IBM, heard his co-worker exclaim "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes f-k them." *Jordan* at 336. Plaintiff also alleged that two co-workers heard the co-worker make similar offensive comments many times before. *Jordan* at 337. The Fourth Circuit agreed with the plaintiff that "the remark reflected

- 4 -

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

unacceptable racism and should not have been made", but held that "the complaint did not describe a work place **permeated by racism**, by threats of violence, by improper interference with work or by conduct resulting in psychological harm." (Emphasis added.) *Jordan* at 340.

Plaintiff claims he heard Clark, who was not employed by CalPac, utter the phrase "island monkey" no more than one time. The purported remarks were no longer made after the superintendent of CalPac intervened. Through his EEOC Declaration, plaintiff no longer complained of Clark's conduct. Co-plaintiff Van Meter, the recipient of most of the complaints, recalls the statement being made only twice. Although concededly rude, if made, the remarks were not severe or pervasive. As such, Plaintiff's claim for hostile environment must fail.[2]

B. **CALPAC DID NOT AUTHORIZE OR CONDONE THE ACTIONS OF CLARK**

Assuming harassment above, liability for third party harassment requires a showing that CalPac authorized or condoned the action. *Little v. Windermere, Inc.*, 301 F.3d 958 (9th Cir. 2002). John Healy, vice-president, whose duties included field operations, was unaware of the purported comments until December, 2004.[3] William Ward, general manager of CalPac, was unaware of

---

[2] Plaintiff's statements which contradict Plaintiff's prior testimony (to include the insinuation that there was more than one incident recalled and that reports were made after each incident) should be disregarded. *See*, *Radebenko, supra*. Through his declaration, Plaintiff claims that he was so outraged that a riot nearly broke out.

[3] In Plaintiffs' opposition, Plaintiffs made references to exhibits attached to Ms. Lujan's declaration. The references, however, are not material to the instant motion. For example, references to vacations in Palau (disputed by Healy) are not material to whether the purported remarks stopped after Harper's intervention. Cruikshank testified that he was not sure of the dates and stated "I can't recall, as of today, I can't recall whether it was at that meeting or a subsequent meeting." (Cruikshank deposition at 64.)

- 5 -

the purported comments until the December meeting. The only manager aware of the purported comments was Harper. It is undisputed, however, that Harper intervened and the comments would later cease. Clearly, CalPac did not condone nor authorize the statements purportedly made.

### C. RETALIATION CLAIM

In order to prevail in a Title VII case, a plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). In order to show a pretext, a plaintiff must show that the discrimination more than likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004).

As noted above, Plaintiff does not dispute that at least one worker, who filed a complaint concerning Clark's statements (i.e. similarly situated), was not terminated or punished. Clearly, CalPac was not motivated to retaliate against employees that made or filed complaints. Plaintiff admitted that he was given trash

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

duty because of the downsizing and there were no other employees available. John Babauta Depo. at 57-58 attached hereto as Exhibit "B."

In addition, although Plaintiff has his opinion as to why he was laid-off, there is no showing that Plaintiff's action was for any reason other than a legitimate, non-discriminatory reason. Plaintiff did not dispute that the MCI contract was CalPac's only major project at the time of his termination. Although Plaintiff may have believed that the MCI contract was not near completion, elicited testimony explained that the project was being downsized and that employees were retained based on their skill level. (See Hatfield Depo. at p. 75, attached to the Memorandum of Points and Authorities in Support of Motion for Summary Judgment Re Henry Van Meter.)

Further, although Plaintiff "believes" he was terminated because he made one complaint,[4] Co-plaintiff Van Meter testified in response to a query about whether there were other employees who did not complain and that were laid off:

> **I don't know** because there's a lot of people that got terminated because they didn't do a good job. There's a lot of people there that came in late and they lost - you know, **there's so many** things that - **reasons why they got laid off. I don't know.** (Emphasis added.)(Van Meter Depo. at p. 63).

Plaintiff suffered a knee injury and was unable to work from April to May, 2005. After May, 2005, the MCI project was

---
[4] See Plaintiff's Declaration at ¶ 17.

- 7 -

completed or nearly completed and his services were not longer needed. Clearly, Plaintiff failed to show that that his discharge was a pretext.

## CONCLUSION

Plaintiff's claim that he was subjected to numerous "offensive" statements is contradicted by his deposition testimony, wherein he stated he heard one statement. Co-plaintiff, Robert Cruz, thought the environment at CalPac was "pretty good". Co-Plaintiff Yee thought CalPac treated them with respect. With the one exception of Oct, 2005, Plaintiff liked working at CalPac.

