VINCENT LEON GUERRERO
BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE: (671) 477-7857

*Attorneys for Defendants California Pacific Technical Services LLC*

FILED
DISTRICT COURT OF GUAM
AUG 13 2007
JEANNE G. QUINATA
Clerk of Court

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. CIV05-00037<br><br>**REPLY TO TEDDY B. CRUZ' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff **TEDDY B. CRUZ** ("Plaintiff"), attempts to create genuine issues of material fact to overcome Defendant **CALIFORNIA PACIFIC TECHNICAL SERVICES'** ("CalPac") motion for summary judgment. For reasons hereinafter discussed, Plaintiff has failed to raise either genuine issues or issues of material fact, and CalPac is, therefore, entitled to summary judgment as a matter of law.

As a precursor, Plaintiff's attempt to defeat summary judgment by introducing facts in his newly produced declaration is not permissible. The Ninth Circuit Court of Appeals has held that a party is not permitted to create issues of fact by an affidavit contradicting his prior deposition testimony. *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

### UNDISPUTED FACTS[1]

Through his deposition, Plaintiff testified that he heard only two remarks made by Dennis Clark ("Clark"). It is not disputed that Clark was not an employee of CalPac. Plaintiff does not dispute that the purported "remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark. **Plaintiff testified that something was done as a result of his complaint and Clark would stop showing up at the site** and a meeting was held at CalPac. Only in his new declaration does Plaintiff assert contrary facts, which the *Radobenko* case does not permit.

Plaintiff's "EEOC Declaration" dated August 30, 2005 states that the earliest date of violation is December, 2004. The EEOC Declaration was prepared under penalty of perjury. Yet, the EEOC Declaration states that after he filed his Charge of

//

---

[1] Unless otherwise noted, all facts relied upon are those cited and support in CalPac's motion for summary judgment and supporting memorandum of points and authorities and declarations.

- 2 -

Case 1:05-cv-00037   Document 400   Filed 08/13/2007   Page 2 of 13

Discrimination CalPac had their December, 2004 meeting. See Plaintiff's Exhibit "1" attached to Plaintiff's opposition. Plaintiff could not, therefore, be seeking relief for the Clark statements which purportedly occurred in September or October 2004.

Assuming he is now alleging discrimination based on Clark's remarks, Plaintiff does not dispute that the purported **"remarks" stopped after CalPac's superintendent, Donald Harper's ("Harper"), last confrontation with Clark**.

It is further undisputed that at least one employee, Norman Santos, filed a complaint with the EEOC for the exact same reasons complained by Plaintiff. Plaintiff does not dispute, nor can he, that Mr. Santos was not discharged, laid off, fired or otherwise retaliated against for making complaints, including his formal complaint to the EEOC, about Clark.

### A. CALPAC DID NOT DISCRIMINATE AGAINST PLAINTIFF

In order to state a claim for hostile environment, Plaintiff must show that: (1) he was subject to verbal or physical conduct based on race or national origin; (2) that the conduct was unwelcomed; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive environment. *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005).

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, (4th Cir. 2001),

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

is a case involving a plaintiff resigned after he was referred to as a monkey.  The district court granted summary judgment in favor of the employer which was later reversed.  The Fourth Circuit noted that "Stickell **habitually** called Spriggs a 'monkey,' 'dumb monkey,' and '**nigger**.'" *Spriggs* at 182.  In *Spriggs*, the daily use of the terms "monkey" "dumb monkey" and "nigger" led the Fourth Circuit to believe there was a question of fact. Unlike *Spriggs*, where there were daily and habitual racial comments by Spriggs' supervisor, Plaintiff heard three remarks by a non-employee of CalPac.

In case decided last year involving the use of the term "monkey," the Fourth Circuit affirmed the grant of defendants' 12(b)(6) motion in favor of the employers. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006) *cert. denied* 127 S.Ct. 2036 (2007), involved an employee hired by Alternative Resources Corporation and detailed to IBM Corp.  Plaintiff, while in the network room of IBM, heard his co-worker exclaim "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes f-k them." *Jordan* at 336.  Plaintiff also alleged that two co-workers heard the co-worker make similar offensive comments many times before.  *Jordan* at 337.  The Fourth Circuit agreed with the plaintiff that "the remark reflected unacceptable racism and should not have been made", but held that "the complaint did not describe a work place **permeated by racism**,

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

by threats of violence, by improper interference with work or by conduct resulting in psychological harm." (Emphasis added.) *Jordan* at 340.

