**LUJAN AGUIGUI & PEREZ** LLP
Attorneys at Law
Pacific News Building, Suite 300
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone (671) 477-8064/5
Facsimile (671) 477-5297

*Attorneys for Plaintiffs*

**FILED**
DISTRICT COURT OF GUAM

AUG 1 3 2007

**JEANNE G. QUINATA**
**Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

|  |  |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA, <br><br> Plaintiffs, <br><br> -vs- <br><br> CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10, <br><br> Defendants. | CIVIL CASE NO. 05-00037 <br><br><br> **PLAINTIFFS' MOTION TO RECONSIDER THE COURT'S JULY 30, 2007, ORDER RE: DYNAMIC TECHNICAL SERVICES' MOTION FOR SUMMARY JUDGMENT AND AUGUST 9, 2007, PARTIAL JUDGMENT** |

COME NOW Plaintiffs and move this Honorable Court to reconsider its Order Re: Defendant Dynamic Technical Services' Motion for Summary Judgment issued July 30, 2007, and Partial Judgment issued August 9, 2007.

ORIGINAL

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls.' Mot. Recons.

Case 1:05-cv-00037     Document 403     Filed 08/13/2007     Page 1 of 42

1

# I. INTRODUCTION

Plaintiffs instituted this Title VII action on December 12, 2005, alleging that they were subjected to employment discrimination by defendants Calpac, Dynamic Technical Services ("DTS"), MCI, John Healy, Dennis Clark ("Clark"), William Ward, Jai James, and Does 1 through 10 (collectively "Defendants"). The First Amended Complaint ("the complaint") was filed February 24, 2006.

On June 18, 2007, DTS filed a motion for summary judgment on the basis that it lacks 15 employees. On July 2, 2007, Plaintiffs filed a Request for Hearing on DTS' motion. DTS filed a Response on July 3, 2007. On July 6, 2007, the Court issued an Order setting the matter for a hearing on August 16, 2007, and ordering Plaintiffs to file oppositions to the summary judgment by noon of July 13, 2007. On July 9, 2007, Plaintiffs filed a Reply to DTS' Response, which renewed their request that the Court set DTS' summary judgment motions for a hearing.

Beginning on July 17, 2007, DTS filed summary judgment motions against some individual plaintiffs.

On July 30, 2007, the Court issued its Order granting DTS' summary judgment motion. Partial Judgment followed on August 9, 2007.

# II. ARGUMENT

Plaintiffs request that this Court reconsider its July 30, 2007, which granted DTS' motion for summary judgment. Reconsideration is appropriate upon a showing that (1) there is newly discovered evidence, (2) the court's decision was clearly erroneous as to the law or the facts or was manifestly unjust, or (3) there has been an intervening change in controlling law. See Sch. Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc., 5 F. 3d 1255, 1263 (9th Cir. 1993); Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F. 2d 557, 561 (7th Cir. 1985). Here, reconsideration is warranted on the grounds of error of law and manifest injustice.

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls.' Mot. Recons.

Case 1:05-cv-00037     Document 403     Filed 08/13/2007     Page 2 of 42

2

**A. Reconsideration is warranted on the basis of manifest injustice as Plaintiffs did not receive the Court's July 6, 2007, Order until after the time for filing oppositions had already passed.**

In the Court's Order granting Summary Judgment, it is noted that "Plaintiffs have failed to file any Opposition to the motion, despite this court allowing the Plaintiffs additional time to file one by July 13, 2007." (Order at 1 n.1 (citing July 6, 2007 Order).) The Court further noted Plaintiffs' failure to file an opposition in light of Local Rule 7.1, which provides that " '[p]apers not timely filed by a party including any memoranda or other papers required to be filed under this Rule will not be considered and such tardiness may be deemed by the Court as consent to the granting or denial of the motion, as the case may be.' " (Id. at 3 n.4 (quoting Local Rule 7.1).) However, Plaintiffs had no notice of the July 6 Order until well after the time for filing oppositions had already passed. Although it is the practice of Plaintiffs' counsel's office to check its box at Court at least twice each working day, Plaintiffs' counsel's office did not receive the July 6, 2007, Order until weeks after its issuance.

Plaintiffs' counsel's ignorance of the July 6 Order, which set DTS' motion for hearing, is evident in Plaintiffs' Reply to DTS' response to Plaintiffs' Request for Hearing Date, which was filed July 9, 2007. In the Reply, Plaintiffs argued that they "were completely within their rights to request a hearing date on DTS' motion for summary judgment" and that Plaintiffs were not required to state a reason for their request for a hearing. (Reply at 1-2.) Plaintiffs also argued that a hearing on DTS' summary judgment motion would be appropriate given the dispositive nature of the motion. (Id. at 2-3.) Plaintiffs contended that a hearing on DTS' motion would not prejudice DTS since DTS intended to file other summary judgment motions and intended to request a hearing on those motions. (Id. at 3.) For all these reasons, Plaintiffs renewed their request that the Court set DTS' motion for hearing. (Id.)

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls.' Mot. Recons.

3

Case 1:05-cv-00037    Document 403    Filed 08/13/2007    Page 3 of 42

Plaintiffs' counsel remained unaware of the July 6 Order even as Plaintiffs conferred with DTS' counsel regarding a hearing date on DTS' individual summary judgment motions. DTS' counsel had asked Plaintiffs' counsel if she would be available for a hearing on the week of August 16, 2007. In response, Plaintiffs' counsel stated that it was her understanding from a previous conversation with Court personnel that the Court was not available for hearing until September 2007. In any event, Plaintiffs' counsel stated that she would not be available for a hearing on the week of August 16, 2007, but instead agreed to a hearing date to be set sometime during the week of August 20, 2007.

Then, on the morning of July 30, 2007, Plaintiffs' counsel spoke to Court personnel regarding whether the Court had yet set a hearing date on DTS' individual summary judgment motions. Clearly, Plaintiffs' counsel would not be asking about a hearing on DTS' individual motions if Plaintiffs, through missing the July 13, 2007, filing deadline for oppositions, had already consented to a grant of DTS' summary judgment motion against all Plaintiffs.

