
1  **LUJAN AGUIGUI & PEREZ** LLP
   Attorneys at Law
2  DNA Building, Suite 300
   238 Archbishop Flores Street
3  Hagåtña, Guam 96910
   Telephone (671) 477-8064/5
4  Facsimile (671) 477-5297

5  *Attorneys for Plaintiffs*

6           **IN THE UNITED STATES DISTRICT COURT OF GUAM**

7                 **FOR THE TERRITORY OF GUAM**

8

9  HENRY G. VAN METER, et al.,              CIVIL CASE NO. 05-00037

10                          Plaintiffs,
                -vs-                        **DECLARATION OF DELIA LUJAN IN**
11                                          **SUPPORT OF EACH OF PLAINTIFFS'**
   CALPAC, et al.,                          **OPPOSITIONS TO DEFENDANT**
12                                          **DYNAMIC TECHNICAL SERVICES'**
                          Defendants.       **MOTIONS FOR SUMMARY JUDGMENT**
13

14

15      I, DELIA LUJAN, hereby declare and state as follows:

16      1.  I am an attorney representing all the plaintiffs in this matter.

17      2.  This declaration is submitted in support of each of Plaintiffs' oppositions to Defendant

18          Dynamic Technical Services' Motions for Summary Judgment.

19
        3.  Attached hereto as Exhibit 1 are true and correct copies of the cover page, various
20
            excerpts, the Reporter's Certificate, and the Clerk's Certificate of the deposition of
21
            John P. Babauta taken on April 20, 2007.
22

23      4.  Attached hereto as Exhibit 2 are true and correct copies of the cover pages, various

24          excerpts, the Reporter's Certificate, and the Clerk's Certificate of the deposition of

25          Joseph T. Mendiola taken on May 8, 2007.

26

27

28

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-00037
Decl. Delia Lujan re each Pls' Opp'n to Def. DTS' Mots. Summ. J.

ORIGINAL    1

Case 1:05-cv-00037   Document 407   Filed 01/18/2008   Page 1 of 13

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2    true and correct.

3    Executed this 18th day of January, 2008, in Hagåtña, Guam.

4

5

6

7    **DELIA LUJAN**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-00037

2

Decl. Delia Lujan re each Pls' Opp'n to Def. DFS' Mots. Summ. J.

Case 1:05-cv-00037    Document 451    Filed 01/18/2008    Page 2 of 13

# EXHIBIT 1

## Page 1

```
 1              IN THE DISTRICT COURT OF GUAM
 2
 3    HENRY G. VAN METER, JERRY         )
      APODACA, JR., JOSEPH J.           )
 4    HERNANDEZ, JOSEPH T. MENDIOLA,    )   CIVIL CASE NO. CIV05-00037
      LARRY L. CHARFAUROS, ANTHONY      )
 5    C. ARRIOLA, ROBERT B. CRUZ,       )
      ROLAND F. MENDIOLA, JAMES S.      )        DEPOSITION OF
 6    YEE, TEDDY B. CRUZ, JESSE B.      )        JOHN P. BABAUTA
      CRUZ, JOHN L.G. NAUTA, and        )        APRIL 20, 2007
 7    JOHN P. BABAUTA,                  )
 8              Plaintiffs,             )
 9         vs.                          )
10    CALPAC, DYNAMIC TECHNICAL         )
      SERVICES, MCI, JOHN HEALY,        )
11    DENNIS CLARK, WILLIAM WARD,       )
      JAI JAMES and DOES 1 through      )
12    10,                              )
13              Defendants.            )
14
15              The deposition of John P. Babauta, called by
16    Defendant California Pacific Technical Services LLC, pursuant
17    to Notice and pursuant to Rule 30 of the Federal Rules of
      Civil Procedure, taken at the law offices of Blair Sterling
18    Johnson Martinez & Leon Guerrero P.C., 238 Archbishop F.C.
      Flores Street, Suite 1008, Hagåtña, Guam, on Friday, the 20ᵗʰ
19    day of April, 2007, at the hour of 2:10 o'clock p.m.
20              That at said time and place, there transpired the
      following:
21
22
23
24
25
```

Cecilia F. Flores
Freelance Stenotype Reporter
Tel: (671) 632-0727 - Fax: (671) 632-5353

