ORIGINAL

1 **LUJAN AGUIGUI & PEREZ LLP**
Attorneys at Law
2 DNA Building, Suite 300
238 Archbishop Flores Street
3 Hagåtña, Guam 96910
Telephone (671) 477-8064/5
4 Facsimile (671) 477-5297

5 *Attorneys for Plaintiffs*



**FILED**
DISTRICT COURT OF GUAM

JAN 22 2008

**JEANNE G. QUINATA**
**Clerk of Court**

6 **IN THE UNITED STATES DISTRICT COURT OF GUAM**

7 **FOR THE TERRITORY OF GUAM**

8

9 HENRY G. VAN METER, et al.,                    CIVIL CASE NO. 05-00037

                              Plaintiffs,
10
                                                **SECOND DECLARATION OF DELIA**
        -vs-                                     **LUJAN IN SUPPORT OF EACH OF**
11                                               **PLAINTIFFS' OPPOSITIONS TO**
CALPAC, et al.,                                  **DEFENDANT DYNAMIC TECHNICAL**
12                                               **SERVICES' MOTIONS FOR SUMMARY**
                              Defendants.        **JUDGMENT**
13

14

15
        I, DELIA LUJAN, hereby declare and state as follows:
16
        1.  I am an attorney representing all the plaintiffs in this matter.
17
        2.  This declaration is submitted in support of each of Plaintiffs' oppositions to Defendant
18
            Dynamic Technical Services' Motions for Summary Judgment.
19
        3.  Attached hereto as Exhibit 1 are true and correct copies of the cover page, various
20
21          excerpts, and the Reporter's Certification of the deposition of Roland F. Mendiola

22          taken on May 21, 2007.

23
        4.  Attached hereto as Exhibit 2 are true and correct copies of the cover pages, various
24
25          excerpts, the Reporter's Certificate, and the Notary Public's Certificate of the

26          deposition of Henry G. Van Meter taken on April 11, 2007.

27

28

Henry G. Van Meter, et al., v. CAL PAC, et al.                                              1
Civil Case No. 05-00037
Second Decl. Delia Lujan re each Pls' Opp'n to Def. DTS' Mots. Summ. J.

5. Attached hereto as Exhibit 3 are true and correct copies of the cover pages, various excerpts, the Reporter's Certificate, and the Notary Public's Certificate of the deposition of Larry L. Charfauros taken on May 24, 2007.

6. Attached hereto as Exhibit 4 are true and correct copies of the cover pages, various excerpts, and the Reporter's Certificate of the deposition of Robert B. Cruz taken on February 7, 2007.

7. Attached hereto as Exhibit 5 are true and correct copies of the cover pages, various excerpts, the Reporter's Certificate, and the Notary Public's Certificate of the deposition of Joseph J. Hernandez taken on February 8, 2007.

8. Attached hereto as Exhibit 6 are true and correct copies of the cover pages, various excerpts, the Reporter's Certificate, and the Notary Public's Certificate of the deposition of Jesse B. Cruz taken on April 20, 2007.

9. Attached hereto as Exhibit 7 are true and correct copies of the cover pages, various excerpts, the Reporter's Certificate, and the Notary Public's Certificate of the deposition of John L.G. Nauta taken on April 16 and 18, 2007.

10. Attached hereto as Exhibit 8 are true and correct copies of the cover pages, various excerpts, the Reporter's Certificate, and the Notary Public's Certificate of the deposition of James S. Yee taken on February 7, 2007.

11. Attached hereto as Exhibit 9 is a true and correct copy of the Outside Plant Engineering and Project Management Agreement by and between MCI WorldCom Network Services, Inc. and Dynamic Technical Services L.P., Contract No. 2621, dated September 24, 2001, which I received from counsel for DTS on or about March 2, 2007, in response to Plaintiffs' first request for production of documents to DTS.

Henry G. Van Meter, et al., v. CAL PAC, et al.                                                    2
Civil Case No. 05-00037
Second Decl. Deliad in Supp're each Pls.' Opp'n to Dsf. DTS' Mot to Summ J.
Case 1:05-cv-00037    Document 303    Filed 01/22/2008    Page 2 of 45

12. Attached hereto as Exhibit 10 is a true and correct copy of the Defendant Dynamic Technical Services' Answers and Objections to Plaintiff Jesse B. Cruz's First Set of Interrogatories, dated February 25, 2007, which I received from counsel for DTS on or about March 2, 2007, in response to Plaintiff Jesse B. Cruz's first set of interrogatories to DTS.

13. Attached hereto as Exhibit 11 is a true and correct copy of the Defendant Dynamic Technical Services' Answers and Objections to Plaintiff Joseph J. Hernandez's First Set of Interrogatories, dated February 25, 2007, which I received from counsel for DTS on or about March 2, 2007, in response to Plaintiff Joseph J. Hernandez's first set of interrogatories to DTS.

14. Attached hereto as Exhibit 12 is a true and correct copy of the Defendant Dynamic Technical Services' Answers and Objections to Plaintiff Anthony C. Arriola's First Set of Interrogatories, dated February 25, 2007, which I received from counsel for DTS on or about March 2, 2007, in response to Plaintiff Anthony C. Arriola's first set of interrogatories to DTS.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22nd day of January, 2008, in Hagåtña, Guam.

