ELYZE J. MCDONALD, Guam Bar No. 01-004
CARLSMITH BALL LLP
Bank of Hawaii Building
134 West Soledad Avenue, Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Telephone (671) 472-6813
Facsimile (671) 477-4375

Arthur K. Smith, Texas Bar No. 18534100
LAW OFFICES OF ARTHUR K. SMITH
(Admitted *Pro Hac Vice*)
507 Prestige Circle
Allen, Texas 75002
Telephone: (469) 519-2500
Facsimile: (469) 519-2555

*Attorneys for Defendant Dynamic Technical Services*

FILED
DISTRICT COURT OF GUAM
JAN 29 2008
JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br><br><br><br>DEFENDANT DYNAMIC TECHNICAL SERVICES' REPLY TO ANTHONY C. ARRIOLA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SERVICE |

# I. INTRODUCTION[1]

Plaintiff Anthony C. Arriola's ("Plaintiff") attempts to raise genuine issues of material fact to overcome the Motion for Summary Judgment of Defendant Dynamic Technical Services, L.P. ("DTS"). For the reasons set forth below, Plaintiff has failed to raise any issues of material fact, and DTS is entitled to summary judgment as a matter of law.

# II. DTS WAS NOT AN EMPLOYER OF THE PLAINTIFF

## A. DTS was not a joint employer of the Plaintiff

The Plaintiff attempts to subject DTS to Title VII liability by alleging that DTS was a joint employer with Calpac. This argument fails as a matter of law. As set forth in DTS' Motion for Summary Judgment, two or more employers may be considered joint employers if both employers control the terms and conditions of employment of the employee. *Wynn v. Nat'l Broad. Co.*, 234 F.Supp.2d 1067, 1093 (C.D.Cal. 2002). The Ninth Circuit opined that the "Supreme Court seems to suggest that the *sine qua non* of determining whether one is an employer is that an 'employer' can hire and fire employees, can assign tasks to employees and supervise their performance." *E.E.O.C. v. Pacific Maritime Assoc.*, 351 F.3d at 1277 (citing *Clackamas*, 123 S.Ct. at 1680). Moreover, the Ninth Circuit has considered the following factors when determining if a joint employment relationship exists under the FLSA: (1) the nature and degree of control over the employees; (2) day-to-day supervision, including discipline; (3) authority to hire and fire the employee and set conditions of employment; (4) power to determine pay rates or methods of payment; and (5) preparation of payroll and payment of wages. *Torres-Lopez v. May*, 111 F.3d 633, 639-40 (9th Cir. 1997). In this case the evidence shows conclusively that DTS did not possess any such powers or control, and that there is no evidence before this court to support a finding that it did.

---

[1] DTS incorporates all arguments set forth in any Reply to any Plaintiff's Opposition to Motion for Summary Judgment filed by DTS in this case.

The uncontroverted evidence shows that DTS had no authority to hire or fire Calpac employees, did not supervise Calpac employees or give them work assignments, had no power to discipline Calpac employees, did not determine wages or benefits of Calpac employees, did not promote or demote Calpac employees, did not perform employee evaluations, and did not decide how profits or losses of Calpac were to be distributed.[2] John Healy, the President of Calpac, testified that he did not have any communications with anyone at DTS prior to receiving the first EEOC complaint. He further testified that Mr. Clark never communicated to Calpac or attempted to influence Calpac to terminate any of the plaintiffs in this case. Mr. Healy also testified that Mr. Clark was not a supervisor of the plaintiffs, did not give out daily work assignments, and did not hire or fire any of the plaintiffs.[3]

The Plaintiff fails to adduce evidence that DTS is a joint employer of the Plaintiff by his citation to numerous provisions of the contract between MCI and Calpac. Calpac agreed to provide MCI with construction services and entered into a contract to perform the services. All of the provisions cited by the Plaintiff concern one issue: that MCI was receiving the services and work Calpac agreed to provide MCI under the contract. MCI was the customer of Calpac and all of the contract provisions cited by the Plaintiff concern the inspection of the work by MCI to confirm that Calpac was providing the type and quality of service that it had agreed to provide under the contract. By way of example, the Plaintiff cites to the provisions that allowed the MCI Company Representative to: inspect the work Calpac performed, have access to the work sites to inspect work, approve invoices, and issue change orders. These provisions are nothing more than the normal authority any ordinary customer would have with regard to a purchase of services, and does not establish joint employer status. Based upon the Plaintiff's argument, any person that contracts

