ELYZE J. MCDONALD, Guam Bar No. 01-004
CARLSMITH BALL LLP
Bank of Hawaii Building
134 West Soledad Avenue, Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Telephone (671) 472-6813
Facsimile (671) 477-4375

Arthur K. Smith, Texas Bar No. 18534100
LAW OFFICES OF ARTHUR K. SMITH
(Admitted *Pro Hac Vice*)
507 Prestige Circle
Allen, Texas 75002
Telephone: (469) 519-2500
Facsimile: (469) 519-2555

*Attorneys for Defendant Dynamic Technical Services*

**FILED**
DISTRICT COURT OF GUAM

JAN 29 2008

JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br>DEFENDANT DYNAMIC TECHNICAL SERVICES' REPLY TO JAMES S. YEE'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SERVICE |

# I. INTRODUCTION[1]

Plaintiff James S. Yee ("Plaintiff") attempts to raise genuine issues of material fact to overcome the Motion for Summary Judgment of Defendant Dynamic Technical Services, L.P. ("DTS"). For the reasons set forth below, Plaintiff has failed to raise any issues of material fact, and DTS is entitled to summary judgment as a matter of law.

## II. DTS WAS NOT AN EMPLOYER OF THE PLAINTIFF

### A. DTS was not a joint employer of the Plaintiff

The Plaintiff attempts to subject DTS to Title VII liability by alleging that DTS was a joint employer with Calpac. This argument fails as a matter of law. As set forth in DTS' Motion for Summary Judgment, two or more employers may be considered joint employers if both employers control the terms and conditions of employment of the employee. *Wynn v. Nat'l Broad. Co.*, 234 F.Supp.2d 1067, 1093 (C.D.Cal. 2002). The Ninth Circuit opined that the "Supreme Court seems to suggest that the *sine qua non* of determining whether one is an employer is that an 'employer' can hire and fire employees, can assign tasks to employees and supervise their performance." *E.E.O.C. v. Pacific Maritime Assoc.*, 351 F.3d at 1277 (citing *Clackamas*, 123 S.Ct. at 1680). Moreover, the Ninth Circuit has considered the following factors when determining if a joint employment relationship exists under the FLSA: (1) the nature and degree of control over the employees; (2) day-to-day supervision, including discipline; (3) authority to hire and fire the employee and set conditions of employment; (4) power to determine pay rates or methods of payment; and (5) preparation of payroll and payment of wages. *Torres-Lopez v. May*, 111 F.3d 633, 639-40 (9th Cir. 1997). In this case the evidence shows conclusively that DTS did not possess any such powers or control, and that there is no evidence before this court to support a finding that it did.

---

[1] DTS incorporates all arguments set forth in any Reply to any Plaintiff's Opposition to Motion for Summary Judgment filed by DTS in this case.

The uncontroverted evidence shows that DTS had no authority to hire or fire Calpac employees, did not supervise Calpac employees or give them work assignments, had no power to discipline Calpac employees, did not determine wages or benefits of Calpac employees, did not promote or demote Calpac employees, did not perform employee evaluations, and did not decide how profits or losses of Calpac were to be distributed.[2] John Healy, the President of Calpac, testified that he did not have any communications with anyone at DTS prior to receiving the first EEOC complaint. He further testified that Mr. Clark never communicated to Calpac or attempted to influence Calpac to terminate any of the plaintiffs in this case. Mr. Healy also testified that Mr. Clark was not a supervisor of the plaintiffs, did not give out daily work assignments, and did not hire or fire any of the plaintiffs.[3]

The Plaintiff cites to provisions of the MCI/DTS contract, suggesting that they evidence control by DTS of the Plaintiff's relationship with Calpac, and, therefore, that DTS was a joint employer of Plaintiff. However, the terms of the contract between DTS and MCI are no evidence whatsoever of a joint employer situation.

DTS' authority as MCI "company representative" is provided for in the contract between MCI and Calpac. Calpac was not a party to the MCI/DTS contract. As such, any alleged authority given to DTS in its contract with MCI is has no bearing on what alleged control DTS had over Calpac and cannot grant DTS any more authority than the MCI/Calpac contract provides. Rather, the MCI/DTS contract only provides a general framework for services MCI may request from DTS through work orders. *See* MCI/DTS contract, p. 1, third paragraph in the "Witnesseth" section. It does not set forth what DTS will be required to do on each project, as evident in the language of ¶ 2.1 quoted by the Plaintiff. ("The Work *may* include without limitation...") (emphasis added).

