ELYZE J. MCDONALD, Guam Bar No. 01-004
CARLSMITH BALL LLP
Bank of Hawaii Building
134 West Soledad Avenue, Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Telephone (671) 472-6813
Facsimile (671) 477-4375

Arthur K. Smith, Texas Bar No. 18534100
LAW OFFICES OF ARTHUR K. SMITH
(Admitted *Pro Hac Vice*)
507 Prestige Circle
Allen, Texas 75002
Telephone: (469) 519-2500
Facsimile: (469) 519-2555

*Attorneys for Defendant Dynamic Technical Services*

FILED
DISTRICT COURT OF GUAM

JAN 29 2008

JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT OF GUAM

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALPAC, DYNAMIC TECHNICAL SERVICES, MCI, JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br><br><br><br><br>DEFENDANT DYNAMIC TECHNICAL SERVICES' REPLY TO ROLAND F. MENDIOLA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; EXHIBIT A; DECLARATION OF SERVICE |

## I. INTRODUCTION[1]

Plaintiff Roland F. Mendiola ("Plaintiff") attempts to raise genuine issues of material fact to overcome the Motion for Summary Judgment of Defendant Dynamic Technical Services, L.P. ("DTS"). For the reasons set forth below, Plaintiff has failed to raise any issues of material fact, and DTS is entitled to summary judgment as a matter of law.

## II. DTS WAS NOT AN EMPLOYER OF THE PLAINTIFF

### A. DTS was not a joint employer of the Plaintiff

The Plaintiff attempts to subject DTS to Title VII liability by alleging that DTS was a joint employer with Calpac. This argument fails as a matter of law. As set forth in DTS' Motion for Summary Judgment, two or more employers may be considered joint employers if both employers control the terms and conditions of employment of the employee. *Wynn v. Nat'l Broad. Co.*, 234 F.Supp.2d 1067, 1093 (C.D.Cal. 2002). The Ninth Circuit opined that the "Supreme Court seems to suggest that the *sine qua non* of determining whether one is an employer is that an 'employer' can hire and fire employees, can assign tasks to employees and supervise their performance." *E.E.O.C. v. Pacific Maritime Assoc.*, 351 F.3d at 1277 (citing *Clackamas*, 123 S.Ct. at 1680). Moreover, the Ninth Circuit has considered the following factors when determining if a joint employment relationship exists under the FLSA: (1) the nature and degree of control over the employees; (2) day-to-day supervision, including discipline; (3) authority to hire and fire the employee and set conditions of employment; (4) power to determine pay rates or methods of payment; and (5) preparation of payroll and payment of wages. *Torres-Lopez v. May*, 111 F.3d 633, 639-40 (9th Cir. 1997). In this case the evidence shows conclusively that DTS did not possess any such powers or control, and that there is no evidence before this court to support a finding that it did.

---

[1] DTS incorporates all arguments set forth in any Reply to any Plaintiff's Opposition to Motion for Summary Judgment filed by DTS in this case.

The uncontroverted evidence shows that DTS had no authority to hire or fire Calpac employees, did not supervise Calpac employees or give them work assignments, had no power to discipline Calpac employees, did not determine wages or benefits of Calpac employees, did not promote or demote Calpac employees, did not perform employee evaluations, and did not decide how profits or losses of Calpac were to be distributed.[2] John Healy, the President of Calpac, testified that he did not have any communications with anyone at DTS prior to receiving the first EEOC complaint. He further testified that Mr. Clark never communicated to Calpac or attempted to influence Calpac to terminate any of the plaintiffs in this case. Mr. Healy also testified that Mr. Clark was not a supervisor of the plaintiffs, did not give out daily work assignments, and did not hire or fire any of the plaintiffs.[3]

The Plaintiff fails to adduce evidence that DTS is a joint employer of the Plaintiff by his citation to numerous provisions of the contract between MCI and Calpac. Calpac agreed to provide MCI with construction services and entered into a contract to perform the services. All of the provisions cited by the Plaintiff concern one issue: that MCI was receiving the services and work Calpac agreed to provide MCI under the contract. MCI was the customer of Calpac and all of the contract provisions cited by the Plaintiff concern the inspection of the work by MCI to confirm that Calpac was providing the type and quality of service that it had agreed to provide under the contract. For the reasons stated in DTS' Reply to Plaintiffs' Robert Cruz, Jesse Cruz, Teddy Cruz, and John Nauta's Opposition to Motion for Summary Judgment, the contract provisions in the MCI/Calpac contract and the MCI work order to DTS cited by the Plaintiff do not adduce any evidence that DTS was a joint employer of the Plaintiff.

