CIVILLE & TANG, PLLC
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8869/69
FACSIMILE: (671) 477-2511

JONES DAY
2727 NORTH HARWOOD STREET
DALLAS, TEXAS 75201-1515
TELEPHONE: (214) 220-3939
FACSIMILE: (671) 969-5100

*Attorneys for Defendants
Verizon Business Purchasing LLC and
Verizon Business Network Services, Inc.*



FILED
DISTRICT COURT OF GUAM

APR 1 1 2008 *P*.

JEANNE G. QUINATA
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA PACIFIC TECHNICAL SERVICES LLC, a.k.a. CALPAC, DYNAMIC TECHNICAL SERVICES, VERIZON BUSINESS PURCHASING, LLC, VERIZON BUSINESS NETWORK SERVICES, INC., JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br>DECLARATION OF G. PATRICK CIVILLE IN SUPPORT OF EACH OF VERIZON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AGAINST ALL PLAINTIFFS |

ORIGINAL

I, **G. PATRICK CIVILLE**, hereby declare under penalty of perjury as follows:

1. I am a member of the bar of Guam and of the law firm of Civille & Tang, PLLC, local counsel for Defendants Verizon Business Purchasing LLC and Verizon Business Network Services, Inc. (collectively "Verizon"). I submit this declaration in support of each of the Verizon Defendants' Motions for Summary Judgment filed contemporaneously herewith. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2. Attached hereto are true and correct copies of the following exhibits:

| | **DESCRIPTION** |
|---|---|
| Exhibit A: | Affidavit of Jeffrey Buehler |
| Exhibit B: | Affidavit of Marty Hersh |
| Exhibit C: | Affidavit of Larry Saunders |
| Exhibit D: | Construction Agreement - Calpac |
| Exhibit E: | Outside Plant Engineering and Management Agreement - DTS |
| Exhibit F: | EEOC Charge of Discrimination - Joseph J. Hernandez |
| Exhibit G: | EEOC Charge of Discrimination - John P. Babauta |
| Exhibit H: | December 28, 2004 and January 14, 2005 Verizon Letters to Calpac and DTS |
| Exhibit I: | DTS' Letters to the EEOC |
| Exhibit J: | December 19, 2004 Dennis Clark E-mail |
| Exhibit K: | Excerpts from the February 16 and 20, 2007 Depositions of Donald Harper |
| Exhibit L: | Excerpts from the May 23, 2007 Deposition of Dennis Clark |
| Exhibit M: | Excerpts from the April 30, 2007 Deposition of John Healy |
| Exhibit N: | Excerpts from the May 3, 2007 Deposition of John Healy |
| Exhibit O: | Excerpts from the January 29, 2008 Deposition of Henry Van Meter |
| Exhibit P: | Excerpts from the January 30, 2008 Deposition of Jerry Apodaca, Jr. |

| | |
|---|---|
| Exhibit Q: | Excerpts from the February 21, 2008 Deposition of Jerry Apodaca, Jr. |
| Exhibit R: | Excerpts from the January 25, 2008 Deposition of Joseph Hernandez |
| Exhibit S: | Excerpts from the January 9, 2008 Deposition of Joseph Mendiola |
| Exhibit T: | Excerpts from the January 28, 2008 Deposition of LarryCharfauros |
| Exhibit U: | Excerpts from the February 5, 2008 Deposition of Anthony Arriola |
| Exhibit V: | Excerpts from the February 20, 2008 Deposition of Robert Cruz |
| Exhibit W: | Excerpts from the May 21, 2007 Deposition of Roland Mendiola |
| Exhibit X: | Excerpts from the January 29, 2008 Deposition of James Yee |
| Exhibit Y: | Excerpts from the February 20, 2008 Deposition of James Yee |
| Exhibit Z: | Excerpts from the January 25, 2008 Deposition of Teddy Cruz |
| Exhibit AA: | Excerpts from the February 21, 2008 Deposition of Jesse Cruz |
| Exhibit BB: | Excerpts from the January 15, 2008 Deposition of John Nauta |
| Exhibit CC: | Excerpts from the February 6, 2008 Deposition of John Babauta |
| Exhibit DD: | EEOC Charge of Discrimination of Teddy Cruz |
| Exhibit EE: | EEOC Charge of Discrimination of Larry Charfauros |
| Exhibit FF: | Excerpts from the February 5, 2008 Deposition of John Nauta |

I declare under penalty of perjury under the laws of Guam (6 G.C.A. Section 4308) that the foregoing is true and correct.

