CIVILLE & TANG, PLLC
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8869/69
FACSIMILE: (671) 477-2511

JONES DAY
2727 NORTH HARWOOD STREET
DALLAS, TEXAS 75201-1515
TELEPHONE: (214) 220-3939
FACSIMILE: (671) 969-5100

*Attorneys for Defendants*
*Verizon Business Purchasing LLC and*
*Verizon Business Network Services, Inc.*

FILED
DISTRICT COURT OF GUAM
MAY 0 2 2008
JEANNE G. QUINATA
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| HENRY G. VAN METER, JERRY APODACA, JR., JOSEPH J. HERNANDEZ, JOSEPH T. MENDIOLA, LARRY L. CHARFAUROS, ANTHONY C. ARRIOLA, ROBERT B. CRUZ, ROLAND F. MENDIOLA, JAMES S. YEE, TEDDY B. CRUZ, JESSE B. CRUZ, JOHN L.G. NAUTA, and JOHN P. BABAUTA,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA PACIFIC TECHNICAL SERVICES LLC, a.k.a. CALPAC, DYNAMIC TECHNICAL SERVICES, VERIZON BUSINESS PURCHASING, LLC, VERIZON BUSINESS NETWORK SERVICES, INC., JOHN HEALY, DENNIS CLARK, WILLIAM WARD, JAI JAMES, and DOES 1 through 10,<br><br>Defendants. | CIVIL CASE NO. 05-00037<br><br><br>VERIZON DEFENDANTS' REPLY TO PLAINTIFF JOSEPH T. MENDIOLA'S OPPOSITION TO VERIZON'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO ALL CLAIMS ASSERTED BY PLAINTIFF JOSEPH T. MENDIOLA |

# VERIZON DEFENDANTS' REPLY TO PLAINTIFF JOSEPH T. MENDIOLA'S OPPOSITION TO VERIZON'S MOTION FOR SUMMARY JUDGMENT

As Verizon has demonstrated in its Motion for Summary Judgment ("Motion") and as Plaintiff concedes in his Opposition to the Motion ("Opposition"), not only did Verizon not directly employ Plaintiff, the alleged harasser, or the individuals who made the employment decisions about which Plaintiff complains, there is no dispute that Verizon had no control over, or involvement in, any decision to hire, terminate, promote or assign tasks to Plaintiff or to set Plaintiff's breaks, benefits, or pay. There is further no dispute that Verizon did not evaluate Plaintiff, maintain his employment records, directly supervise him, or withhold taxes from his pay. Under these undisputed facts, Verizon cannot be Plaintiff's employer. Moreover, because there is no evidence that Verizon was aware or should have been aware of unlawful conduct allegedly committed by third parties, Verizon cannot be subject to Title VII liability.

## I. ARGUMENTS AND AUTHORITIES

### A. Verizon Cannot Be Plaintiff's Indirect Employer Because Verizon Did Not Engage in Discriminatory, Retaliatory, or Harassing Acts.

Under the indirect employer doctrine, the Ninth Circuit has extended liability to non-employing entities only "in instances where the indirect employer was the entity *performing the discriminatory act* . . ." *See Velez v. Roche*, 335 F. Supp. 2d 1022, 1027 (N.D. Cal. 2004) (discussing *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924 (9th Cir. 2003)) (emphasis added). For example, the court in *Garcia v. Courtesy Ford, Inc.*, No. C06-855RSL, 2007 WL 1192681, at *5 (W.D. Wash. Apr. 20, 2007) recently granted summary judgment to a non-employing defendant "[b]ecause plaintiff has produced no evidence to support the contention that Courtesy Ford was 'the entity performing the discriminatory act . . .'"