Plaintiff's conjecture and embellishment of facts fail to create any genuine issues of material fact. Since CalPac has filed a properly supported motion for summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 252 (1986). CalPac respectfully submits that Plaintiff failed to do so. Consequently, there exist no genuine issues of material

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

facts in dispute, and that CalPac is entitled to summary judgment as a matter of law.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2007.

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION

BY: *Vincent Leon Guerrero*
**VINCENT LEON GUERRERO**
*Attorneys for Defendant California Pacific Technical Services LLC*

**EXHIBITS "A" and "B"**

V63:42:68\08130-01
G:\WORDDOC\PLD\VLG\210-REPLY TO OPPO TO MSJ (J. BABAUTA) RE
VAN METER V. CALPAC.DOC

# EXHIBIT "A"

## Page 1

```
                IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY      )  CIVIL CASE NO. CIV05-00037
APODACA, JR., JOSEPH J.        )
HERNANDEZ, JOSEPH T. MENDIOLA, )
LARRY L. CHARFAUROS, ANTHONY   )
C. ARRIOLA, ROBERT B. CRUZ,    )  DEPOSITION OF
ROLAND F. MENDIOLA, JAMES S.   )  JOHN P. BABAUTA
YEE, TEDDY B. CRUZ, JESSE B.   )  APRIL 20, 2007
CRUZ, JOHN L.G. NAUTA, and     )
JOHN P. BABAUTA,               )
                               )
           Plaintiffs,         )
                               )
   vs.                         )
                               )
CALPAC, DYNAMIC TECHNICAL      )
SERVICES, MCI, JOHN HEALY,     )
DENNIS CLARK, WILLIAM WARD,    )
JAI JAMES and DOES 1 through   )
10,                            )
                               )
           Defendants.         )
```

The deposition of John P. Babauta, called by Defendant California Pacific Technical Services LLC, pursuant to Notice and pursuant to Rule 30 of the Federal Rules of Civil Procedure, taken at the law offices of Blair Sterling Johnson Martinez & Leon Guerrero P.C., 238 Archbishop F.C. Flores Street, Suite 1008, Hagåtña, Guam, on Friday, the 20th day of April, 2007, at the hour of 2:10 o'clock p.m.

That at said time and place, there transpired the following:

Cecilia F. Flores
Freelance Stenotype Reporter
Tel: (671) 632-0727 • Fax: (671) 632-5353

## Page 2

A P P E A R A N C E S:

For the Plaintiffs         Delia Lujan, Esq.
                           LUJAN AGUIGUI & PEREZ
                           Suite 300, Pacific News Building
                           238 Archbishop Flores Street
                           Hagatna, Guam 96910

For Defendant California   Vincent Leon Guerrero, Esq.
Pacific Technical          BLAIR STERLING JOHNSON MARTINEZ
Services LLC, John Healy   & LEON GUERRERO P.C.
and William Ward           238 Archbishop F.C. Flores Street
                           Suite 1008, Pacific News Building
                           Hagåtña, Guam 96910

For Defendant Dynamic      Elyze McDonald, Esq.
Technical Services         CARLSMITH BALL
and Dennis Clark           134 West Soledad Avenue
                           Suite 400, Bank of Hawaii Bldg.
                           Hagåtña, Guam 96910

## Page 3

                    I N D E X

                 E X A M I N A T I O N

                    Direct  Cross  Redirect  Recross
By Mr. Leon Guerrero   4               88
By Ms. McDonald               55                93
By Ms. Lujan                  83

                    E X H I B I T S

Defendants':        Description:                 Page Marked:
Exhibit A -  Charge of Discrimination               22
Exhibit B -  Request for Advance Payment            50
Exhibit C -  Declaration of John P. Babauta         51



## Page 4

HAGÅTÑA, GUAM: APRIL 20, 2007; 2:10 P.M.

JOHN P. BABAUTA,
called by Defendant California Pacific Technical Services LLC to give his deposition at this time, being first duly sworn, was examined and testified on his oath, as follows:

DIRECT EXAMINATION

BY MR. LEON GUERRERO:

Q. Good afternoon, Mr. Babauta. My name is Vince Leon Guerrero and I represent Calpac. We're here to take your deposition today. I guess you know what's going to happen today. We'll be asking you questions; right?

A. Okay.

Q. And your answers are under oath. Because we're going to have it transcribed, please remember to state your answers orally.