Plaintiff claims he heard Clark, who was not employed by CalPac, utter the words "monkey" or "island monkey" no more than two times. The purported remarks were no longer made after the superintendent of CalPac intervened. **Most importantly, Plaintiff's EEOC Declaration refers to incidents that took place after the statements were made.**

**Plaintiff's complaints that he was treated differently although technically accurate fails to mention that others who did not complain were terminated for among other things economic reasons.** If any thing, Plaintiff received preferential treatment. Co-plaintiff Van Meter, the recipient of most of the complaints, recalls the statement being made only twice. Although concededly rude, if made, the remarks were not severe or pervasive. As such, Plaintiff's claim for hostile environment must fail.[2]

B. **CALPAC DID NOT AUTHORIZE OR CONDONE THE ACTIONS OF CLARK**

Assuming harassment above, liability for third party harassment requires a showing that CalPac authorized or condoned the action. *Little v. Windermere, Inc.*, 301 F.3d 958 (9th Cir. 2002). John Healy, vice-president, whose duties included field operations, was unaware of the purported comments until December,

---

[2] Plaintiff's statements which contradict Plaintiff's prior testimony should be disregarded. *See, Radebenko, supra.* Through his declaration, Plaintiff claims that it appeared nothing was done and Clark would show up at the job site. This statement was denied in deposition. *See, Radebenko, supra.*

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

- 5 -

2004.[3] William Ward, general manager of CalPac, was unaware of the purported comments until the December meeting. The only manager aware of the purported comments was Harper. It is undisputed, however, that Harper intervened and the comments would later cease. Clearly, CalPac did not condone nor authorize the statements purportedly made.

### C. RETALIATION CLAIM

In order to prevail in a Title VII case, a plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination. *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000). In order to show a pretext, a plaintiff must show that the discrimination more than likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence. *Vasquez v. County of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2004).

As noted above, Plaintiff does not dispute that at least one

---

[3] In Plaintiff's opposition, Plaintiff made references to exhibits attached to Ms. Lujan's declaration. The references, however, are not material to the instant motion. For example, references to vacations in Palau (disputed by Healy) are not material to whether the purported remarks stopped after Harper's intervention. Cruikshank testified that he was not sure of the dates and stated "I can't recall, as of today, I can't recall whether it was at that meeting or a subsequent meeting." (Cruikshank deposition at 64.)

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

- 6 -

worker, who filed a complaint concerning Clark's statements (i.e. similarly situated), was not terminated or punished. Clearly, CalPac was not motivated to retaliate against employees that made or filed complaints.

In addition, although Plaintiff has his opinion[4] as to why he was laid-off, there is no showing that Plaintiff's action was for any reason other than a legitimate, non-discriminatory reason. Plaintiff did not dispute that the MCI contract was CalPac's only major project at the time of his termination. Although Plaintiff may have believed that the MCI contract was not near completion, elicited testimony explained that the project was being downsized and that employees were retained based on their skill level. (*See* Hatfield Depo. at p. 75, attached to Memorandum of Points and Authorities in Support of Motion for Summary Judgment Re Henry Van Meter.)

Further, although Plaintiff "believes" he was terminated because he made complaints,[5] Co-plaintiff Van Meter testified in response to a query about whether there were other employees who did not complain and that were laid off:

> **I don't know** because there's a lot of people that got terminated because they didn't do a good job. There's a lot of people there that came in late and they lost – you know, **there's so many** things that – **reasons why they got laid off. I don't know.** (Emphasis added.)(Van Meter Depo. at p. 63).

---

[4] Claims of time clock abuse etc. are not material or relevant since the time clock rules applied to all employees. Plaintiff's beliefs simply are not facts.
[5] See Plaintiff's Declaration at ¶ 21.

– 7 –

Lastly, Plaintiff claims he was treated differently. **Plaintiff admitted that employees who did not make complaints were laid off prior to Plaintiff's discharge. T. Cruz depo. at 33 attached hereto as Exhibit "A."** Clearly, Plaintiff failed to show that that his treatment was a pretext.

### CONCLUSION

Plaintiff's claim that he was subjected to numerous "offensive" statements is contradicted by his deposition testimony, wherein he stated he heard two statements. Co-plaintiff, Robert Cruz, thought the environment at CalPac was "pretty good". Co-Plaintiff Yee thought CalPac treated them with respect.

Plaintiff's conjecture and embellishment of facts fail to create any genuine issues of material fact. Since CalPac has filed a properly supported motion for summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 252 (1986). CalPac respectfully submits that Plaintiff failed to do so. Consequently, there exist no genuine issues of material

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE: (671) 477-7857

facts in dispute, and that CalPac is entitled to summary judgment as a matter of law.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2007.