**B. The grant of summary judgment was premised on a clear error of law that Title VII's 15-employees requirement is jurisdictional.**

In the July 30 Order granting summary judgment, the Court states: "Whether DTS constitutes an 'employer' within the definition of Title VII is a threshold jurisdictional issue." (Order at 3 (citing <u>Virgo v. Riviera Beach Associates, Ltd.</u>, 30 F. 3d 1350, 1359 (11th Cir. 1994).) Thus, the "[t]he burden is on the Plaintiffs, as the party asserting jurisdiction, to prove that federal jurisdiction is proper." (<u>Id.</u> (citing <u>Adams v. Bain</u>, 697 F. 2d 1213, 1219 (4th Cir. 1982).) The Court then quoted Federal Rule of Civil Procedure 12(h)(3), as requiring dismissal of the action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter ...." (<u>Id.</u>) The Court stated that, "[b]ased upon the failure to show otherwise, there is no evidence that DTS satisfies the definition of an employer pursuant to 42 U.S.C.A. § 2000e(b)." (<u>Id.</u>) Thus, the Court found it lacked jurisdiction over this matter. (<u>Id.</u>)

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls.' Mot. Recons.

4

Case No. 05-00037    Document 403    Filed 08/13/2007    Page 4 of 42

1    However, it was an error of law for the Court to consider the 15-employee requirement as

2    jurisdictional. Although the Fourth and Eleventh Circuit cases cited in the Order were properly

3    interpreted to consider the statutory 15-employee requirement jurisdictional, in 2006, the United

4    States Supreme Court in Arbaugh v. Y & H Corp. resolved the conflicting opinions in Courts of

5    Appeals on the question of whether Title VII's employee-numerosity requirement is jurisdictional

6    or simply an element of a plaintiff's claim for relief, and held that this Title VII requirement is an

7    element of a plaintiff's claim and not a jurisdictional issue. 126 S. Ct. 1235, 1245, 546 U.S. 500,

8    163 L. Ed. 2d 1097 (2006).

9

10    As the 15-employee requirement is not jurisdictional, it is not enough for DTS to simply

11    suggest, as under the Rule 12(h)(3) framework, that such a requirement cannot be met so that it

12    becomes Plaintiffs sole burden to prove otherwise. The standard for determining motions to

13    dismiss on jurisdictional grounds differs from the standard for determining motions for summary

14    judgment. Since federal courts are courts of limited jurisdiction, the presumption is that a cause

15    lies outside a federal court's limited jurisdiction and it is the burden of the plaintiff to establish

16    the contrary. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673,

17    128 L. Ed. 2d 391 (1994). However, with respect to summary judgment motions, there is no such

18    presumption in favor of a grant of summary judgment. A movant without the ultimate burden of

19    persuasion at trial has both the initial burden of production and the ultimate burden of persuasion

20    on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210

21    F. 3d 1099, 1102 (9th Cir. 2000). To successfully carry its burden of production, the moving

22    party must either produce evidence negating an essential element of the nonmoving party's claim

23    or defense or show that the nonmovant does not have enough evidence of an essential element to

24    carry its ultimate burden of persuasion at trial. Id. In order to carry its ultimate burden of

25    persuasion on the motion, the movant must persuade the court that there is no genuine issue of

Henry G. Van Meter, et al., v. Calpac, et al.                                                                 5
Civil Case No. 05-00037
Pls.' Mot. Recons.

Case No. 05-cv-00037       Document 403       Filed 08/13/2007       Page 5 of 42

material fact. Id. If the nonmovant fails to carry its initial burden of production, the nonmovnt has no obligation to produce anything, even if the nonmovant would have the ultimate burden of persuasion at trial. Id. at 1102-1103. In such a case, the nonmovant may defeat the summary judgment motion without producing anything. Id. at 1103. If, however, a movant carries its burden of production, the nonmovant must produce evidence to support its claim or defense. Id.

Therefore, Plaintiffs request that the Court reconsider its Order and Partial Judgment since it was an error of law to adjudicate the employee-numerosity requirement under a challenge to jurisdiction analysis, which imposes a presumption of lack of jurisdiction and places the burden solely on Plaintiffs to prove jurisdiction, when the issue should have been considered under the Rule 56 framework, which places the initial burdens of production and persuasion on the party moving for summary judgment.

### C. An error of law and manifest injustice occurred when the Court granted summary judgment and issued the Partial Judgment since DTS, as the party moving for summary judgment, failed to meet its initial burdens of production and persuasion.

As noted earlier, on a motion for summary judgment, a moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on the motion. Nissan, 210 F. 3d at 1102. To successfully carry its burden of production, the movant must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmovant does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Id. In order to carry its ultimate burden of persuasion on the motion, the movant must persuade the court that there is no genuine issue of material fact. Id. If the nonmovant fails to carry its initial burden of production, the nonmovnt has no obligation to produce anything, even if the nonmovant would have the ultimate burden of persuasion at trial. Id. at 1102-1103. In such a case, the nonmovant may defeat the summary judgment motion without producing anything. Id. at 1103. If, however, a

Henry G. Van Meter, et al., v. Calpac, et al.                                                6
Civil Case No. 05-00037
Pls.' Mot. Recons.

Case 1:05-cv-00037     Document 403     Filed 08/13/2007     Page 6 of 42

movant carries its burden of production, the nonmovant must produce evidence to support its claim or defense. Id.

In this case, DTS, as the party moving for summary judgment, has failed to meet its initial burdens of production and persuasion. In Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the central question before the United States Supreme Court was whether moving party had carried its initial burden of production by showing that the nonmoving party did not have enough evidence to carry its ultimate burden of persuasion at trial. In that case, the court held that the movant could meet its initial burden of production "by 'showing' – that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The court found that it was sufficient, for this purpose, for the movant to direct the district court's attention to the plaintiff's answer to interrogatories admitting that she had no witnesses who could testify that her husband had been exposed during the statutory period to asbestos manufactured by the defendant, and to the absence of any other evidence of exposure in the materials compiled during discovery. Id. at 320, 328.