## Page 2

```
 1                  A P P E A R A N C E S:
 2
 3    For the Plaintiffs        Delia Lujan, Esq.
 4                              LUJAN AGUIGUI & PEREZ
                                Suite 300, Pacific News Building
 5                              238 Archbishop Flores Street
                                Hagatna, Guam 96910
 6    For Defendant California  Vincent Leon Guerrero, Esq.
      Pacific Technical         BLAIR STERLING JOHNSON MARTINEZ
 7    Services LLC, John Healy       & LEON GUERRERO P.C.
      and William Ward          238 Archbishop F.C. Flores Street
 8                              Suite 1008, Pacific News Building
                                Hagåtña, Guam 96910
 9
10    For Defendant Dynamic     Elyze McDonald, Esq.
      Technical Services        CARLSMITH BALL
11    and Dennis Clark          134 West Soledad Avenue
                                Suite 400, Bank of Hawaii Bldg.
12                              Hagåtña, Guam 96910
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1                    I N D E X
 2
 3              E X A M I N A T I O N
 4
                        Direct  Cross  Redirect  Recross
 5    By Mr. Leon Guerrero   4              88
 6    By Ms. McDonald             55
 7    By Ms. Lujan                83                93
 8
 9
10              E X H I B I T S
11
12    Defendants':                           Page
                  Description:                Marked:
13    Exhibit A - Charge of Discrimination      22
14    Exhibit B - Request for Advance Payment   50
15    Exhibit C - Declaration of John P. Babauta 51
```



## Page 4

```
 1         HAGÅTÑA, GUAM: APRIL 20, 2007; 2:10 P.M.
 2
 3                   JOHN P. BABAUTA,
 4    called by Defendant California Pacific Technical Services LLC
 5    to give his deposition at this time, being first duly sworn,
 6    was examined and testified on his oath, as follows:
 7                   DIRECT EXAMINATION
 8    BY MR. LEON GUERRERO:
 9         Q.   Good afternoon, Mr. Babauta.  My name is Vince Leon
10    Guerrero and I represent Calpac.  We're here to take your
11    deposition today.  I guess you know what's going to happen
12    today.  We'll be asking you questions; right?
13         A.   Okay.
14         Q.   And your answers are under oath.  Because we're
15    going to have it transcribed, please remember to state your
16    answers orally.
17         A.   Okay.
18         Q.   And let's try to have it so that one person talks
19    at a time so it won't jumble up the transcript; okay?
20         A.   All right.
21         Q.   If you don't understand my question or you didn't
22    hear it, just ask to rephrase it or repeat it; all right?
23         A.   Okay.
24         Q.   We're here because you filed, you and a few other
25    people filed a lawsuit against Calpac and a few others;
```

1  safety shoes and I was going to start that day.  That was
2  about it.  I didn't see -- I wasn't interviewed.
3      Q.  Was Don Harper working for Calpac at that time?
4      A.  Yes, sir.
5      Q.  Do you know if it was Don Harper who said it was
6  okay for you to work there?
7      A.  I believe so.
8      Q.  Who helped you fill out Exhibit A; was this your
9  writing?
10     A.  Yes.
11     Q.  Why don't you go ahead and read the second
12 paragraph?  I'll read it for you, it will be faster.
13     "On or about October 25, 2004 I was harassed by
14 Dennis Clark, a representative of MCI and an employee of
15 Dynamic Technical Services.  Dennis Clark made a racially
16 derogatory remark to me and other co-workers by calling us
17 island monkeys."  Is that right?
18     A.  Yes, sir.
19     Q.  Where did this take place; this incident on October
20 25, 2004.
21     A.  Tiyan.
22     Q.  And who was there with you at that time?
23     A.  Um, John Nauta; Jesse -- I mean, uh, Teddy Cruz;
24 Robert Cruz; Henry Van Meter; Joseph Mendiola; Roland
25 Mendiola; Larry Charfauros, um -- that's about it.

JOHN P. BABAUTA:  April 20, 2007

1      Q.  You essentially named most of the people that's
2  involved in this lawsuit; right?
3      A.  Um-hmm.
4      Q.  Joseph Fernandez wasn't there; correct?
5      A.  Um, I don't recall.
6      Q.  Do you recall, or do you know who Norman Santos is?
7      A.  Yes.
8      Q.  Was he there?
9      A.  Yes, he was.
10     Q.  Around October or December of 2004, there was a
11 meeting that took place at Calpac; right?
12     A.  Yes.
13     Q.  And that was in response to a protest that was
14 taking place against Calpac; correct?
15     A.  Yes.
16     Q.  Did you know the people who were protesting against
17 Calpac?
18     A.  Yes.
19     Q.  You knew who some of them were?
20     A.  Yes.
21     Q.  Bad question; I'm sorry.  Are any of the
22 co-plaintiffs in this case related to you?
23     A.  Yes.
24     Q.  Why don't you go ahead and name who they are and
25 what the relationship is.