_____
**DELIA LUJAN**

Henry G. Van Meter, et al., v. CAL PAC, et al.
Civil Case No. 05-00037
Case 1:05-cv-00037 Document 506 Filed 02/22/2008    Page 3 of 45
3

# EXHIBIT 1

## IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, ET AL,      §
§
        Plaintiffs         §
§
VS.                     §        No. CIV05-00037
§
§
CALPAC, ET AL          §
§
        Defendants      §

<br>

## ORAL DEPOSITION OF:

## ROLAND F. MENDIOLA

## MAY 21, 2007

<br>

# COPY

<br>

# *Compex Legal Services*

*Houston    San Antonio    Dallas    Austin*
*(800) 969-6424*

Roland F. Mendiola   Henry G. Van Meter vs. CALPAC, et al.      May 21, 2007

79

1
                    IN THE DISTRICT COURT OF GUAM
2
3      HENRY G. VAN METER, ET AL,         )
                                          )
                                          )
4           Plaintiffs                    )
                                          )
5      VS.                                )  NO. CIV05-00037
                                          )
6                                         )
       CALPAC, ET AL                      )
7                                         )
                                          )
8           Defendants                    )
                                          )
9                                         )
10
                        REPORTER'S CERTIFICATION
11                  DEPOSITION OF ROLAND F. MENDIOLA
                             May 21, 2007
12
13          I, JOE A. WILLIAMS, Certified Shorthand Reporter in and
14     for the State of Texas, hereby certify to the following:
15          That the witness, ROLAND F. MENDIOLA, was duly sworn by
16     the officer and that the transcript of the oral deposition is a
17     true record of the testimony given by the witness;
18          That examination and signature of the witness to the
19     deposition transcript was waived by the witness and agreement
20     of the parties at the time of the deposition;
21          That the original deposition was delivered
22     to Vincent Leon Guerrero
23          That the amount of time used by each party at the
24     deposition is as follows:
25          DAVID LUJAN - 00 HOURS:00 MINUTE(S)

Roland F. Mendiola   Henry G. Van Meter vs. CALPAC, et al.        May 21, 2007

80

```
 1        ARTHUR K. SMITH - 1 HOURS: 1 MINUTE(S)
 2        That $ 42500 is the deposition officer's charges to
 3   the DEFENDANT for preparing the original deposition transcript
 4   and any copies of exhibits;
 5        That pursuant to information given to the deposition
 6   officer at the time said testimony was taken, the following
 7   includes all parties of record:
 8        DAVID LUJAN, Attorney for Plaintiffs
          THOMAS C. MOODY, III, Attorney for Defendant
 9             CALPAC
          ARTHUR K. SMITH, Attorney for Defendant
10             DTS
11        That a copy of this certificate was served on all parties
12   shown herein on June 5, 2007 and filed with the Clerk
13   pursuant to Rule 203.3,
14        I further certify that I am neither counsel for, related
15   to, nor employed by any of the parties or attorneys in the
16   action in which this proceeding was taken, and further that I
17   am not financially or otherwise interested in the outcome of
18   the action.
19        Certified to by me this 5th of June, 2007.
20
21
22                          JOE A. WILLIAMS, Texas CSR #422
                            Expiration Date:  12-31-08
23                          Firm Registration No. 281
24
25
```

# EXHIBIT 2

# IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA ) CIVIL CASE NO. CIV05-00037
JR., JOSEPH J. HERNANDEZ, JOSEPH )
T. MENDIOLA, LARRY L. CHARFAUROS,)
ANTHONY C. ARRIOLA, ROBERT B. )
CRUZ, ROLAND F. MENDIOLA, JAMES )
S. YEE, TEDDY B. CRUZ, JESSE B. )
CRUZ, JOHN L.G. NAUTA, and JOHN )
P. BABAUTA, )
                         )
              Plaintiffs, )
                         )
        vs. )
                         )
CALPAC, DYNAMIC TECHNICAL )
SERVICES, MCI, JOHN HEALY, DENNIS)
CLARK, WILLIAM WARD, JAI JAMES )
and DOES 1 through 10, )
                         )
            Defendants. )



### DEPOSITION OF HENRY G. VAN METER
Taken on Behalf of Defendant CalPac

BE IT REMEMBERED That, pursuant to the Federal

Rules of Civil Procedure, the deposition of **HENRY G. VAN**

**METER** was taken before Cecille A. Flores, a Certified

Shorthand Reporter, on Wednesday, the 11th day of April 2007,

at 2:00 p.m. in the offices of Blair Sterling Johnson

Martinez & Leon Guerrero, Suite 1008, Pacific News Building,

238 Archbishop Flores Street, Hagatna, Guam.

RECEIVED

MAY 1 8 2007

LUJAN AGUIGUI & PEREZ LLP
By:

1    from Agana to NAVCAM.

2        Q    What was the role of CalPac?

3        A    They won the bid.

4        Q    So MCI needed work done and CalPac bid for it, is

5    that what you're saying?

6        A    Right.

7        Q    How did you get this understanding of how that

8    relationship happened?

9        A    How?

10       Q    Yes.

11       A    While you're working you hear gossip and stuff like

12   that.  I remember we had a meeting about a project coming up

13   which was the MCI project.

14       Q    What was Dennis Clark's role?

15       A    Dennis Clark's role?

16       Q    In the project.

17       A    What I know is he was Superintendent out there on

18   the field for MCI.

19       Q    For MCI?

20       A    Yes.

21       Q    So who employed Dennis Clark, to your understanding?

22       A    What I know, during the time, all I know is MCI.

23   When I found out about Dynamic Tech is after we made our

24   complaint.

25       Q    Had you heard about Dynamic Technical Services

1   Q    During that time.

2   A    No, I don't know.

3   Q    You don't know?

4   A    I don't know.

5   Q    Who did you think that Mr. Clark was working for at

6   that time?