---

[2] *See* the affidavits of D. Clark and L. Hayes, attached as Exhibits C and D to the Motion for Summary Judgment.
[3] *See* the deposition of J. Healy, pp. 85-89, attached as Exhibit B to the Motion for Summary Judgment.

to have work performed in his/her home or business is a joint employer of the contractor's employees if he/she seeks to ensure that the work they contracted for is performed according to the terms of the contract. Under the Plaintiff's argument, if a customer hired a contractor to install tile in the dining room of her home and the contractor's employees began attempting to install the tile in the living room, she would become a joint employer of the contractor's employees if she told them that they were working in the wrong room. Similarly, if person hired a landscaping company to plant three trees in her yard and only two trees were planted, she would be a joint employer of the landscaper's employees if she withheld payment for the tree that was not planted. The Plaintiff's argument is illogical and is not supported by the case law. In order for there to be a finding that DTS is a joint employer, DTS must share or co-determine those matters governing the essential terms and conditions of employment such as the ability to hire, fire, set wages, and assign tasks. The uncontroverted evidence shows that DTS did not have the authority to do any of these things.

Plaintiff also fails to adduce evidence that DTS is a joint employer of the Plaintiff by his citation to numerous provisions of the work orders between MCI and DTS. The majority of the provisions cited by Plaintiff do not even remotely relate to the Plaintiff, and, more specifically, to the terms and conditions of Plaintiff's employment with Calpac. These provisions include: providing engineering services; acquiring permits; preparing engineering and as-built documentation; evaluating and recommending routes; coordinating with MCI departments; and supervising MCI-supplied material acceptance. If anything, the duties set forth in the MCI/DTS work orders establish that DTS was not a supervisor of the Plaintiff given that vast majority of the duties cited by Plaintiff have nothing to do with the supervision of Calpac employees such as the Plaintiff, much less the ability to determine the essential terms and conditions of Plaintiff's employment with Calpac. Thus, the MCI/DTS work orders do not create a fact issue because it fails

to provide any evidence that DTS had authority to hire, fire, discipline, assign task, or set the wages for the Plaintiff.

Similarly, the testimony of Don Harper cited by the Plaintiff fails to create a genuine issue regarding joint employer status. If anything, it merely confirms that the MCI had the right, through its designated representative, to see that Calpac's work was performed according to the terms of the contract. It is noteworthy that none of the testimony of Harper cited by the Plaintiff involves Clark instructing the Calpac employees when to show up for work, what customer's project to work on, when to leave work, what there wages would be, what work crew they would be working on, or what tasks they were assigned to perform. Rather, all of the cited testimony concerns monitoring Calpac's compliance with the terms of its contract with MCI.

Plaintiff also cites to the provision of the MCI/Calpac contract which required Calpac to remove anyone (employee, agent, subcontractor) from the project that was not skilled in the work assigned to them or who endangered goodwill toward MCI or if the MCI Company Representative determined that the employee, agent or subcontractor was not skilled and endangered goodwill. Plaintiff also states that Harper was removed from the MCI project at the request of Clark as evidence of DTS being a joint employer. However, this contract provision does not create a genuine issue because DTS did control the terms and conditions of employment of the Plaintiffs, including the power to fire or terminate and Calpac employees. Harper was not fired by Calpac after Clark requested that he be removed from the MCI project. Rather he was moved to a different project that Calpac was working on at the time. This is no different than a situation where a commercial property contracts with a third party a contractor to provide physical plant services to the property. In the contract the property owner bargains for a provision requiring that the skilled workers be licensed by the state, and if the property owner discovers that one of the contractor's employees is not licensed by the state, he/she has the right to require the contractor to remove the

employee from the property and replace him/her with licensed worker. The property owner would not be a joint employer of the contractor's employee due to the assertion of a contractual right that the workers be licensed. Likewise, in the present case DTS is not a joint employer of the Plaintiff due to a bargained for right to have Calpac provide skilled workers which do not endanger goodwill. This provision fails to provide any evidence that DTS control the terms and conditions of employment of the employee.