---

[2] *See* the affidavits of D. Clark and L. Hayes, attached as Exhibits C and D to the Motion for Summary Judgment.
[3] *See* the deposition of J. Healy, pp. 85-89, attached as Exhibit B to the Motion for Summary Judgment.

However, even if the court considers the MCI/DTS contract, it fails to provide any evidence that DTS was a joint employer of the Plaintiff.

The Plaintiff misstates many terms of the contract in an effort to bolster his argument. For example, the Plaintiff cites to ¶ 3.1 of the contract (Plaintiff mistakenly refers to ¶ 2.1 in his Opposition) where it states that DTS will provide "supervisory functions." However, what the Plaintiff leaves out with regard to this section is that it is entitled "Contractor's Forces" and only applies to DTS' own employees. Similarly, the Plaintiff cites to ¶ 3.2 and alleges that it requires that all Installers shall be under the direct supervision of DTS and DTS shall manage all Installers and Subcontractors. However, the Plaintiff conveniently leaves out the portion of the paragraph whereby it states that it applies to "contractors hired by [DTS]." It is undisputed that Calpac was not hired by DTS. The Plaintiff also cites to ¶ 3.6.6.1 to support his argument. However, once again, this section is only applicable to DTS' employees and DTS' subcontractors. The only possible explanation for the Plaintiff's omission of these portions of the contract in his citations is to mislead the court as to the authority of DTS under the MCI contract.

Furthermore, the Plaintiff cites to ¶¶ 3.6.1 and 3.6.3, whereby DTS is to furnish weekly project reports and track costs of projects to MCI. This provision has nothing to do with Calpac or the employees of Calpac and is irrelevant to the issue before the court. The other provisions cited by the Plaintiff concern one issue: that MCI was receiving the services and work agreed to in a given project. By way of example, the Plaintiff cites to ¶ 3.6.7 which requires DTS to ensure that the requirements of the Contract Documents are met. Similarly, ¶¶ 3.8.1.1 and 3.8.1.2 require DTS to provide a final inspection of a project and a certificate of completion when a project is over to ensure that the requirements of the work order has been met. Again, nothing in these provisions cited by the Plaintiff has anything to do with whether DTS was a joint employer of the Plaintiff. In order to be a joint employer, there must be control over the terms of the employment relationship,

none of which is present in this case. The only contact the Plaintiff had with Clark was when Clark would speak to him regarding compliance with the MCI/Calpac contract. (i.e. whether the cable was deep enough and whether filling the trench was being done to contract standards).[4] Therefore, as a matter of law, DTS is not a joint employer of the Plaintiff.

**B.  DTS was not an indirect employer of the Plaintiff**

The Plaintiff attempts to claim that DTS was an indirect employer of the Plaintiff. The Ninth Circuit has held that Title VII coverage is extended to indirect employers when "those employers discriminated against *and* interfered with the employees' relationship with their employees." *Anderson v. Pacific Maritime Assoc.*, 336 F.3d 924 (9th Cir. 2003) (emphasis added). The Ninth Circuit condones liability when there is discriminatory 'interference' by the indirect employer *and* where the indirect employer had some peculiar control of the employee's relationship with the direct employer." *Id.* at 932 (emphasis added).

In the present case, there was no discriminatory interference by DTS, nor does the Plaintiff argue that there was any discriminatory interference with the relationship between Calpac and the Plaintiff. DTS had no control over the Plaintiff's relationship with Calpac. In all of the Ninth Circuit cases cited in DTS' Memorandum or in Plaintiff's Opposition, the "indirect employer" interfered with the employment relationship between the employee and direct employer. In this case, the evidence shows that DTS did not have any control over the employment relationship between the Plaintiff and Calpac, and that DTS did not have the power to hire or fire employees, discipline employees, assign work assignments to employees, promote or demote employees, or perform employee evaluations.[5] John Healy testified that Dennis Clark never tried to influence Calpac to take any action that would affect the manner in which any of the plaintiffs were treated

---

[4] *See* Plaintiff's deposition at p. 76, ll. 1-7; p. 81, ll. 11-14.
[5] *See* the affidavits of D. Clark and L. Hayes.

and did not make any comments to anyone at Calpac regarding any of the plaintiffs. He further testified that Mr. Clark never communicated to Calpac or attempted to influence Calpac to terminate any of the plaintiffs in this case. Furthermore, Healy testified that Clark and DTS never interfered in the relationship between Calpac and any of the Plaintiffs. Mr. Healy also testified that Mr. Clark was not a supervisor of the plaintiffs, did not give out daily work assignments, and did not hire or fire any of the plaintiffs.[6] Since, there is no evidence of any discriminatory interference by DTS, it cannot be held liable as a joint employer.