---

[2] *See* the affidavits of D. Clark and L. Hayes, attached as Exhibits C and D to the Motion for Summary Judgment.
[3] *See* the deposition of J. Healy, pp. 85-89, attached as Exhibit B to the Motion for Summary Judgment.

Similarly, the testimony of Don Harper cited by the Plaintiff fails to create a genuine issue regarding joint employer status. If anything, it merely confirms that the MCI had the right, through its designated representative, to see that Calpac's work was performed according to the terms of the contract. It is noteworthy that none of the testimony of Harper cited by the Plaintiff involves Clark instructing the Calpac employees when to show up for work, what customer's project to work on, when to leave work, what there wages would be, what work crew they would be working on, or what tasks they were assigned to perform. Rather, all of the cited testimony concerns monitoring Calpac's compliance with the terms of its contract with MCI.

The Plaintiff attempts to bolster his argument through the testimony of Harper that Clark was on the jobsite 85-90% of the time and that he gave instructions to the Calpac employees. This testimony is in direct contradiction to the Plaintiff's testimony that Clark was only on the job site twice a day for 30-45 minutes each time.[4] However, even if Harper's testimony is taken as true, it does not create joint employer status for DTS. Were it otherwise, then in any case where a customer contracts for work to be performed on their home and is present while the work is going on and informs a worker of the contractor that he is doing something that is not in accordance with the contract, the customer would be a joint employer. In order to be a joint employer, there must be control over the terms of the employment relationship, none of which is present in this case. Therefore, as a matter of law, DTS is not a joint employer of the Plaintiff.

**B.    DTS was not an indirect employer of the Plaintiff**

The Plaintiff attempts to claim that DTS was an indirect employer of the Plaintiff. The Ninth Circuit has held that Title VII coverage is extended to indirect employers when "those employers discriminated against *and* interfered with the employees' relationship with their employees." *Anderson v. Pacific Maritime Assoc.*, 336 F.3d 924 (9th Cir. 2003) (emphasis added).

---

[4] *See* pp. 37-38 of Plaintiff's deposition attached as Exhibit A.

The Ninth Circuit condones liability when there is discriminatory 'interference' by the indirect employer *and* where the indirect employer had some peculiar control of the employee's relationship with the direct employer." *Id.* at 932 (emphasis added).

While the Plaintiff makes brief references to the Ninth Circuit cases on indirect employer liability, he fails to state how the evidence creates a triable issue of fact under those cases. In fact, the holdings cited by the Plaintiff only reinforce that, based upon the evidence before the court, DTS is not liable as a matter of law. For example, the Plaintiff cites to *Gomez v. Alexian Bros. Hosp.* for the proposition that Title VII covers situations in which a defendant subject to the statute "interferes with an individual's employment opportunities with another employer." However, the Plaintiff fails to introduce any competent evidence that DTS interfered with his relationship with Calpac.

The Plaintiff cites to cases from other jurisdictions in an attempt to support his indirect employer theory of liability, but again fails to state how these cases relate to the present case and create a fact issue in the present case. The Plaintiff cites to *King v. Chrysler Corp.* to support his allegation of indirect employer liability. 812 F.Supp. 151 (E.D.Mo. 1993). However, the holding in *King* is not applicable to the present case. In *King*, the court was only ruling on whether or not an employer had to have a direct employment relationship with the plaintiff in order to be subject to liability. The court ruled that employer did not have to have a direct employment relationship with the employee in order to be liable under Title VII, essentially approving of indirect employer liability. The case did not hold that Chrysler was in fact liable as an indirect employer, only that the Plaintiff's claims could go forward. Similarly, the case of *E.E.O.C. v. Foster Wheeler Constructors, Inc.* does not support the imposition of indirect liability in present case. 1999 WL 515524 (N.D.Ill. 1999). However, the court in that case held, similarly to the Ninth Circuit, that a plaintiff may maintain a case against an entity that is not his employer where the entity has