Executed at Hagåtña, Guam, on April 10, 2008.

/s/ G. PATRICK CIVILLE

# EXHIBIT A

# AFFIDAVIT OF JEFFERY BUEHLER

BEFORE the undersigned Notary, on this day personally appeared JEFFERY BUEHLER, known to me to be the person whose name is subscribed hereto, and having been first duly sworn, did depose and state:

1. My name is Jeffery Buehler. I am over twenty-one years of age and am competent to make this Affidavit. This Affidavit is based upon my personal knowledge and belief and the facts stated herein are true and correct.

2. I am currently employed by Verizon Business. My current title is Construction Manager for the Regional Engineering and Construction Department, Gulf States Region. I have been in this or a similar position since 1999. In this position, I oversee the implementation and coordination of telecommunications systems including inside and outside plant components. I typically manage twenty plus active projects at any given time and am currently assigned to the Texas Region. I have knowledge regarding California Pacific Technical Services LLC's ("Calpac") installation of underground cable in Guam pursuant to the contract between Calpac and WorldCom Purchasing, LLC, dated February 13, 2004 (the "Calpac Contract"). I also have knowledge of Dynamic Technical Services' ("DTS's") oversight of Calpac's installation pursuant to the work orders dated March 4 and June 11, 2004 and the contract between MCI WorldCom Network Services, Inc. and DTS, dated September 24, 2001 (the "DTS Contract"). For purposes of this affidavit, my references to Verizon also refer to MCI before it was acquired by Verizon.

3. In 2003, NASA entered into a contract with Verizon under which Verizon agreed to provide data services to NASA. Because NASA was not connected to the existing Verizon network, Verizon engaged in a bidding process to hire a contractor to install a twenty-four fiber

**AFFIDAVIT OF JEFFERY BUEHLER** – Page 1

DLI-6180261v3

optic conduit system on Guam for the purpose of connecting NASA to Verizon's existing network.

4. In or around January 2004, I traveled to Guam to review and evaluate the preliminary route where the cable would be installed. After this visit, I left Guam and have not returned. I did not assign anyone else to remain on Guam to oversee the project. During the course of the project, there was no Verizon employee on Guam who had any role, responsibility, or oversight with respect to the construction of the Guam International Ring.

5. Pursuant to the DTS Contract, Dennis Clark was selected to be the project manager for the Guam International Ring project. Clark was not employed by Verizon; Clark was employed by DTS. Pursuant to the DTS Contract, DTS' contractual obligations required Clark to, among other things, work directly with Calpac to refine the construction design and fine-tune the route in which the cable was laid; work with local government agencies and landowners to obtain necessary permits, easements, and rights of way; inspect Calpac's installation to ensure that such work complied with the terms of the Calpac Contract; and submit daily and weekly production reports to inform Verizon about the progress of the project.

6. The Guam International Ring project began in or about March 2004. In 2004 and 2005, the Guam International Ring project was one of numerous projects on which I worked. For the Guam International Ring project, my duties generally entailed overseeing whether Calpac was completing the project according to the terms of the Calpac Contract. My specific duties were limited to reviewing daily production reports prepared and submitted by Dennis Clark, reviewing invoices prepared and submitted by Calpac and DTS, and participating in weekly conference calls with Dennis Clark regarding the progress of the project. Verizon did not instruct Clark or Calpac, or directly oversee Clark or Calpac, with respect to their daily

activities. During the course of the Guam International Ring project, I reported to Larry Saunders, the Regional Manager for the Regional Engineering and Construction Department at the time, who reported to Marty Hersh, the Group Manager for the US Regional Engineering and Construction at the time.