In his Opposition, Plaintiff identifies no individual directly employed by Verizon that performed a discriminatory, retaliatory, or harassing act. Moreover, Plaintiff fails to cite any authority in which a court has extended Title VII liability under an indirect employer theory to an entity that did not perform a discriminatory or harassing act. Rather, Plaintiff continues to rely on

cases that underscore the fundamental point that indirect employer liability only extends to entities that employed the wrongdoer. In *Garrett v. Info. Sys. & Networks Corp.*, No. 5:97-CV-436-BR1, 1997 U.S. Dist. LEXIS 20845 (E.D.N.C. Nov. 21, 1997), *King v. Chrysler Corp.*, 812 F. Supp. 151 (E.D. Mo. 1993), *Duncan v. Junior Coll. Dist. of St. Louis*, No. 4:98CV01220 (CEJ), 1999 U.S. Dist. LEXIS 22451 (E.D. Mo. Nov. 15, 1999), and *Diana v. Schlosser*, 20 F. Supp. 2d 348 (D. Conn. 1998), all of the plaintiffs alleged that even though they were not employees of the defendants, they were harassed by employees of the defendants.[1] Further, in *Velez*, the case on which Plaintiff relies to argue that Verizon had the power to stop the alleged harassment, the court noted that the non-employing entity in that case had the power to stop the hostile work environment only because the perpetrators of that environment were "direct employees" of the non-employing entity. *Velez*, 335 F. Supp 2d at 1030.[2] Thus, because there is no dispute that no Verizon employee engaged in unlawful conduct, Verizon cannot be Plaintiff's indirect employer.

Moreover, even if Verizon could be subject to Title VII liability as an indirect employer despite the fact that no Verizon employee engaged in unlawful conduct – which it cannot, as explained with respect to the joint employer issue below, there is simply insufficient evidence to demonstrate that Verizon exercised such significant control over the terms of Plaintiff's employment with Calpac that Verizon could be considered Plaintiff's employer. Plaintiff summarily states that "[a]s the discrimination and hostile work environment occurred on [Verizon's] project and work site and [Verizon] had the power to remove Clark . . . from the worksite, [Verizon] *obviously* had the power to stop the hostile work environment . . ." (Pl.'s Opp. at p. 14 (emphasis added).) Even if Plaintiff's claims about Verizon's control were true –

---

[1] In *EEOC v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 515524, *10 n.11 (N.D. Ill. July 14, 1999), the court did not address whether the non-employing defendant's conduct in that case subjected it to liability because the parties in that case "assume[d]" that it did so. Moreover, *Foster Wheeler* is instructive because the court in that case held that the non-employing defendant was not the plaintiffs' Title VII employer, noting that the defendant did not have the power to hire, fire, set the hours of, or determine the daily tasks of the plaintiffs. *See id.* at *8.

[2] Contrary to Plaintiff's argument, Verizon in no way "misrepresented" the state of the law with respect to indirect employer liability. In fact, Verizon explicitly noted the language in *Anderson* (*see* Verizon's Mot. at n. 4.), but Plaintiff fails to recognize that the Ninth Circuit has extended liability to non-employing entities only "in instances where the indirect employer was the entity performing the discriminatory act . . .," even in cases addressing whether the non-employing entity had the power to stop the harassment. *See Velez*, 335 F. Supp. 2d at 1027.

which, as explained below, they are not – these claims are far removed from the allegations in cases in which the court has found indirect employer liability. *See, e.g., King*, 812 F. Supp. at 153 (the plaintiff worked at a Chrysler facility and was harassed by a Chrysler employee); *Duncan*, 1999 U.S. Dist. LEXIS 22451, at *9 (the plaintiff worked at a GM plant and was harassed by a GM employee). Here, Plaintiff was allegedly subjected to a hostile environment at various outdoor locations on Guam by an individual that Verizon did not employ. Significantly, no Verizon employee was even aware of this alleged conduct until, at the earliest, months after the fact. (Verizon Mot., Civille Decl., Exs. A at ¶ 10, B at ¶ 9, & C at ¶ 9.)[3] As a result, even if Verizon could be considered an indirect employer, Verizon lacked such sufficient control over Plaintiff's work environment to constitute an indirect employer.

B. Verizon Cannot Be Plaintiff's Joint Employer Because Contractual Oversight Is Insufficient to Establish the Requisite Control.

As courts have long recognized, mere contractual authority to ensure satisfactory performance of a contract is a "usual requirement of independent contracts" and does not result in the contracting party possessing control of the contractor's employees. *Int'l Chem. Workers Union Local 483 v. NLRB*, 561 F.2d 253, 256-57 (D.C. Cir. 1977). Rather, the "*sine qua non* of determining whether one is an employer is that an 'employer can hire and fire employees, can assign tasks to employees and supervise their performance.'" *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003).