A. Okay.

Q. And let's try to have it so that one person talks at a time so it won't jumble up the transcript; okay?

A. All right.

Q. If you don't understand my question or you didn't hear it, just ask to rephrase it or repeat it; all right?

A. Okay.

Q. We're here because you filed, you and a few other people filed a lawsuit against Calpac and a few others;

protest; correct?
A. Yes.
Q. Do you know if Dennis Clark was there?
A. Yes.
Q. And was he there?
A. Yes.
Q. Did Mr. Clark say anything at that meeting, at Calpac?
A. Yes.
Q. What did he say?
A. That he did not say it.
Q. He did not say the remarks?
A. Yes.
Q. How long did Mr. Clark talk at that meeting, first of all?
A. Not long.
Q. Did he apologize?
A. No.
Q. He just said he didn't make the statement?
A. Right.
Q. Okay. Who else talked? Did John Healy say anything at that meeting?
A. Yes, uh -
Q. What did he say?
A. If I recall, that, um, if, um, if we were to

associate or communicate or anything with those people that were protesting, we would have been, um, fired.
Q. And do you remember what they were saying essentially at that protest? They were saying not to support Calpac; correct?
A. Um, I don't remember, I can't recall.
Q. Does the word "boycott" sound familiar?
A. Um, boycott?
Q. Do the words "boycott Calpac" sound familiar?
A. Yeah.
Q. So some of the signs were saying boycott Calpac; correct? Boycott Calpac.
A. Yes.
Q. And that's what Mr. Healy was saying, if you were to associate with these people that were saying boycott Calpac, you would get in trouble?
A. Well, he didn't say boycott Calpac. He just said if you just -
Q. Okay.
A. With any -- he didn't say anything about the signs. He was just talking about them personally. If he sees us talking with them. He didn't say about the signs or anything. He just said them, so ...
Q. Was it your impression that he said you shouldn't associate with them while they are protesting, or what?

A. It's not while they're protesting. I think even if, even if we were to just ... Well, he didn't, he didn't specifically say protesting, it's ... I think even if you weren't protesting and we were to mingle with them and he was to catch us, maybe, uh, maybe we would have been fired.
Q. Do you remember exactly what he said?
A. Yeah, he goes, if, if we, if we get caught, um, communicating with them or socializing with them, like that, we would be fired.
Q. He didn't give a time; is that what you're saying?
A. No, he didn't give a time.
Q. Did he say anything about making any complaints? Did he say anything about that?
A. Making any complaints.
Q. Did he say if you made a complaint, you'd get in trouble?
A. Uh, no.
Q. Okay. So there's nothing in there that said, that Mr. Healy said if you go to EEOC you'll get in trouble.
A. Mmm, I don't recall about that.
Q. Okay. I guess you're saying that you were retaliated against by Calpac; correct?
A. Yes.
Q. Well, first of all, did any of the Calpac employees -- and we know that Dennis Clark was not an employee; right?

A. Excuse me?
Q. Dennis Clark was not an employee; correct?
A. Of Calpac?
Q. Right.
A. Yes.
Q. Did any of the Calpac employees call you or any of the other guys monkeys?
A. No.
Q. That would include Mr. Healy; correct?
A. Correct.
Q. And Mr. Ward didn't say anything like that either; correct?
A. Correct.
Q. So, one of the things that you are complaining about is how Calpac treated you after you made the complaint?
A. Yes.
Q. And that complaint was what Mr. Clark said; correct?
A. Yes.
Q. Who did you complain to?
A. Well, actually, um, we were talking about it when he called us. Our supervisor, our foreman was there already. So we were talking about it, and he said he would take care of it. He'll go on, um, he'll go on the chain of command. So that's how, that's how, um, that's how it went.

Case 1:05-cv-00037    Document 396    Filed 08/13/2007    Page 12 of 17

CLERK'S CERTIFICATE

SUPERIOR COURT OF GUAM    ) ss

I, Cecilia F. Flores, Special Deputy Clerk, Superior Court of Guam, do hereby certify that on the 20th day of April, 2007, at the hour of 2:10 p.m. there appeared before me John P. Babauta at the offices of Blair Sterling Johnson Martinez & Leon Guerrero P.C., the witness herein, produced to give his deposition in the within-entitled and numbered Case No. CIV05-00037, in the District Court of Guam; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and a certified copy of the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review; corrections, if any, and execution.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand and seal of Court this 4th day of June, 2007.