BLAIR STERLING JOHNSON
 MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION

BY: *[signature]*
VINCENT LEON GUERRERO
*Attorneys for Defendant California Pacific Technical Services LLC*

**EXHIBIT "A"**

V63:49\08130-03
G:\WORDDOC\PLD\VLG\210F-REPLY TO OPPO TO MSJ (T.CRUZ) RE VAN METER V. CALPAC.DOC

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
SUITE 1008 PACIFIC NEWS BUILDING
238 ARCHBISHOP F.C. FLORES STREET
HAGÅTÑA, GUAM 96910-5205
TELEPHONE (671) 477-7857

- 9 -

# EXHIBIT "A"

IN THE SUPERIOR COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA ) CIVIL CASE NO. CIV05-00037
JR., JOSEPH J. HERNANDEZ, JOSEPH )
T. MENDIOLA, LARRY L. CHARFAUROS,)
ANTHONY C. ARRIOLA, ROBERT B. )
CRUZ, JOHN L.G. NAUTA, and JOHN )
P. BABAUTA, )
 )
            Plaintiffs, )
 )
       vs. )
 )
CALPAC, DYNAMIC TECHNICAL )
SERVICES, MCI, JOHN HEALY, DENNIS )
CLARK, WILLIAM WARD, JAI JAMES, )
and DOES 1 through 10, )
           Defendants. )

DEPOSITION OF TEDDY B. CRUZ

*Taken on Behalf of Defendant CalPac*

BE IT REMEMBERED That, pursuant to the Federal Rules of Civil Procedure, the deposition of TEDDY B. CRUZ was taken before Cecille A. Flores, a Certified Shorthand Reporter, on Monday, the 16th day of April 2007, at 9:00 a.m. in the offices of Blair Sterling & Johnson, Suite 1008, Pacific News Building, 238 Archbishop Flores Street, Hagatna, Guam.

APPEARANCES

Appearing on behalf of the Plaintiffs:

LUJAN AGUIGUI & PEREZ
Suite 300, Pacific News Building
238 Archbishop Flores Street
Hagatna, Guam 96910
By: Ms. Delia S. Lujan, Esq.
Phone: (671) 477-8064

Appearing on behalf of Defendant CalPac:

BLAIR STERLING & JOHNSON
Suite 1008, Pacific News Building
238 Archbishop Flores Street
Hagatna, Guam 96910
By: Mr. Vincent E. Leon Guerrero, Esq.
Phone: (671) 477-7857

Appearing on behalf of Defendant DTS:

CARLSMITH BALL
Suite 401, Bank of Hawaii Building
134 West Soledad Avenue
Hagatna, Guam 96910
By: Ms. Elyze McDonald, Esq.
Phone: (671) 472-6813

INDEX

Examination

|  | Direct | Cross |
|---|---|---|
| By Mr. Leon Guerrero: | 4 |  |
| By Ms. McDonald: |  | 80 |
| By Ms. Lujan: |  | None |

EXHIBITS

| Description: | Page Marked: |
|---|---|
| Exhibit A: Complaint for CalPac | .43 |
| Exhibit B: Complaint for MCI | .44 |

COPY

```
 1                    TEDDY B. CRUZ,
 2   was thereupon called as a witness on behalf of Defendant
 3   CalPac, and after having been first duly sworn, was examined
 4   and testified as follows:
 5
 6                    DIRECT EXAMINATION
 7   BY MR. LEON GUERRERO:
 8       Q   Good morning, Mr. Cruz.  Can you state your full
 9   name and spell your last name for the record?
10       A   Teddy B. Cruz.  C-R-U-Z, Cruz.
11       Q   This is the deposition of Teddy B. Cruz in Civil
12   Case No. 05-00037 in the District Court of Guam, Van Meter
13   vs. CalPac, et al.  Mr. Cruz, I imagine you talked to your
14   lawyer today or sometime before today and she explained
15   what's happening in a deposition?
16       A   Yes.
17       Q   So you know that we'll be asking you questions and
18   your answers are under oath and then after this deposition is
19   over it will be put in a booklet form and you'll have an
20   opportunity to review the booklet to make sure your answers
21   are correct.  You can make corrections to your answers, but
22   if you make corrections to it then we can comment on those
23   corrections that you make.  So if you don't understand the
24   question, just ask and we'll change it, okay?  If you didn't
```

```
 1    Q    Didn't it occur to you or did you ever wonder why
 2  these people were being laid off?
 3    A    No.
 4    Q    You didn't wonder at all?
 5    A    (Witness shook head.)
 6    Q    And yet you make the allegation that you were being
 7  treated differently from the people that didn't make the
 8  complaints?
 9    A    Yes.
10    Q    Why do you say that?
11    A    'Cause I made a complaint to CalPac.
12    Q    But how were they treated differently?  Some of them
13  were laid off before you, correct?
14    A    After me.
15    Q    There were people that were laid off in 2004.  There
16  were more than 16, correct?
17    A    Yes.
18    Q    In December of 2004.  And then in May of 2005, they
19  were down to six Laborers, correct?
20    A    Yes.
21    Q    So there were Laborers that were being laid off
22  before you, correct?
23    A    Yes.
24    Q    And a lot of them or some of them didn't make any
25  complaints, to your knowledge, correct?
```