In Nissan, the Ninth Circuit interpreted the Celotex ruling. According to the Ninth Circuit, Celotex did not hold that a moving party without the ultimate burden of persuasion at trial may use a summary judgment motion as a substitute for discovery. 210 F. 3d at 1105. "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." Id. (citing Clark v. Coates & Clark, Inc., 929 F. 2d 604, 608 (11th Cir. 1991) ("Even after Celotex it is never enough simply to state that the non-moving party cannot meet its burden at trial.")). Typically, in order to carry its initial burden of production by pointing to the absence of evidence to support the nonmoving party's claim or defense, the moving party will have made reasonable efforts, using the normal tools of discovery, to discover whether the nonmoving party has enough evidence to

Henry G. Van Meter, et al., v. Calpac, et al.                                                    7
Case No. 05-00037
Pls.' Mot. Recons.
Case 1:05-cv-00037    Document 403    Filed 08/13/2007    Page 7 of 42

carry its burden of persuasion at trial. Id. (citing Clark, 929 F. 2d at 608 (noting that a moving party must "point to materials on file which demonstrate that a party will not be able to meet that burden")). An absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. See Martin B. Louis, FEDERAL SUMMARY JUDGMENT DOCTRINE: A CRITICAL ANALYSIS, 83 Yale L.J. 745, 750 (1974).

Here, in the motion for summary judgment, DTS attempts to meet its initial burdens of production and persuasion by merely stating:

> ... The Plaintiffs filed their Original Complaint on December 12, 2005. The discovery cut-off date in the Scheduling Order and Discovery Plan was May 24, 2007. Therefore, an adequate time for discovery has passed. The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits demonstrate that Plaintiffs have no evidence to establish the element of the threshold number of employees for the application of Title VII to Defendant DTS. There is no genuine issue as to any material fact, since the Plaintiffs have no proof concerning an essential element of the Plaintiff's case which renders all other facts immaterial.

Although DTS gives a blanket statement that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits demonstrate" an absence of evidence, DTS does not actually point to any materials on file to specifically show an absence of evidence. DTS is practically stating, simply, that Plaintiffs have no proof concerning the employee-numerosity element. However, as the Ninth Circuit stated in Nissan, the movant may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence. 210 F. 3d at 1105. Thus, DTS failed to meet its initial burdens of production and persuasion and therefore summary judgment and partial judgment should not have been granted in its favor.

**D. Reconsideration is warranted on the basis of error of law since the non-filing of an opposition did not lead to Plaintiffs' consent to the notion that DTS lacks 15 employees so that there was no genuine dispute on this issue.**

Pursuant to Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment only upon a showing that there are no genuine issues of material fact requiring a trial. Henry v. Gill Indus., Inc., 983 F. 2d 943, 950 (9th Cir. 1993). "The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." Id.

An uncontested motion for summary judgment is not to be automatically granted. Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F. 3d 52, 55 (4th Cir. 1994). Instead, the moving party's facts are deemed uncontroverted, and the court determines whether the moving party is entitled to a judgment as a matter of law. Custer v. Pan Am. Life Ins. Co., 12 F. 3d 410, 416 (4th Cir. 1993) (the moving party must still show that the facts entitle him to a judgment as a matter of law).

Here, assuming that DTS' motion was uncontested, despite Plaintiffs' counsel's non-receipt of the Court's July 6 Order until after the filing deadline, DTS was still not entitled to summary judgment. The non-filing of an opposition did not make it uncontroverted that DTS lacks 15 employees. DTS in its motion for summary judgment and reply never once alleged that it lacks 15 employees! DTS simply stated that Plaintiffs could not prove this employee-numerosity requirement. Therefore, it should not have been deemed uncontroverted that DTS lacks 15 employees since DTS never alleged this in its moving papers.

Additionally, grant of summary judgment should not have been premised on Local Rule 7.1, which provides: "Papers not timely filed by a party including any memoranda or other papers required to be filed under this Rule will not be considered and such tardiness may be deemed by the Court as consent to the granting or denial of the motion, as the case may be." In the Order granting summary judgment, the Court cited Local Rule 7.1 in concluding that,

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls.' Mot. Recons.

9

Case 1:05-cv-00037   Document 403   Filed 08/13/2007   Page 9 of 42

"[b]ased upon the failure of the Plaintiffs to show otherwise, there is no evidence that DTS satisfies the definition of an employer pursuant to 42 U.S.C. § 2000e(b)." (Order at 3, n.4.) However, several Ninth Circuit decisions have made clear that a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law. Martinez v. Stanford, 323 F. 3d 1178, 1182 (9th Cir. 2003). Short of that, the summary judgment gets turned into a mere sanction for noncompliance with local rules. Id.

In Henry, the Ninth Circuit stated:

> "[I]t is highly questionable that in light of the standards of Rule 56 that a local rule can mandate the granting of summary judgment for the movant based on a failure to file opposing papers where the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact."

983 F. 2d at 949 (quoting Hamilton v. Keystone Tankship Corp., 539 F. 2d 684, 686 n.1 (9th Cir. 1976)). A local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, is inconsistent with Rule 56 and so impermissible under Federal Rule of Civil Procedure 83. Id. at 950. Even if a local rule does not require the court to grant a motion for summary judgment when the nonmovant fails to file and/or serve its opposition, it is error to grant summary judgment where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact. Id. In ruling on a summary judgment motion, a court is still obligated to search the record and independently determine whether or not whether or not a genuine issue of fact exists. Campbell, 21 F. 2d at 55. A court should not grant summary judgment unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. Id. Regardless of whether the nonmovant timely responded (or responded at all)

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case No. 05-00037
Pls.' Mot. Recons.

Case 1:05-cv-00037   Document 403   Filed 08/13/2007   Page 10 of 42

10

to the motion for summary judgment, the movant must affirmatively show that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Martinez, 323 F. 3d at 1183.

In this case, it was error to grant summary judgment on the basis that no opposition was filed and, thus, under Local Rule 7.1, the non-filing of an opposition amounted to consent to the grant of summary judgment. As discussed earlier, the motion for summary judgment was insufficient since DTS failed to meet its burdens of production and persuasion and even failed to allege that it lacks 15 employees. Therefore, grant of the motion based on the non-filing of an opposition was an error of law, warranting reconsideration of the Order granting summary judgment and Partial Judgment.

### E. Contrary to DTS' contention, summary judgment is inappropriate since there is a genuine issue of fact whether DTS lacks 15 employees.