JOHN P. BABAUTA:  April 20, 2007

1      A.  Okay.
2      Q.  I'll just call their first name.  Henry Van Meter;
3  are you related to him?
4      A.  Um, no.
5      Q.  Are you related to Jerry Apodaca?
6      A.  No.
7      Q.  Are you related to Joseph Hernandez?
8      A.  No.
9      Q.  Are you related to Joseph Mendiola?
10     A.  Um, that I'm not too sure.  But, uh, I'm
11 not too sure 'cause, um, my mom is, um, Mendiola too, so I'm
12 not too sure.
13     Q.  Okay, when I say related, I'm saying like maybe
14 first cousins or closer.
15     A.  Okay, no.  No.
16     Q.  Are you related to Larry Charfauros?
17     A.  No.
18     Q.  Are you related to Anthony Arriola?
19     A.  No.
20     Q.  Are you related to Robert Cruz?
21     A.  No.
22     Q.  Are you related to Roland Mendiola?
23     A.  No.
24     Q.  Are you related to James Yee?
25     A.  No.

1      Q.  Are you related to John Nauta?
2      A.  No.
3      Q.  Are you related to Teddy Cruz?
4      A.  No.
5      Q.  Are you related to Jesse Cruz?
6      A.  Yes.
7      Q.  Teddy Cruz and Jesse Cruz are brothers; correct?
8      A.  Yes.
9      Q.  So you're related to Jesse Cruz through his wife?
10     A.  Yes.
11     Q.  Who is his wife?
12     A.  My sister, Debbie.
13     Q.  I'm sorry?
14     A.  My sister, Debbie.
15     Q.  Was your sister participating in the protest
16 against Calpac?
17     A.  Yes.
18     Q.  And this is while you were working; correct?
19     A.  Right.
20     Q.  Do you know if she held up any signs referring to
21 Calpac?
22     A.  I'm -- I don't recall.
23     Q.  Did you ask her why she was protesting?
24     A.  No.
25     Q.  So they had a meeting at Calpac because of this

```
1    protest; correct?
2         A.    Yes.
3         Q.    Do you know if Dennis Clark was there?
4         A.    Yes.
5         Q.    And was he there?
6         A.    Yes.
7         Q.    Did Mr. Clark say anything at that meeting, at
8    Calpac?
9         A.    Yes.
10        Q.    What did he say?
11        A.    That he did not say it.
12        Q.    He did not say the remarks?
13        A.    Yes.
14        Q.    How long did Mr. Clark talk at that meeting, first
15   of all?
16        A.    Not long.
17        Q.    Did he apologize?
18        A.    No.
19        Q.    He just said he didn't make the statement?
20        A.    Right.
21        Q.    Okay.  Who else talked?  Did John Healy say
22   anything at that meeting?
23        A.    Yes, uh –
24        Q.    What did he say?
25        A.    If I recall, that, um, if, um, if we were to
```

```
1    associate or communicate or anything with those people that
2    were protesting, we would have been, um, fired.
3         Q.    And do you remember what they were saying
4    essentially at that protest?  They were saying not to support
5    Calpac; correct?
6         A.    Um, I don't remember, I can't recall.
7         Q.    Does the word "boycott" sound familiar?
8         A.    Um, boycott?
9         Q.    Do the words "boycott Calpac" sound familiar?
10        A.    Yeah.
11        Q.    So some of the signs were saying boycott Calpac;
12   correct?  Boycott Calpac.
13        A.    Yes.
14        Q.    And that's what Mr. Healy was saying, if you were
15   to associate with these people that were saying boycott
16   Calpac, you would get in trouble?
17        A.    Well, he didn't say boycott Calpac.  He just said
18   if you just –
19        Q.    Okay.
20        A.    With any -- he didn't say anything about the signs.
21   He was just talking about them personally.  If he sees us
22   talking with them.  He didn't say about the signs or
23   anything.  He just said them, so ...
24        Q.    Was it your impression that he said you shouldn't
25   associate with them while they are protesting, or what?
```

```
1         A.    It's not while they're protesting.  I think even
2    if, even if we were to just ... well, he didn't, he didn't
3    specifically say protesting, it's ... I think even if you
4    weren't protesting and we were to mingle with them and he was
5    to catch us, maybe, uh, maybe we would have been fired.
6         Q.    Do you remember exactly what he said?
7         A.    Yeah, he goes, if, if we, if we get caught, um,
8    communicating with them or socializing with them, like that,
9    we would be fired.
10        Q.    He didn't give a time; is that what you're saying?
11        A.    No, he didn't give a time.
12        Q.    Did he say anything about making any complaints?
13   Did he say anything about that?
14        A.    Making any complaints.
15        Q.    Did he say if you made a complaint, you'd get in
16   trouble?
17        A.    Uh, no.
18        Q.    Okay.  So there's nothing in there that said, that
19   Mr. Healy said if you go to EEOC you'll get in trouble.
20        A.    Mmm, I don't recall about that.
21        Q.    Okay.  I guess you're saying that you were
22   retaliated against by Calpac; correct?
23        A.    Yes.
24        Q.    Well, first of all, did any of the Calpac employees
25   -- and we know that Dennis Clark was not an employee; right?
```

```
1         A.    Excuse me?
2         Q.    Dennis Clark was not an employee; correct?
3         A.    Of Calpac?
4         Q.    Right.
5         A.    Yes.
6         Q.    Did any of the Calpac employees call you or any of
7    the other guys monkeys?
8         A.    No.
9         Q.    That would include Mr. Healy; correct?
10        A.    Correct.
11        Q.    And Mr. Ward didn't say anything like that either;
12   correct?
13        A.    Correct.
14        Q.    So, one of the things that you are complaining
15   about is how Calpac treated you after you made the complaint?
16        A.    Yes.
17        Q.    And that complaint was what Mr. Clark said;
18   correct?
19        A.    Yes.
20        Q.    Who did you complain to?
21        A.    Well, actually, um, we were talking about it when
22   he called us.  Our supervisor, our foreman was there already.
23   So we were talking about it, and he said he would take care
24   of it.  He'll go on, um, he'll go on the chain of command.
25   So that's how, that's how, um, that's how it went.
```