7   A    MCI and CalPac.

8   Q    You think he was working for CalPac?

9   A    Well, he was my -- they told us that he's gonna be

10  a Superintendent out there in the field so whatever he says

11  we have to listen to Dennis Clark because --

12  Q    Who told you that Mr. Clark was the Superintendent?

13  A    Mr. Harper.

14  Q    So Mr. Harper told the Foremen?

15  A    Yes, that Dennis Clark is still -- whatever he says

16  goes.

17  Q    Mr. Harper indicated that he is the representative

18  of MCI, correct?

19  A    Mr. Harper -- yes, yes.

20  Q    Would you agree that he essentially would be the

21  representative of the person who hired CalPac?

22  A    You mean Dennis Clark?

23  Q    Yes. Would you agree that Dennis Clark was the

24  representative of --

25  A    For MCI?

1      A    Yes.

2      Q    You would?

3      A    Yes.

4      Q    Okay.  That's the basis for you saying that

5   Mr. Clark was an employee of CalPac, correct?

6      A    During that time, yes.  I mean, that's the way I see

7   it because -- you know, he's -- I have to listen to him.

8   They told us to say, hey, Dennis Clark's out there on the

9   field, make sure if he sees it -- if he needs something done

10  or he needs something to correct -- if he needs to correct

11  something, do it.  So I, you know, I gotta go by the command.

12     Q    Essentially because you're working for Mr. Clark,

13  correct?

14     A    CalPac and Clark.

15     Q    Doing work for Mr. Clark?

16     A    Yes.

17     Q    Paragraph 37 says that you were discriminated.

18     A    Yes.

19     Q    And harassed?

20     A    Yes.

21     Q    Let's just break them down just so I have an idea

22  what you're talking about.  You said you were harassed by

23  Dennis Clark.

24     A    Yes.

25     Q    How were you harassed?

*Henry G. Van Meter: April 11, 2007*

## REPORTER'S CERTIFICATE

I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that **HENRY G. VAN METER** personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 97, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam this 15th day of May 2007.

Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

## NOTARY PUBLIC'S CERTIFICATE

BARRIGADA ) ss

I, Cecille A. Flores, Notary Public in and for Guam, do hereby certify that on the 11th day of May, 2007 at the hour of 2:00 p.m. there appeared before me **HENRY G. VAN METER** at the law offices of Blair Sterling Johnson Martinez & Leon Guerrero, Suite 1008, Pacific News Building, 238 Archbishop Flores Street, Hagatna, Guam. The witness herein, produced to give his deposition in the within-numbered Civil Case No. CIV05-00037; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review, corrections, if any, and execution.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

In testimony whereof, I have hereunto set my hand this 15th day of May, 2007.

_____
Cecille A. Flores

# EXHIBIT 3

IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA
JR., JOSEPH J. HERNANDEZ, JOSEPH
T. MENDIOLA, LARRY L. CHARFAUROS,
ANTHONY C. ARRIOLA, ROBERT B.
CRUZ, ROLAND F. MENDIOLA, JAMES
S. YEE, TEDDY B. CRUZ, JESSE B.
CRUZ, JOHN L.G. NAUTA, and JOHN
P. BABAUTA,

       Plaintiffs,

vs.

CALPAC, DYNAMIC TECHICAL
SERVICES, MCI, JOHN HEALY, DENNIS
CLARK, WILLIAM WARD, JAI JAMES
and DOES 1 through 10,

       Defendants.

CIVIL CASE NO. CIV05-00037

DEPOSITION OF LARRY L. CHARFAUROS

*Taken on Behalf of CalPac*

BE IT REMEMBERED That, pursuant to the Federal

Rules of Civil Procedure, the deposition of LARRY L.

CHARFAUROS was taken before Cecille A. Flores, a Certified

Shorthand Reporter, on Thursday, the 24th day of May 2007, at

9:00 a.m. in the offices of Blair Sterling & Johnson, Suite

1008, Pacific News Building, 238 Archbishop Flores Street,

Hagatna, Guam.

---

INDEX

Examination

    Direct   Cross

By Mr. Leon Guerrero:   4

By Ms. Lujan:   None

EXHIBITS

| Description: | Page Marked: |
|---|---|
| Exhibit A: Application for Employment | 16 |
| Exhibit B: Confession of Judgment | 19 |
| Exhibit C: Superseding of Indictment | 26 |
| Exhibit D: Charge of Discrimination | 27 |
| Exhibit E: Furlough Letter | 54 |
| Exhibit F: PDN article | 100 |
| Exhibit G: Questionnaire | 102 |

---

APPEARANCES

Appearing on behalf of the Plaintiffs:

    LUJAN AGUIGUI & PEREZ
    Suite 300, Pacific News Building
    238 Archbishop Flores Street
    Hagatna, Guam 96910
    By: Ms. Delia S. Lujan, Esq.
    Phone: (671) 477-8064

Appearing on behalf of CalPac:

    BLAIR STERLING & JOHNSON
    Suite 1008, Pacific News Building
    238 Archbishop Flores Street
    Hagatna, Guam 96910
    By: Mr. Vincent E. Leon Guerrero, Esq.
    Phone: (671) 477-7857

---

4

    COURT REPORTER: Good morning, my name is
Cecille Flores. My address is Suite 2E, Jugo Building, 618
Route 8, Barrigada, Guam. We are here today for the
deposition of Larry Charfauros and the date is May 24, the
time is about 9:12 a.m. We're here in the offices of Blair,
Sterling, Johnson, Martinez & Leon Guerrero. Present is
Mr. Leon Guerrero, attorney for CalPac, and Delia Lujan,
attorney for the Plaintiffs.