The Plaintiff attempts to bolster his argument through the testimony of Harper that Clark was on the jobsite 85-90% of the time and that he gave instructions to the Calpac employees. This testimony is in direct contradiction to the Plaintiff's testimony that he only saw Clark two times while he was employed with Calpac and that Clark never told him what to do on the job.[4] In his declaration, the Plaintiff contradicts his sworn testimony and states that Clark was his supervisor and supervised his work. As this statement is clearly contradictory to his sworn deposition testimony, they cannot be used to create a fact issue in an attempt to defeat summary judgment.[5] *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 2002). However, even if Harper's testimony is taken as true, it does not create joint employer status for DTS. Were it otherwise, then in any case where a customer contracts for work to be performed on their home and is present while the work is going on and informs a worker of the contractor that he is doing something that is not in accordance with the contract, the customer would be a joint employer. In order to be a joint employer, there must be control over the terms of the employment relationship, none of which is present in this case. Therefore, as a matter of law, DTS is not a joint employer of the Plaintiff.

---

[4] *See* pp. 27-28 of Plaintiff's deposition.
[5] DTS specifically states ¶¶ 4-5, and 11 of Plaintiff's declaration are contradictory to his deposition testimony.

## B.   DTS was not an indirect employer of the Plaintiff

The Plaintiff attempts to claim that DTS was an indirect employer of the Plaintiff. The Ninth Circuit has held that Title VII coverage is extended to indirect employers when "those employers discriminated against *and* interfered with the employees' relationship with their employees." *Anderson v. Pacific Maritime Assoc.*, 336 F.3d 924 (9th Cir. 2003) (emphasis added). The Ninth Circuit condones liability when there is discriminatory 'interference' by the indirect employer *and* where the indirect employer had some peculiar control of the employee's relationship with the direct employer." *Id.* at 932 (emphasis added).

In the present case, there was no discriminatory interference by DTS, nor does the Plaintiff argue that there was any discriminatory interference with the relationship between Calpac and the Plaintiff. DTS had no control over the Plaintiff's relationship with Calpac. In all of the Ninth Circuit cases cited in DTS' Memorandum or in Plaintiff's Opposition, the "indirect employer" interfered with the employment relationship between the employee and direct employer. In this case, the evidence shows that DTS did not have any control over the employment relationship between the Plaintiff and Calpac, and that DTS did not have the power to hire or fire employees, discipline employees, assign work assignments to employees, promote or demote employees, or perform employee evaluations.[6] John Healy testified that Dennis Clark never tried to influence Calpac to take any action that would affect the manner in which any of the plaintiffs were treated and did not make any comments to anyone at Calpac regarding any of the plaintiffs. He further testified that Mr. Clark never communicated to Calpac or attempted to influence Calpac to terminate any of the plaintiffs in this case. Furthermore, Healy testified that Clark and DTS never interfered in the relationship between Calpac and any of the Plaintiffs. Mr. Healy also testified that Mr. Clark was not a supervisor of the plaintiffs, did not give out daily work assignments, and did not hire or

---

[6] *See* the affidavits of D. Clark and L. Hayes.

fire any of the plaintiffs.[7] The Plaintiff does not point to any evidence supporting his allegation that DTS interfered with his relationship with Calpac. Since, there is no evidence of any discriminatory interference by DTS, it cannot be held liable as an indirect employer.