### III. NO HOSTILE WORK ENVIRONMENT

To establish the existence of a hostile work environment plaintiff must prove that the workplace was **permeated** with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(internal citations and quotation marks omitted).[7] In the present case, the Plaintiff complains of two statements which occurred during his seven months working at Calpac.

The Plaintiff cites to *Little v. Windermere Relocation, Inc.* to support his allegation that one incident may constitute a hostile work environment. 301 F.3d 958 (9th Cir. 2002). However, what the Plaintiff fails to disclose to the court is that the one incident in *Little* was the plaintiff being raped three times in one night. Obviously, hearing two alleged offensives statement cannot be compared to being victimized repeatedly at the hands of a violent criminal. It is readily apparent how being raped is severe enough to alter the terms and conditions of employment, thus creating a hostile work environment. The Plaintiff has failed to produce any evidence that the two alleged statements altered the conditions of his employment.

---

[6] *See* the deposition of J. Healy, pp. 85-89, 92.
[7] DTS has fully briefed the relevant case which set forth the standards required to establish a hostile work environment in Section V.B. of the its Memorandum in Support of Motion for Summary Judgment.

The Plaintiff also cites to *Spriggs v. Diamond Auto Glass* in an attempt to support his argument that the use of the term "monkey" creates a hostile work environment. 242 F.3d 179 (4th Cir. 2001). However, the Plaintiff leaves out relevant facts when citing to this case. In *Spriggs*, the plaintiff was habitually and daily called "a monkey, dumb monkey and nigger" leading to the finding of a fact issue regarding a hostile work environment. *Id.* at 182. The Plaintiff fails to cite to the more recent Fourth Circuit case involving the term "monkey" in reference to African-Americans and other similar comments, where the court held that the plaintiff did not describe a workplace permeated by racism. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006). Likewise, in this case the Plaintiff has not produced any evidence that the workplace was permeated by racism. At most, the Plaintiff only describes two alleged offensive statements which do not amount to a hostile work environment. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978); *Sanchez v. University of Connecticut Health Care*, 292 F.Supp.2d 385, 396 (D.Conn. 2003); and *Gonzalez v. City of Minneapolis*, 267 F.Supp.2d 1004, 1015 (D.Minn. 2003).

The Plaintiff does not allege an environment where he was subjected to daily or habitual discriminatory comments; rather he claims only two comments that happened during his eight months of employment. As a matter of law, this fails to amount to a hostile and abusive work environment according to the factors set out by the Supreme Court in *Harris*. The discriminatory conduct alleged was infrequent and not physically threatening, but rather a mere offensive utterance at most. According to the Plaintiff's testimony, the only instances of alleged discriminatory statements made by Clark occurred in September 2004. Thus, Plaintiff concedes that he did not encounter any discriminatory comments during the last two six-seven months of his employment with Calpac. When looking at the "totality of the circumstances," the two alleged instances of a racial slur over the course of eight months is not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510

U.S. at 21. By his own testimony, the alleged remarks were not more than episodic and were not "sufficiently continuous and concerted in order to be deemed pervasive." *Farragher*, 524 U.S. at 787 n. 1. Furthermore, Plaintiff's other allegations of a hostile work environment (change in time card policy, exclusion from conversations with supervisors, and incident with Jai James) do not concern DTS and are not alleged to have been committed by DTS. Therefore, DTS is entitled to summary judgment against Plaintiff on his Title VII causes of action.

## IV. DTS DID NOT HAVE KNOWLEDGE OF THE ALLEGED DISCRIMINATION

Under Title VII, DTS cannot be held liable for the alleged actions of Clark because it did not have actual or constructive knowledge of the alleged discriminatory conduct. Plaintiff argues that DTS is vicariously liable because Clark was a supervisor. However, the uncontroverted evidence shows that Clark was not a supervisor. Linda Hayes stated in her affidavit that Clark did not have a supervisory or management position with DTS and that he had no authority to hire, fire or discipline and employees of DTS or to create or institute any company policies.[8] John Healy also testified that Clark was not a supervisor with respect to Calpac employees.[9] In fact, Clark could not be a supervisor for the Calpac employees since the employees were not employed by DTS and DTS had no control or influence over their employment relationship with Calpac. Since Clark was not a supervisor, DTS cannot be held vicariously liable.