interfered with the conditions of the Plaintiff's employment. The Plaintiff also cites to *Diana v. Schlosser* in support of his indirect employer theory of liability. 20 F.Supp.2d 348 (D.Conn. 1998). This case also fails to support Plaintiff's argument as the court in that case, unlike this case, there was evidence that the defendant had significant control over the plaintiff's ability to maintain a substantial employment opportunity. In that case, the plaintiff was contracted by defendant, through her employer, to work as an on-air radio reporter and was removed from on-air assignments by the defendant as a result of her refusal to consent to the repeated and habitual sexual harassment of defendant's employee. The direct actions of the defendant interfered with her opportunity to be an on-air reporter. In the present case, there is no evidence that DTS exercised any control over the Plaintiff's employment relationship with Calpac or that the Plaintiff was deprived of any employment opportunity as a result of any alleged acts by DTS.

In the present case, there is no evidence of discriminatory interference by DTS, nor does the Plaintiff argue that there was any discriminatory interference with the relationship between Calpac and the Plaintiff. The uncontroverted evidence establishes that DTS had no control over the Plaintiff's relationship with Calpac. In all of the Ninth Circuit cases cited in DTS' Memorandum or in Plaintiff's Opposition, the "indirect employer" interfered with the employment relationship between the employee and direct employer. In this case, the undisputed evidence shows that DTS did not interfere with the employment relationship between the Plaintiff and Calpac. John Healy testified that Dennis Clark never tried to influence Calpac to take any action that would affect the manner in which any of the plaintiffs were treated and did not make any comments to anyone at Calpac regarding any of the plaintiffs. He further testified that Mr. Clark never communicated to Calpac or attempted to influence Calpac to terminate any of the plaintiffs in this case. In his declaration that has been filed with the court, Healy testified that the sole basis for any of the Plaintiffs being laid off was economic reasons, namely the lack of work of contracts which Calpac

was working on necessitated a reduction in its working force. Furthermore, Healy testified that Clark and DTS never interfered in the relationship between Calpac and any of the Plaintiffs.[5] None of the evidence introduced by the Plaintiff contradicts any of the evidence submitted by DTS. Instead, the Plaintiff makes conclusory statements in his declaration[6] that a new time card policy was introduced by Calpac after he complained about Clark and that he was terminated in December 2004, which he believes was a result of his complaints about Clark. These conclusory statements are not supported by any evidence in the record, but are rather a mere restatement of the Plaintiff's allegations from his complaint. *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (affidavit containing conclusory assertions concerning discriminatory intent without facts to substantiate the claim is insufficient to avoid summary judgment). There is no competent evidence that the change in a time card policy was directed by DTS or influenced in any way by any action of DTS. Similarly, there is no evidence that DTS was involved in Calpac's decision to lay-off the Plaintiff. Since, there is no admissible, competent evidence of any discriminatory interference by DTS, it cannot be held liable as an indirect employer.

### III. NO HOSTILE WORK ENVIRONMENT

To establish the existence of a hostile work environment plaintiff must prove that the workplace was **permeated** with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(internal citations and quotation marks omitted).[7] In the present case, the Plaintiff complains of two statements during his nine months working at Calpac.

---

[5] *See* the deposition of J. Healy, pp. 85-89, 92.
[6] DTS would point out to the Court that Plaintiff's declaration states that he signed the declaration in Guam even though Plaintiff has resided in Texas since at least early 2007.
[7] DTS has fully briefed the relevant case which set forth the standards required to establish a hostile work environment in Section V.B. of the its Memorandum in Support of Motion for Summary Judgment.

The Plaintiff cites to *Little v. Windermere Relocation, Inc.* to support his allegation that one incident may constitute a hostile work environment. 301 F.3d 958 (9th Cir. 2002). However, what the Plaintiff fails to disclose to the court is that the one incident in *Little* was the plaintiff being raped three times in one night. Obviously, hearing two alleged offensive statements cannot be compared to being victimized repeatedly at the hands of a violent criminal. It is readily apparent how being raped is severe enough to alter the terms and conditions of employment, thus creating a hostile work environment. The Plaintiff has failed to produce any evidence that the two alleged statements altered the conditions of his employment.