7. I had no involvement whatsoever with respect to any employment action relating to any individual Calpac laborer, including the plaintiffs. Among other things, I was not consulted, did not provide any input, and was not even aware before the fact of any Calpac decision to hire, promote, demote, set the wages of, assign the daily work schedules, assignments, or hours of, provide identification cards to, or terminate any Calpac employee. To my knowledge, no Verizon employee had any such involvement with respect to any employment action taken by Calpac. In fact, during the course of the Guam International Ring project, I did not know the names of any individual laborer working on the project, including any of the plaintiffs in this action.

8. In addition, Verizon did not pay wages to any Calpac employee; Calpac was solely responsible with respect to wages paid to Calpac employees. As a result, Verizon could not and did not take Social Security or other withholdings from any Calpac employee's wages. I did not have and, to my knowledge no Verizon employee had, any input or involvement regarding wages paid by Calpac to any individual working on the Guam International Ring project, including the amount, method, or timing of any payment by Calpac.

9. I also did not maintain any employment records regarding any individual employed by Calpac. Further, I did not evaluate, whether formally or informally, any individual laborer's work on the Guam International Ring project, including the plaintiffs, nor did I supervise any plaintiff at any time. I am not aware of any other Verizon employee who

evaluated or supervised the plaintiffs. Verizon's considerations with respect to Calpac's construction of the Guam International Ring were whether Calpac performed the construction according to the deadlines, budget, and construction specifications set forth in the Calpac Contract.

10. On or about December 19 or 20, 2004, I learned that certain individuals had engaged in a protest on December 19, 2004 and that they were claiming that Clark had made racist comments. Prior to learning of the protest, I was not aware of any allegations of discriminatory, retaliatory, or harassing conduct on the part of Calpac or Clark, including any allegation that Clark called the plaintiffs "monkeys" or "island monkeys."

11. FURTHER AFFIANT SAITH NOT.

_____
JEFFERY BUEHLER

SUBSCRIBED AND SWORN TO BEFORE ME this 9th day of April 2008.

[Notary Stamp: CELIA H. POOLE, MY COMMISSION EXPIRES April 13, 2008]

_____
Notary Public in and for the
State of Texas

My Commission Expires:

April 13, 2008

# EXHIBIT B

# AFFIDAVIT OF MARTY HERSH

BEFORE the undersigned Notary, on this day personally appeared MARTY HERSH, known to me to be the person whose name is subscribed hereto, and having been first duly sworn, did depose and state:

1.  My name is Marty Hersh. I am over twenty-one years of age and am competent to make this Affidavit. This Affidavit is based upon my personal knowledge and belief and the facts stated herein are true and correct.

2.  I am currently employed by Verizon Business. My title is Group Manager, Northeast Regional Engineering and Construction. I have been in this or a similar position since 1995. In this position, my responsibilities include leading a team of Outside Plant Construction ("OSPC") personnel and more recently a team of Inside Plant and Outside personnel in the northeast part of United States. The nationwide OSPC team was responsible for multiple OSP maintenance and OSP new construction activities. I have knowledge regarding California Pacific Technical Services LLC's ("Calpac") installation of underground cable in Guam pursuant to the contract between Calpac and WorldCom Purchasing, LLC, dated February 13, 2004 (the "Calpac Contract"). I also have knowledge of Dynamic Technical Services' ("DTS's") oversight of Calpac's installation pursuant to the work orders dated March 4 and June 11, 2004 and the contract between MCI WorldCom Network Services, Inc. and DTS, dated September 24, 2001 (the "DTS Contract"). For purposes of this affidavit, my references to Verizon also refer to MCI before it was acquired by Verizon.

3.  In 2003, NASA entered into a contract with Verizon under which Verizon agreed to provide data services to NASA. Because NASA was not connected to the existing Verizon network, Verizon engaged in a bidding process to hire a contractor to install a twenty-four fiber

AFFIDAVIT OF MARTY HERSH – Page 1

DLI-6180264v2

optic conduit system on Guam for the purpose of connecting NASA to Verizon's existing network.