In his Opposition, Plaintiff argues that the provisions of the contracts between Verizon and DTS and Calpac suggest that Verizon was the employer of Calpac's employees. (Pl.'s Opp. at p. 5.) As Plaintiff points out, the Calpac contract authorized Verizon to inspect Calpac's performance, required Calpac to complete the Guam project to the satisfaction of Verizon, and

---

[3] Moreover, even if the various locations on Guam could be considered Verizon's "worksite," there is no evidence that the employment decision about which Plaintiff complains (*see* section I.C.1, *infra*.) was made at these worksites. Thus, Verizon's alleged oversight over the worksite cannot support Plaintiff's argument that Verizon was his indirect employer with respect to his unlawful termination claim.

permitted Verizon to remove from the Guam project unsatisfactory employees.[4] No provision of these contracts, however, provided Verizon any authority over any ultimate employment decision Calpac made with respect to its employees, including any Calpac decision to hire, promote, assign tasks to, schedule hours for, or terminate any plaintiff.

Plaintiff further argues that Verizon is his employer because a third party with whom Verizon contracted oversaw the Guam project.[5] For example, Plaintiff argues that Clark had the authority to review Calpac's performance and ensure that Calpac performed its contractual responsibilities in a high quality manner, including requiring that tasks be completed correctly, and that Clark had the authority to remove (but not terminate) unsatisfactory Calpac employees. (Pl.'s Opp. at pp. 9-10.) Even if DTS' "authority" could be imputed to Verizon, such claimed "authority" demonstrates nothing more than that DTS had the power to oversee Calpac's installation of cable on Guam, inspect Calpac's installation, and ensure that Calpac's installation met contractual requirements. There is no evidence, however, that Clark (or Verizon) had any authority whatsoever with respect to, among other things, Calpac's specific employment decisions to hire, terminate, or pay a particular plaintiff.[6] Moreover, it is undisputed that Verizon did not have any input concerning the amount, method, or timing of payment of Plaintiff's wages, that Verizon did not maintain employment records for Plaintiff, that no Verizon employee supervised Plaintiff's work, that Verizon did not evaluate Plaintiff's work, and that Verizon did not possess direct control over Plaintiff's daily work schedule. (Verizon Mot., Civille Decl., Exs.

---

[4] As explained in Verizon's Motion, many of the provisions in the DTS and Calpac contracts cited by Plaintiff in his Opposition cannot reasonably be read to have any impact whatsoever on the terms of Plaintiff's employment, let alone sufficient impact to convert Verizon into a joint employer. (Verizon's Mot. at n.6.)

[5] Plaintiff cites no authority supporting the proposition that Verizon can be considered a joint employer of Calpac's employees because a third party with whom Verizon contracted supervised a project on which Calpac's employees worked.

[6] Plaintiff further relies on testimony that Clark discussed with Calpac's owner the number of people it would take to complete the project and that Clark could alter the site in which work was performed on a particular day. (Pl.'s Opp. at p. 11.) Even if true, this evidence does not suggest that Clark had control over particular Calpac employees, and, in fact, there is no evidence that Clark had any involvement with Calpac's decisions as to which Calpac employees would be assigned to the Guam project.

A at ¶¶ 7-9, B at ¶¶ 6-8, & C at ¶¶ 6-8.)

Simply because Verizon had the right to ensure it received from Calpac that which it paid for – including the right to oversee, inspect, and correct Calpac's work and to remove (but not terminate) unsatisfactory employees from the Guam project, cannot lead to a finding that Verizon controlled the terms of **Plaintiff's employment with Calpac**. *Int'l Chem. Workers Union Local 483*, 561 F.2d at 254-57 (explaining that provisions requiring satisfactory performance do "not necessarily involve the contracting party in any control of the employees in the details of their work.").[7] In other words, there is a fundamental distinction between control of a contractor's performance and control over the contractor's employees. *See, e.g., Int'l House v. NLRB*, 676 F.2d 906, 913 (2d Cir. 1982) (holding that, despite the fact that the non-employing defendant controlled aspects of the worksite and contractor performance, "an essential element under any determination of joint employer status in a *sub-contracting case* is distinctly lacking in the instant case – *some evidence of immediate supervision or control of the employees*.") (emphasis added). Thus, in the absence of material evidence that Verizon or any of its employees exercised any control over the terms and conditions of Plaintiff's employment, including control over Plaintiff's hire, termination, daily schedule, performance reviews, wages, etc., Verizon cannot be held to be a joint employer with Calpac.