_____
SPECIAL DEPUTY CLERK, SUPERIOR COURT OF GUAM

JOHN P. BABAUTA: April 20, 2007

# EXHIBIT "B"

```
         IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY        )  CIVIL CASE NO. CIV05-00037
APODACA, JR., JOSEPH J.          )
HERNANDEZ, JOSEPH T. MENDIOLA,   )
LARRY L. CHARFAUROS, ANTHONY     )
C. ARRIOLA, ROBERT B. CRUZ,      )    DEPOSITION OF
ROLAND F. MENDIOLA, JAMES S.     )    JOHN P. BABAUTA
YEE, TEDDY B. CRUZ, JESSE B.     )    APRIL 20, 2007
CRUZ, JOHN L.G. NAUTA, and       )
JOHN P. BABAUTA,                 )
                                 )
              Plaintiffs,        )
                                 )
        vs.                      )
                                 )
CALPAC, DYNAMIC TECHNICAL        )
SERVICES, MCI, JOHN HEALY,       )
DENNIS CLARK, WILLIAM WARD,      )
JAI JAMES and DOES 1 through     )
10,                              )
                                 )
              Defendants.        )
```

    The deposition of John P. Babauta, called by Defendant California Pacific Technical Services LLC, pursuant to Notice and pursuant to Rule 30 of the Federal Rules of Civil Procedure, taken at the law offices of Blair Sterling Johnson Martinez & Leon Guerrero P.C., 238 Archbishop F.C. Flores Street, Suite 1008, Hagåtña, Guam, on Friday, the 20th day of April, 2007, at the hour of 2:10 o'clock p.m.

    That at said time and place, there transpired the following:

Cecilia F. Flores
Freelance Stenotype Reporter
Tel: (671) 632-0727 • Fax: (671) 632-5353

---

A P P E A R A N C E S:

For the Plaintiffs          Delia Lujan, Esq.
                            LUJAN AGUIGUI & PEREZ
                            Suite 300, Pacific News Building
                            238 Archbishop Flores Street
                            Hagatna, Guam 96910

For Defendant California    Vincent Leon Guerrero, Esq.
Pacific Technical           BLAIR STERLING JOHNSON MARTINEZ
Services LLC, John Healy       & LEON GUERRERO P.C.
and William Ward            238 Archbishop F.C. Flores Street
                            Suite 1008, Pacific News Building
                            Hagåtña, Guam 96910

For Defendant Dynamic       Elyze McDonald, Esq.
Technical Services          CARLSMITH BALL
and Dennis Clark            134 West Soledad Avenue
                            Suite 400, Bank of Hawaii Bldg.
                            Hagåtña, Guam 96910

JOHN P. BABAUTA: April 20, 2007

---

                    I N D E X

               E X A M I N A T I O N

                      Direct   Cross   Redirect   Recross
By Mr. Leon Guerrero     4                88
By Ms. McDonald                  55                 93
By Ms. Lujan                     83

                    E X H I B I T S

Defendants':            Description:                  Page Marked:
Exhibit A -  Charge of Discrimination                    22
Exhibit B -  Request for Advance Payment                 50
Exhibit C -  Declaration of John P. Babauta              51

COPY

JOHN P. BABAUTA: April 20, 2007

---

        HAGÅTÑA, GUAM: APRIL 20, 2007; 2:10 P.M.

                    JOHN P. BABAUTA,
called by Defendant California Pacific Technical Services LLC to give his deposition at this time, being first duly sworn, was examined and testified on his oath, as follows:

                   DIRECT EXAMINATION
BY MR. LEON GUERRERO:
    Q.  Good afternoon, Mr. Babauta. My name is Vince Leon Guerrero and I represent Calpac. We're here to take your deposition today. I guess you know what's going to happen today. We'll be asking you questions; right?
    A.  Okay.
    Q.  And your answers are under oath. Because we're going to have it transcribed, please remember to state your answers orally.
    A.  Okay.
    Q.  And let's try to have it so that one person talks at a time so it won't jumble up the transcript; okay?
    A.  All right.
    Q.  If you don't understand my question or you didn't hear it, just ask to rephrase it or repeat it; all right?
    A.  Okay.
    Q.  We're here because you filed, you and a few other people filed a lawsuit against Calpac and a few others;

JOHN P. BABAUTA: April 20, 2007

```
 1  Raytheon?
 2       A.   Yes.
 3       Q.   What was it?
 4       A.   A warehouse specialist.
 5       Q.   When you were doing the cleanup work, you said
 6  you would do that with Teddy Cruz?
 7       A.   Yes.
 8       Q.   And was there anybody else in your crew doing the
 9  cleanup?
10       A.   Well, not really because it was already, it was
11  already being downsized already.
12       Q.   So when did you start doing the cleanup?
13       A.   After, after we were downsized, you know, we were
14  going back.  We were going back cleaning up what the, what
15  other, what other, our coworkers are making, you know.  After
16  the trench and everything, you know, they're supposed to
17  cleanup, you know, clean it up and make it look good, but
18  they weren't.  We were doing it for them.
19       Q.   You and Ted?
20       A.   Yes.
21       Q.   Anybody else?
22       A.   They had a couple, but they were like on another
23  side though.
24       Q.   Do you know who they were?
25       A.   Um, if I'm not mistaken, I think it was like Jesse
```