Teddy B. Cruz: April 16, 2007

```
 1    A    Yes.
 2    Q    I'm looking at your complaint.  You're saying you
 3  were treated differently.
 4    A    'Cause I was doing the shitty jobs.
 5    Q    And the other people that were not even doing their
 6  job, they were just laid off, is that what you're saying?
 7  Would you have preferred that you would have been laid off
 8  and be treated the same as the people that didn't make the
 9  complaints?
10         MS. LUJAN:  First of all, he's not saying that
11  people didn't make complaints.  Your question was those
12  people who were laid off, to his knowledge, did not make
13  complaints.  So to his knowledge, he would not know so
14  whether or not they made complaints is not established.
15  BY MR. LEON GUERRERO:  (Continuing)
16    Q    Okay.  In your complaint you say you were treated
17  differently.  I want to know how you were treated
18  differently.  First of all, you would have to know that they
19  were not making complaints, correct?
20    A    Yes.
21    Q    So we established that some of these people didn't
22  make complaints but they were treated differently.  How were
23  they treated differently?
24    A    (No response.)
25    Q    If you know.
```

Teddy B. Cruz: April 16, 2007

```
 1    A    No, I don't know.
 2    Q    Okay.  Would you have preferred that you were laid
 3  off like they were?  Is that what you wanted to be done?
 4    A    I can't answer that.
 5    Q    Going back to the first statement made by Mr. Harper
 6  at Tiyan, who was present at that incident if you can recall?
 7    A    John Nauta, Jerry, Henry, James.
 8    Q    James Yee?
 9    A    Yeah.  Ton Arriola.
10    Q    Do you know who Norman Santos is?
11    A    That's a friend.
12    Q    Was he working at CalPac at that time?
13    A    Yes.
14    Q    Was he present at the first incident?
15    A    Yes, he was.
16    Q    Do you know if he ever filed a complaint against
17  CalPac with the EEOC?
18    A    I don't know.
19    Q    Mr. Santos has never talked to you about his
20  complaint that he filed with the EEOC?
21    A    He never talked to me about it.
22    Q    You say he was a friend.  How much of a friend was
23  he?  How often did you talk to him?
24    A    At work only.
25    Q    In May 2005, while you were still working there,
```

Teddy B. Cruz: April 16, 2007

```
 1  Mr. Santos was still working there, correct?
 2    A    On my knowledge, yes.
 3    Q    Did you know he filed a complaint with the EEOC?
 4    A    I don't remember.
 5    Q    Earlier some of the co-plaintiffs in this case had
 6  been deposed and some of the people have mentioned meetings
 7  that took place at Don Harper's house.  Do you recall any of
 8  those meetings?  Did you attend any of them?
 9    A    Only one.
10    Q    What meeting would that be?
11    A    About the racism.
12    Q    Was that when they were making signs?
13    A    No, I wasn't there when they were making signs.
14    Q    Who was present at those meetings?
15    A    Joe Mendiola, Henry, Ton Arriola, Jesse B., John
16  Nauta.
17    Q    Do you remember if Norman Santos was there?
18    A    I can't recall that.
19    Q    He might have been there you're saying?
20    A    I'm not too sure.
21    Q    He might not have been there?  Either way, right?
22    A    Either way.
23    Q    You don't remember?
24    A    I don't remember.
25    Q    Do you know what Norman Santos' position was in May
```

Teddy B. Cruz: April 16, 2007

CERTIFICATE OF WITNESS

I, TEDDY B. CRUZ, being first duly sworn on oath, depose and say that I am the witness named in the foregoing deposition transcript and that I have read the questions and answers thereon as contained in the foregoing deposition, consisting of pages 1 through 112; that the answers are true and correct as given by me at the time of taking the deposition, except as indicated on the correction sheet.

_____
TEDDY B. CRUZ
Date:_____

REPORTER'S CERTIFICATE

I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that TEDDY B. CRUZ personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 112, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam this 2nd day of July 2007.

_____
Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

NOTARY PUBLIC'S CERTIFICATE

BARRIGADA ) ss

I, Cecille A. Flores, Notary Public in and for Guam, do hereby certify that on the 16th day of April, 2007 at the hour of 9:00 a.m. there appeared before me TEDDY B. CRUZ at the law offices of Blair Sterling & Johnson, Suite 1008, 238 Archbishop Flores Street, Hagatna, Guam. The witness herein, produced to give his deposition in the within-numbered Civil Case No. CIV05-00037; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review, corrections, if any, and execution.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand this 2nd day of July, 2007.

_____
Cecille A. Flores