Federal statutes remedial in nature, such as Title VII, should be liberally construed and given a broad meaning. NLRB v. Hearst Publ'ns, 322 U.S. 111, 124, 64 S. Ct. 851, 88 L. Ed. 1170 (1944); United States ex rel. Kent v. Aiello, 836 F. Supp. 720, 725 (E.D. Cal. 1993). "In keeping with the remedial goals of the statute [Title VII], [the Ninth Circuit has] repeatedly held that the statute itself, the procedural framework, and the pleadings must be liberally construed in favor of those who are alleged victims of discrimination." Ramirez v. Nat'l Distillers & Chem. Corp., 586 F. 2d 1315, 1321 (9th Cir. 1978).

The term "employer" has been given an expansive definition when used in federal statutes. Goldberg v. Whitaker House Coop. Inc., 366 U.S. 28, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961); Aiello, 836 F. Supp. at 725 (E.D. Cal. 1993). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...." 42 U.S.C. § 2000e(b). In Virgo v. Riviera Beach Assocs.,

Henry G. Van Meter, et al., v. Calpac, et al.                                                          11
Civil Case No. 05-00037
Case 1:05-cv-00037    Document 403    Filed 08/13/2007    Page 11 of 42
Pls.' Mot. Recons.

Ltd., the Eleventh Circuit ruled that the record contained an adequate and reasonable basis for the district court's finding that the 15-employee requirement was met. Although the record did not elaborately set forth the number of hours and days worked, nine employees were specifically identified, and many other positions were described, including the restaurant staff, maintenance staff, housekeeper, and lounge staff. 30 F. 3d 1350, 1361 (11th Cir. 1994). The Eleventh Circuit found that it was not wrong to assume that persons employed in these types of jobs would at a minimum satisfy the statutory requirement. Id.

In this case, the affidavits on file and DTS' discovery responses to Plaintiffs' requests for production of documents show that DTS had at least 15 employees. For instance, in the Affidavit of Linda G. Hayes, Ms. Hayes states that, during the years 2004-2005, she was the Director of Recruiting for DTS. (Hayes Aff. ¶ 3.) Ms. Hayes also stated in DTS' Answers and Objections to Plaintiffs' first sets of interrogatories that she has worked for DTS for the past 6 years and 10 months. (See, e.g., Ex. 1 at 3.) Also, in the Affidavit of Dennis P. Clark, Mr. Clark states that he worked for DTS as the MCI Company Representative on MCI's "Guam International Ring" construction project, which is the project all Plaintiffs worked on. (Clark Aff. ¶ 3.) Clark's employment with DTS is also evident from Clark's timesheets during the MCI project, which show that Clark was an employee of DTS. (Ex. 2 at 3.) Furthermore, DTS' website, a photocopy of which was provided to the EEOC in relation to Plaintiffs' EEOC charges, shows approximately 31 employee positions at DTS, including PBX Installers & Engineers, Power Installers, FCC Licensed Technicians, Field Engineers & Inspectors, Right-of-Way Agents, Surveyors [Registered Land Man], RF Engineers, Antenna & Line Installers, Civil Construction Superintendents, Civil Field Engineers, Application Developers, Computer Technicians, Database Analysts, Internet Network Engineers, LAN/WAN Engineers, Product Development Specialists, Systems Analysts, Technical Support, Technical Writers, Translation Technicians, Engineering

Henry G. Van Meter, et al., v. Calpac, et al.                                    12
Pls.' Mot. Recons.

Case 09-85-00037      Document 403      Filed 08/13/2007      Page 12 of 42

Project Managers, and Network Consulting Engineers. (Ex. 3 at bate-stamp 270-71.) Therefore, the evidence shows that DTS had as employees Hayes, Clark, and a total of at least 31 employees. Accordingly, a genuine issue of fact exists regarding whether DTS meets the employee-numerosity requirement, and DTS' motion for summary judgment must be denied.

Also, the 13 plaintiffs should be added to the total number of DTS employees. Two or more employers may be considered "joint employers" under Title VII if both employers control the terms and conditions of employment of the employee. EEOC v. Pac. Mar. Ass'n, 351 F. 3d 1270, 1275 (9th Cir. 2003). The Ninth Circuit has applied an "economic reality" test to determine whether a joint employment relationship exists. Id.

For the reasons stated in Plaintiffs' oppositions to Calpac's motions for summary judgment, and Plaintiffs' supporting documents, including declarations, DTS was a joint employer of Plaintiff for Title VII purposes. The issue of joint employment was raised by DTS in its summary judgment motions filed on July 17-19, 2007. Therefore, with Clark, Hayes, and the 13 Plaintiff, DTS employed at least 15 employees. Hence, a grant of summary judgment on DTS' motion is not appropriate.

## III. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court reconsider its July 30, 2007, Order re: Defendant Dynamic Technical Services' Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2007, in Hagåtña, Guam.

**LUJAN AGUIGUI & PEREZ** LLP

By: _____

**DELIA LUJAN**
*Attorneys for Plaintiffs*

Henry G. Van Meter, et al., v. Calpac, et al.
Civil Case: 05-00037
Pls.' Mot. Recons.

13

Case 1:05-cv-00037     Document 403     Filed 08/13/2007     Page 13 of 42

# EXHIBIT 1

ELYZE J. MCDONALD, Guam Bar No. 01-004
CARLSMITH BALL, LLP
Bank of Hawaii Building
134 West Soledad Avenue, Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Telephone (671) 472-6813
Facsimile (671) 477-4375

Arthur K. Smith, Texas Bar No. 18534100
LAW OFFICES OF ARTHUR K. SMITH
(Seeking admission *Pro Hac Vice*)
507 Prestige Circle
Allen, Texas 75002
Telephone: (469) 519-2500
Facsimile: (469) 519-2555
*Attorneys for Defendant Dynamic Technical Services, Inc.*

## IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br><br><br><br><br>**DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES** |

**TO:** **Plaintiff Henry G. Van Meter, by and through his attorney of record, Delia Lujan, Lujan Aguigui & Perez, LLP, Pacific News Building, Suite 300, 238 Archbishop Flores St., Hagåtña, Guam 96910.**

ORIGINAL

DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS
TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES          Page 1 of 16

Case 1:05-cv-00037   Document 403   Filed 08/13/2007   Page 15 of 42

COMES NOW Dynamic Technical Services, Defendant in the above-entitled and numbered action, and makes the following answers and objections to the below-enumerated interrogatories contained in Plaintiff Henry G. Van Meter's First Set of Interrogatories:

## **OBJECTIONS TO DEFINITIONS**

**Definition of "You," or "Your" and "Defendant".** Plaintiffs ask that DTS construe these terms in such a way to include DTS and its attorneys, employees, and agents. DTS objects to Plaintiffs' inclusion of persons and entities other than DTS, acting through its officers and employees, in the definition of these terms because it distorts the ordinary meaning of these terms, is overbroad, and causes unnecessary confusion and complexity. DTS further objects to this definition because it encompasses information and documentation protected by attorney-client and work-product privileges. Accordingly, in responding to Plaintiffs' interrogatories, DTS will construe these terms to include DTS, acting through its officers and employees.

**DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES** **Page 2 of 16**

Case 4:05-cv-00037 Document 483 Filed 08/13/2007 Page 16 of 42

# ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**  With respect to the persons answering, or providing information used to answer, these Interrogatories, state his or her:

      (a)     Name;

      (b)     Address;

      (c)     Business address;

      (d)     Business or other telephone number;

      (e)     Job title;

      (f)     Occupation;

      (g)     Name of immediate superior;

      (h)     Employer:

      (i)     Length of employment with Defendant; and

      (j)     Length of time in current position.

**ANSWER:**    (a)     Linda G. Hayes

              (b)     2303 Mallory Dr.
                         Corinth, Texas 76210

              (c)     1125 E. Highway 121
                         Lewisville, Texas 75057

              (d)     (469) 635-1301

              (e)     President

              (f)     Management

              (g)     Mickey Redwine

              (h)     Dynamic Technical Services, LP

              (i)     6 years – 10 months

DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS
TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES    **Page 3 of 16**

Case 1:05-cv-00037   Document 403   Filed 08/13/2007   Page 17 of 42

(j)     9 months


**INTERROGATORY NO. 2:**  State the following information:

   (a)     Job classification of Plaintiff during the period from January 2000 to the present.

   (b)     Dates of employment of Plaintiff with Defendant from January 2000 to the present.

**ANSWER:**     (a)     Plaintiff never held a job with Dynamic Technical Services.    The

                    classification of his jobs, if any, with other employers, is unknown.

             (b)     None.


**INTERROGATORY NO. 3:**  For each year the Plaintiff worked for the Defendant, state each

and every position change and salary change, indicating as part of your answer the reason for each

such change.

**ANSWER:**  Plaintiff never worked for Dynamic Technical Services.


**INTERROGATORY NO. 4:**  State whether the Defendant maintains evaluations or appraisals

of Plaintiff's or Defendant Calpac's work performance from January 2000 to the present.  If

yes, attach copies of all evaluations of Plaintiff's or Calpac's work performance.

**ANSWER:**  It does not.


**INTERROGATORY NO. 5:**  State the date, place, and reason for Plaintiff's reduced work

hours, termination or other separation from Defendant or Defendant Calpac.


---

**DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS**
**TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES** **Page 4 of 16**

**ANSWER:** Plaintiff was never employed by, and never worked for, Dynamic Technical Services. Dynamic Technical Services has no knowledge regarding Plaintiff's employment relationship, if any, with Calpac.

**INTERROGATORY NO. 6:** State whether Plaintiff's reduced work hours, termination or other separation was in accordance with Defendant's written rules and regulations. If yes, attach a copy of the subject rules and regulations, identifying the provisions relied upon in connection with the termination and when, if at all, the Plaintiff was advised of these rules and regulations.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 7:** If no written rules and regulations exist, describe the Defendant's policy with respect to the type of conduct involved in Plaintiff's complaint. If Plaintiff's reduced work hours, termination or other separation was in accordance with such policy, state when and in what manner, if at all, Plaintiff was advised of this policy.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 8:** If Plaintiff's termination resulted from any specific act(s), describe in detail the act(s) for which the Plaintiff had his work hours reduced, or was

terminated or otherwise separated. Include the names, addresses, and telephone numbers of all witnesses, if any, to each specific act.

**ANSWER:** Plaintiff was never employed by, and never worked for, Dynamic Technical Services. Dynamic Technical Services has no knowledge regarding Plaintiff's employment by, or termination of employment by, other parties.

**INTERROGATORY NO. 9:** State whether any oral or written warnings were issued to the Plaintiff concerning any matter relating to the reason(s) for the Plaintiff's reduced work hours, termination or other separation. If yes, state the date, person(s) present and circumstances pertaining to such warnings and attach hereto copies of any records reflecting these warnings.

**ANSWER:** Plaintiff was never employed by, and never worked for, Dynamic Technical Services. Dynamic Technical Services has no knowledge regarding Plaintiff's employment by, or termination of employment by, other parties.

**INTERROGATORY NO. 10:** State the following information for each person who participated in the decision to reduce Plaintiff's work hours, or terminate or otherwise separate Plaintiff from employment with Defendant and indicate the role that each played in that decision:

    (a)    Name.

    (b)    Address and telephone number.

    (c)    Present occupation.

    (d)    Occupation at the time of Plaintiff's reduced work hours, termination or other separation.

(e)       Present employer.

(f)       Employer at the time of Plaintiff's reduced work hours, termination or other separation.

(g)      Date of entry into job position held at the time of Plaintiff's reduced work hours, termination or other separation.

(h)      Race, sex, age, national origin, ancestry.

(i)       Role.

**ANSWER:**    This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 11:**    State whether Plaintiff ever complained of receiving discriminatory treatment while working for Defendant or Defendant Calpac. If yes, specify the nature of the complaint(s), date(s) of the complaint(s), and explain what was done, if anything, in response to the complaint(s).

**ANSWER:**    Plaintiff was never employed by, and never worked for, Dynamic Technical Services. Dynamic Technical Services has no knowledge regarding Plaintiff's employment relationship, if any, with Calpac.

**INTERROGATORY NO. 12:**    Please identify and describe in detail all communications (written or oral) you, including any of your employees or agents such as Defendant Dennis P. Clark, have had the Plaintiff, during the period from January 2003 to the present.

DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS
TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES    **Page 7 of 16**

Case 1:05-cv-00037   Document 405   Filed 06/13/2007   Page 21 of 42

**ANSWER:** Dynamic Technical Services has never had any communications with Plaintiff. Dynamic Technical Services has no knowledge of any communications between Plaintiff and Dennis Clark.

**INTERROGATORY NO. 13:** For each year the Plaintiff worked for the Defendant or Defendant Calpac, state each and every supervisor under whom she worked, indicating the name, address, telephone number, position, race, and national origin of each supervisor.

**ANSWER:** Plaintiff was never employed by, and never worked for, Dynamic Technical Services. Dynamic Technical Services has no knowledge regarding Plaintiff's employment relationship, if any, with Calpac.

**INTERROGATORY NO. 14:** State forth in full and complete detail the name, address, race, national origin, and job duties and responsibilities of all the persons who replaced the Plaintiff at his job position.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 15:** Set forth in full and complete detail a description of the work duties and responsibilities of the Plaintiff prior to his termination or other separation from the Defendant.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 16:** State all the facts upon which you rely as an affirmative defense in your answer to the complaint that:

    (a)    there was a failure to mitigate damages;

    (b)    each "cause of action" alleged in the complaint fails to state facts sufficient to constitute a true cause of action;

    (c)    Plaintiff has suffered no cognizable injury or damage;

    (d)    workers' compensation laws provide the sole remedy for the injuries alleged;

    (e)    all actions taken by the Defendant with respect to Plaintiff were at all times relevant to this action in good faith without any intent to discriminate against Plaintiff in any manner prohibited by law or public policy;

    (f)    the complaint and each "cause of action" alleged therein are barred by the applicable statute of limitations;

    (g)    Defendant did not directly or indirectly perform or fail to perform any act or acts that constitute a violation of any rights, if any, of Plaintiff, or a violation of any duty or obligation, if any, owed to Plaintiff;

    (h)    Plaintiff is estopped by his own conduct from recovering any relief by the complaint or any cause of action or purported cause of action alleged therein;

**DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS**
**TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES** **Page 9 of 16**

Case 4:05-cv-00037 Document 403 Filed 05/13/2007 Page 23 of 42

(i)    Plaintiff is not entitled to recover exemplary or punitive damages because Defendant never acted willfully, oppressively, or fraudulently, or ratify such conduct;

(j)    Plaintiff's claims are barred by the doctrine of waiver;

(k)    Plaintiff's claims are barred by the doctrine of laches;

(l)    Plaintiff failed to mitigate damages, nor use due diligence to mitigate damages;

(m)    Plaintiff has unclean hands; and

(n)    Plaintiff failed to exhaust internal and administrative remedies and jurisdictional prerequisites.

**ANSWER:**    (a)    See Dynamic Technical Services' answer to Interrogatory No. 16(l).

(b)    See Dynamic Technical Services' motion to dismiss filed on April 21, 2006.

(c)    See Dynamic Technical Services' answer to Interrogatory No. 16(i).

(d)    Dynamic Technical Services will supplement after Plaintiffs' depositions are completed.

(e)    See Dynamic Technical Services' answer to Interrogatory No. 16(i).

(f)    See Dynamic Technical Services' motion for summary judgment filed on October 10, 2006.

(g)    See Dynamic Technical Services' answer to Interrogatory No. 16(i).

(h)    See Dynamic Technical Services' answer to Interrogatory Nos. 16(i) and (m)

(i)    Dynamic Technical Services never employed the Plaintiff.    Dynamic Technical Services has never even had any communication or dealings of any kind with Plaintiff.

Plaintiff contends that Dennis Clark directed racist remarks to him. However, Dynamic Technical Services denies that Clark made any such statements as alleged, and denies that Clark ever interacted with Plaintiff as a representative of Plaintiff's employer. In addition, Dynamic Technical Services denies that Clark ever took any actions for the purposes of harming Plaintiff, or that had any effect on Plaintiff's employment by other parties. Also, in connection with the Guam project, Clark served as a Project Manager for MCI, working under MCI's direction and control, and Dynamic Technical Services did not exercise any control over the manner in which Clark performed his work as a manager for MCI. Also, Plaintiff never made any complaints to Dynamic Technical Services about Clark, and, in failing to do so, deprived Dynamic Technical Services of an opportunity to investigate and address the complaints.

(j) Plaintiff never made any complaints to Dynamic Technical Services about Clark, and has waived them in failing to provide Dynamic Technical Services with notice and an opportunity to investigate and address the complaints.

(k) Plaintiff never made any complaints to Dynamic Technical Services about Clark, and, in failing to do so, deprived Dynamic Technical Services of an opportunity to investigate and address the complaints.

(l) Dynamic Technical Services will supplement after Plaintiffs' depositions and further discovery is completed regarding Plaintiff's employment history and efforts to obtain employment since the end of employment by Calpac.

(m) For purposes of harming Dynamic Technical Services and its employees and its business, Plaintiff has combined with other Plaintiffs to falsely accuse Dennis Clark of making racist statements and falsely claiming that Plaintiff was employed by Dynamic Technical Services.

---

**DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES** Page 11 of 16

Case 1:05-cv-00037 Document 208 Filed 08/17/2009 Page 25 of 42

(n)     See Dynamic Technical Services' motion for summary judgment filed on October 10, 2006.

**INTERROGATORY NO. 17:**  State in detail the Defendant's evaluation of the Plaintiff's work performance during his period of employment with the Defendant or Defendant Calpac.

**ANSWER:**    Plaintiff was never employed by, and never worked for, Dynamic Technical Services.  Dynamic Technical Services has no knowledge regarding Plaintiff's employment relationship, if any, with Calpac.

**INTERROGATORY NO. 18:**  State whether the Defendant, or any of its agents or employees such as Dennis P. Clark, informed or promised to the Plaintiff that he would be promoted or receive a bonus.

**ANSWER:**    This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services.  Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 19:**  Describe in detail the reasons why Defendant did not promote the Plaintiff or provide a bonus to Plaintiff.