Case 1:05-cv-00037   Document 491   Filed 01/18/2008   Page 6 of 13

1  project owner, I guess?
2       A.  Yes.
3       Q.  So he wasn't really ... I mean, if anything, he
4  gave instructions to Calpac; correct?
5       A.  Yes.
6       Q.  Calpac didn't give instructions to Mr. Clark?
7       A.  Um -- now, that I don't know.
8              MR. LEON GUERRERO:  I don't have any other
9  questions.  Thank you very much.
10             THE WITNESS:  All right.
11                  RE-CROSS EXAMINATION
12  BY MS. McDONALD:
13      Q.  This last series of questions about him giving
14  instructions to Calpac; why do you say that?
15      A.  Because, um, like if he was out on the field, I'll
16  hear, uh, like he would talk to like the supervisor and then
17  the supervisor, like would come back to us and tell us,
18  "okay, um, we gotta go back and do this according to Mr.
19  Clark."
20      Q.  Okay.  Who would be the supervisor?
21      A.  Well, it don't matter; HV, Henry Van Meter; Teddy.
22      Q.  He would talk to Teddy directly?
23      A.  Um, if, if Teddy's around, yes, I'm pretty sure,
24  yes, he will talk to Teddy.  Whoever's running, whoever's
25  running the crew is who he'll talk to.  If Henry Van Meter's

JOHN P. BABAUTA:  April 20, 2007

---

1  not there, then it'll be Teddy.  If Teddy's not there,
2  it's ... I don't know who he'll talk to next, if none of them
3  is there.
4       Q.  Okay.
5       A.  Maybe he'll just go straight down to Healy and tell
6  Healy that, "okay, um, so and so needs to be done.  The
7  foremen weren't there."
8       Q.  You saw him talking to John Healy?
9       A.  No.  But I'm just saying it's -- you know, maybe if
10 he didn't see any of the foremen out there on the site, maybe
11 he'll go directly to Healy or -- I don't know.
12      Q.  Okay.
13      A.  You know, that's what I'm saying.
14      Q.  Okay.  You didn't observe -
15      A.  Right; exactly.
16      Q.  Did you ever observe him talking to Don Harper?
17      A.  No.
18             MS. McDONALD:  Okay; nothing further.
19             (Whereupon, at 4:25 o'clock p.m., the
20 deposition was concluded.)
21
22
23
24
25