    LARRY L. CHARFAUROS,
was thereupon called as a witness on behalf of Defendant
CalPac, and after having been first duly sworn, was examined
and testified as follows:

    DIRECT EXAMINATION
BY MR. LEON GUERRERO:
    Q  Mr. Charfauros just for the record, can you state
your full name and spell your last name?
    A  Larry L. Charfauros, C-H-A-R-F-A-U-R-O-S.
    Q  Mr. Charfauros, we're here to take your deposition.
Have you ever had your deposition taken before?
    A  No.
    Q  You understand that the deposition is one of the
means that we can use to get information from you, correct?
    A  Yes.

COPY

**37**

A    Correct.

Q    How did you feel you were being discriminated
.inst?

A    Well, I was put down because I was called an island
.onkey. You know what I mean?

Q    Maybe we should go to Paragraph 2 then. It says,
.ginning on September 21, 2004, you were harassed by Dennis
.ark, correct?

A    Correct.

Q    Dennis Clark was a representative of MCI, correct?

A    Correct.

Q    Did you believe Mr. Clark was working for CalPac?

A    Yes.

Q    Why do you believe that?

A    He was out there inspecting our jobs.

Q    Did anybody tell you he worked for CalPac?

A    No, all we knew he was inspector for our job site.

Q    Who told you that?

A    (No response.)

Q    When you say "we," you're referring to everybody in
the crew, right?

A    Right.

Q    Who told the crew he was an inspector for –

A    I don't remember who told the crew.

Q    Okay.

**38**

A    All I remember is he was an inspector checking our
trench.

Q    Let's take a look at Page 3 of the Complaint,
Paragraph 21. Why don't you go ahead and read that.

A    Paragraph 21?

Q    Yes.

A    "Defendant MCI is upon information and belief a
telecommunications business having its principal place of
business or primary offices in Texas and engaged in business
in Guam."

Q    Is that 21?

A    Yes. Oh, 21. "Defendant Dennis Clark is upon
information and belief a manager or supervisor employed by
DTS."

Q    That's an allegation that you and the rest of the
Plaintiffs made about Dennis Clark, correct?

A    Correct.

Q    Do you want to change your allegations about Dennis
Clark at this point?

A    No.

Q    At least specifically as it relates to Paragraph 21?

A    No.

Q    So you believe that Dennis Clark is a Manager
employed by DTS?

A    Yes.

**39**

1   Q    Can you tell me anywhere in this Complaint that it
2   says that Dennis Clark is employed by CalPac? If you want to
3   take a –
4        A    Take a break.
5        Q    Okay.
6                        (Recess taken at 10:04 a.m.)
7                        (Back on the record at 10:06 a.m.)
8   BY MR. LEON GUERRERO: (Continuing)
9        Q    Mr. Charfauros, having had a chance to look at the
10  Complaint, is there anywhere in the Complaint that it says
11  Mr. Clark was employed by CalPac?
12       A    No.
13       Q    Do you wish to change and add an allegation to this
14  Complaint that says Mr. Clark is employed by CalPac?
15       A    No.
16       Q    So you would agree with me that Mr. Clark was not
17  employed by CalPac, correct?
18       A    Correct.
19       Q    Going back to Paragraph 2 of Exhibit D it says "On
20  separate occasions, Dennis Clark made racially derogatory
21  comments to me and fellow workers by referring to us as
22  monkeys and island monkeys." Do you remember his statements
23  referring to you guys as monkeys or island monkeys?
24       A    Mostly all the job sites.
25       Q    How many times did he say this, do you remember?

**40**

1        A    I don't remember how many times but pretty much he
2   would be calling us island monkeys.
3        Q    Are you saying he called you island monkey each time
4   that you saw him?
5        A    I don't recall each time, but I remember him calling
6   us island monkeys.
7        Q    The other Plaintiffs in this case say it happened
8   twice. A lot of them say it happened twice. I think one
9   other says it happened three times. Mr. Harper said it
10  happened three times. Do you disagree with their –
11       A    Well, I don't recall how many times he called us
12  island monkeys because I wouldn't wanna count it.
13       Q    Okay. Well, what happened the first time? Do you
14  remember that?
15       A    First time?
16       Q    Yes.
17       A    Yeah, I remember the first time. I'll never forget
18  that.
19       Q    Who was there?
20       A    That was back at the job site in Two Lovers' Point.
21       Q    Who was there?
22       A    I don't recall who was there.
23       Q    Were there other people there at least?
24       A    Yeah. Yes, there's always a bunch of us.
25       Q    How many people do you think were there when he made

**Page 37 to Page 40**

**NOTARY PUBLIC'S CERTIFICATE**

BARRIGADA ) ss

I, Cecille A. Flores, Notary Public in and for
Guam, do hereby certify that on the 24th day of May, 2007 at
the hour of 9:00 a.m. there appeared before me LARRY L.
CHARFAUROS at the law offices of Blair Sterling Johnson
Martinez & Leon Guerrero, Suite 1008, Pacific News Building,
238 Archbishop Flores Street, Hagatna, Guam. The witness
herein, produced to give his deposition in the
within-numbered Civil Case No. CIV05-00037; that prior to
examination the witness was by me duly sworn upon his oath;
that thereafter the transcript was prepared by me or under my
supervision, and the original deposition transcript was
presented to Mr. Leon Guerrero's office for the deponent's
review, corrections, if any, and execution.

I further certify that I am not a relative,
employee, attorney or counsel of any of the parties, nor a
relative or employee of such attorney or counsel, and that I
am not directly or indirectly interested in the matters in
controversy.