### III. NO HOSTILE WORK ENVIRONMENT

To establish the existence of a hostile work environment plaintiff must prove that the workplace was **permeated** with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(internal citations and quotation marks omitted).[8] In the present case, the Plaintiff complains of two statements during his six months working at Calpac.[9]

The Plaintiff cites to *Little v. Windermere Relocation, Inc.* to support his allegation that one incident may constitute a hostile work environment. 301 F.3d 958 (9th Cir. 2002). However, what the Plaintiff fails to disclose to the court is that the one incident in *Little* was the plaintiff being raped three times in one night. Obviously, hearing two alleged offensive statements cannot be compared to being victimized repeatedly at the hands of a violent criminal. It is readily apparent how being raped is severe enough to alter the terms and conditions of employment, thus creating a hostile work environment. The Plaintiff has failed to produce any evidence that the two alleged statements altered the conditions of his employment.

The Plaintiff also cites to *Spriggs v. Diamond Auto Glass* in an attempt to support his argument that the use of the term "monkey" creates a hostile work environment. 242 F.3d 179 (4th Cir. 2001). However, the Plaintiff leaves out relevant facts when citing to this case. In *Spriggs*, the plaintiff was habitually and daily called "a monkey, dumb monkey and nigger" leading to the

---

[7] *See* the deposition of J. Healy, pp. 85-89, 92.
[8] DTS has fully briefed the relevant case which set forth the standards required to establish a hostile work environment in Section V.B. of the its Memorandum in Support of Motion for Summary Judgment.
[9] The Plaintiff also contradicts the contents of the alleged statements in his Declaration in ¶¶ 6-7.

finding of a fact issue regarding a hostile work environment. *Id.* at 182. The Plaintiff fails to cite to the more recent Fourth Circuit case involving the term "monkey" in reference to African-Americans and other similar comments, where the court held that the plaintiff did not describe a workplace permeated by racism. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006). Likewise, in this case the Plaintiff has not produced any evidence that the workplace was permeated by racism. At most, the Plaintiff only describes two alleged offensive statements which do not amount to a hostile work environment. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978); *Sanchez v. University of Connecticut Health Care*, 292 F.Supp.2d 385, 396 (D.Conn. 2003); and *Gonzalez v. City of Minneapolis*, 267 F.Supp.2d 1004, 1015 (D.Minn. 2003).

The Plaintiff does not allege an environment where he was subjected to daily or habitual discriminatory comments; rather he claims only two comments over the course of six months of employment. Furthermore, the Plaintiff did not understand the alleged statements as he dose not speak English. As a matter of law, this fails to amount to a hostile and abusive work environment according to the factors set out by the Supreme Court in *Harris*. The discriminatory conduct alleged was infrequent and not physically threatening, but rather a mere offensive utterance at most. According to the Plaintiff's testimony, the only two instances of alleged discriminatory statements made by Clark occurred in September and October 2004. Thus, Plaintiff concedes that he did not encounter any discriminatory comments during the last month of his employment with Calpac. When looking at the "totality of the circumstances," the two alleged instances of an alleged racial slur over the course over fifteen months is not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. By his own testimony, the alleged remarks were not more than episodic and were not "sufficiently continuous and concerted in order to be deemed pervasive." *Farragher*, 524 U.S. at 787 n. 1. Furthermore, the Plaintiff concedes that the alleged discriminatory comments ceased in

October 2004. Therefore, DTS is entitled to summary judgment against Plaintiff on his Title VII causes of action.

## IV. DTS DID NOT HAVE KNOWLEDGE OF THE ALLEGED DISCIMINATION

Under Title VII, DTS cannot be held liable for the alleged actions of Clark because it did not have actual or constructive knowledge of the alleged discriminatory conduct. Plaintiff argues that DTS is vicariously liable because Clark was a supervisor. However, the uncontroverted evidence shows that Clark was not a supervisor. The Plaintiff testified that he never received any instructions from Clark. Linda Hayes stated in her affidavit that Clark did not have a supervisory or management position with DTS and that he had no authority to hire, fire or discipline and employees of DTS or to create or institute any company policies.[10] John Healy also testified that Clark was not a supervisor with respect to Calpac employees.[11] In fact, Clark could not be a supervisor for the Calpac employees since the employees were not employed by DTS and DTS had no control or influence over their employment relationship with Calpac. Since Clark was not a supervisor, DTS cannot be held vicariously liable.