Since Clark was not a supervisor, DTS cannot be held liable for the harassment unless it both knew of it and failed to take remedial action. *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978). This even holds true when there is a continuing course of harassment from an employee. *Id.* Occasional, sporadic remarks that occur in the workplace do not impose Title VII liability upon the employer. *Greene v. Teledyne Electronics*, 936 F.2d 577 (9th Cir. 1991). In *Greene*, the plaintiff's

---

[8] Affidavit of L. Hayes at ¶ 8.
[9] Deposition of J. Healy at p. 89.

Case 1:05-cv-00037    Document 526    Filed 01/29/2008    Page 8 of 11

claim of a hostile work environment rested upon four instances of offensive language. The plaintiff reported two incidents and the alleged racial harassment ceased from that time forward. The court held that the case was properly dismissed as against the employer and that the claim may have had substance if the employer knew of the conduct and failed to take action. *Id.* The Ninth Circuit has stated that an employer is only liable for harassment by a non-supervisor under Title VII "only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. These measures must include immediate and corrective action reasonably calculated 1) to end the current harassment, and 2) to deter future harassment from the same offender or others." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1483 (9th Cir. 1997).

There is no evidence, as none exists, that DTS had any knowledge of Clark's alleged discriminatory statements until the protests in December 2004 and the receipt of the EEOC complaint. The Plaintiff argues that DTS should have known about the alleged harassment earlier since the thirteen Plaintiffs had made complaints to their Calpac supervisors. However, this provides no evidence as to how DTS should have known about the alleged harassment. Plaintiff argues that no corrective measure was taken by DTS when it learned of the complaints and DTS cannot take credit for the voluntary cessation of harassment. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1529 (9th Cir. 1995). However, the Plaintiff mis-quotes the case. Liability will only attach if the employer knows of the alleged harassment and if (1) there is no remedy or (2) the remedy is ineffectual. The Plaintiff cannot make any legitimate argument that Hayes' counseling session with Clark was ineffectual as the Plaintiff admits that the alleged discriminatory conduct ceased after DTS learned of the complaints. DTS cannot be held liable under Title VII because: (1) Clark was not a supervisor; (2) DTS did not have any knowledge of Plaintiff's allegations prior to him filing a complaint with the EEOC; and (3) once DTS became aware of the complaints, corrective measures were taken and the alleged discriminatory conduct ceased.

## V. CONCLUSION

DTS cannot be liable to Plaintiff under Title VII because: (1) DTS was not a joint employer or indirect employer of the Plaintiff; (2) Based upon the Plaintiff's own testimony, he was not subjected to a hostile work environment for purposes of Title VII; and (3) DTS did not have actual or constructive knowledge of any of Plaintiff's complaints. For these reasons, DTS moves this Honorable Court to grant is Motion for Summary Judgment against Plaintiff James S. Yee.

DATED this 29th day of January, 2008.

CARLSMITH BALL LLP

_____
ELYZE J. MCDONALD

Attorneys for Defendant
Dynamic Technical Services

## DECLARATION OF SERVICE

I, Elyze J. McDonald, hereby declare under penalty of perjury of the laws of the United States, that on January 29, 2008, I will cause to be served, via hand delivery, a true and correct copy of DTS' REPLY TO PLAINTIFF JAMES S. YEE'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF SERVICE upon the following Counsels of record:

Delia Sablan Lujan, Esq.
**LUJAN, AGUIGUI & PEREZ, LLP**
Suite 300, Pacific News Building
238 Archbishop F.C. Flores Street
Hagåtña, Guam USA 96910
Telephone: (671) 477-8064
Facsimile: (671) 477-5297
Attorneys for Plaintiffs Henry G. Van Meter, et al.

Vincent Leon Guerrero, Esq.
**BLAIR, STERLING, JOHNSON, MOODY,
MARTINEZ & LEON GUERRERO, P.C.**
Suite 1008, Pacific News Building
238 Archbishop F.C. Flores Street
Hagåtña, Guam USA 96910
Telephone: (671) 477-7857
Facsimile: (671) 472-4290
Attorneys for Defendant California Pacific Technical Services, LLC

G. Patrick Civille
**CIVILLE & TANG, PLLC**
330 Hernan Cortez Avenue, Suite 200
Hagåtña, Guam USA 96910
Telephone: (671) 472-8869
Facsimile: (671) 477-2511
Attorneys for Verizon Business Purchasing, LLC and Verizon Business Network Services, Inc.

Executed this 29th day of January 2008 at Hagåtña, Guam.

*Elyze J. McDonald*
ELYZE J. McDONALD