The Plaintiff also cites to *Spriggs v. Diamond Auto Glass* in an attempt to support his argument that the use of the term "monkey" creates a hostile work environment. 242 F.3d 179 (4th Cir. 2001). However, the Plaintiff leaves out relevant facts when citing to this case. In *Spriggs*, the plaintiff was habitually and daily called "a monkey, dumb monkey and nigger" leading to the finding of a fact issue regarding a hostile work environment. *Id.* at 182. The Plaintiff fails to cite to the more recent Fourth Circuit case involving the term "monkey" in reference to African-Americans and other similar comments, where the court held that the plaintiff did not describe a workplace permeated by racism. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006). Likewise, in this case the Plaintiff has not produced any evidence that the workplace was permeated by racism. At most, the Plaintiff only describes two alleged offensive statements which do not amount to a hostile work environment. *See Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978); *Sanchez v. University of Connecticut Health Care*, 292 F.Supp.2d 385, 396 (D.Conn. 2003); and *Gonzalez v. City of Minneapolis*, 267 F.Supp.2d 1004, 1015 (D.Minn. 2003).

The Plaintiff does not allege an environment where he was subjected to daily or habitual discriminatory comments; rather he claims only two comments over the course of nine months of employment. As a matter of law, this fails to amount to a hostile and abusive work environment

according to the factors set out by the Supreme Court in *Harris*. The discriminatory conduct alleged was infrequent and not physically threatening, but rather a mere offensive utterance at most. He further testified that no one ever complained about his work performance, so he does not allege the conditions of his employment changed. The Plaintiff also testified that he was not even mad at Dennis Clark for making the statements.[8] According to the Plaintiff's testimony, the only two instances of alleged discriminatory statements made by Clark occurred before October 2004. Thus, Plaintiff concedes that he did not encounter any discriminatory comments during at least the last two months of his employment on the job. When looking at the "totality of the circumstances," the two alleged instances of an alleged racial slur over the course over nine months is not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. By his own testimony, the alleged remarks were not more than episodic and were not "sufficiently continuous and concerted in order to be deemed pervasive." *Farragher*, 524 U.S. at 787 n. 1. Furthermore, the Plaintiff concedes that the alleged discriminatory comments ceased in October 2004. Therefore, DTS is entitled to summary judgment against Plaintiff on his Title VII causes of action.

### IV. DTS DID NOT HAVE KNOWLEDGE OF THE ALLEGED DISCIMINATION

Under Title VII, DTS cannot be held liable for the alleged actions of Clark because it did not have actual or constructive knowledge of the alleged discriminatory conduct. Plaintiff argues that DTS is vicariously liable because Clark was a supervisor. However, the uncontroverted evidence shows that Clark was not a supervisor. Linda Hayes stated in her affidavit that Clark did not have a supervisory or management position with DTS and that he had no authority to hire, fire or discipline and employees of DTS or to create or institute any company policies.[9] John Healy also testified that

---

[8] *See* p. 11 of Plaintiff's deposition.
[9] Affidavit of L. Hayes at ¶ 8.

Clark was not a supervisor with respect to Calpac employees.[10] In fact, Clark could not be a supervisor for the Calpac employees since the employees were not employed by DTS and DTS had no control or influence over their employment relationship with Calpac. Since Clark was not a supervisor, DTS cannot be held vicariously liable.

The Plaintiff also argues that DTS is liable because a tangible employment action was taken. However, the Plaintiff does not allege that any tangible employment action was taken by DTS and does not present any evidence that DTS discharged, demoted, or reassigned the Plaintiff. In fact, the only evidence before the court is the testimony of John Healy that DTS was not involved in any employment decisions or actions regarding the Plaintiff. The Plaintiff fails to cite to any case whereby DTS can be held liable for the alleged employment actions of Calpac.

Since Clark was not a supervisor, DTS cannot be held liable for the harassment unless it both knew of it and failed to take remedial action. *Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978). This even holds true when there is a continuing course of harassment from an employee. *Id.* Occasional, sporadic remarks that occur in the workplace do not impose Title VII liability upon the employer. *Greene v. Teledyne Electronics*, 936 F.2d 577 (9th Cir. 1991). In *Greene*, the plaintiff's claim of a hostile work environment rested upon four instances of offensive language. The plaintiff reported two incidents and the alleged racial harassment ceased from that time forward. The court held that the case was properly dismissed as against the employer and that the claim may have had substance if the employer knew of the conduct and failed to take action. *Id.* The Ninth Circuit has stated that an employer is only liable for harassment by a non-supervisor under Title VII "only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. These measures must include immediate and corrective action reasonably calculated 1) to end the current

---

[10] Deposition of J. Healy at p. 89.

harassment, and 2) to deter future harassment from the same offender or others." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1483 (9th Cir. 1997).