4. Pursuant to the DTS Contract, Dennis Clark was selected to be the project manager for the Guam International Ring project. Clark was not employed by Verizon; Clark was employed by DTS. Pursuant to the DTS Contract, DTS' contractual obligations required Clark to, among other things, work directly with Calpac to refine the construction design and fine-tune the route in which the cable was laid; work with local government agencies and landowners to obtain necessary permits, easements, and rights of way; inspect Calpac's installation to ensure that such work complied with the terms of the Calpac Contract; and submit daily and weekly production reports to inform Verizon about the progress of the project. In or about November 2003, I traveled to Guam to locate contractors, facilitate the bidding process for the installation of the Guam International Ring, and view and adjust the route in which the cable would be installed. After this visit, I did not return to Guam, and no Verizon employee remained on Guam to oversee the Guam International Ring project.

5. The Guam International Ring project began in or about March 2004. In 2004 and 2005, the Guam International Ring project was one of numerous projects on which I worked. For the Guam International Ring project, my duties generally entailed high level internal project oversight. Verizon did not instruct Clark or Calpac, or directly oversee Clark or Calpac, with respect to their daily activities.

6. I had no involvement whatsoever with respect to any employment action relating to any individual Calpac laborer, including the plaintiffs. Among other things, I was not consulted, did not provide any input, and was not even aware before the fact of any Calpac decision to hire, promote, demote, set the wages of, assign the daily work schedules,

**AFFIDAVIT OF MARTY HERSH** – Page 2

DLI-6180264v2

assignments, or hours of, provide identification cards to, or terminate any Calpac employee. To my knowledge, no Verizon employee had any such involvement with respect to any employment action taken by Calpac. In fact, during the course of the Guam International Ring project, I did not know the names of any individual laborer working on the project, including any of the plaintiffs in this action.

7. In addition, Verizon did not pay wages to any Calpac employee; Calpac was solely responsible with respect to wages paid to Calpac employees. As a result, Verizon could not and did not take Social Security or other withholdings from any Calpac employee's wages. I did not have and, to my knowledge no Verizon employee had, had any input or involvement regarding wages paid by Calpac to any individual working on the Guam International Ring project, including the amount, method, or timing of any payment by Calpac.

8. I also did not maintain any employment records regarding any individual employed by Calpac. Further, I did not evaluate, whether formally or informally, any individual laborer's work on the Guam International Ring project, including the plaintiffs, nor did I supervise any plaintiff at any time. I am not aware of any other Verizon employee who evaluated or supervised the plaintiffs. Verizon's considerations with respect to Calpac's construction of the Guam International Ring were whether Calpac performed the construction according to the deadlines, budget, and construction specifications set forth in the Calpac Contract.

9. On or about December 19 or 20, 2004, I learned that certain individuals had engaged in a protest on December 19, 2004 and that they were claiming that Clark had made racist comments. Prior to learning of the protest, I was not aware of any allegations of

discriminatory, retaliatory, or harassing conduct on the part of Calpac or Clark, including any allegation that Clark called the plaintiffs "monkeys" or "island monkeys."

10. FURTHER AFFIANT SAITH NOT.

_____
MARTY HERSH

SUBSCRIBED AND SWORN TO BEFORE ME this ___ day of April 2008.



_____
Notary Public in and for the
State of Texas

My Commission Expires:

APRIL 13, 2008

# EXHIBIT C

# AFFIDAVIT OF LARRY SAUNDERS

BEFORE the undersigned Notary, on this day personally appeared LARRY SAUNDERS, known to me to be the person whose name is subscribed hereto, and having been first duly sworn, did depose and state:

1. My name is Larry Saunders. I am over twenty-one years of age and am competent to make this Affidavit. This Affidavit is based upon my personal knowledge and belief and the facts stated herein are true and correct.

2. I am currently employed by Verizon Business. My title is Regional Manager, Regional Engineering and Construction. I have been in this or a similar position since 1995. In this position, I manage the implementation and maintenance of the Verizon Business Network and system infrastructure, which includes both inside and outside plant components. I have knowledge regarding California Pacific Technical Services LLC's ("Calpac") installation of underground cable in Guam pursuant to the contract between Calpac and WorldCom Purchasing, LLC, dated February 13, 2004 (the "Calpac Contract"). I also have knowledge of Dynamic Technical Services' ("DTS's") oversight of Calpac's installation pursuant to the work orders dated March 4 and June 11, 2004 and the contract between MCI WorldCom Network Services, Inc. and DTS, dated September 24, 2001 (the "DTS Contract"). For purposes of this affidavit, my references to Verizon also refer to MCI before it was acquired by Verizon.