C.      Even If Any Title VII Relationship Existed Between Verizon and Plaintiff, Plaintiff's Title VII Claims Against Verizon Are Barred as a Matter of Law.

1.      Plaintiff Has Waived Any Claim That Verizon Should Be Subject To Liability For The Employment Decision About Which He Complains.

Because Plaintiff failed in his Opposition to challenge the indisputable fact that Verizon

---

[7] As explained in Verizon's Motion (Verizon's Mot. at n.5.), Plaintiff heavily relies on cases that are not only factually and legally distinguishable from this case but also underscore the lack of Verizon's control over Plaintiff. (*See* Pl.'s Opp. at pp. 3-5, citing *Gallenkamp Stores, Inc. v. NLRB*, 402 F.2d 525, 528-29 (9th Cir. 1968) and *Ref-Chem Co. v. NLRB*, 418 F.2d 127, 129 (5th Cir. 1969).) For example, in *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122-25 (3d Cir. 1982), the court affirmed a joint employer finding where – unlike this case – the defendant shared the right to hire and fire the plaintiffs, established their work hours, provided them with uniforms, and determined their compensation.

-5-
Case 1:05-cv-00037   Document 629   Filed 05/02/2008   Page 6 of 11

was not aware of the employment decision about which he complains, Plaintiff has waived this claim. *See, e.g., Manson v. Gen. Motors Corp.*, No. 01-4009, 2003 U.S. APP. LEXIS 6613, ** 10 (7th Cir. Apr. 4, 2003) (affirming a grant of summary judgment on a portion of a hostile work environment claim because the plaintiff failed to address a statute of limitations argument in response to a summary judgment motion). Here, Plaintiff alleges that, after complaining to Calpac foremen about the comments, Calpac unlawfully terminated his employment. (SAC ¶ 98.) Verizon has moved for summary judgment on this claim on the ground that Verizon had no knowledge of this employment decision. While Plaintiff attempts to demonstrate that Verizon was aware of the alleged harassment, he makes no serious attempt to suggest that Verizon had any knowledge of, or involvement in, this specific employment action. (Pl.'s Opp. at pp. 18-20.) Thus, Verizon is entitled to summary judgment with respect to Plaintiff's unlawful termination claim.

2. Verizon Did Not Control The Employment Decision About Which Plaintiff Complains.

Moreover, even if Plaintiff has not waived his unlawful termination claim against Verizon, Verizon cannot be liable under Title VII for adverse employment decisions it did not control. *See, e.g., Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1357-58 (M.D. Fla. 2003) (granting summary judgment because, "[e]ven if [the defendant] could be considered Plaintiffs' employer under Title VII," the defendant had no control over its client's employment decisions and explaining that "a private company, cannot force its client, another private company, not to discriminate or run its business in a certain manner.") Here, Plaintiff testified that Calpac terminated his employment and, other than Calpac informing Plaintiff that his termination was due to a slow down in work, he has no facts to suggest that someone other than Calpac's owner, John Healy, made the decision to terminate Plaintiff. (Verizon Mot. at Civille Decl., Ex. S, at 152:4-7; 157:17-159:14.) Thus, because there is no dispute that no Verizon employee controlled the decision to terminate Plaintiff, Verizon cannot be liable under Title VII for this alleged unlawful employment decision.

### 3. Any Alleged Unlawful Conduct Was Perpetuated Without Verizon's Knowledge.

Finally, Verizon cannot be liable for alleged unlawful employment decisions or harassment about which it did not know or should not have known. Courts have consistently held that an entity that neither directly employs the alleged wrongdoer or plaintiff, nor is involved in the wrongdoing, should only be liable under Title VII if that entity *knew or should have known* about the wrongdoing. *See, e.g., Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) (applying the "knew or should have known" standard with respect to the harassing conduct of a private individual); *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33, 46 (D.D.C. 1997). Indeed, this Court recognized this standard in its January 22, 2007 order granting Verizon's motion to dismiss without prejudice when it stated that "an employer does not violate Title VII unless and until it knows of illegal harassment and fails to act to correct the situation." (Jan. 22 Order at p. 5.) Despite this clear authority, Plaintiff nonetheless argues that it is subject to liability "**regardless of any claimed lack of awareness** of hostile work environment, discrimination, or retaliation." (Pl.'s Opp. at p. 15 (emphasis added).)