JOHN P. BABAUTA:  April 20, 2007

```
 1  Cruz and those guys too; yeah.
 2       Q.   But they weren't part of what you were doing?  They
 3  weren't with you?
 4       A.   They weren't with us.  Yes, they weren't with us.
 5       Q.   Okay.
 6       A.   Because we all had our own groups.  We had groups,
 7  nai, we were with every -
 8       Q.   So Jesse Cruz was with another group?
 9       A.   Yes.
10       Q.   And not near you?
11       A.   No.
12       Q.   Who gave you the assignment for trash duty, or
13  cleanup duty?
14       A.   Actually, I'm not sure.  I'm not sure who's the one
15  because my foreman is Teddy.
16       Q    Oh, okay.
17       A.   So when Teddy gets the word, then -
18       Q.   So Teddy told you -
19       A.   Yes, because I'm in his group.
20       Q.   Did you ever ask him why he asked you and not
21  somebody else?
22       A.   Well, actually, the reason why he's asking me is
23  because I'm in his group.
24       Q.   Oh, okay.  Who else was in his group?
25       A.   Um, that's it, majority of us is just me and Teddy.
```

JOHN P. BABAUTA:  April 20, 2007

```
 1       Q.   Oh, okay.  So you're the only person -
 2       A.   Yes, before ... Actually, before anything happen,
 3  before the downsize, it was like with ... we were a group
 4  like Joseph Mendiola, but they were already laid off.
 5       Q.   Now you said after you heard the statements, you
 6  all had a talk; is that right?
 7       A.   Yes.
 8       Q.   So who was that that had a talk?
 9       A.   The people: Teddy, John, Henry.
10       Q.   Which Henry?
11       A.   Van Meter.
12       Q.   Okay.
13       A.   Uh, uh, Robert.
14       Q.   Robert Cruz?
15       A.   Yes.  They were ... Do I have to still tell names?
16       Q.   Yes, if you can recall.
17       A.   Okay.  Who did I say?  Can I ask?  I mean to you,
18  who's the names that I gave you already?
19       Q.   Was Mr. Nauta there?
20       A.   Yes.
21       Q.   So basically, everybody that were there that
22  heard it were the same people that had this talk?
23       A.   Yes.
24       Q.   Okay.  And how soon thereafter did the talk
25  happen?
```

JOHN P. BABAUTA:  April 20, 2007

```
 1       A.   Oh, the minute, the minute we went to lunch.
 2       Q.   So how soon was that after you heard the statement?
 3       A.   Oh, I don't, I don't recall.
 4       Q.   Do you recall if it was within half an hour or
 5  was it more hours?
 6       A.   No, it wasn't like hours, it wasn't like hours.
 7  It was like ... man, I'm not sure though, but it was real,
 8  real hot that day.  I'm not sure if it was hours or what.  I
 9  don't know, I don't recall.
10       Q.   So you broke for lunch and then you started to
11  talk about it?
12       A.   Yeah.  We all went to lunch together because we
13  were a group.
14       Q.   And was Henry Van Meter, I guess, the person with
15  the most responsibility of the group, the highest
16  responsibility?
17       A.   Yes, yes.
18       Q.   And so did he say anything about, you know, what
19  he would do about the situation?
20       A.   Yes.  He was telling us he was going to make a
21  complaint.
22       Q.   Did you ever make a complaint?
23       A.   To, to Henry?  Yes.
24       Q.   When did you make a complaint?
25       A.   That day it happened.
```

JOHN P. BABAUTA:  April 20, 2007

## CLERK'S CERTIFICATE

SUPERIOR COURT OF GUAM    ) ss

I, Cecilia F. Flores, Special Deputy Clerk, Superior Court of Guam, do hereby certify that on the 20th day of April, 2007, at the hour of 2:10 p.m. there appeared before me John P. Babauta at the offices of Blair Sterling Johnson Martinez & Leon Guerrero P.C., the witness herein, produced to give his deposition in the within-entitled and numbered Case No. CIV05-00037, in the District Court of Guam; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and a certified copy of the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review; corrections, if any, and execution.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand and seal of Court this 4th day of June, 2007.

_____
SPECIAL DEPUTY CLERK, SUPERIOR COURT OF GUAM

JOHN P. BABAUTA:    April 20, 2007