**ANSWER:**    This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services.  Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES** **Page 12 of 16**

Case 1:05-cv-00037   Document 468   Filed 08/13/2008   Page 26 of 42

**INTERROGATORY NO. 20:** Identify the name, address, telephone number, job position, race, and national origin of the person(s) who played a role in deciding to not promote or provide a bonus to the Plaintiff.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 21:** State the date when the Defendant determined it would not promote the Plaintiff or provide a bonus to the Plaintiff.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

**INTERROGATORY NO. 22:** State the date of employment, job position, compensation, and any changes of job position or compensation, of Dennis P. Clark with Defendant.

**ANSWER:** Dennis P. Clark start date: January 5, 2004

End date: June 4, 2005

Job position: MCI Project Manager

Compensation: $180 per day wage, with $185 daily per diem and $25 daily cell/laptop allowance and $65 daily vehicle allowance.

**INTERROGATORY NO. 23:** State the full legal name (including middle name), business address, home address(es), telephone numbers (including business and home), employer, and job position of Dennis P. Clark.

**ANSWER:**     Dennis P. Clark
Last known address:
665 Mason Dr.
Harpers Ferry, WV 25425

Previous address:
1726 NE 11th St.
St. Cape Coral, FL 33909

Cell: (239) 443-9195

Last known home telephone no.: (239) 574-2353

Last/current employer and job title unknown


**INTERROGATORY NO. 24:** State the circumstances (including the date and persons involved) in which the Defendant first learned of the Plaintiff's charge of discrimination with the Equal Employment Opportunity Commission against the Defendant and describe in detail all actions taken by the Defendant in response to the Plaintiff's EEOC charge of discrimination.

**ANSWER:**     Dynamic Technical Services received via mail from the EEOC a "Notice of Charge of Discrimination" on or about January 7, 2005. Defendant replied to the EEOC in a letter stating the Plaintiff had never been employed by Dynamic Technical Services.


**INTERROGATORY NO. 25:** Describe in detail the circumstances in which Defendant terminated or participated in the termination of the Plaintiff's employment with Defendant or Defendant Calpac.

**ANSWER:** This question improperly and incorrectly assumes that Plaintiff was an employee of Dynamic Technical Services. Plaintiff was never employed by, and never worked for, Dynamic Technical Services.

DEFENDANT DYNAMIC TECHNICAL SERVICES' ANSWERS AND OBJECTIONS
TO PLAINTIFF HENRY G. VAN METER'S FIRST SET OF INTERROGATORIES **Page 15 of 16**

Case 1:05-cv-00037- Document 463 Filed 03/13/2007 Page 29 of 42

Dated: March _20_ , 2007

_/or_ _Un Scype_
ELYZE J. MCDONALD, Guam Bar No. 01-004
CARLSMITH BALL, LLP
Bank of Hawaii Building
134 West Soledad Avenue, Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Telephone (671) 472-6813
Facsimile (671) 477-4375

and

Arthur K. Smith, Texas Bar No. 18534100
LAW OFFICES OF ARTHUR K. SMITH
(Seeking admission *Pro Hac Vice*)
507 Prestige Circle
Allen, Texas 75002
Telephone: (469) 519-2500
Facsimile: (469) 519-2555

*Attorneys for Defendant Dynamic Technical Service. Inc.*

36307.24\Rsp.ROGS-VanMeter

# EXHIBIT 2





'DTS Home

# TECHNICAL
### S E R V I C E S,  L. P.

Welcome to the Dynamic Technical Services Web Site

▶ Personnel Outsourcing Services

▶ Implementation Services

▶ DTS News

▶ Client Portfolio

▶ Contact Us Portfolio Engineering &

▶ Related Links

▶ Site Map

**Dynamic Technical Services, L.P.**, provides both superior staffing personnel and turnkey implementation services to support clients in the Telecom, IT and Commercial Industries

For staffing solutions, DTS employs innovative solutions and automation tools identify, qualify and make available contract candidates that match the needs of each individual client.

For turnkey implementation services, DTS has internal teams that provide all facets of Engineering, Installation and Construction for Inside Plant (ISP), Outside Plant (OSP) and Civil Facility Projects. As part of these turnkey services, DTS also includes materials management, project management and other value added services for OEM's and end users.

DTS provides personnel for a number of successful clients, with resources available to provide rapid turnaround when client needs change. We are ready and waiting to help keep your business moving ahead. We are continuously accessible and pride ourselves on our ability to be responsive to each client on an individual basis.

## Company Charter

**Effective May 24, 2002 we have relocated to a <u>new address</u> in Lewisville, TX.

Defendant DTS
00267

WE
DON'T
JACK
AROUND!

Defendant DTS
00268



**Technical** S E R V I C E S . L . P .

## Physical Address and Phone Numbers:

Dynamic Technical Services, L.P.

1125 East Hwy 121
Lewisville, TX 75057

Main Phone: 469-635-1300
Toll Free: 877-503-8324
Fax: 469-635-1298 or 469-635-1299

## DTS Department E-Mail Addresses:

Submit your resume
- resume@dynamic-technical.com

Inside Plant Engineering & Construction Services
- isp@dynamical-technical.com

Outside Plant Engineering & Construction Services
- osp@dynamic-technical.com

Civil Engineering & Construction Services
- civil@dynamic-technical.com

Let Us Know Your
Needs and Contact
DTS

▲ DTS Home

▲ Personnel Outsourcing
Services

▲ Implementation
Services

▲ DTS News

▲ Client Portfolio

Portfolio
Engineering &

▲ Related Links

▲ Site Map

Defendant DTS
00269





We offer Industry Leading Outsourcing Personnel and Service

- DTS Home
- *Clients - Why DTS?*
- *Employees - Why DTS?*
- **Implementation Services**
- **DTS News Engineering & Construction**
- **Client Portfolio**
- **Contact Us**
- **Related Links**
- **Site Map**

## Dynamic Technical Services' Professional Resource Overview:

### Central Office Equipment Services Personnel

- Install
- Test
- Fiber Optics Test & Splice

- PBX Installers & Engineers
- Power Installers
- FCC Licensed Technicians

### Outside Plant Services Personnel

- Field Engineers & Inspectors
- Right-of-Way Agents

- Surveyors [Registered Land Man]
- Fiber Optics Install, Test & Splice

### Wireless Services Personnel

- RF Engineers

- Antenna & Line Installers

### Engineering (P.E. if required) & Civil Construction Services Personnel

- Civil

- Software

Defendant DTS
00270

1/5/2005

http://www.dynamic-technical.com/page3.html

· Personnel Outsourcing Services

- Electrical
- Industrial
- Mechanical

- Civil Construction
  Superintendents
- Civil Field Engineers

## Information Technology Services Personnel

- Application Developers
- Computer Technicians
- Database Analysts
- Internet Network
  Engineers
- LAN/WAN Engineers
- Product Development
  Specialists