JOHN P. BABAUTA:  April 20, 2007

---

1                  CERTIFICATE OF WITNESS
2
3       I, John P. Babauta, the deponent herein, do hereby
4  certify that I have read, or had read to me, the foregoing
5  typewritten pages 1 through 94 inclusive.  My changes
6  thereof, if any, have been noted on a separate sheet of
7  paper, which I have signed, and which I understand will be
8  appended to and made a part of this deposition.  I certify
9  that the same is now a true and correct transcript of my
10 testimony.
11
12
13                      _____
14      (Dated)_____       John P. Babauta
15
16
17
18
19
20
21
22
23
24
25

---

1                  REPORTER'S CERTIFICATE
2
3       I, Cecilia F. Flores, Stenotype Reporter, do hereby
4  certify the foregoing 94 pages to be a true and correct
5  transcript of the stenographic shorthand notes and audio
6  recording taken by me in the within-entitled and numbered
7  case at the time and place as set forth herein.
8       Dated at Hagåtña, Guam, this 4th day of June, 2007.
9
10                     _____
                            Cecilia F. Flores
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## CLERK'S CERTIFICATE

SUPERIOR COURT OF GUAM            ) ss

      I, Cecilia F. Flores, Special Deputy Clerk, Superior Court of Guam, do hereby certify that on the 20th day of April, 2007, at the hour of 2:10 p.m. there appeared before me John P. Babauta at the offices of Blair Sterling Johnson Martinez & Leon Guerrero P.C., the witness herein, produced to give his deposition in the within-entitled and numbered Case No. CIV05-00037, in the District Court of Guam; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and a certified copy of the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review; corrections, if any, and execution.

      I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

      In testimony whereof, I have hereunto set my hand and seal of Court this 4th day of June, 2007.

                    _____
              SPECIAL DEPUTY CLERK, SUPERIOR COURT OF GUAM

JOHN P. BABAUTA:  April 20, 2007

# EXHIBIT 2

IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY ) CASE NO. CIV05-00037
APODACA, JR., JOSEPH J. )
HERNANDEZ, JOSEPH T. MENDIOLA, )
LARRY L. CHARFAUROS, ANTHONY )
C. ARRIOLA, ROBERT B. CRUZ, )
ROLAND F. MENDIOLA, JAMES S. )                 DEPOSITION OF
YEE, TEDDY B. CRUZ, JESSE B. )                 JOSEPH T. MENDIOLA
CRUZ, JOHN L.G. NAUTA, and )                   MAY 8, 2007
JOHN P. BABAUTA, )

    Plaintiffs, )

    vs. )

CALPAC, DYNAMIC TECHNICAL )
SERVICES, MCI, JOHN HEALY, )
DENNIS CLARK, WILLIAM WARD, )
JAI JAMES and DOES 1 through )
10, )

    Defendants. )

        The deposition of Joseph T. Mendiola, called by
Defendants CalPac, John Healy and William Ward, pursuant to
Notice and pursuant to the Federal Rules of Civil Procedure,
taken at the law offices of Blair Sterling Johnson Martinez &
Leon Guerrero, P.C., Suite 1008, Pacific News Building, 238
Archbishop Flores Street, Hagatna, Guam 96910, on Tuesday,
the 8th day of May, 2007, at the hour of 9:10 o'clock a.m.

        That at said time and place, there transpired the
following:

Cecilia F. Flores
Freelance Stenotype Reporter
Tel: (671) 632-0727 • FAX: (671) 632-5353

---

A P P E A R A N C E S:

For the Plaintiffs          Delia B. Lujan, Esq.
                            LUJAN AGUIGUI & PEREZ
                            Suite 300, Pacific News Bldg.
                            238 Archbishop Flores Street
                            Hagatna, Guam 96910

For Defendant CalPac        Vincent Leon Guerrero, Esq.
John Healy and William      BLAIR STERLING JOHNSON
Ward                        MARTINEZ & LEON GUERRERO
                            Suite 1008 Pacific News Building
                            238 Archbishop F.C. Flores Street
                            Hagatna, Guam 96910

For Defendant Dynamic       Arthur K. Smith, Esq.
Technical Services and      507 Prestige Circle
Dennis Clark                Allen, Texas 75002-3538