In testimony whereof, I have hereunto set my
hand this 25th day of June, 2007.

_____
Cecille A. Flores

**113**

1 A Correct, probably.
2 Q Then you complained to Don Harper on September 25,
3 2004, correct?
4 A Yes, correct.
5 Q And then the last one was on October 23, 2004?
6 A Yes.
7 Q Correct?
8 A Correct.
9 Q And that would be the same day as the last incident,
10 correct?
11 A Correct.
12 Q Did you complain to the Department of Labor?
13 A We tried to complain there but we weren't
14 entertained.
15 Q Why is that?
16 A According to them, they only represent Government of
17 Guam employees.
18 Q Other than CalPac laying you off, do you think they
19 treated you differently when you were working for your
20 Complaints? Do you understand my question? It may have been
21 a bad question.
22 A I don't understand. Repeat again.
23 Q See, that's what I meant. Sorry about that. You
24 were saying that you were retaliated against, correct?
25 A Correct.

**114**

1 Q One of the retaliation things was you were laid off?
2 A Correct.
3 Q Is there anything else that they did that you think
4 they retaliated against you by? Any action by CalPac?
5 A I think that'll be it.
6 Q That was it?
7 A I think so.
8 Q Okay. I don't have any other questions at this
9 time.
10 MS. LUJAN: I don't have any questions.
11 MR. LEON GUERRERO: All right. I guess I don't
12 have any other questions. Mr. Charfauros, nice meeting you,
13 man.
14 THE WITNESS: You too, man.
15 MR. LEON GUERRERO: And by the way, I am local.
16 THE WITNESS: I hope so.
17
18 ooOoo
19 [DEPOSITION CONCLUDED AT 11:44 A.M.]

**CERTIFICATE OF WITNESS**

I, LARRY L. CHARFAUROS, being first duly sworn on oath, depose and say that I am the witness named in the foregoing deposition transcript and that I have read the questions and answers thereon as contained in the foregoing deposition, consisting of pages 1 through 114; that the answers are true and correct as given by me at the time of taking the deposition, except as indicated on the correction sheet.

_____
LARRY L. CHARFAUROS
Date:_____

**REPORTER'S CERTIFICATE**

I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that LARRY L. CHARFAUROS personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 114, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam this 25th day of June 2007.

_____
Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

# EXHIBIT 4

1      Q.    Who were those people?

2      A.    They were Teddy Cruz, Henry Van Meter, Henry

3    Quintanilla, Joe Hernandez, Joe Mendiola, Roland Mendiola,

4    myself, JT, you can say the whole people that was there that

5    came to work.

6      Q.    Everybody that came to work?

7      A.    (Witness nodded head.)

8      Q.    Who would preside over the meeting?

9      A.    JT or Don Harper.

10      Q.    And during a typical, I guess, a job, could you

11    describe what you did at the site?

12      A.    When we're underground, we trench, we lay conduit,

13    we pull fiber.

14      Q.    And how many people would be working with you?

15      A.    I think maybe five or six, maybe more.

16      Q.    Would those be the same individuals you mentioned:

17    Teddy Cruz, Henry Van Meter, Henry Quintanilla, Joe

18    Hernandez, Joe Mendiola and --

19      A.    Yes.

20      Q.    Did they all do the same thing you did?

21      A.    Yeah, they were all in the same area.

22      Q.    Now, you've heard of Dynamic Technical Services; is

23    that correct?

24      A.    Yes.

25      Q.    And to your understanding, what role did they have

1    during the project?

2        A.   My understanding, they were over -- they were the

3    one overlooking the project site, telling us what are we

4    going to do and how to do it.

5        Q.   When you say telling what to do and how to do it,

6    are you referring to a person?

7        A.   I'm referring to -- see, they'll let Don Harper know

8    -- Dennis will let Don Harper know what's our plan and then

9    he'll lay down to the supervisors and they'll feed it back to

10   us.

11       Q.   So when you're referring to they, DTS, you're

12   referring to Dennis Clark?

13       A.   I'm referring to Dennis Clark.

14       Q.   And did you ever actually see Dennis Clark tell Don

15   Harper what to do?

16       A.   I'm assuming.

17       Q.   You assume that?

18       A.   Yeah, because he was overlooking the project.

19       Q.   Okay.  What was your understanding of MCI's role in

20   the project?

21       A.   My understand is that I heard -- they're the one

22   that subcontract CalPac.  That's my understanding.

23       Q.   You said DTS oversaw the project site and instructed

24   what to do.  How did you achieve that understanding of DTS's

25   role?

1    Q.    Do you know how big the company is?

2    A.    No.

3    Q.    Do you know how many employees it has?

4    A.    No.

5    Q.    Did you ever have any personal interaction with

6    Dennis Clark?

7    A.    No.

8    Q.    Did you ever see him or hear him talk about you to

9    somebody else?

10   A.    No.

11   Q.    Did you ever see him talk to CalPac employees or

12   representatives about you?

13   A.    Can you repeat that again?

14   Q.    Did you ever see Dennis Clark talk to CalPac

15   representatives or employees about you?

16   A.    No.

17   Q.    Did you ever witness any conversations between

18   Dennis Clark and CalPac employees or representatives about

19   anything?

20   A.    The only one I -- was when he mentioned you island

21   monkeys.  That was the only one.

22   Q.    Let's talk about that statement, the phrase island

23   monkeys.  Could you tell me when that happened?