Since Clark was not a supervisor, DTS cannot be held liable for the harassment unless it both knew of it and failed to take remedial action. *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978). This even holds true when there is a continuing course of harassment from an employee. *Id.* Occasional, sporadic remarks that occur in the workplace do not impose Title VII liability upon the employer. *Greene v. Teledyne Electronics*, 936 F.2d 577 (9th Cir. 1991). In *Greene*, the plaintiff's claim of a hostile work environment rested upon four instances of offensive language. The plaintiff reported one incident and the racial harassment ceased from that time forward. The court held that the case was properly dismissed as against the employer and that the claim may have had substance

---

[10] Affidavit of L. Hayes at ¶ 8.
[11] Deposition of J. Healy at p. 89.

if the employer knew of the conduct and failed to take action. *Id.* The Ninth Circuit has stated that an employer is only liable for harassment by a non-supervisor under Title VII "only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. These measures must include immediate and corrective action reasonably calculated 1) to end the current harassment, and 2) to deter future harassment from the same offender or others." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1483 (9th Cir. 1997).

There is no evidence, as none exists, that DTS had any knowledge of Clark's alleged discriminatory statements until the protests in December 2004 and the receipt of the EEOC complaint. Plaintiff argues that no corrective measure was taken by DTS when it learned of the complaints. However, Plaintiff cannot make any legitimate argument about what measures were or were not taken by DTS, as Plaintiff admits that the alleged discriminatory conduct ceased after DTS learned of the complaints. In fact, the alleged discriminatory conduct had ceased several months prior to DTS learning of the Plaintiff's complaint. DTS cannot be held liable under Title VII because: (1) Clark was not a supervisor; (2) DTS did not have any knowledge of Plaintiff's allegations prior to him filing a complaint with the EEOC; and (3) once DTS became aware of the complaints, corrective measures were taken and the alleged discriminatory conduct ceased.

## V. CONCLUSION

DTS cannot be liable to Plaintiff under Title VII because: (1) DTS was not a joint employer or indirect employer of the Plaintiff; (2) Based upon the Plaintiff's own testimony, he was not subjected to a hostile work environment for purposes of Title VII; and (3) DTS did not have actual or constructive knowledge of any of Plaintiff's complaints. For these reasons, DTS moves this Honorable Court to grant is Motion for Summary Judgment against Plaintiff Anthony C. Arriola.

DATED this 29th day of January, 2008.

CARLSMITH BALL LLP

_/s/ Elyze McDonald_
ELYZE J. MCDONALD
Attorneys for Defendant
Dynamic Technical Services

# DECLARATION OF SERVICE

I, Elyze J. McDonald, hereby declare under penalty of perjury of the laws of the United States, that on January 29, 2008, I will cause to be served, via hand delivery, a true and correct copy of DTS' REPLY TO PLAINTIFF ANTHONY C. ARRIOLA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SERVICE upon the following Counsels of record:

>Delia Sablan Lujan, Esq.
>**LUJAN, AGUIGUI & PEREZ, LLP**
>Suite 300, Pacific News Building
>238 Archbishop F.C. Flores Street
>Hagåtña, Guam USA 96910
>Telephone: (671) 477-8064
>Facsimile: (671) 477-5297
>Attorneys for Plaintiffs Henry G. Van Meter, et al.
>
>Vincent Leon Guerrero, Esq.
>**BLAIR, STERLING, JOHNSON, MOODY,**
>**MARTINEZ & LEON GUERRERO, P.C.**
>Suite 1008, Pacific News Building
>238 Archbishop F.C. Flores Street
>Hagåtña, Guam USA 96910
>Telephone: (671) 477-7857
>Facsimile: (671) 472-4290
>Attorneys for Defendant California Pacific Technical Services, LLC
>
>G. Patrick Civille
>**CIVILLE & TANG, PLLC**
>330 Hernan Cortez Avenue, Suite 200
>Hagåtña, Guam USA 96910
>Telephone: (671) 472-8869
>Facsimile: (671) 477-2511
>Attorneys for Verizon Business Purchasing, LLC and Verizon Business Network Services, Inc.

Executed this 29th day of January 2008 at Hagåtña, Guam.

*[signature]*
ELYZE J. McDONALD