There is no evidence, as none exists, that DTS had any knowledge of Clark's alleged discriminatory statements until the protests in December 2004 and the receipt of the EEOC complaint. Plaintiff argues that no corrective measure was taken by DTS when it learned of the complaints. However, Plaintiff cannot make any legitimate argument about what measures were or were not taken by DTS, as Plaintiff admits that the alleged discriminatory conduct ceased after DTS learned of the complaints. In fact, the alleged discriminatory conduct had ceased several months prior to DTS learning of the Plaintiff's complaint. DTS cannot be held liable under Title VII because: (1) Clark was not a supervisor; (2) DTS did not have any knowledge of Plaintiff's allegations prior to him filing a complaint with the EEOC; and (3) once DTS became aware of the complaints, corrective measures were taken and the alleged discriminatory conduct ceased.

## V. CONCLUSION

DTS cannot be liable to Plaintiff under Title VII because: (1) DTS was not a joint employer or indirect employer of the Plaintiff; (2) Based upon the Plaintiff's own testimony, he was not subjected to a hostile work environment for purposes of Title VII; and (3) DTS did not have actual or constructive knowledge of any of Plaintiff's complaints. For these reasons, DTS moves this Honorable Court to grant is Motion for Summary Judgment against Plaintiff Roland F. Medniola.

DATED this 29th day of January, 2008.

CARLSMITH BALL LLP

*[signature]*
ELYZE J. MCDONALD
Attorneys for Defendant
Dynamic Technical Services

# Exhibit A

IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| HENRY G. VAN METER, ET AL, | § § § | |
| Plaintiffs | § § | |
| VS. | § § | No. CIV05-00037 |
| CALPAC, ET AL | § § § | |
| Defendants | § | |

**ORAL DEPOSITION OF:**

**ROLAND F. MENDIOLA**

**MAY 21, 2007**

# COPY

*Compex Legal Services*

*Houston    San Antonio    Dallas    Austin*

*(800) 969-6424*

Roland F. Mendiola    Henry G. Van Meter vs. CALPAC, et al.    May 21, 2007

37

1   you first saw him before he made that comment for the first
2   time?
3       A.   I don't remember.
4       Q.   Okay. Now, before the first time that you were in
5   the trench and Mr. Clark was there and he made reference to you
6   and your co-workers as island monkeys, you followed the same
7   routine every day that you worked for CalPac from the beginning
8   of the day to the end of the day, right?
9       A.   Yes.
10      Q.   You got to the job site and had your safety meeting
11  with your supervisor and your co-workers, right?
12      A.   Yes.
13      Q.   Then they told you where to go?
14      A.   Yes.
15      Q.   And then you went out and you did your trenching
16  work, right?
17      A.   Yes.
18      Q.   And during that time when Mr. Clark -- how often
19  would Mr. Clark show up at the job site?
20      A.   Practically every day.
21      Q.   Was there any particular time that he would come
22  every day or --
23      A.   Come like two or three times.
24      Q.   Two or three different times during the day?
25      A.   Yes, in the morning and the afternoon and almost

Roland F. Mendiola   Henry G. Van Meter vs. CALPAC, et al.   May 21, 2007

38

```
 1  nearly quitting time.
 2      Q.  And usually how often would he stay on those times he
 3  came out there?
 4      A.  About half an hour, 45 minutes.
 5      Q.  And you didn't stop what you were doing and watch him
 6  for the whole half hour or 45 minutes he was there, did you?
 7      A.  No.
 8      Q.  You would just keep doing your job?
 9      A.  Yes.
10      Q.  But there would be times when you might look up and
11  notice him in the area, right?
12      A.  Yes.
13      Q.  Now, before the first time that Mr. Clark -- you
14  heard him say island monkeys, had you ever heard him talk
15  before that time?
16      A.  Yes.
17      Q.  And had you ever heard him speak to you and the other
18  workers before that time?
19      A.  Yes.
20      Q.  And on those occasions, would he be talking about
21  whether you were doing the job the way it was supposed to be
22  done?
23      A.  Yes.
24      Q.  And give me examples of the kinds of things he would
25  say.
```