3. In 2003, NASA entered into a contract with Verizon under which Verizon agreed to provide data services to NASA. Because NASA was not connected to the existing Verizon network, Verizon engaged in a bidding process to hire a contractor to install a twenty-four fiber optic conduit system on Guam for the purpose of connecting NASA to Verizon's existing network.

**AFFIDAVIT OF LARRY SAUNDERS** – Page 1

DLI-6180265v2

4.   Pursuant to the DTS Contract, Dennis Clark was selected to be the project manager for the Guam International Ring project. Clark was not employed by Verizon; Clark was employed by DTS. Pursuant to the DTS Contract, DTS' contractual obligations required Clark to, among other things, work directly with Calpac to refine the construction design and fine-tune the route in which the cable was laid; work with local government agencies and landowners to obtain necessary permits, easements, and rights of way; inspect Calpac's installation to ensure that such work complied with the terms of the Calpac Contract; and submit daily and weekly production reports to inform Verizon about the progress of the project.

5.   The Guam International Ring project began in or about March 2004. In 2004 and 2005, the Guam International Ring project was one of numerous projects on which I worked. For the Guam International Ring project, my duties generally entailed managing the overall Outside Plant portion to ensure that it was completed according to the terms of the Calpac Contract, including the Calpac Contract's specifications, schedule, and budget. My specific duties were limited to reviewing daily production reports, attending weekly progress meetings, and approving project related invoices that had been approved by my direct report, Jeff Buehler. I did not instruct Clark or Calpac, or directly oversee Clark or Calpac, with respect to their daily activities. During the course of the Guam International Ring project, I reported to Marty Hersh, who was the Group Manager for the US Regional Engineering and Construction organization at the time.

6.   I had no involvement whatsoever with respect to any employment action relating to any individual Calpac laborer, including the plaintiffs. Among other things, I was not consulted, did not provide any input, and was not even aware before the fact of any Calpac decision to hire, promote, demote, set the wages of, assign the daily work schedules,

assignments, or hours of, provide identification cards to, or terminate any Calpac employee. To my knowledge, no Verizon employee had any such involvement with respect to any employment action taken by Calpac. In fact, during the course of the Guam International Ring project, I did not know the names of any individual laborer working on the project, including any of the plaintiffs in this action.

7. In addition, Verizon did not pay wages to any Calpac employee; Calpac was solely responsible with respect to wages paid to Calpac employees. As a result, Verizon could not and did not take Social Security or other withholdings from any Calpac employee's wages. I did not have and, to my knowledge no Verizon employee had, any input or involvement regarding wages paid by Calpac to any individual working on the Guam International Ring project, including the amount, method, or timing of any payment by Calpac.

8. I also did not maintain any employment records regarding any individual employed by Calpac. Further, I did not evaluate, whether formally or informally, any individual laborer's work on the Guam International Ring project, including the plaintiffs, nor did I supervise any plaintiff at any time. I am not aware of any other Verizon employee who evaluated or supervised the plaintiffs. Verizon's considerations with respect to Calpac's construction of the Guam International Ring were whether Calpac performed the construction according to the deadlines, budget, and construction specifications set forth in the Calpac Contract.

9. On or about December 19 or 20, 2004, I learned that certain individuals had engaged in a protest on December 19, 2004 and that they were claiming that Clark had made racist comments. Prior to learning of the protest, I was not aware of any allegations of

**AFFIDAVIT OF LARRY SAUNDERS** – Page 3

DLI-6180265v2

discriminatory, retaliatory, or harassing conduct on the part of Calpac or Clark, including any allegation that Clark called the plaintiffs "monkeys" or "island monkeys."

10. FURTHER AFFIANT SAITH NOT.

*Larry Saunders*
LARRY SAUNDERS

SUBSCRIBED AND SWORN TO BEFORE ME this ___ day of April 2008.

CELIA H. POOLE
MY COMMISSION EXPIRES
April 13, 2008

*Celia H Poole*
Notary Public in and for the
State of Texas

My Commission Expires:

April 13, 2008