Plaintiff misconstrues the state of the law and ignores the cases cited by Verizon that address the "knew or should have known" standard applicable to non-employing entities such as Verizon. First, the case on which Plaintiff relies, *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1177 (9th Cir. 2001), has no applicability to this case whatsoever because both the plaintiff and alleged harasser in *Kohler* were directly employed by the same employer. *Kohler*, 244 F.3d at 1168-69. Further, even if *Kohler* is applicable, Plaintiff oversimplifies the holding in *Kohler*. In *Kohler*, the court held that "[a]n employer is liable for a co-worker's sexual harassment only if, *after the employer learns of the alleged conduct*, he fails to take adequate remedial measures." *Kohler*, 244 F.3d at 1176 (emphasis added). Consistent with the rationale supporting the requirement that an employer be aware of a plaintiff's co-worker's harassment, courts and Title VII's regulations have consistently stated that an entity that ***did not employ the wrongdoer*** cannot be subject to Title VII liability unless it knew or should have known about the unlawful conduct. *See Folkerson*, 107 F.3d at 756; 29 C.F.R. § 1604.11(e).

The "knew or should have known" standard, therefore, applies in cases in which the plaintiff is subjected to unlawful conduct by a supervisor not directly employed by a defendant, even where the court concedes that the non-employing entity was an "employer." *See, e.g., Neal v. Manpower Int'l, Inc.*, No. 3:00-CV-277/LAC, 2001 WL 1923127, at ** 1-4, 10 (N.D. Fla. Sept. 17, 2001) (granting the defendant's motion for summary judgment because, even though the plaintiff complained about her supervisor's harassment to the harasser's employer, "[the plaintiff] never made [the non-employing defendant] aware of her charge of sexual harassment"); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 937-38 (D.S.C. 1997) (stating that "when an employee claims discrimination against two joint employers, she 'must show that [each] defendant knew or should have known of the discriminatory conduct . . .'" (citation omitted)). Thus, contrary to Plaintiff's argument, even if Verizon could be considered Plaintiff's or Clark's joint or indirect employer, DTS employed Clark and Calpac employed Plaintiff, and as a result, Plaintiff must demonstrate that Verizon knew or should have known about the alleged unlawful conduct.

        a.       There Is No Evidence That Verizon Was Aware Of The Alleged Unlawful Employment Decisions Or Harassment.

Because there is no dispute that no Verizon employee was aware of, let alone involved in, any alleged harassment or unlawful employment decisions, Verizon cannot be subject to Title VII liability. Implicitly acknowledging that he has no evidence that any Verizon employee was aware of the alleged conduct, Plaintiff relies on inapposite cases to argue that actual knowledge should be imputed to Verizon because he complained about alleged unlawful conduct to higher management *at Calpac*. (Pl.'s Opp. at p. 18, relying on *Morgan v. Fellini's Pizza, Inc.*, 64 F. Supp. 2d 1304, 1313 (N.D. Ga. 1999) and *Sims v. Health Midwest Phys. Servs. Corp.*, 196 F.3d 915 (8th Cir. 1999).) However, because in both *Morgan* and *Sims* the plaintiff and the plaintiff's harasser were employees of the same employer, these cases are simply not applicable to cases in which a plaintiff and his harasser were employed by third parties. In fact, courts have held that a non-employing defendant cannot be subject to Title VII liability where it lacked knowledge of the unlawful conduct, despite the fact that a plaintiff may have complained to higher management at

- 8 -
Case 1:05-cv-00037  Document 629  Filed 05/02/2008  Page 9 of 11

his direct employer. *See, e.g., Neal*, 2001 WL 1923127, at *10; *Takacs*, 473 F. Supp. 2d at 656. Thus, the claim that Plaintiff complained to higher management *at Calpac*, cannot establish *Verizon's* knowledge of any unlawful conduct as a matter of law.