- Systems Analysts
- Technical Support
- Technical Writers
- Translation Technicians
- Engineering Project Managers
- Network Consulting Engineers

Defendant DTS
00271





We Support all of
Your Outside Plant
Requirements

▲ DTS Home

▲ Personnel Outsourcing
Service

▲ Implementation
Services

▲ Inside Plant/DC-Power
Services

Defendant DTS
00272

▲ Civil Engineering &
Coordination Portfolio

## OSP Services

Dynamic Technical Services designs and builds the fiber optic communication infrastructure that connects businesses throughout metropolitan and urban areas. Our clients, the Incumbent Local Exchange Carriers (ILECs) and new Competitive Local Exchange Carriers (CLECs), use these facilities to offer advanced voice, data, and internet services to their customers.

DTS has the experienced management team to manage all aspects of a major citywide project from design and permitting to network deployment. Years of experience teamed with the latest technology in project management software means DTS can bring complex projects to completion - on time and on budget.

From initial computer-generated design to the establishment of a permanent records database, DTS can provide for all critical documentation needs. The communication pathways running under a city represent an extremely complex network with many potentially conflicting obstacles. Good design is critical

· Outside Plant Services

to optimizing the network for cost efficiency.

DTS brings new technology using the latest techniques for placing buried and aerial fiber optic cables. Mapping the networks, obtaining the right of way and documenting the jobs means our clients get a full turnkey project that meets the highest quality standards.

▲ Client Portfolio

▲ Contact Us

▲ Related Links

▲ Site MapSite MapDTS News

Defendant DTS
00273

# EXHIBIT 3

**From:**       "Tawnya Davis" <tdavis@dynamic-technical.com>
**To:**         <JAMES.YAO@EEOC.GOV>
**Date:**       3/4/2005 7:38:01 AM
**Subject:**    FW: Dennis Clark #378-2005-00261

Mr. Yao,

Here are the timesheets covering the time periods below that you
requested.

Thanks,
Tawnya
PS.. Open with Acrobat Reader

-----Original Message-----
From: Harry Reinwald
Sent: Wednesday, March 02, 2005 5:02 PM
To: Tawnya Davis
Subject: FW: Dennis Clark #378-2005-00261

Tawnya-

Would you please copy (and scan them in one group) Dennis Clark
timesheets related to the periods this guy requests below and email them
to him at the email address in the FROM line.
Thanks,

Harry

-----Original Message-----
From: JAMES YAO [mailto:JAMES.YAO@EEOC.GOV]
Sent: Wednesday, March 02, 2005 4:38 PM
To: Harry Reinwald
Subject: Re: Dennis Clark #378-2005-00261

Aloha Mr. Reinwald,

Thank you for your cooperation and assistance.

With respect to the "MCI Contractor Time Sheet", please also provide
Dennis Clark's time sheets covering the time periods between:

1. September 15, 2004 thru September 31, 2004; 2. October 15, 2004
thru October 31, 2004.

Thank you again for your attention to this matter. I appreciate your
cooperation and assistance.

Best wishes,

James Yao
Investigator, EEOC
(808) 541-3720

Defendant DTS
00221

CC:            "Harry Reinwald" <hreinwald@dynamic-technical.com>

Defendant DTS
00222

## MCI CONTRACTOR TIME SHEET

| LAST NAME: | Clark |
|---|---|
| FIRST NAME: | Dennis |
| COMPANY: | Dynamic Technical Services |
| P.O. # | |
| SUPERVISOR: | Jeff Buehler |
| WEEK ENDING : | 11/06/04 |

| REG SITE     DAY | DATE | HOURS | PROJ # | SITE CODE | REFUNDABLE YES/NO | MCI SUPERVISOR |
|---|---|---|---|---|---|---|
| Sunday | 10/24/2004 | 10 | 41998 | | No | Jeff Buehler |
| Monday | 10/25/2004 | 10 | 41998 | | No | Jeff Buehler |
| Tuesday | 10/26/2004 | 10 | 41998 | | No | Jeff Buehler |
| Wednesday | 10/27/2004 | 10 | 41998 | | No | Jeff Buehler |
| Thursday | 10/28/2004 | 10 | 41998 | | No | Jeff Buehler |
| Friday | 10/29/2004 | 10 | 41998 | | No | Jeff Buehler |
| Saturday | 10/30/2004 | 10 | 41998 | | No | Jeff Buehler |
| | | | | | | |
| | | | | | | |
| REGULAR HOURS | | 70 | | | | |

| DYNAMIC | | | |
|---|---|---|---|
| Week Ending Date: | 11/06/04 | | Sheet 1 OF 1 |
| NAME: | Dennis Clark | | |
| LOCATION: | Guam | | |
| Project Name: | Guam International Ring | | |
| Project Number: | 41998 | | |
| Dynamic Technical P.O. | | 7100025400 | |

| DATE | EXPLANATION OF EXPENDITURES | AMOUNT |
|---|---|---|
| 11/4/2004 | Printer Ink | $59.98 |
| 11/4/2004 | Printer Paper | $4.20 |
| 11/4/2004 | Mechinical pencils | $9.90 |
| 11/4/2004 | Binder Clips | $1.95 |
| 11/4/2004 | 20 % discount | -$15.20 |
| | | |
| | | $0.00 |
| | | $0.00 |

| I CERTIFY THAT THE ABOVE | TOTAL EXPENSES | $60.83 |
|---|---|---|
| EXPENSES HAVE BEEN INCURRED | | |
| IN BEHALF OF THE COMPANY | | |
| EMP. SIGNATURE: | LESS ADVANCES | $0.00 |
| *Dennis P. Clark* | | |
| APPROVALS | AMOUNT OWED TO EMPLOYEE | $60.83 |

RECEIVED

MAR 0 4 2005

EEOC HLO

Defendant DTS
00223