JOSEPH T. MENDIOLA: MAY 8, 2007

---

I N D E X

E X A M I N A T I O N

|                      | Direct | Cross | Redirect | Recross |
|----------------------|--------|-------|----------|---------|
| By Mr. Leon Guerrero | 4      |       | 111      |         |
| By Mr. Smith         |        | 71    |          |         |
| By Ms. Lujan         |        | 108   |          |         |

E X H I B I T S

| Defendants':  | Description:                                  | Page Marked: |
|---------------|-----------------------------------------------|--------------|
| Exhibit A -   | Termination Letter from CalPac                | 25           |
| Exhibit B -   | Charge of Discrimination filed with EEOC      | 36           |
| Exhibit C -   | EEOC Questionnaire                            | 64           |

JOSEPH T. MENDIOLA: MAY 8, 2007

---

HAGÁTÑA, GUAM: MAY 8, 2007; 9:10 o'clock A.M.

JOSEPH T. MENDIOLA

called by Defendant California Pacific Technical Services LLC
to give his deposition at this time, being first duly sworn,
was examined and testified on his oath, as follows:

DIRECT EXAMINATION

BY MR. LEON GUERRERO:

    Q.   Okay, Mr. Mendiola, can you just state your full
name for the record and spell your last name?

    A.   Joseph Tenorio Mendiola; M-E-N-D-I-O-L-A.

    Q.   Okay. This is the deposition of Joseph Mendiola in
the district Court of Guam, Case Number 05-00037, Van Meter,
et al. V. CalPac, et al.  Present in our conference room is
Mr. Mendiola along with his counsel, Delia Leon Guerrero.

        MS. LUJAN:  Lujan.

    Q.   (By Mr. Leon Guerrero)  I'm sorry, Delia Lujan.
And I'm Vince Leon Guerrero representing CalPac. Also
present is Art Smith via telephone representing Dynamic
Technical Services.  I guess we'll just start with a little
of your background.  Mr. Mendiola, can you just start off
with your education, how far did you go and that sort of
stuff?

    A.   I received my, uh, GED in 1980 -- 1993.

    Q.   GED?

JOSEPH T. MENDIOLA: MAY 8, 2007

1    A.  Okay.

2    Q.  So the first time.

3    A.  The first time –

4    Q.  What did he say?

5    A.  He had mentioned, he had spoken out loudly the term

6 of, uh, you guys look like a bunch of monkeys in the trench.

7 That was the first incident, if I call correctly.

8    Q.  And he only said it once?

9    A.  Yes, and walked away.

10    Q.  Now you remember the second incident.  What do you

11 remember him saying?

12    A.  He was upset because, I believe the trench at that

13 time was not to the specifications that he wanted it to be

14 because he had, you know, he's supervising the job.  And I

15 remember that we had to dig up the trench again because he

16 wasn't satisfied and at that time, I believe he had said

17 that, uh, uh, he had used the word island monkeys, you know,

18 I guess, like, doing a poor job.

19    Q.  Do you remember him saying, using the term island

20 monkeys on the second incident; correct?

21    A.  Yes.  I believe so, yes.

22    Q.  But you're not really sure?

23    A.  I'm not quite sure, exactly, like I said, which

24 incident was, you know, because there's a third incident too.

25    Q.  Okay.  Well, what do you believe Mr. Clark's

---

1 position is?

2    A.  He supervised the MCI project.

3    Q.  Okay.  Did anybody tell you what his position was?

4    A.  He was the inspector for MCI and he supervised the

5 project.  We were to do as he had, you know, supervised us to

6 do.

7    Q.  Who told you that?

8    A.  Our immediate supervisors.

9    Q.  And who would that be? That would be Mr. Van Meter

10 and Mr. Quintanilla?

11    A.  Yes.

12    Q.  And they said that Mr. Clark can essentially tell

13 you how to do things on the project?

14    A.  Exactly.

15    Q.  And you said there was a third incident; correct?

16    A.  Yes.

17    Q.  When did that happen?

18    A.  When?  Uh, I don't recall exactly when.  The

19 location was at Two Lover's Point right behind NavCams.

20    Q.  And this was before October 23, 2004; correct?

21    A.  I believe so.

22    Q.  Okay.  What did he say during the third incident?

23    A.  During the third incident we were instructed we

24 were to pull the fiber or the cable.

25    Q.  Okay.  Who instructed you?

---

1    A.  Uh, the immediate supervisors, which was Henry Van

2 Meter and Henry Quintanilla.

3    Q.  Do you know which one?

4    A.  I believe both of them, because they went around

5 and just instructing everyone what to do.