24   A.    That happened on September 2004.

25   Q.    What were you doing --

1    A.    We were working on the trench.

2    Q.    Okay.  Who's we?

3    A.    Me and the rest of the boys that was there.

4    Q.    Would those be Teddy Cruz, Henry Van Meter, Henry

5    Quintanilla, Joe Hernandez, Joe Mendiola and John Thomas?

6    A.    John Thomas wasn't there but the rest of the guys

7    were there.

8    Q.    Anybody else that I didn't mention?

9    A.    Yes, they had Larry Charfauros, Norman Santos.

10   That's the only names I can recall so far.

11   Q.    And you said September '04.  I think on Exhibit A,

12   it says September 25, '04; would that be the date of the

13   statement?

14   A.    Yes.

15   Q.    So you're working on the trench and what happens?

16   A.    We're working the trench, I didn't even know he

17   pulled in.  It was a hot day and he came up and he goes,

18   "What are you island monkeys doing?"  He just said it out

19   loud.

20   Q.    And what happened after that?

21   A.    After that -- Don Harper was there.  Don Harper --

22   oh, he pulled him to the side and he was talking to him.  I

23   don't know what the conversation was about.

24   Q.    Did anybody respond after he asked the question,

25   what are you island monkeys doing?

1    A.   Yes, we responded but not to him.  We went up to our

2 supervisor and told him, hey, this person that we don't know

3 is calling us island monkeys.

4    Q.   Why do you say you didn't know him?

5    A.   I mean I don't know him personally for him to come

6 up and say it to me or say it to us.

7    Q.   I'm sorry, was James Yee there?

8    A.   No, James was up more.  Because we're a group here,

9 a group there.

10   Q.   And while he was making that statement, were you

11 looking at him or were you working?

12   A.   We were right there where he was standing right near

13 us and he just said it out loud, "What are you island monkeys

14 doing?"

15   Q.   Were you guys actually in a trench?

16   A.   Some of us were in a trench, some of us were out

17 because we're covering the pipes.

18   Q.   How far below would you be?

19   A.   (Witness gestured.)

20   Q.   Couple feet?

21   A.   Yeah.

22   Q.   So how many people heard his statement?

23   A.   All of us that was there.

24   Q.   So did you immediately stop what you were doing?

25   A.   Yeah, we all stopped and Don Harper called him to

1    the side.

2         Q.    Okay.

3         A.    And then they were talking.  I don't know what they

4    were talking about.

5         Q.    Did you make a complaint to a supervisor?

6         A.    Right there on the spot.  He was right there.

7         Q.    So which supervisor did you complain to?

8         A.    Henry Quintanilla.

9         Q.    What did Mr. Quintanilla say or do?

10        A.    We just made a complaint to him and then I don't

11   know what he did after that.

12        Q.    Did you ever follow-up?

13        A.    No.

14        Q.    And how long did it take for you to make that

15   complaint to Mr. Quintanilla?

16        A.    Not long, he was just right there.  We went up and

17   go, "Hey, H, this person just yelled at us island monkeys and

18   I don't think that's right, you know.  He just said it out

19   loud."  And we made a complaint to him because he was the

20   supervisor on the field and even Don Harper was there when he

21   heard that.

22        Q.    Did you resume work right after?

23        A.    Yes, we went back to work.

24        Q.    And what did Dennis Clark do?

25        A.    He left.

1    Q.   How long was his conversation with Don Harper?

2    A.   Maybe a good ten minutes.

3    Q.   Okay.  Did he leave right thereafter or did he stand

4  around and --

5    A.   No, he just left and then we went back to work.

6    Q.   Did you ever discuss with anybody else what

7  happened?

8    A.   No.  Only the guys that was there when we made a

9  complaint to Henry.

10    Q.   After that, did you guys have a discussion about it?

11    A.   No.

12    Q.   No?  You haven't discussed what happened with

13  anybody since the statement was made?

14    A.   No.

15    Q.   Any other incidents with Dennis Clark?

16    A.   I wasn't there but I heard the other boys

17  mentioning, complaining about it.  Because we're all

18  separated.

19    Q.   About that same statement?

20    A.   About the same statement, you island monkeys or you

21  monkeys.

22    Q.   Not just same statement but same incident with you

23  at the trench?

24    A.   Yes.  But they were in the other side.

25    Q.   I'm sorry?

1    A.    See, we're here and, you know, a couple of days or

2  whatever and then -- we were separated with the boys because

3  we had to split up and then we end up hearing that Dennis is

4  mentioning it, Dennis calling saying you island monkeys, you

5  monkeys.

6    Q.    Let me see if I understand.  Later, you heard that

7  he said the same thing to other people?

8    A.    By the words of the boys that were being -- what

9  were being called.

10    Q.    So you did have discussions with other people about

11  --

12    A.    No, just mention it and we just went back to work.

13    Q.    Was that on the same day?

14    A.    No, different day.  I can't recall the day.  It  was

15  a different day.

16    Q.    It was after you, after your incident?

17    A.    I think so.

18    Q.    You think so?

19    A.    Yeah.

20    Q.    Do you recall ever hearing complaints about Dennis

21  Clark referring to people as island monkeys prior to when he

22  made that statement in your presence?