Roland F. Mendiola  Henry G. Van Meter vs. CALPAC, et al.        May 21, 2007

79

IN THE DISTRICT COURT OF GUAM

HENRY G. VAN METER, ET AL,       )
                                 )
                                 )
     Plaintiffs                  )
                                 )
VS.                              )   NO. CIV05-00037
                                 )
                                 )
CALPAC, ET AL                    )
                                 )
                                 )
     Defendants                  )
                                 )
                                 )

REPORTER'S CERTIFICATION
DEPOSITION OF ROLAND F. MENDIOLA
May 21, 2007

I, JOE A. WILLIAMS, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, ROLAND F. MENDIOLA, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That examination and signature of the witness to the deposition transcript was waived by the witness and agreement of the parties at the time of the deposition;

That the original deposition was delivered to *Vincent Leon Guerrero*

That the amount of time used by each party at the deposition is as follows:

     DAVID LUJAN - 00 HOURS:00 MINUTE(S)

Roland F. Mendiola   Henry G. Van Meter vs. CALPAC, et al.                May 21, 2007

80

|   |   |
|---|---|
| 1 | ARTHUR K. SMITH - 1 HOURS: 1 MINUTE(S) |
| 2 | That $ 4/50 is the deposition officer's charges to |
| 3 | the DEFENDANT for preparing the original deposition transcript |
| 4 | and any copies of exhibits; |
| 5 | That pursuant to information given to the deposition |
| 6 | officer at the time said testimony was taken, the following |
| 7 | includes all parties of record: |
| 8 | DAVID LUJAN, Attorney for Plaintiffs |
|   | THOMAS C. MOODY, III, Attorney for Defendant |
| 9 | CALPAC |
|   | ARTHUR K. SMITH, Attorney for Defendant |
| 10 |  |
| 11 | That a copy of this certificate was served on all parties |
| 12 | shown herein on _____ and filed with the Clerk |
| 13 | pursuant to Rule 203. |
| 14 | I further certify that I am neither counsel for, related |
| 15 | to, nor employed by any of the parties or attorneys in the |
| 16 | action in which this proceeding was taken, and further that I |
| 17 | am not financially or otherwise interested in the outcome of |
| 18 | the action. |
| 19 | Certified to by me this 5th of June, 2007. |

JOE A. WILLIAMS, Texas CSR #422
Expiration Date: 12-31-08
Firm Registration No. 281

COMPEX LEGAL SERVICES, INC.   (800) 969-6424

## DECLARATION OF SERVICE

I, Elyze J. McDonald, hereby declare under penalty of perjury of the laws of the United States, that on January 29, 2008, I will cause to be served, via hand delivery, a true and correct copy of DTS' REPLY TO PLAINTIFF ROLAND F. MENDIOLA'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; EXHIBIT A; DECLARATION OF SERVICE upon the following Counsels of record:

>Delia Sablan Lujan, Esq.
>**LUJAN, AGUIGUI & PEREZ, LLP**
>Suite 300, Pacific News Building
>238 Archbishop F.C. Flores Street
>Hagåtña, Guam USA 96910
>Telephone: (671) 477-8064
>Facsimile: (671) 477-5297
>Attorneys for Plaintiffs Henry G. Van Meter, et al.
>
>Vincent Leon Guerrero, Esq.
>**BLAIR, STERLING, JOHNSON, MOODY,**
>**MARTINEZ & LEON GUERRERO, P.C.**
>Suite 1008, Pacific News Building
>238 Archbishop F.C. Flores Street
>Hagåtña, Guam USA 96910
>Telephone: (671) 477-7857
>Facsimile: (671) 472-4290
>Attorneys for Defendant California Pacific Technical Services, LLC
>
>G. Patrick Civille
>**CIVILLE & TANG, PLLC**
>330 Hernan Cortez Avenue, Suite 200
>Hagåtña, Guam USA 96910
>Telephone: (671) 472-8869
>Facsimile: (671) 477-2511
>Attorneys for Verizon Business Purchasing, LLC and Verizon Business Network Services, Inc.

Executed this 29th day of January 2008 at Hagåtña, Guam.

                                                _____
                                                ELYZE J. McDONALD

Page 11 of 11
4849-5907-8402.1.059759-00001
Case 1:05-cv-00037   Document 531   Filed 01/29/2008   Page 18 of 18