Still relying on inapplicable case law involving claims by a plaintiff against his direct employer, Plaintiff further argues that Verizon should have known about the harassment because some plaintiffs were allegedly subjected to "three to four" insults, which constitutes "pervasive" harassment. (Pl.'s Opp. at pp. 18-19.)[8] For the reasons explained above, case law addressing whether a direct employer had knowledge of unlawful conduct is inapposite, and courts require proof of a non-employing entity's actual knowledge of unlawful conduct. Nonetheless, even if "pervasive" harassment could impute actual knowledge to Verizon, the Ninth Circuit regularly holds that allegations such as Plaintiff's do not amount to a pervasive hostile environment. *See, e.g., Manatt v. Bank of America, N.A.*, 339 F.3d 792, 798-99 (9th Cir. 2003) (two overheard jokes regarding Chinese and two mocking instances directed at the plaintiff do not constitute a hostile work environment).[9] Moreover, Plaintiff cites no authority whatsoever to support the notion that, simply because a Verizon employee had contact with Clark or it had contractual authority to remove unsatisfactory employees from the Guam project, Verizon should be imputed with knowledge of the alleged conduct as a matter of law. Thus, in the absence of evidence that any Verizon employee had actual knowledge of the alleged unlawful conduct, there is no basis for imputing knowledge to Verizon.

    4.    Verizon Exercised Reasonable Care to Prevent and Promptly Correct Any Harassing Behavior.

Plaintiff complains that Verizon failed to act reasonably because Verizon failed to disseminate an anti-harassment policy or provide a grievance procedure *to Calpac's employees*, and thus, made no effort to "track the conduct" of third parties. (Pl.'s Opp. at p. 17.) Plaintiff's

---

[8] In fact, Plaintiff testified that during his employment with Calpac, he heard Clark refer to Calpac workers as "island monkeys" or "monkeys" on three occasions. (Verizon Mot. at Civille Decl., Ex. S, at 100:3-7.)

[9] *See also Vasquez v. County of Los Angeles*, 349 F.3d 634, 642-43 (9th Cir. 2003) (two epithets regarding Hispanics and other abusive incidents occurring over the course of a year do not constitute a hostile work environment); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of the plaintiff on several occasions and directly called the plaintiff "Medea").

response vividly demonstrates the degree to which Plaintiff is asking this Court to expand the scope of Title VII liability. According to Plaintiff's rationale, each time a business hires an independent, third party contractor to perform services and retains the right to ensure that the contractor is satisfactorily performing that service, that business is not only subject to Title VII liability, but the business must institute a full-blown anti-harassment program for the employees of the contractor in order to protect itself under Title VII. Plaintiff, however, cites no authority supporting the notion that in cases involving a claim of liability against a non-employing entity, such an entity should be required to institute an anti-harassment program for an independent contractor's employees. Thus, in light of the undisputed facts that Verizon hired independent, third party contractors to perform services on Guam, that no Verizon employee had any involvement with the alleged conduct, and that Verizon did not learn of the conduct until, at the least, two months after the last comment, Verizon took reasonable care to prevent and correct any harassing conduct.[10]

## II. CONCLUSION

For the foregoing reasons, Verizon respectfully requests that this Court grant its motion for summary judgment on all counts of Plaintiff's Second Amended Complaint.

Respectfully submitted this 2nd day of May, 2008.

**CIVILLE & TANG, PLLC**
**JONES DAY**

By: /s/ G. Patrick Civille
**G. PATRICK CIVILLE**
*Attorneys for Defendants*
*Verizon Business Purchasing LLC and*
*Verizon Business Network Services, Inc.*

---

[10] As Verizon explained in its Motion, Verizon included language in its contracts with Calpac and DTS whereby those entities agreed to comply with federal laws and sound labor practices. (Verizon's Mot. at Civille Decl., Ex. D at ¶ 28.1.; Ex. E at ¶ 3.6.6.1.) Further, Verizon promptly reminded Calpac and DTS of their legal responsibilities when it became aware of the complaints by communicating with Calpac and DTS regarding the allegations and sending correspondence to Calpac on December 28, 2004 and to Calpac and DTS on January 14, 2004 requesting that Calpac and DTS refrain from taking any discriminatory and retaliatory actions. (Verizon's Mot. at Civille Decl., Ex. H.) Moreover, *no instances of harassment occurred after Verizon became aware of complaints.* (Verizon's Mot. at Civille Decl., Ex. DD.)