6    Q.  Okay.  I'm sorry, I'm going to go back to the

7 second incident.  Do you remember who the supervisor was who

8 was there besides Mr. Harper?

9    A.  No, because I believe the second incident was, I

10 believe Don Harper was on the site when the, the comment was

11 made.

12    Q.  Do you believe Mr. Harper actually heard the

13 remarks, statement by Mr. Clark?

14    A.  I'm not sure.

15    Q.  You said you spoke to Mr. Harper; correct?

16    A.  Yes.

17    Q.  And what did Mr. Harper say?

18    A.  He had said that he would take, he would take care

19 of it.  And, uh, he had -- I guess he had spoken to Dennis

20 Clark.

21    Q.  Well, did Mr. Harper say that he heard the remark?

22    A.  No.

23    Q.  Okay.  Moving on to the third incident at Two

24 Lover's Point; who was present at that time?

25    A.  The entire crew was present, exactly I do not know.

---

1 I would believe it would be the plaintiffs and the rest of

2 the -- our co-workers that work for the underground, uh,

3 department.

4    Q.  Okay.  So you're saying you believe all the

5 plaintiffs were there; correct?

6    A.  I believe so.

7    Q.  Do you know who Joe Hernandez is?

8    A.  Yes.

9    Q.  Do you believe he was present at that third

10 incident?

11    A.  I would believe so.

12    Q.  You are aware that Joseph Hernandez was receiving

13 worker's comp; correct?

14    A.  I -- yes.  Exactly when, I do not know.

15    Q.  And you know he was injured on the job, he was

16 injured on the job; right?

17    A.  Yes.

18    Q.  Do you remember when he was injured?

19    A.  No, because I wasn't in the area.

20    Q.  Okay.  But if Mr. Hernandez said he was injured

21 working at Tiyan, would that be before or after the second

22 incident?

23    A.  I can't recall exactly.

24    Q.  Why don't you just go through the phases.  You said

25 the first one happened at Tiyan; correct?

1  inspector on the project; correct?

2      A.   Yes.

3      Q.   Prior to this first occasion on which the island

4  monkey comment was made by Mr. Clark, would it be fair to say

5  that you saw him on an almost every day basis that you worked

6  for the preceding four or five months?

7      A.   Yes.

8      Q.   And over that at least four to five month period,

9  on an average day, how often would he be in your presence?

10     A.   In my presence, I believe it would be, um, about

11 three or four times a day.

12     Q.   And for about how long on each of those times per

13 day would he be there in your presence normally?

14     A.   I would assume between, um, thirty to forty-five

15 minutes.

16     Q.   All right.  And prior to this first occasion on

17 which -- in September of 2004 when Mr. Clark first used the

18 term monkey or island monkey, had you ever had any

19 communication with him at any time?

20     A.   Yes.

21     Q.   And can you recall how many times there would have

22 been before this first incident where you and he actually

23 said something to each other, or one of you said something to

24 the other?

25     A.   No, I can't really recall.

1      Q.   Can you recall any specific instance prior to that

2  time when he first used that term when he or you said

3  something to him or he said something to you?

4      A.   Yes, um, there was a few, uh, uh, uh, how would you

5  say -- there was a few times where he would direct and

6  instruct me as far as the laying of the conduits, um, the

7  laying of the caution tape, uh, the procedure as far as, uh,

8  uh, padding the conduits with, uh, soft dirt, making sure

9  that there's no, uh, heavy rocks, uh, for the first layer and

10 the reasons behind that, so he would supervise basically, uh,

11 he had supervised the whole MCI project.

12     Q.   All right.  On any of those occasions, did you ever

13 say anything back to him?

14     A.   Yes, I had told him that I was, I was, uh, willing

15 to absorb the knowledge that he had because I was just trying

16 to learn the the, cable industry, um, field.

17     Q.   So it was basically thanks for the input and I'm

18 going to do what you suggested?

19     A.   Yes.

20     Q.   Anything else?

21     A.   No, basically that would be it.

22     Q.   And on any of those occasions, did Mr. Clark ever

23 say anything to you that you felt was an insult to you or was

24 anything like a racial slur?

25     A.   Can you please repeat that question again?

1      Q.   Yeah; on any of those occasions, did Mr. Clark ever

2  make any statements that you considered to be insulting to

3  you or in the nature of a racial slur?

4      A.   No.

5      Q.   Did he say anything that you took as though he was

6  acting in a hostile manner towards you?