23    A.    Right.

24    Q.    You've heard it before?

25    A.    No, that's the first time I heard it.

# EXHIBIT 5

IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA,) Civil Case No. CIV05-00037
JR., JOSEPH J. HERNANDEZ, JOSEPH )
T. MENDIOLA, LARRY L. CHARFAUROS, )
ANTHONY C. ARRIOLA, ROBERT B. )
CRUZ, ROLAND F. MENDIOLA, JAMES S.)
YEE, TEDDY B. CRUZ, JESSE B. CRUZ,)
JOHN L.G. NAUTA, and JOHN P. )
BABAUTA, )
              Plaintiffs, )
                          )
      vs. )
                          )
CALPAC, DYNAMIC TECHNICAL )
SERVICES, MCI, JOHN HEALY, DENNIS )
CLARK, WILLIAM WARD, JAI JAMES and)
DOES 1 through 10, )
                          )
          Defendants. )

**COPY**

### DEPOSITION OF JOSEPH HERNANDEZ

**Taken on Behalf of the Defendants**

        BE IT REMEMBERED That, pursuant to the Guam
Rules of Civil Procedure, the deposition of JOSEPH HERNANDEZ
was taken before Veronica F. Reilly, Certified Shorthand
Reporter, on Thursday, the 8th day of February 2007, at 10:00
a.m. in the Law Offices of Blair Sterling Johnson Martinez &
Leon Guerrero, Suite 1008, Pacific News Building, 238
Archbishop Flores Street, Hagatna, Guam.

Case 1:05-cv-00037 Document 1 Filed 10/20/2007 Page 30 of 45

# CERTIFICATE OF WITNESS

DISTRICT COURT OF GUAM     )

        I, Joseph Hernandez, being first duly sworn on oath, depose and say that I am the witness named in the foregoing deposition transcript and that I have read the questions and answers thereon as contained in the foregoing deposition, consisting of pages 1 through 151; that the answers are true and correct as given by me at the time of taking the deposition, except as indicated on the correction sheet.


                              _____
                              Joseph Hernandez

# REPORTER'S CERTIFICATE

DISTRICT COURT OF GUAM    )


      I, Veronica F. Reilly, Certified Shorthand Reporter, hereby certify that Joseph Hernandez personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 151, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

      Witness my hand at Barrigada, Guam, this 9th day of March 2007.


_____
Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter

# EXHIBIT 6

# IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA) CIVIL CASE NO. CIV05-00037
JR., JOSEPH J. HERNANDEZ, JOSEPH )
T. MENDIOLA, LARRY L. CHARFAUROS,)
ANTHONY C. ARRIOLA, ROBERT B. )
CRUZ, ROLAND F. MENDIOLA, JAMES )
S. YEE, TEDDY B. CRUZ, JESSE B. )
CRUZ, JOHN L.G. NAUTA, and JOHN )
P. BABAUTA, )
                              )
                Plaintiffs, )
                              )
        vs.                   )
                              )
CALPAC, DYNAMIC TECHNICAL     )
SERVICES, MCI, JOHN HEALY, DENNIS)
CLARK, WILLIAM WARD, JAI JAMES )
and DOES 1 through 10,        )
                              )
                Defendants.  )

**COPY**

## DEPOSITION OF JESSE B. CRUZ

*Taken on Behalf of Defendant CalPac*

BE IT REMEMBERED That, pursuant to the Guam

Rules of Civil Procedure, the deposition of JESSE B. CRUZ was

taken before Cecille A. Flores, a Certified Shorthand

Reporter, on the 20th day of April 2007, at 9:00 a.m. in the

offices of Blair Sterling & Johnson.

1     Q    You did together?

2     A    Yeah, Henry.

3     Q    What is your understanding of Dynamic Technical

4  Services?

5     A    The company.

6     Q    Do you know what they do?

7     A    I have no idea.

8     Q    Do you know where they're based?

9     A    (No response.)

10    Q    Do you know where they're based?

11    A    Texas.

12    Q    In Texas?  Why do you think they're based out of

13  Texas?

14    A    I have no idea.

15    Q    Did somebody say?

16    A    Huh?

17    Q    Did somebody tell you they're based out of Texas?

18    A    The address.

19    Q    How did you find out the address?

20    A    EEOC.

21    Q    Do you have any other knowledge of them being based

22  in Texas?

23    A    No.

24    Q    Do you know how many employees they have?

25    A    I have no idea.

*Jesse B. Cruz: April 20, 2007*

1      Q    Do you know what they were supposed to be doing, if
2  anything, on the MCI project?
3      A    Meaning -- I don't understand.
4      Q    To your understanding, do they have any role on the
5  MCI project?
6      A    Overseeing the work?
7      Q    Overseeing the work of --
8      A    The MCI project.
9      Q    Why do you have that understanding?  Why do you
10 think that?
11     A    Supervise us.
12     Q    Why do you think they were supervising you?
13     A    To make sure how the trench -- to make sure how the
14 cable is laid in.
15     Q    Okay.  But how did they do that?
16     A    Dig the trench -- dig the trench about two feet and
17 sand the bottom and lay the conduits on.
18     Q    Okay.  Who were the Dynamic representatives?
19     A    Dennis Clark.
20     Q    Dennis Clark?
21     A    Yeah.
22     Q    And what did he do on the job site?
23     A    Supervise.
24     Q    What do you mean by that?
25     A    Go around and checking the work the guys are doing.

*Jesse B. Cruz: April 20, 2007*

1      Q     But at the time you were working at CalPac, you

2   didn't know about DTS, right?  Didn't know about Dynamic?

3      A     At the beginning?

4      Q     Yes.  When you first saw Dennis Clark, you hadn't

5   heard of DTS, right?

6      A     No.

7      Q     When you were working on the MCI project, who was

8   your employer?

9      A     What do you mean by that?  I had Dennis Clark and

10  CalPac.

11     Q     Okay.  But who employed you to work?

12     A     CalPac.

13     Q     And they paid you?

14     A     Yes.

15     Q     They paid your salary and they hired you?

16     A     Yes.

17     Q     You said Henry Quintanilla was your Supervisor,

18  right?