7      A.   During those occasions, no.

8      Q.   And this would be prior to the first time in

9  September of 2004 when you heard him use the term island

10 monkey or monkey.

11     A.   Yes.

12     Q.   So the answer would be no; is that correct?

13     A.   No.

14     Q.   Is it correct that your answer would be no if we

15 were referring to that time frame?

16     A.   Yes, that would be correct.

17     Q.   Okay.  And then you said that before that first

18 instance in which he used one of those terms there had been a

19 couple of occasions where he had provided you with some

20 instructions directly on what to do in your job; correct?

21     A.   Yes.

22     Q.   But other than that, you didn't have any direct

23 contact with him?  He dealt strictly with others or your

24 supervisors; correct?

25     A.   Yes.

1      Q.   And prior to the time that you first heard Mr.

2  Clark use the term island monkey or monkey, had you ever

3  heard of him ever using that term prior to that occasion?

4      A.   No.

5      Q.   And prior to the first occasion on which you heard

6  Mr. Clark use the term monkey or island monkey, did you ever

7  hear him mention anything about who he worked for or what his

8  job title or employer was?

9      A.   No.

10     Q.   So any understanding you had in that regard just

11 came from the people who you worked with at CalPac?

12     A.   My supervisors, yes.

13     Q.   Either Henry Quintanilla or Henry Van Meter; is

14 that right?

15     A.   Correct.

16     Q.   Now on the first occasion of the three on which you

17 heard Mr. Clark either say island monkey or monkey, you were

18 working with your other CalPac workers, but don't remember

19 specifically which of them were there with you at the time;

20 right?

21     A.   Yes.

22     Q.   And did he make the comment directly to you or to

23 all of you as a group?

24     A.   Uh, I believe it was to all of us as a group.

25     Q.   And did he just use the term once and then walk

A.   You mean like filing it with EEOC?

Q.   Well, do you know if he retracted his complaint?

A.   Yes.

Q.   He did retract his complaint?

A.   I've heard he had done that, yes.

Q.   Did you talk to him about that?

A.   No.

Q.   Okay.  And then you were saying, to your knowledge, the people, I'm not sure if I got this right and you might have to correct me, people that complained were non-Chamorros or were Chamorros?

A.   Were Chamorros.

Q.   And the people that were not Chamorros had no problem working in CalPac; is that what you're saying?

A.   Had no problem working at CalPac, I don't know.

Q.   If they were non-Chamorro they would have no problems working at CalPac?

A.   I don't know if they would have no problems.

     MR. LEON GUERRERO:  Okay.  I don't have any other questions.  Thank you.  Mr. Smith?

     MR. SMITH: Nothing else from me.

     MR. LEON GUERRERO: All right.  Thank you very much.  I think that's it.

     (Whereupon, at 11:55 o'clock a.m., the deposition was concluded.)

---

## CERTIFICATE OF WITNESS

I, Joseph T. Mendiola, the deponent herein, do hereby certify that I have read, or had read to me, the foregoing typewritten pages 1 through 113 inclusive.  My changes thereof, if any, have been noted on a separate sheet of paper, which I have signed, and which I understand will be appended to and made a part of this deposition.  I certify that the same is now a true and correct transcript of my testimony.

_____
        Joseph T. Mendiola

(Dated)_____

---

## REPORTER'S CERTIFICATE

I, Cecilia F. Flores, Stenotype Reporter, do hereby certify the foregoing 113 pages to be a true and correct transcript of the stenographic shorthand notes and audio recording taken by me in the within-entitled and numbered case at the time and place as set forth herein.

Dated at Hagåtña, Guam, this 25th day of May, 2007.

_____
        Cecilia F. Flores

---

## CLERK'S CERTIFICATE

SUPERIOR COURT OF GUAM        ) ss

I, Cecilia F. Flores, Special Deputy Clerk, Superior Court of Guam, do hereby certify that on the 8th day of May, 2007, at the hour of 9:10 o'clock a.m. there appeared before me Joseph T. Mendiola at the offices of Blair Sterling Johnson Martinez & Leon Guerrero, the witness herein, produced to give his deposition in the within-entitled and numbered Case No. CIV05-00037, in the District Court of Guam; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and a certified copy of the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review, corrections, if any, and execution.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand and seal of court this 25th day of May, 2007.

_____
SPECIAL DEPUTY CLERK, SUPERIOR COURT OF GUAM