19     A     Yes.

20     Q     Who else were your Supervisors?

21     A     Ted Cruz was a Foreman.

22     Q     Ted Cruz?

23     A     Yeah.

24     Q     Anybody else?

25     A     That I work under?

*Jesse B. Cruz: April 20, 2007*

1    Q    Yes.

2    A    Just those two.

3    Q    Just those two?  At least these two were your

4  Supervisors the entire time?

5    A    Working together.

6    Q    The entire time you were at CalPac?

7    A    Yes.

8    Q    Who did Ted Cruz report to?

9    A    HQ.

10    Q    Who did HQ report to?

11    A    I guess John Healy.

12    Q    You don't know?

13    A    I don't know.

14    Q    Did you do what your Supervisors told you to do?

15    A    Yes.

16    Q    Did Dennis Clark ever tell what you to do?

17    A    Yes, on that -- that day he called me island monkey,

18  and he did tell me that -- he goes -- he asked me a question

19  how deep was the trench, I told him like 24 inches and to lay

20  sand and then put the conduit on top of the sand.

21    Q    Was that before or after he called you an island

22  monkey?

23    A    That was -- no, after he called me island monkey.

24    Q    So let's run through that day.  Can you tell us

25  again what you were doing on that day?

Jesse B. Cruz: April 20, 2007

1       A     Yes.

2       Q     Who else do you recall had hours reduced?

3       A     I believe Ted and John.

4       Q     Do you recall anyone else or is it just Ted and

5    John?

6       A     No, I don't recall.

7       Q     When you said Dennis Clark was a Supervisor for the

8    MCI project, he was a Supervisor for anyone who worked on the

9    MCI project?

10      A     Yes.

11      Q     The time that you discussed the Tiyan halfway house,

12   when he said island monkey, who was he talking about?

13      A     That time when he approached us, it's only me and

14   Tony there in the trench.

15      Q     So was he talking about you and Tony?

16      A     Me and --

17      Q     Anthony Arriola?

18      A     Yes.

19            **MS. LUJAN:**  I have no other questions.

20            **MR. LEON GUERRERO:**  I have a few follow-up

21   questions.

22

23                    RE-DIRECT EXAMINATION

24   BY MR. LEON GUERRERO:

25      Q     Getting back to the meeting that you were just

*Jesse B. Cruz: April 20, 2007*

## REPORTER'S CERTIFICATE

I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that JESSE B. CRUZ personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 120, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam this 23rd day of July 2007.


Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

## NOTARY PUBLIC'S CERTIFICATE

BARRIGADA ) ss

       I, Cecille A. Flores, Notary Public in and for Guam, do hereby certify that on the 20th day of April, 2007 at the hour of 9:00 a.m. there appeared before me JESSE B. CRUZ at the law offices of Blair Sterling & Johnson. The witness herein, produced to give his deposition in the within-numbered Civil Case No. CIV05-00037; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review, corrections, if any, and execution.

       I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

       In testimony whereof, I have hereunto set my hand this 23rd day of July, 2007.

               _Cecille A. Flores_

# EXHIBIT 7

# IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, JERRY APODACA) CIVIL CASE NO. CIV05-00037
JR., JOSEPH J. HERNANDEZ, JOSEPH )
T. MENDIOLA, LARRY L. CHARFAUROS,)
ANTHONY C. ARRIOLA, ROBERT B.    )
CRUZ, ROLAND F. MENDIOLA, JAMES  )
S. YEE, TEDDY B. CRUZ, JESSE B.  )
CRUZ, JOHN L.G. NAUTA, and JOHN  )
P. BABAUTA,                      )
                                 )
              Plaintiffs,        )
                                 )
         vs.                     )
                                 )
CALPAC, DYNAMIC TECHNICAL        )
SERVICES, MCI, JOHN HEALY, DENNIS)
CLARK, WILLIAM WARD, JAI JAMES   )
and DOES 1 through 10,           )
                                 )
              Defendants.        )



## DEPOSITION OF JOHN L.G. NAUTA

*Taken on Behalf of Defendant CalPac*

        BE IT REMEMBERED That, pursuant to the Federal
Rules of Civil Procedure, the deposition of **JOHN L.G. NAUTA**
was taken before Cecille A. Flores, a Certified Shorthand
Reporter, on April 16 & 18, 2007, at the law offices of Blair
Sterling & Johnson, Suite 1008, Pacific News Building, 238
Archbishop Flores Street, Hagatna, Guam.

# REPORTER'S CERTIFICATE

I, Cecille A. Flores, a Certified Shorthand Reporter, hereby certify that **JOHN L.G. NAUTA** personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotypy all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 140, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam this 19th day of July 2007.


_____
Cecille A. Flores
Certified Shorthand Reporter
CSR No. FL-OR-EC-A197NA

## NOTARY PUBLIC'S CERTIFICATE

BARRIGADA ) ss

       I, Cecille A. Flores, Notary Public in and for Guam, do hereby certify that on the 16th day of April, 2007 at the hour of 2:00 p.m. there appeared before me JOHN L.G. NAUTA at the law offices of Blair Sterling & Johnson, Suite 1008, Pacific News Building, Hagatna, Guam. The witness herein, produced to give his deposition in the within-numbered Civil Case No. CIV05-00037; that prior to examination the witness was by me duly sworn upon his oath; that thereafter the transcript was prepared by me or under my supervision, and the original deposition transcript was presented to Mr. Leon Guerrero's office for the deponent's review, corrections, if any, and execution.

       I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, and that I am not directly or indirectly interested in the matters in controversy.

       In testimony whereof, I have hereunto set my hand this 19th day of July, 2007.

_____
Cecille A. Flores